No. 06-432C
(Senior Judge Margolis)

---

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

---

CONTINENTAL AIRLINES, INC.,

Plaintiff,

v.

UNITED STATES,

Defendant.

---

**DEFENDANT'S MOTION TO DISMISS**

---

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

KYLE CHADWICK
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification, 8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 305-7562
Fax: (202) 305-7644

Attorneys for Defendant

OF COUNSEL:

ANDREW S. KOSEGI
Attorney
U.S. Customs and Border Protection
Indianapolis, IN

CYNTHIA A. KOCH
Senior Counsel
United States Department of Agriculture

December 15, 2006

TABLE OF CONTENTS

Statement Of The Issues . . . . . . . . . . 1

Summary Of The Argument . . . . . . . . . . 6

Argument . . . . . . . . . . 7

The First Amended Complaint Fails To State A Claim For Relief . . . . . . . . . . 7

I. Legal Standards . . . . . . . . . . 7

II. The User Fee Regulations Are Valid . . . . . . . . . . 8

III. DHS Lawfully Collected The Immigration Inspection User Fees From Continental Following The Audits . . . . . . . . . . 9

IV. USDA Lawfully Collected The Immigration Inspection User Fees From Continental Following The Audits . . . . . . . . . . 13

Conclusion . . . . . . . . . . 17

# TABLE OF AUTHORITIES

## CASES


Aerolineas Argentinas v. United States,
77 F.3d 1564 (Fed. Cir. 1996) . . . . . . . . . . 7

Air Tour Acquisition Corp. v. United States,
781 F. Supp. 669 (D. Haw. 1991) . . . . . . . . . . 12

American Airlines, Inc. v. United States,
68 Fed. Cl. 723 (2005) . . . . . . . . . . passim

Auer v. Robbins,
519 U.S. 452 (1997) . . . . . . . . . . passim

Cathedral Candle Co. v. ITC,
400 F.3d 1352 (Fed. Cir. 2005) . . . . . . . . . . 8, 11

Cf. Britell v. United States,
372 F.3d 1370 (Fed. Cir. 2004) . . . . . . . . . . 9

Cf. Cook v. United States,
46 Fed. Cl. 110 (2000) . . . . . . . . . . 1

Cf. Maytag Co. v. Cummins,
260 F. 74 (8th Cir. 1919) . . . . . . . . . . 10

Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,
467 U.S. 837 (1984) . . . . . . . . . . 7

Clapp v. United States,
127 Ct. C 117 F. Supp. 576 (1954) . . . . . . . . . . 7

Conley v. Gibson,
355 U.S. 41 (1957) . . . . . . . . . . 7

Gose v. USPS,
451 F.3d 831 (Fed. Cir. 2006) . . . . . . . . . . 7

Haggar Co. V. Helvering,
308 U.S. 389 (1940) . . . . . . . . . . 14

IPSCO, Inc. v. United States,
965 F.2d 1056 (Fed. Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Lamie v. United States Trustee,
540 U.S. 520 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Lindsay v. United States,
295 F.3d 1252 (Fed. Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Merck & Co. v. United States,
24 Cl. Ct. 73, 91 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Princess Cruises, Inc. v. United States,
201 F.3d 1352 (Fed. Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Smith v. Nicholson,
451 F.3d 1344 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Splane v. West,
216 F. 3d 1058 ( Fed. Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Thomas Jefferson Univ. v. Shalala,
512 U.S. 504 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Timex V.I., Inc. v. United States,
157 F.3d 879 (Fed. Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

United States v. Haggar Apparel Co.,
526 U.S. 380 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

STATUTES AND REGULATIONS

6 U.S.C. § 231(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

6 U.S.C. §§ 251, 291 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

8 U.S.C. § 1356(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2

8 U.S.C. § 1356(f)(1), (2), (3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

8 U.S.C. § 1356(f)(3), (h)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

8 U.S.C. § 1356(j) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

21 U.S.C. § 136a . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

21 U.S.C. § 136a(a)(1)(A), (2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

7 C.F.R. § 354.3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 5, 14, 15

8 C.F.R. § 286.4(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

8 C.F.R. § 286.5(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 10

MISCELLANEOUS

H.R. Conf. Rep. No. 104-494 (1996), reprinted in 1996 U.S.C.C.A.N. 683 . . . . . . . . . . . . . . 5, 13

53 Fed. Reg. 5756 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

56 Fed. Reg. 8148 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

56 Fed. Reg. 14837 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| CONTINENTAL AIRLINES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 06-432C |
| v. | ) | (Senior Judge Margolis) |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S MOTION TO DISMISS**

Pursuant to Rule 12(b)(6) of the Court's Rules ("RCFC"), defendant, the United States, respectfully requests the Court to dismiss both counts of the first amended complaint for failure to state a claim upon which the Court could grant relief. In support of this motion, which is in lieu of an answer, RCFC 12(a)(2), we rely upon the allegations of the complaint and the following brief.[1]

STATEMENT OF THE ISSUES

1. Whether the Court should dismiss count I ("Illegal Exaction of Immigration User Fees"), upon the grounds that 8 U.S.C. § 1356(d) and, in particular, its implementing regulations, 8 C.F.R. Part 286, require plaintiff, Continental Airlines, Inc., to remit to the Government an immigration inspection user fee from every international passenger who arrives aboard a commercial aircraft at a port of entry in the United States, or who is preinspected for immigration

[1] The Government possesses other, more fact-specific defenses to liability – including, without limitation, waiver, accord and satisfaction, and laches – which we would present, if necessary, in a summary judgment motion or at trial. We would also be entitled to discovery to determine whether Continental can "prove the correct amount of " any user fees owed at the time of the audits, "and any overpayment." Merck & Co. v. United States, 24 Cl. Ct. 73, 91 (1991). We are not bound by the amounts of the assessments made by the auditors. Cf. Cook v. United States, 46 Fed. Cl. 110, 114 (2000) (tax refund case).

purposes outside the customs territory of the United States prior to arriving at a port of entry, subject only to the exceptions stated in the user fee statute and regulations.

2. Whether the Court should dismiss count II ("Illegal Exaction of APHIS User Fees"), upon the grounds that 21 U.S.C. § 136a and, in particular, its implementing regulation, 7 C.F.R. § 354.3(f), require Continental to remit to the Government an agricultural quarantine and inspection ("AQI") user fee (which Continental calls the "APHIS user fee") from every international passenger who arrives aboard a commercial aircraft at a port in the customs territory of the United States, or who is precleared or preinspected for agricultural safety purposes outside the customs territory of the United States prior to arriving at a port in the customs territory of the United States, subject only to the exceptions stated in the use fee regulation.

BACKGROUND AND SUMMARY OF PLAINTIFF'S ALLEGATIONS

Solely for purposes of this motion, we assume the truth of the properly pleaded factual allegations of the complaint, with which we respectfully assume the Court's familiarity.

1. The relevant statutes and regulations are properly summarized in American Airlines, Inc. v. United States, 68 Fed. Cl. 723, 724-26 (2005), a decision with which we otherwise respectfully disagree. Beginning with an appropriations act for fiscal year 1987, Pub. L. No. 99-591 (1986), Congress has required that a user fee be collected and remitted to the Government for the immigration inspection of individual air travelers arriving in the United States, or receiving immigration preinspection outside the United States. Section 1356(d) of Title 8, United States Code, provides that the Department of Homeland Security ("DHS") "shall charge and collect $7 [originally, $5] per individual for the immigration inspection of each passenger arriving at a port of entry in the United States, or for the preinspection of a passenger in a place

outside of the United States prior to such arrival, aboard a commercial aircraft or commercial vessel."[2] Limited exceptions, inapplicable here, are set forth in subsection 1356(e).

The statute authorizes the agency to, among other things, prescribe implementing regulations. 8 U.S.C. § 1356(j). Regulations were issued in 1988. 8 C.F.R. Part 286; 53 Fed. Reg. 5756 (1988) (final rule). As amended in non-substantive part, they provide, among other things, that "[i]t is the responsibility of" each airline to collect the immigration user fee when issuing a ticket to a covered passenger, or to "collect the fee [from a covered passenger] upon departure," unless there is documentation that the user fee was previously collected. 8 C.F.R. § 286.4(a), (c). Further, "If at the time of departure such a passenger refuses to pay the fee[,] the carrier shall record the full name, complete address, nationality, passport number, and alien file number, if any, of the passenger and immediately notify the Associate Commissioner, Finance." Id. § 286.4(c). The regulations establish the agency's "right" to audit the books of "any collector or remitter" of user fees, "to assure the accuracy of the remittances of fees collected and remitted and compliance with the applicable statutes and regulations." Id. § 286.5(f).

2. Congress created a similar funding mechanism for agricultural quarantine inspections in 1990. The 1990 legislation, 21 U.S.C. § 136a, as enacted and amended, authorizes the Secretary of Agriculture to, among other things, prescribe by regulation and receive a user fee "sufficient to cover the cost of providing" AQI services for air passengers who arrive at a port in the customs territory of the United States or who are precleared or preinspected at a site outside the customs territory of the United States. 21 U.S.C. § 136a(a)(1)(A), (2). It also authorizes the

---

[2] The statute refers to the Immigration and Naturalization Service ("INS"), a former Department of Justice component. The INS's responsibilities have since been transferred to U.S. Customs and Border Protection, a component of DHS. See 6 U.S.C. §§ 251, 291. For ease of reading, we refer to the current agency.

Secretary to transfer collection responsibility for the user fee to "persons," including airlines; to require those persons to remit the fees "in such manner and at such times" as the Secretary may prescribe; and to bring legal actions for unpaid fees against "any person obligated for payment." 21 U.S.C. § 136a(a)(3), (e). In 2003, Congress transferred responsibility for performing certain agricultural inspections, including inspections of international air travelers, from the Department of Agriculture ("USDA") to DHS. See 6 U.S.C. § 231(a). USDA remains responsible, however, for overseeing the collection and remittance of the AQI user fee and for administering the AQI user fee act and its implementing regulations. Id. § 231(d).

The AQI user fee statute confers broad rulemaking authority upon the Secretary to carry out its mandate. 21 U.S.C. § 136a(d). Pursuant to regulations issued in 1991, 56 Fed. Reg. 14837 (1991) (final rule), airlines and ticket agents must collect the AQI user fee (which Continental calls the "APHIS User Fee," for the Agricultural and Plant Health Inspection Service of USDA, 1st Am. Compl. ¶ 3), like the immigration inspection user fee, either in the price of tickets issued to international passengers, or upon departure:

> (f)(4) Collection of fees
>
> (i) Any person who issues tickets or travel documents . . . is responsible for collecting the AQI user fee from all passengers transported into the customs territory of the United States to whom the AQI user fee applies.
>
> (A) Tickets or travel documents must be marked by the person who collects the AQI user fee to indicate that the required AQI user fee has been collected from the passenger.
>
> (B) If the AQI user fee applies to a passenger departing from the United States and if the passenger's tickets or travel documents . . . do not reflect collection of the AQI user fee at the time of issuance, then the carrier transporting the passenger from the United States must collect the AQI user fee upon departure.

7 C.F.R. § 354.3(f)(4) (emphasis added). The AQI statute and regulation expressly provide that collectors of AQI user fees hold them "as trust funds" for the beneficial interest of the United States. 21 U.S.C. § 136a(a)(3); 7 C.F.R. § 354.3(f)(4)(i)(C).

3. Although airlines collect the immigration inspection and AQI user fees continuously, they remit both types of fees to the agencies quarterly. 8 C.F.R. §§ 286.4, 286.5(f), 286.6; 7 C.F.R. § 354.3(f)(5)(i), (ii). As noted, DHS and USDA are entitled to audit airlines and other collecting parties to ensure compliance. 8 C.F.R. § 286.5(f); 7 C.F.R. § 354.3(f)(7). Upon remittance, the user fees are deposited into segregated Treasury accounts, from which DHS and USDA disburse funds to reimburse the agency appropriation accounts that incur costs related to performing the inspections and overseeing the collection of the user fees. See 8 U.S.C. § 1356(f)(3), (h)(1); 21 U.S.C. § 136a(a)(5), (6); see also H.R. Conf. Rep. No. 104-494, at 474 (1996), reprinted in 1996 U.S.C.C.A.N. 683, 843.

4. Continental's illegal exaction claims echo those in American Airlines. See 68 Fed. Cl. at 727. Continental alleges that, pursuant to user fee audits conducted in 2001, 2002, 2004, and 2006, the Government directed it to remit additional amounts for immigration inspection and AQI user fees that Continental admittedly should have collected from covered passengers during the audit periods, but that it did not establish, in the audits, that it had collected. 1st Am. Compl. ¶¶ 30, 95, 99. It alleges that the auditors extrapolated a non-collection (or "error") rate for each audit period, by reviewing a sample of Continental's international tickets and concluding that immigration inspection or AQI user fees were not collected for the percentage of tickets in the sample for which "Continental could not produce . . . evidence that the fees had been collected or that the passenger was exempt . . . ." Id. ¶¶ 26-27.

Continental denies that it is financially responsible for the immigration inspection and AQI user fees that it was required by law to collect, but that it failed to demonstrate to the Government auditors in 2001, 2002, 2004, and 2006 that it had collected. Id. ¶¶ 96-97, 100-01. It argues that the payments it admittedly made without protest to the agencies, until 2006, to resolve the user fee audits were illegally exacted, in that the agencies allegedly lacked authority to impose what Continental terms "secondary liability on Continental" for the amounts of those fees, or to require Continental "to guarantee the collection of such fees." Id.

## SUMMARY OF THE ARGUMENT

The Government has not illegally exacted money from Continental. To the extent Continental failed to demonstrate, in the Government's user fee audits, that it remitted all of the user fees it was obligated to collect from its international passengers, the agencies have lawfully directed Continental to pay the unremitted amounts. DHS and USDA have properly construed the statutes and their duly promulgated user fee regulations as rendering airlines responsible (subject to exceptions not pertinent to this case) for collecting, retaining, and remitting to the Government all applicable user fees for all international passengers. Continental's argument that it must remit only those user fees it actually collects would deprive the plain, mandatory language of the user fee statutes and regulations of meaning, by affording airlines discretion to decide whether to collect and remit a user fee that is due and owing. The Court should reject the argument for that reason alone. Alternatively, assuming the Court concludes that the agencies' user fee statutes or regulations are ambiguous, it should defer to each agency's interpretation of its own regulations, inasmuch as those readings are, consistent with the legislative purpose of the statutes and are, at an absolute minimum, not foreclosed by the regulatory text.

ARGUMENT

THE FIRST AMENDED COMPLAINT FAILS TO STATE A CLAIM FOR RELIEF

I. Legal Standards

Dismissal pursuant to RCFC 12(b)(6) is warranted "when the facts asserted by the claimant do not entitle [it] to a legal remedy . . . accept[ing] all well-pleaded factual allegations as true and draw[ing] all reasonable inferences in the claimant's favor." Lindsay v. United States, 295 F.3d 1252, 1257 (Fed. Cir. 2002); accord Conley v. Gibson, 355 U.S. 41, 45-46 (1957). In order to recover for illegal exaction, Continental must demonstrate, as a threshold matter, that "the Government has . . . in its pockets" money it obtained from Continental without authority of law. Aerolineas Argentinas v. United States, 77 F.3d 1564, 1573 (Fed. Cir. 1996) (quoting Clapp v. United States, 127 Ct. Cl. 505, 512, 117 F. Supp. 576, 580 (1954)).

When, as here, agencies have interpreted statutes by issuing regulations, Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837 (1984), applies. The Court will first ask "whether Congress's purpose and intent on the question at issue is judicially ascertainable." Timex V.I., Inc. v. United States, 157 F.3d 879, 881 (Fed. Cir. 1998) (citing Chevron, 467 U.S. at 842-43 & n.9). When that is not the case, Chevron deference is warranted, and it is error for the Court to substitute its own views for a reasonable interpretation by the agency. IPSCO, Inc. v. United States, 965 F.2d 1056, 1061 (Fed. Cir. 1992).

Courts "defer even more broadly to an agency's interpretations of its own regulations," Gose v. USPS, 451 F.3d 831, 837 (Fed. Cir. 2006), which "must be given controlling weight unless . . . plainly erroneous or inconsistent with the regulation." Thomas Jefferson Univ. v. Shalala, 512 U.S. 504, 512 (1994) (quotation marks omitted); Smith v. Nicholson, 451 F.3d

1344, 1349-50 (2006). This is so "even when [the agency] interpretation is offered in the very litigation in which the argument for deference is made." Cathedral Candle Co. v. ITC, 400 F.3d 1352, 1364 (Fed. Cir. 2005) (citing, inter alia, Auer v. Robbins, 519 U.S. 452, 461-62 (1997)).

## II. The User Fee Regulations Are Valid

We do not read the complaint as challenging the legal validity of the immigration user fee regulations or the AQI user fee regulations, as such. Continental does not allege that there were any procedural flaws in the issuance, or subsequent amendment, of the regulations at issue. Nor does it claim that either agency's user fee regulations are substantively inconsistent with the respective authorizing statute. Any such challenge must fail, in any event.

The DHS immigration inspection user fee regulations fairly implement the plain and directory language of the statute. 8 U.S.C. § 1356(f)(1), (2), (3) (issuers of tickets "shall . . . collect" user fees; "shall . . . identify" collection on the tickets; "shall provide" receipts for fees collected after ticketing; and "must remit" fees); cf. United States v. Haggar Apparel Co., 526 U.S. 380, 390-92 (1999). At the same time, there are no grounds upon which to argue that the AQI user fee regulations are inconsistent with USDA's statutory mandate, inasmuch as Congress conferred extensive rule making authority upon the Secretary of Agriculture to prescribe and collect the user fee to recover the full costs of providing AQI of international passengers, and imposed no constraints upon USDA that are relevant to Continental's claim. 21 U.S.C. § 136a; see 1st Am. Compl. ¶ 16 (alleging requirements of regulations alone). For these reasons, the valid user fee regulations, and the agencies' interpretations of them, bear directly upon Continental's claims and, as discussed below, establish that there has been no illegal exaction.

## III. DHS Lawfully Collected The Immigration Inspection User Fees From Continental Following The Audits

Count I alleges illegal exaction of immigration inspection user fees. 1st Am. Compl. ¶¶ 94-97. Continental admits, as it must, that it is "require[d]" to collect this fee from every covered passenger, either directly or through ticket agents. Id. ¶¶ 8-9, 20. As noted, the user fee statute mandates in the plainest terms that airlines "shall . . . collect" the user fee and "shall remit" the proceeds to the Government. 8 U.S.C. § 1356(f)(1), (3). Cf. Britell v. United States, 372 F.3d 1370, 1378 (Fed. Cir. 2004) (noting that "will pay" and "shall pay" are "mandatory language"). The regulations reinforce this mandate by providing without qualification that "it is the responsibility" of airlines and ticket agents to ensure that the user fees are collected and properly remitted to the Government. 8 C.F.R. § 286.4.

Just as important, nothing in the regulations excuses an airline from collecting immigration user fees merely because collection might be expensive, time-consuming, or commercially inconvenient, as Continental seems to suggest. 1st Am. Compl. ¶¶ 20, 22. The regulations allow Continental not to collect and remit a user fee from a covered passenger only when a passenger affirmatively refuses to pay and Continental specifically so notifies the Government, in accordance with 8 C.F.R. § 286.4(c). Continental does not allege that this has ever happened – although, at the same time, it apparently does not dispute the auditors' findings that, in past years, it has failed, for whatever reasons, to collect the immigration inspection user fee from numerous passengers, and, in one year, did not collect it from more than one in every 100 covered passengers. See 1st Am. Compl. ¶¶ 34, 40, 46, 60 (alleging error rates of 0.76, 1.25, 0.31, and 0.08 percent).

The immigration user fee statute – and, more important here, the regulations – do not support the distinction, posited by Continental, between the supposed "primary" liability of passengers to pay the immigration inspection user fee, and what Continental terms "secondary" liability imposed upon Continental as the payer of last resort. 1st Am. Compl. ¶ 96. The statute and regulations impose financial obligations directly upon Continental: Congress did not direct commercial airlines to "attempt" to collect, or "make best efforts" to collect the immigration user fee. Rather, Congress said the airlines "shall . . . collect" and "shall remit" the fee. 8 U.S.C. § 1356(f)(1), (3). The agency's properly issued and valid regulations reaffirm these twin "responsibilit[ies]" of the airlines with respect to the user fee. 8 C.F.R. §§ 286.4, 286.5(f), 286.6.

It is not surprising, therefore, that, for more than a decade, until American Airlines asserted the claims that are now in litigation, the Government auditors performing the audits authorized by 8 C.F.R. § 286.5(f); Continental; American; and the rest of the commercial airline industry all interpreted the immigration user fee statute and regulations as rendering airlines responsible for payment of all of the user fees they are obligated to collect, and as obligating them to make up any shortfall, from their own funds, if necessary. Cf. Maytag Co. v. Cummins, 260 F. 74, 79 (8th Cir. 1919) (noting the "basic legal presumption" that "men will refrain from unlawful acts, will obey the law and discharge their duties"). Indeed, before 2006, Continental repeatedly paid, without protest, amounts representing the portion of user fees it had not shown the auditors it had collected. 1st Am. Compl. ¶¶ 37, 43, 49. All interested parties construed the immigration inspection user fee regulations as requiring Continental to make those payments.[3]

---

[3] The existence of this longstanding and consistent audit practice plainly contradicts the suggestion in American Airlines that our reading of the regulations is "litigation-driven," 68 Fed. Cl. at 731, an epithet that is, in any event, irrelevant. See Auer, 519 U.S. at 462.

That was a sensible reading of the regulations, and it remains the most reasonable reading or, at the very minimum, a construction to which the Court should defer, as not plainly foreclosed by the regulations. Auer, 519 U.S. at 461-62; Cathedral Candle, 400 F.3d at 1364.

In American Airlines, the Court concluded, among other things, that nothing in 8 U.S.C. § 1356 or the implementing regulations "imposes liability on commercial airlines to pay user fees that are not collected." 68 Fed. Cl. at 731. The Court noted that the regulations refer conjunctively to user fees "collected and remitted" and do not mention uncollected fees. Id. (quoting 8 C.F.R. § 286.5(a), (c), (f), 286.6). It further stated that requiring airlines to notify the Government when covered passengers refuse to pay the user fee "would serve no purpose" if an airline were liable for uncollected fees. Id. This reasoning is mistaken. The immigration statute and regulations contemplate that a carrier will be "responsible" for the collection of fees from "all passengers" not subject to a specific exception. 8 C.F.R. § 286.4(a); see 8 U.S.C. § 1356(d) ("each passenger"). Accordingly, references in the regulations to the user fees being "collected and remitted" mean that a carrier is responsible for collecting and remitting the user fee from every non-exempt passenger – regardless of whether the actual amount ultimately remitted was collected from a passenger.

That an airline's responsibility to remit uncollected fees may be excused under the regulations, in narrow circumstances, supports our overall reading of the regulations. If, after several attempts by the airline (i.e., at the time of ticketing, and upon departure from the United States), a passenger refuses to pay the user fee, the regulations require the airline to record the passenger's contact information and "immediately notify" the Government. 8 C.F.R. § 286.4(c). This provision has at least three purposes. First, it provides a reasonable accommodation for

instances of non-collection that are beyond the airlines' control. Second, it affords the Government documentation of the basis for non-collection, which can be audited, to determine whether the carrier complied with its responsibilities to seek the fee. Third, the Government obtains information to enable it to seek collection of the fee itself, in the event this is deemed economically feasible. The reasoning of American Airlines is thus flawed, in that, if the airline were not otherwise liable for fees not collected, it would not matter whether the carrier failed to collect the fee because of a documented passenger refusal, or due to its own negligence.

Finally, the American Airlines Court observed that section 268.7 of the regulations provides for penalties against airlines and others for failure to comply with collection and remittance obligations, and that the enumerated penalties do not include assessments for uncollected fees. 68 Fed. Cl. at 731. The flaw in that argument is that the obligation to remit all immigration user fees that are required to be collected is not a "penalty" for a violation: It is the substantive obligation imposed upon airlines by the statute and regulations.[4]

Accordingly, this Court should reject the reasoning of American Airlines with respect to the immigration inspection user fee. Especially given that collection of the fee is intended to provide adequate funding for the inspections by Customs and Border Protection, see 8 U.S.C. § 1356(f)(3), (h)(1), the Court should adopt or, alternatively, defer to, the agency's reasonable

[4] Continental is likely to cite Air Tour Acquisition Corp. v. United States, 781 F. Supp. 669 (D. Haw. 1991), in which the district court held an airline not liable for taxes under a Tax Code provision that required it to collect a tax (not a fee) from passengers, but did not expressly make the airline liable for that tax. Among other things, the Air Tour court noted that a separate statute imposed a financial penalty for willfully evading or impeding collection of the tax. Id. at 672 & n.4 (citing I.R.C. § 6672). Here, however, under Continental's interpretation, there would be no financial penalty if an airline simply decided it was too inconvenient to collect the immigration user fee from every covered passenger. Also unlike this case, Air Tour interpreted the Tax Code and did not involve Auer deference to an agency's reading of its own regulations.

reading of section 1356 and its own regulations, an interpretation that avoids gutting the Government's ability to obtain 100 percent remittance of these user fees.

## III. USDA Lawfully Collected The AQI User Fees From Continental After The Audits

The allegations of Continental's count II, regarding the AQI (or APHIS) user fee, are materially identical to those of count I, regarding the immigration user fee. Thus, Continental alleges that APHIS has illegally exacted money by directing Continental to remit AQI user fees that admittedly were required to be collected, but allegedly were not collected, from certain international passengers. 1st Am. Compl. ¶¶ 20, 99-100. Count II shares the essential failings of count I and similarly fails to state an illegal exaction claim. Like the immigration user fee statute and regulations, the AQI (APHIS) user fee statute and regulations cannot be reasonably interpreted and applied, other than to require Continental to pay the sums it has paid.

Continental properly admits, once again, that it is "require[d]" to collect this user fee from its covered passengers. 1st Am. Compl. ¶¶ 14, 16. As with the immigration user fee, Congress unmistakably expressed its intent that USDA recover, through the user fees, the full cost of providing AQI inspections of international passengers. 21 U.S.C. § 136a(a)(1)(A), (2); H.R. Conf. Rep. No. 104-494, at 474, reprinted in 1996 U.S.C.C.A.N. at 843. Congress also specifically and unambiguously authorized USDA to transfer responsibility for the collection of user fees to "persons," including (but not limited to) airlines. 21 U.S.C. § 136a(f)(3). This plainly indicates that Congress expected USDA to render airlines financially obligated to remit to the Government all of the user fees they are responsible for collecting, as opposed to just some of those user fees, as Continental, in essence, contends.

Congress need not have expressed its intent in so many words for its intent to be clear. The Court should interpret the AQI user fee statute as a whole, giving it its plain and ordinary meaning, to the extent the result is not absurd, in light of its evident legislative purposes, and reject interpretations, such as Continental's, that lead to absurd results. Lamie v. United States Trustee, 540 U.S. 520, 530 (2004); Haggar Co. v. Helvering, 308 U.S. 389,394 (1940); Splane v. West, 216 F. 3d 1058, 1068-69 ( Fed. Cir. 2000). Under Continental's interpretation, USDA would not be assured of being able to obtain user fees sufficient to cover the costs of performing the AQI inspections, as Congress manifestly intended.

Equally important, even assuming the AQI user fee statute can be construed as ambiguous, or silent, with respect to the airlines' responsibility for payment of all fees required to be collected, the AQI regulations, promulgated by USDA pursuant to the broad, discretionary rule making authority provided by 21 U.S.C. § 136a(d), unequivocally render airlines responsible for collecting the AQI user fee when issuing a ticket to any covered passenger, or, failing that, upon departure. 7 C.F.R. § 354.3(f)(4). They mandate plainly and without qualification that an airline "is responsible for" and "must collect" the AQI user fee and "must remit" it to the account designated by the agency. 7 C.F.R. § 354.3(f)(1) n.1,[5] (f)(4)(i), (f)(4)(i)(B), (f)(5). The regulations further require airlines to "allow [agency] personnel to verify the accuracy of the AQI user fees collected and remitted and to otherwise determine compliance with 21 U.S.C. § 136a and this paragraph," id. § 354.3(f)(7), thus plainly permitting USDA to determine, and to collect from an airline, the amounts, if any, that an airline was obligated to remit to USDA but did not remit. Moreover nothing in the regulations excuses non-collection.

[5] The footnote to section 354.3(f)(1) became effective in 1999 and essentially underscores the requirements that appear in section 354.3(f)(4).

These provisions are fully consistent with the statutory authority of the Secretary to transfer collection responsibility to airlines and the legislative purpose of recovering the full costs of international passenger inspections. 21 U.S.C. § 136a(a)(3). In the preamble to the proposed AQI user fee rule, furthermore, USDA stated that "[u]nder these regulations, we must rely on others to collect and remit fees for us. However, we are responsible for ensuring that the fees collected are correct and that they are remitted in full and in a timely manner." 56 Fed. Reg. 8148, 8151 (1991) (emphasis added). This discussion reaffirms the expectation that airlines would be directly responsible for collecting and remitting the applicable user fees "in full."

The statute and implementing regulations do not support the distinction, posited by Continental, between the alleged primary liability of passengers to pay the AQI user fee, and the supposedly "secondary" liability imposed upon Continental as the payer of last resort. 1st Am. Compl. ¶ 100. USDA's regulations impose financial obligations directly upon Continental to collect and remit the AQI user fee, not to (for example) "attempt" or "make best efforts" to do so. E.g., 7 C.F.R. § 354.3(f)(4).

It is not surprising, therefore, that, as was the case with the immigration inspection user fee, for more than a decade after the regulations were issued, the Government auditors, Continental, and the rest of the commercial airline industry all interpreted the AQI user fee statute and regulations as rendering airlines responsible for payment of all of the AQI user fees they are required to collect. Before 2006, Continental did not object to the audits or the audit procedures, and it repeatedly paid, without protest, amounts representing the portion of AQI user fees it had not shown the auditors it had collected during the audit periods. 1st Am. Compl. ¶¶ 67, 74-75. The regulatory interpretation adopted by the agency and shared by the industry during those years was sensible, and it remains the most reasonable reading of the regulations or,

at the very minimum, one to which the Court should defer, because the agency's long-unchallenged reading of its regulations is obviously neither "unreasonable" nor impermissible. E.g., Princess Cruises, Inc. v. United States, 201 F.3d 1352, 1359-60 (Fed. Cir. 2000).

In American Airlines, the Court concluded that, under the regulations, "[t]he liability to pay this fee is imposed on the passenger, not upon commercial airlines that are required only to collect and to remit any fees collected." 68 Fed. Cl. at 732. The Court noted that the regulations refer to the remittance of fees that have been collected and do not mention uncollected fees. Id. Under the Court's interpretation, however, an airline would be free to decide not to collect the AQI user fee from a particular covered passenger. USDA would be in the untenable position of having to recover the shortfall from each covered passenger who allegedly did not pay the fee. (The AQI user fee regulations do not contain a provision similar to 8 C.F.R. § 286.4(c), requiring airlines to notify the agency of individual instances of nonpayment.) Assuming it was economically feasible for USDA to identify and trace those passengers (which USDA doubts), to require such collection efforts by the agency would vitiate the purposes of the law. In view of the de minimis amount of the user fee for each individual passenger, the cost to the agency of attempting to collect the fee might exceed any money recovered by the agency. The result would be a loss of money, rather than the recovery of money that Congress intended.

The American Airlines Court erred, therefore, by rejecting USDA's long-unquestioned reading of its own regulations. The duty of airlines to remit all of the AQI user fees they are required to collect is a substantive obligation imposed upon them by the AQI statute and its implementing regulations, as consistently interpreted by USDA from the time of the agency's initial rule making in 1991. Just as important, this obligation was, for years, recognized by Continental and the rest of the airline industry, as evidenced by the audit liability payments made

by Continental and other airlines since the inception of the AQI user fee program. Especially given that the collection of the fee is intended to provide adequate funding for the inspections, 21 U.S.C. § 136a(a)(1), (2), the Court should reject the reasoning of American Airlines and adopt or, alternatively, afford Auer deference to, USDA's reasonable reading of its regulations, which avoids gutting the Government's ability to recover the full cost of providing agricultural quarantine and inspection services to ensure the safety of plants, animals, and agricultural products in the United States.

## CONCLUSION

For the reasons given above, we respectfully request the Court to dismiss the first amended complaint.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

s/David M. Cohen
by Mark A. Melnick
DAVID M. COHEN
Director

s/Kyle Chadwick
KYLE CHADWICK
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification, 8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 305-7562
Fax: (202) 305-7644

Attorneys for Defendant

OF COUNSEL:

ANDREW S. KOSEGI
Attorney
U.S. Customs and Border Protection
Indianapolis, IN

CYNTHIA A. KOCH
Senior Counsel
United States Department of Agriculture
Washington, DC

December 15, 2006

CERTIFICATE OF FILING

I certify that on December 15, 2006, the attached was filed electronically. I understand that service is complete upon filing and that parties and others may access the filing through the Court's system.

s/Kyle Chadwick