Civil Action No. 06-432C
Judge Lawrence S. Margolis

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

CONTINENTAL AIRLINES, INC.

Plaintiff,

v.

THE UNITED STATES OF AMERICA

Defendant.

# PLAINTIFF'S CROSS MOTION FOR PARTIAL SUMMARY JUDGMENT

Adam P. Feinberg
MILLER & CHEVALIER CHARTERED
655 Fifteenth Street, N.W.
Washington, D.C. 20005
(202) 626-6087
(202) 626-5801 (Facsimile)

Counsel for Plaintiff

*Of Counsel*:
Robert K. Huffman
MILLER & CHEVALIER CHARTERED
655 15th Street, N.W.
Washington, D.C. 20005
(202) 626-5824
(202) 626-5801 (Facsimile)

January 16, 2007

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| CONTINENTAL AIRLINES, INC. | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action No. 06-432C |
| | ) | Judge Lawrence S. Margolis |
| THE UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

**PLAINTIFF'S CROSS MOTION FOR PARTIAL SUMMARY JUDGMENT**

Pursuant to Rule 56 of the Rules of the United States Court of Federal Claims ("RCFC"), Plaintiff Continental Airlines, Inc. hereby respectfully moves for partial summary judgment as to liability on all counts in its Amended Complaint. In support of this motion, Plaintiff submits the following accompanying documents:

1. Plaintiff's Consolidated Brief in Opposition to Defendant's Motion to Dismiss and in Support of Plaintiff's Cross Motion for Partial Summary Judgment;

2. Plaintiff's Proposed Findings of Uncontroverted Fact (with attached supporting materials), pursuant to RCFC 56(h)(1); and

3. Plaintiff's Appendix, pursuant to RCFC 5.2(a)(1)(D).

WHEREFORE, Plaintiff Continental Airlines, Inc. respectfully asks this Court to grant partial summary judgment in its favor as to liability on all counts in its Amended Complaint.

Respectfully submitted,

s/ Adam P. Feinberg

Adam P. Feinberg
MILLER & CHEVALIER CHARTERED
655 15th Street, N.W.
Washington, D.C. 20005
(202) 626-6087
(202) 626-5801 (Facsimile)

Counsel for Plaintiff

*Of Counsel*:

Robert K. Huffman
MILLER & CHEVALIER CHARTERED
655 15th Street, N.W.
Washington, D.C. 20005
(202) 626-5824
(202) 626-5801 (Facsimile)

Dated: January 16, 2007

Civil Action No. 06-432C
Judge Lawrence S. Margolis

---

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

---

CONTINENTAL AIRLINES, INC.

Plaintiff,

v.

THE UNITED STATES OF AMERICA

Defendant.

---

**PLAINTIFF'S CONSOLIDATED BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AND IN SUPPORT OF PLAINTIFF'S CROSS MOTION FOR PARTIAL SUMMARY JUDGMENT**

---

Adam P. Feinberg
MILLER & CHEVALIER CHARTERED
655 Fifteenth Street, N.W.
Washington, D.C. 20005
(202) 626-6087
(202) 626-5801 (Facsimile)

Counsel for Plaintiff

*Of Counsel*:
Robert K. Huffman
MILLER & CHEVALIER CHARTERED
655 15th Street, N.W.
Washington, D.C. 20005
(202) 626-5824
(202) 626-5801 (Facsimile)

January 16, 2007

# TABLE OF CONTENTS

PAGE

TABLE OF CONTENTS ..... i

TABLE OF AUTHORITIES ..... iii

STATEMENT OF THE QUESTION INVOLVED ..... 1

INTRODUCTION AND SUMMARY ..... 1

STATEMENT OF THE CASE ..... 3

A. The Immigration User Fee ..... 3

B. The APHIS User Fee ..... 5

C. Continental's User Fee Collection Record and Difficulties Collecting From Some Passengers ..... 7

D. The Government Audits ..... 9

ARGUMENT ..... 11

I. LEGAL STANDARDS

A. Statutory and Regulatory Construction Standards ..... 11

B. Summary Judgment Standards ..... 12

II. THE GOVERNMENT HAS ILLEGALLY EXACTED MONIES FROM CONTINENTAL THROUGH THE IMMIGRATION USER FEE AND APHIS USER FEE AUDIT ASSESSMENTS ..... 13

A. Airlines Are Responsible Only for Collecting the Immigration User Fee and for Remitting What They Actually Collect ..... 14

1. Passengers, Not Airlines, Are Responsible for Paying the Immigration User Fee ..... 14

2. Airlines Are Required to Remit Only Those Immigration User Fees They Actually Collect from Passengers ..... 15

B. Airlines Are Responsible Only for Collecting the APHIS User Fee and for Remitting What They Actually Collect ..... 16

1. Passengers, Not Airlines, Are Responsible for Paying the APHIS User Fee ..... 16

2. Airlines Are Required to Remit Only Those APHIS User Fees They Actually Collect from Passengers ..... 18

C. The Immigration and APHIS User Fees are "Collected" Not "Incurred" User Fees ..... 19

D. Continental's Inability to Collect 100% of the User Fees Is Understandable, Was Anticipated by the User Fee Statutes and Regulations, and Provides Additional Evidence that Airlines Are Only Responsible for Remitting Fees They Actually Collect ..... 25

CONCLUSION ..... 27

# TABLE OF AUTHORITIES

## CASES

*Aerolineas Argentinas v. United States*,
77 F.3d 1564 (Fed. Cir. 1996) .......... 5, 13

*Air Tour Acquisition Corp. v. United States*,
781 F. Supp. 669 (D. Haw. 1991) .......... 3, 22, 23

*Allen v. Regents of Univ. Sys. of Ga.*,
304 U.S. 439 (1938) .......... 20

*American Airlines, Inc. v. United States*,
68 Fed. Cl. 723 (2005) .......... *passim*

*Att'y Gen. of Can. v. R.J. Reynolds Tobacco Holdings, Inc.*,
268 F.3d 103 (2d Cir. 2001) .......... 8

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) .......... 13

*Eastport S.S. Corp. v. United States*,
178 Ct. Cl. 599, 605 (1967) .......... 13

*FAG Italia, S.p.A. v. United States*,
291 F.3d 806 (Fed. Cir. 2002) .......... 12

*Iselin v. United States*,
270 U.S. 245, 70 L. Ed. 566, 46 S. Ct. 248, 62 Ct. (1926) .......... 12

*La. Pub. Serv. Comm'n v. FCC*,
476 U.S. 355, 90 L. Ed. 2d 369, 106 S. Ct. 1890 (1986) .......... 12

*Lamie v. United States Tr.*,
540 U.S. 526 (2004) .......... 11

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
475 U.S. 574 (1986) .......... 12

*Pinter v. Dahl*,
486 U.S. 622 (1988) .......... 21

*Smelser v. United States*,
62 Fed. Cl. 768 (2004) .......... 12, 13

*Turks Head Club v. Broderick*,
166 F.2d 877 (1st Cir. 1948)........................................................................................20

*United States Telecom Ass'n v. FCC*,
359 F.3d 554 (D.C. Cir. 2004)......................................................................................12

*W. Va. Univ. Hosps., Inc. v. Casey*,
499 U.S. 83, 113 L. Ed. 2d 68, 111 S. Ct. 1138 (1991)..............................................12

**STATUTES AND REGULATIONS**

8 U.S.C. § 1356 ........................................................................................*passim*

21 U.S.C. § 136a...........................................................................................1, 5, 18 19

26 U.S.C. § 4001 ..................................................................................................20

26 U.S.C. §§ 4041 *et seq* ......................................................................................20

26 U.S.C. §§ 4131 *et seq* ......................................................................................20

26 U.S.C. §§ 4181 *et seq* ......................................................................................21

26 U.S.C. §§ 4251 *et seq* ......................................................................................20

26 U.S.C. § 4261 ..............................................................................................22, 23

26 U.S.C. § 4263 ..................................................................................................21

26 U.S.C. §§ 4271 *et seq* ......................................................................................20

26 U.S.C. § 4291 .........................................................................................21, 22, 23

26 U.S.C. § 6672 ..................................................................................................24

49 U.S.C. § 44902 ..............................................................................................8, 26

49 U.S.C. § 44940 ..................................................................................................22

7 C.F.R. § 354.3.....................................................................................................*passim*

8 C.F.R. § 215.2.........................................................................................................8

8 C.F.R. § 215.3.........................................................................................................8

8 C.F.R. § 273.3.....................................................................................................8, 26

8 C.F.R. §§ 286.1 through 286.9 .......... 4

8 C.F.R. § 286.4 .......... 4, 14, 26

8 C.F.R. § 286.5 .......... 4, 16

8 C.F.R. § 286.7 .......... 5, 24

8 C.F.R. § 1212.1 .......... 5

**MISCELLANEOUS**

53 Fed. Reg. 5756 (Feb. 26, 1988) .......... 26

56 Fed. Reg. 8148 (Feb. 27, 1991) .......... 27

56 Fed. Reg. 14837 (Apr. 12, 1991) .......... 6, 7

57 Fed. Reg. 755 (Jan. 9, 1992) .......... 17

62 Fed. Reg. 39747 (July 24, 1997) .......... 18, 23

Rev. Rul. 59-295, 1959-2 C.B. 420 .......... 3, 20

Rev. Proc. 67-6, 1967-1 C.B. 576 .......... 20

Rev. Rul. 69-227, 1969-1 C.B. 315 .......... 20

P.L.R. 8426003 (Mar. 9, 1984) .......... 20

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| CONTINENTAL AIRLINES, INC. | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action No. 06-432C |
| | ) | Judge Lawrence S. Margolis |
| THE UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

**PLAINTIFF'S CONSOLIDATED BRIEF**
**IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**
**AND**
**IN SUPPORT OF PLAINTIFF'S**
**CROSS MOTION FOR PARTIAL SUMMARY JUDGMENT**

Plaintiff Continental Airlines, Inc. ("Continental") respectfully opposes Defendant's Motion to Dismiss (Doc. No. 14), and, pursuant to Rule 56 of the Rules of the United States Court of Federal Claims ("RCFC"), has moved for partial summary judgment as to liability on all counts in its Complaint. In support of its motion for summary judgment, Continental also submits the accompanying Proposed Findings of Uncontroverted Fact ("PFUF") pursuant to RCFC 56(h)(1) and Appendix pursuant to RCFC 5.2(a)(1)(D).

## STATEMENT OF THE QUESTION INVOLVED

This case presents only one issue: can the Government hold air carriers liable when they, for various reasons, do not collect user fees from passengers pursuant to 8 U.S.C. § 1356 and 21 U.S.C. § 136a, and those statutes' implementing regulations.

## INTRODUCTION AND SUMMARY

This is not a case where payment of the user fees was fixed on the airlines, as the Government suggests. Both Congress and the relevant agencies were unambiguous in placing

sole responsibility for paying the user fees with the passengers, not with the airlines. Airlines are merely collectors of the fees. Equally important, the relevant statutes and regulations also make clear that airlines are required to remit only those fees they actually collect from passengers. The unambiguous statutory and regulatory provisions definitively resolve the pending motions in Continental's favor.

Further, the Government's own audits confirm that Continental has been extremely diligent in its fee collection and remittance efforts. Continental's efforts have resulted in impressive and consistent success rates usually exceeding 99%. It is not for lack of effort on Continental's part that a tiny portion of the fees go uncollected. Instead, it is due primarily to the fact that some passengers from South and Central America claim an immunity from U.S. user fees under the laws of their countries. These passengers refuse to pay user fees when purchasing a ticket in their home country and benefit from the lack of legal instruments available to the Government or the airlines to compel payment of the fees upon departure from the United States.

The Government has only one argument that Continental should have to pay these (and all other) uncollected user fees. Essentially, the Government claims that a requirement to collect and remit user fees is tantamount to a requirement to independently pay every user fee for every passenger, regardless of whether such fee was actually collected. *See* Gov't Br. at 9-16. For example, and despite there being no such language in the statutes or regulations, the Government claims that the "obligation to remit all immigration user fees that are required to be collected . . . is the substantive obligation imposed upon airlines by the statutes and regulations." Gov't Br. at 12; *see also id.* at 13.

The Government's argument is foreclosed by every possible source. As stated above, it is foreclosed by the plain language of the statutes and regulations in question, which require

airlines to pay to the Government only those user fees that have actually been collected from passengers. It is foreclosed by Judge Braden's ruling in a nearly identical case regarding the same statutes and user fees. *American Airlines, Inc. v. United States*, 68 Fed. Cl. 723 (2005). It is foreclosed by every other case that has analyzed whether a requirement to collect implies a requirement to pay even when there is no collection. *E.g., Air Tour Acquisition Corp. v. United States*, 781 F. Supp. 669 (D. Haw. 1991). It is foreclosed by the historical concept of "collected" taxes and user fees, which operate in exactly the same manner (and contain nearly identical statutory language) as the user fees in this case. Under a "collected" tax or user fee, "the person collecting the charge is not the taxpayer and, even if he fails to collect the tax, willfully or otherwise, the tax as such cannot be asserted against him." Rev. Rul. 59-295, 1959-2 C.B. 420, 421 (App. 129). On the other hand, "incurred" taxes or fees (for which the collector is always liable) invariably use unmistakable language placing liability on the collector – language that is entirely absent from the statutes and regulations in this case. The Government's argument is also foreclosed by various other aspects of the statute and regulations that make clear that airlines are not liable for uncollected user fees. For these reasons, this Court should deny the Government's motion to dismiss and grant Continental's motion for partial summary judgment as to liability.

## STATEMENT OF THE CASE

### A. The Immigration User Fee

Congress passed the 1986 Immigration User Fee Statute, 8 U.S.C. § 1356 ("the Immigration User Fee Statute"), to fund expenses relating to immigration inspection services provided by the Government. The Immigration User Fee Statute established a fee (the "Immigration User Fee") to be collected from passengers seeking transportation by commercial aircraft into the United States. 8 U.S.C. § 1356(d). Under the statute, the fee is to be "collect[ed] from [each] individual" passenger. *Id.* § 1356(f). Commercial airlines are to

"collect" the fee from a passenger "at the time the document or ticket is issued," and to "identify on that document or ticket the fee charged." *Id.* § 1356(f)(1). If not collected at the time the ticket was issued, "the person providing transportation to such passenger shall collect such fee at the time such passenger departs from the United States." *Id.* § 1356(f)(2)(B). An airline "who collects fees under paragraph (1) or (2) shall remit those fees to the Attorney General." *Id.* § 1356(f)(3). The statute also authorizes the issuance of regulations regarding the collection and remittance of the fees by the airlines. *Id.*

The regulations – found at 8 C.F.R. §§ 286.1-286.9 (the "Immigration User Fee Regulations") – direct airlines "to collect the fees . . . from all passengers transported to the United States who are not excepted under § 286.3 of this part." 8 C.F.R. § 286.4(a). The regulations reiterate the Immigration User Fee Statute's direction that airlines collect the fee when the tickets or travel documents are issued and mark such tickets or documents "to indicate that the required fee has been collected." *Id.* § 286.4(a) & (b). The regulations also mirror the statute when they state that: "It is the responsibility of the carrier transporting a passenger from the United States to collect the fee upon departure, if . . . the tickets or documents for transportation of the passenger do not reflect collection of the fee at the time of issuance." *Id.* § 286.4(c). This subsection of the regulations continues:

> If at the time of departure such a passenger refuses to pay the fee, the carrier shall record the full name, complete address, nationality, passport number, and alien file number, if any, of the passenger and immediately notify the Associate Commissioner, Finance.

*Id.* The Immigration User Fee Regulations state that the "carrier whose ticket stock or document for transportation reflects collection of the fee is responsible for remittance of the fee to the" Government. *Id.* § 286.5(a).

In addition, the Immigration User Fee Regulations include a "Penalties" provision:



672098.1

> Failure of any air or sea carrier to comply with the provisions of [the Immigration User Fee Statute] and this part shall subject it to one or more of the following:
>
> (a) Termination of existing agreements under the provisions of section 238 of the Act; and
> (b) Suspension of enroute inspections or preinspections.

*Id.* § 286.7.[1]

The Immigration User Fee is currently $7 per passenger, and has been since 2002. 8 U.S.C. § 1356(d). For all other times relevant to this case, the fee was $6 per passenger.

**B. The APHIS User Fee**

Agricultural quarantine and inspection ("AQI") services for arriving international passengers are funded (at least in part) through fees authorized by section 2509 of the Food Agriculture, Conservation and Trade Act of 1990, as amended by the Omnibus Budget Reconciliation Act of 1990, codified at 21 U.S.C. § 136a (the "APHIS User Fee Statute"). The APHIS User Fee Statute permits the Secretary of Agriculture to prescribe and collect fees sufficient to cover the cost of providing AQI services in connection with the arrival of international air passenger into the customs territory of the United States. 21 U.S.C. § 136a(a). "Fees collected under this subsection by any person on behalf of the Secretary are held in trust for the United States and shall be remitted to the Secretary in such manner and at such times as the Secretary may prescribe." *Id.* § 136a(a)(3).

[1] The agreements referred to in 8 C.F.R. § 286.7(a) are agreements entered into between a carrier and the Government that permit the carrier to transport an alien without a visa through the United States to another foreign destination. *See* 8 C.F.R. § 1212.1(f)(1). This program is referred to as "transit without visa" or "TWOV" and any "airline that wishes to participate in the TWOV program must sign INS Form 1-426, entitled Immediate and Continuous Transit Agreement, which states the carrier's rights and obligations with respect to transit passengers." *Aerolineas Argentinas v. United States*, 77 F.3d 1564, 1569 (Fed. Cir. 1996). The enroute inspections or preinspections referred to in 8 C.F.R. § 286.7(b) are immigration inspections of passengers prior to arrival in the United States. This procedure benefits airlines by enabling its passengers to make connecting flights without having to wait to go through the immigration inspection process after landing.

Regulations were promulgated by the Secretary of Agriculture on April 12, 1991, and codified at 7 C.F.R. § 354.3 (the "APHIS User Fee Regulations") that prescribe various fees ("APHIS User Fees") to cover the costs of various AQI services. 56 Fed. Reg. 14837, 14844 (Apr. 12, 1991). Only the fee for international airline passengers now codified at 7 C.F.R. § 354.3(f) is at issue in this case. That subsection of the regulation requires that, subject to certain exceptions, "each passenger aboard a commercial aircraft who is subject to inspection . . . upon arrival from a place outside the customs territory of the United States, must pay an [APHIS] user fee." 7 C.F.R. § 354.3(f)(1).[2]

The regulations also provide that "[a]ny person who issues tickets or travel documents . . . is responsible for collecting the [APHIS] user fee from all passengers transported into the customs territory of the United States to whom the [APHIS] user fee applies."[3] *Id.* § 354.3(f)(4)(i). Any person who collects the [APHIS] User Fee from a passenger should mark the passenger's ticket or travel documents "to indicate that the required APHIS user fee has been collected from the passenger." *Id.* § 354.3(f)(4)(A). Similar to the Immigration User Fee collection process:

> If the [APHIS] user fee applies to a passenger departing from the United States and if the passenger's tickets or travel documents . . . do not reflect collection of the [APHIS] user fee at the time of issuance, then the carrier transporting the passenger from the United States must collect the [APHIS] user fee upon departure.

---

[2] We refer to these fees as "APHIS User Fees" because that is how they used to be referred to in the regulations, presumably because the fees are to be remitted to the U.S. Department of Agriculture's Animal and Plant Health Inspection Service ("APHIS"), which was responsible for carrying out AQI services when the regulations were promulgated. Instead of "APHIS User Fees," the Government sometimes uses the term "AQI User Fees," as currently used in the regulations. *E.g.*, Gov't Br. at 13.

[3] This international airline passenger fee was originally codified in at 7 C.F.R. § 354.3(e). *See* 56 Fed. Reg. 14837, 14845 (Apr. 12, 1991). Unless stated otherwise, by "APHIS User Fee" we mean the international airline passenger fee referred to in current 7 C.F.R. § 354.3(f), as opposed to all of the user fees prescribed by 7 C.F.R. § 354.3.

*Id.* § 354.3(f)(4)(B). "The carrier whose ticket stock or travel document reflects collection of the [APHIS] user fee must remit the fee to . . . APHIS." *Id.* § 354.3(f)(5)(i).

Currently, and since October 1, 2005, the fee is $5 per passenger. 7 C.F.R. § 354.3(f). From January 1, 2005, until September 30, 2005, it was $4.95. *Id.* From October 1, 2001, until December 31, 2004, it was $3.10 per passenger. From January 1, 1993, until September 30, 2001, the fee ranged from $1.45 to $3.10 per passenger. When originally created in 1991, the fee was $2.00 per passenger. 56 Fed. Reg. 14837, 14845 (Apr. 12, 1991).

**C. Continental's User Fee Collection Record and Difficulties Collecting From Some Passengers**

During all time periods relevant to this lawsuit, Continental had effective policies, procedures, and systems designed to collect Immigration User Fees and APHIS User Fees from eligible passengers. PFUF ¶ 10. The Government's audits reveal that Continental has an impressive record of collecting and remitting both the Immigration User Fee and the APHIS User Fee from passengers. According to the audits, Continental's overall collection and remittance rates were:

| Time Period | Immigration User Fee | APHIS User Fee |
|---|---|---|
| 4/1/99-12/31/00 | 99.24% | N/A |
| 7/1/99-12/31/01 | N/A | 97.19% |
| 1/1/01-12/31/01 | 98.75% | N/A |
| 1/l/02-12/31/03 | 99.69% | 99.61% |
| 1/l/04-9/30/05 | 99.68% | 99.68% |

*Id.* ¶¶ 20, 25, 30, 42, 46, 52, 65.

Despite these excellent collection rates, Continental has experienced difficulties in collecting the fees from some international passengers, especially those whose flights originate from certain Central and South American countries. *Id.* ¶ 11. Some passengers and travel agents from these countries claim that either their country's laws prohibit, or its sovereignty would be

injured, if the United States or its agents collected any fees or taxes from their country's citizens.[4] *Id.* ¶ 13. Indeed, the Government acknowledged in one of its audit reports regarding another airline that "those countries prohibit ticket agents from collecting user fees/taxes for foreign countries at the time of ticket sale." *Id.* ¶ 15. This problem is also recognized within the airline industry. *Id.* ¶ 14. For this reason, some passengers do not pay their user fees. *Id.* ¶¶ 16-17.

Continental has no way to force such a passenger to pay the fees because it does not have the authority to refuse to board a ticketed passenger on the ground that the user fees have not been paid. A carrier may refuse to board "a passenger who does not consent to a search" or who "the carrier decides is, or might be, inimical to safety" (49 U.S.C. § 44902(a)(1) & (b)), or a "passenger determined to be improperly documented" (8 C.F.R. § 273.3(a)(2)), but airlines have *no* authority to refuse to board a passenger because he or she has failed to pay the user fees. In fact, even the Government is powerless to stop passengers from boarding a plane or leaving the country on the ground that they have not paid their user fees. Congress has granted Government agents the power to prevent a passenger from leaving the United States in certain situations, but not for failure to pay a user fee. *See, e.g.*, 8 C.F.R. §§ 215.2, 215.3. Thus, despite the facts that *passengers* are ultimately responsible for paying the fee and such payment is beyond Continental's control, the Government is attempting to make Continental secondarily liable for payment.

---

[4] Although not directly relevant here, there is legal support for the assertions of these passengers and travel agents under the so-called "revenue rule." *Att'y Gen. of Can. v. R.J. Reynolds Tobacco Holdings, Inc.*, 268 F.3d 103, 109 (2d Cir. 2001). This "longstanding common law doctrine provid[es] that courts of one sovereign will not enforce . . . tax claims of other sovereigns." *Id.* Under this rule, some foreigners believe they are immune from any U.S. tax or fee because there is no way to enforce collection in their home countries.

### D. The Government Audits

During the times relevant to this case, the Government has audited Continental's compliance with the two fee statutes on approximately an annual or biannual basis. PFUF ¶ 2. During these audits, the Government tested for Continental's collection, recording, reporting, and remittance compliance. *Id.* ¶ 4.

To test Continental's collection compliance, the Government reviewed all of the tickets from a sampling of Continental's flights during the relevant period and checked each ticket for evidence that the user fees had been collected. *Id.* ¶ 5. A ticket lacking such evidence (and for which Continental could not produce any other evidence that the fees had been collected or that the passenger was exempt from the fees) was deemed an "error" by the Government auditors. *Id.* Many of these "errors" represented instances in which Continental did not collect the fee. *Id.* ¶ 6. The Government then calculated an "error rate" by dividing the number of "errors" by the total number of qualifying tickets in the sample. *Id.* ¶ 7. For each audit, the Government auditors multiplied the "error rate" by the total dollar amount of applicable Immigration User Fees or APHIS User Fees that Continental had remitted during the relevant period to calculate a liability against Continental. *Id.* ¶ 8. Accordingly, each of these assessments included amounts representing uncollected user fees. That is, "errors" upon which the assessments were based included instances where Continental did not collect the appropriate user fee from the passenger. Continental has paid each of the assessments from each of these audits. *Id.* ¶¶ 9, 22, 27, 32, 43, 48, 54, 66.

For example, in one audit of Continental's Immigration User Fee collections, the Government sampled the tickets from ten randomly selected flights with a total of 1,056 eligible passengers. *Id.* ¶ 20. The Government determined that of these 1,056 tickets, 8 were "errors," which translates to an error rate of 0.76 percent. *Id.* During the relevant period for this audit,

Continental collected and remitted $55,542,318 in Immigration User Fees. *Id.* ¶ 19. The Government assessed a liability against Continental by applying the 0.76 percent "error rate" to all of these collected fees, resulting in an assessment of $420,784. *Id.* ¶ 21. Continental paid that assessment. *Id.* ¶ 22.

After the *American Airlines* decision, holding that airlines were not liable for uncollected Immigration and APHIS user fees, the Government conducted an additional audit relating to both user fees (and a third user fee not at issue in this case). *Id.* ¶¶ 33-43, 56-72. This audit was conducted on essentially the same basis as the prior audits, except that the Government auditors placed each "error" into one of two categories. The first category included instances in which Continental collected the user fee, but failed to remit it to the proper agency. *Id.* ¶¶ 37, 60. Continental does not contest liability for these user fees, and they are not at issue in this case. The second category include instances "where Continental did not prove collection and remittance of the" user fee. *Id.* ¶¶ 38, 61. During the audit, Continental informed the Government auditors of that these "errors" represent instances where Continental did not collect a user fee from the passenger. *Id.* ¶¶ 39, 62. Nonetheless, the Government auditors claim in the audit report that they did not conduct any testing to verify Continental's claim, but instead simply assessed a liability against Continental for these "errors," despite knowing that if Continental's claim was correct there would be no liability under this Court's holding in *American Airlines*. *Id.* ¶¶ 40-42, 63-65. Continental paid this assessment under protest. *Id.* ¶¶ 43, 66.

In addition, in this most recent audit, the Government auditors found that "Continental failed to collect the correct amount for" the APHIS User Fee in connection with 3,111 passengers on flights by one of the charter companies that Continental contracts with. *Id.* ¶ 67.

Specifically, although the amount of the APHIS User Fee had changed from $3.10 to $4.95 during the audit period, the Government auditors found that only $3.10 was collected from each of these passengers. *Id.* ¶ 68. For each of the 3,111 passengers, the Government assessed an additional liability against Continental for the $1.85 difference between the $4.95 APHIS User Fee and the $3.10 actually collected. *Id.* ¶¶ 69-70. Continental also paid this assessment for those uncollected amounts under protest. *Id.* ¶¶ 71-72.

## ARGUMENT

## I. LEGAL STANDARDS

### A. Statutory and Regulatory Construction Standards

This case presents a straight forward issue of statutory and regulatory construction: do the statutes and regulations in question establish liability for airlines whenever they do not or cannot collect user fees from passengers. The Government is correct that Continental does not challenge the validity of the user fee regulations. Gov't Br. at 8. In addition, Continental generally agrees with the Government's description of the proper statutory and regulatory interpretation standards the Court should use. *See id.* at 7-8. However, several additional points are worth mentioning. First, the regulations are consistent with, and in many cases simply duplicative of, the statutes. They provide additional support for Continental's position, as explained below.

Second, when a statute is clear on its face, a court need not and should not look beyond the face of the statute. *Lamie v. United States Tr.*, 540 U.S. 526, 534 (2004). That is the case here because both statutes clearly state that an airline is responsible for remitting only fees it actually collects, as opposed to fees that were not collected.

Third, under our Constitutional system, agencies can exercise only those powers granted them by Congress. Silence in a statute or regulation on a particular matter normally means an agency has no authority to act. As the Federal Circuit recently explained:

> . . . no case of which we are aware holds that an administrative agency has authority to fill gaps in a statute that exist because of the absence of statutory authority. To the contrary, the Supreme Court has noted that "an agency literally has no power to act . . . unless and until Congress confers power upon it," *La. Pub. Serv. Comm'n v. FCC*, 476 U.S. 355, 374, 90 L. Ed. 2d 369, 106 S. Ct. 1890 (1986), and has cautioned that "'to supply omissions [within a statute] transcends the judicial function.'" *W. Va. Univ. Hosps., Inc. v. Casey*, 499 U.S. 83, 101, 113 L. Ed. 2d 68, 111 S. Ct. 1138 (1991) (quoting *Iselin v. United States*, 270 U.S. 245, 250-51, 70 L. Ed. 566, 46 S. Ct. 248, 62 Ct. Cl. 755 (1926)).
>
> It is indeed well established that the absence of a statutory prohibition cannot be the source of agency authority.

*FAG Italia, S.p.A. v. United States*, 291 F.3d 806, 816 (Fed. Cir. 2002).

In addition, statutory silence "doesn't create a statutory ambiguity of the sort that triggers *Chevron* deference." *United States Telecom Ass'n v. FCC*, 359 F.3d 554, 566 (D.C. Cir. 2004) (citations omitted). Because the statutes and regulations are clear on their face and because they do not expressly give the agencies the authority to hold airlines liable, no *Chevron* deference is appropriate here.

### B. Summary Judgment Standards

Summary judgment pursuant to Rule 56(c) of the Rules of the Court of Federal Claims is appropriate "when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." *Smelser v. United States*, 62 Fed. Cl. 768, 771 (2004). In ruling on a motion for summary judgment, a court should determine whether a genuine issue of material fact exists that makes a trial appropriate. *Id.* Any inferences drawn from the facts "must be viewed in the light most favorable to the party opposing the motion." *Id.* (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). The moving party

bears the initial burden of demonstrating "the absence of genuine issues of material fact." *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). Once established, the burden shifts to the non-movant to present sufficient evidence demonstrating a dispute concerning material facts necessitating a trial. *Id.* "[M]ere denials, conclusory statements, or evidence that is merely colorable or not significantly probative will not defeat summary judgment." *Id.*

Summary judgment in Continental's favor can be granted on liability as a matter of statutory construction. In addition, the facts proffered by Continental in connection with this motion come largely from the Government's own audit reports. In that sense, the record is fixed and not subject to dispute. For these reasons, this case is particularly well suited for adjudication by summary judgment – at least as to the question of liability.

## II. THE GOVERNMENT HAS ILLEGALLY EXACTED MONIES FROM CONTINENTAL THROUGH THE IMMIGRATION USER FEE AND APHIS USER FEE AUDIT ASSESSMENTS

Jurisdiction in this Court and the theory of illegal exaction are both supported by the Federal Circuit's decision in *Aerolineas Argentinas v. United States*, 77 F.3d 1564 (Fed. Cir. 1996), another case of Government overreaching in connection with the Immigration User Fee Statute. In that case, the former Immigration and Naturalization Service ("INS") continued to make airlines pay for services that were supposed to be covered by the Immigration User Fee. The court held that the INS, "not the airlines, is required to bear the expense" at issue and that the airlines "are entitled to recover the sums for which payment was illegally exacted by the government." *Id.* at 1568.

> [A]n illegal exaction claim may be maintained when "the plaintiff has paid money over to the Government, directly or in effect, and seeks return of all or part of that sum" that "was improperly paid, exacted, or taken from the claimant in contravention of the Constitution, a statute, or a regulation."

*Id.* at 1572-73 (quoting *Eastport S.S. Corp. v. United States*, 178 Ct. Cl. 599, 605 (1967)).

Continental establishes its illegal exaction claim in the sections below. Sections A and B discuss the relevant user fee statutory and regulatory provisions, which unambiguously make airlines responsible for collecting – not paying – the user fees, and for remitting only what they collect from passengers. Section C addresses the case law and historical context for the so-called "collected" taxes and user fees to further demonstrate that airlines are not liable for uncollected fees. Finally, Section D demonstrates that an airline's inability to collect 100% of the user fees was anticipated by the Government when it enacted the statutes and regulations in question, providing additional evidence that Continental should not be held responsible for fees it did not actually collect.

### A. Airlines Are Responsible Only for Collecting the Immigration User Fee and for Remitting What They Actually Collect

The Immigration User Fee Statute and Regulations make clear that airlines are responsible only for remitting user fees actually collected. Passengers, not airlines, are responsible for paying the user fees; airlines are required to remit only what they actually collect.

#### 1. Passengers, Not Airlines, Are Responsible for Paying the Immigration User Fee

The Immigration User Fee Statute and Regulations are replete with unambiguous language indicating that passengers, not airlines, are responsible for paying the Immigration User Fee, and that airlines are merely the collectors of the fees:

- For each individual passenger, the airlines "*collect from that individual* the fee charged under subsection (d) at the time the document or ticket is issued." 8 U.S.C. § 1356(f)(1)(A) (emphasis added).
- In the event the fee is not collected at that time, airlines "collect such fee at the time the passenger departs from the United States." *Id.* § 1356(f)(2)(B).

- Airlines that "issue tickets or documents for transportation" "*collect the fees . . . from all passengers* transported to the United States who are not excepted under § 286.3 of this part." 8 C.F.R. § 286.4(a) (emphasis added).
- "Tickets and documents for transportation shall be marked by *the collector* of the fee to indicate the required fee has been collected." *Id.* § 286.4(b) (emphasis added).
- "*It is the responsibility of the carrier* transporting a passenger from the United States *to collect the fee* upon departure, if . . . [the] tickets or documents for transportation of the passenger do not reflect collection of the fee at the time of issuance." *Id.* § 286.4(c).

The Immigration User Fee Statute and Regulations thus make clear that *passengers*, not airlines, are responsible for paying the fee. Airlines are merely collectors of the fee.

### 2. Airlines Are Required to Remit Only Those Immigration User Fees They Actually Collect from Passengers

The Immigration User Fee Statute and Regulations are also clear that an airline is responsible for remitting only those user fees it actually collects. An airline "who *collects fees* . . . shall remit *those fees* to the Attorney General." 8 U.S.C. § 1356(f)(3) (emphasis added). In fact, Judge Braden has already addressed this issue and correctly concluded that "[n]o language therein imposes liability on commercial airlines to pay user fees that are not collected" and that the "text permits only one reading: collected fees must be remitted to the Government." *American Airlines, Inc. v. United States*, 68 Fed. Cl. 723, 731 (2005).

Judge Braden also correctly found that "the implementing regulations are consistent with the statute" and demonstrate that only collected fees must be remitted by the airlines. *Id.* The regulations state that the "carrier whose ticket stock or document for transportation reflects collection of the fee is responsible for remittance of the fee to the" Government. 8 C.F.R.

§ 286.5(a). In other words, if an airline did not collect the fee and therefore did not mark the ticket to reflect collection, that airline is not required to remit any fee. In addition, when addressing the timing of remittances, the regulations state that the fees should be remitted "for receipt no later than 31 days after the close of the calendar quarter in which the fees are collected." *Id.* § 286.5(b)(1). Again, the implication is that if a fee is not collected, it need not be remitted by the airline. The regulations' requirement that airlines submit a "statement" along with their remittance of fees also implies that airlines need only remit those fees that they actually collect. Specifically, the regulations require an airline's "statement" to set forth the "[t]otal amount collected and remitted." *Id.* § 286.5(c)(5). The use of the singular "amount" instead of the plural "amounts" suggests that the amount collected and the amount remitted are one and the same.

For these reasons, Judge Braden held that "[t]he Government [d]oes [n]ot [h]ave [a]uthority [t]o [i]mpose [l]iability" on airlines "[f]or [t]he [p]ayment [o]f [a]ny [u]ncollected [i]mmigration [u]ser [f]ees." *American Airlines*, 68 Fed. Cl. at 731. As the identical issue is at hand in this case, the same result should apply.

### B. Airlines Are Responsible Only for Collecting the APHIS User Fee and for Remitting What They Actually Collect

#### 1. Passengers, Not Airlines, Are Responsible for Paying the APHIS User Fee

Like the Immigration User Fee Statute and Regulations, the APHIS User Fee Statute and Regulations make clear that responsibility for paying the fee lies with the passenger, not the airline. The airline is merely the collector of the fee. Indeed, the case is even clearer for the APHIS User Fee. The APHIS User Fee Regulations are unmistakable: "*each passenger* aboard a commercial aircraft who is subject to inspection . . . upon arrival from a place outside the customs territory of the United States, *must pay an [APHIS] user fee*." 7 C.F.R.§ 354.3(f)(1)



672098.1

(emphasis added). The regulations also provide that "[a]ny person who issues tickets or travel documents . . . is responsible for collecting the [APHIS] user fee *from all passengers* transported into the customs territory of the United States to whom the [APHIS] user fee applies." *Id.* § 354.3(f)(4)(i) (emphasis added). Similarly, the regulations state that "[t]ickets or travel documents must be marked by the person who collects the [APHIS] user fee to indicate that the required [APHIS] user fee has been *collected from the passenger*." *Id.* § 354.3(f)(4)(i)(A) (emphasis added).

Any possible doubt about whether passengers or airlines are responsible for paying the APHIS User Fee was removed on January 9, 1992, when APHIS amended the APHIS User Fee Regulations to add a separate fee (now codified at 7 C.F.R. § 354.3(e)) for the inspection of the aircraft that was to be paid by the airline. APHIS received a number of comments complaining that the new aircraft fee and the passenger fee amounted to double-billing. APHIS disagreed and claimed that the inspection of the aircraft itself and the inspection of the passengers were two discreet tasks meriting two discreet fees. More importantly to this case, APHIS pointed out that:

> It is also relevant that *passengers themselves pay the APHIS user fees for passengers. Airlines are not responsible for paying passenger fees*, though they collect the fee along with the price of the ticket, taxes, and any other charges that apply, and then remit the APHIS user fee to APHIS.

57 Fed. Reg. 755, 764 (Jan. 9, 1992) (emphasis added).

APHIS' view that passengers, and not the airlines, were responsible for paying the APHIS passenger user fees was again made clear in 1997:

> It seems appropriate that *passengers themselves pay the APHIS user fees* for passengers. Although airlines collect the APHIS passenger user fee along with the price of the ticket and then remit the APHIS user fee to APHIS, the airlines could be charged a user fee that would cover the entire cost of both aircraft and passenger inspections. If we decide to consider such a change, we will publish a proposal in the Federal Register for public comment.

62 Fed. Reg. 39747, 39749 (July 24, 1997) (emphasis added). APHIS has never proposed such a change. Thus, it cannot be disputed that passengers, not airlines, are responsible for paying the APHIS User Fee.

### 2. Airlines Are Required to Remit Only Those APHIS User Fees They Actually Collect from Passengers

The APHIS User Fee Statute and Regulations are also clear that airlines are required to remit only those fees they actually collect. The statute provides: "Fees *collected* under this subsection by any person on behalf of the Secretary are held in trust for the United States and *shall be remitted* to the Secretary . . . " 21 U.S.C. § 136a(a)(3) (emphasis added).

The regulations require that "[t]he carrier whose ticket stock or travel document reflects collection of the [APHIS] user fee must remit the fee to . . . APHIS." 7 C.F.R. § 354.3(f)(5)(i). As with the Immigration User Fee, the implication is that if an airline did not collect the fee and therefore did not mark the ticket to reflect collection, that airline is not required to remit the fee. And, like the Immigration User Fees, APHIS "user fees must be remitted . . . for receipt no later than 31 days after the close of the calendar quarter in which the APHIS user fees were collected." *Id.* § 354.3(f)(5)(ii). The APHIS User Fee Regulations also track the Immigration User Fees Regulations in requiring a "statement" that includes the "[a]mount collected and remitted." *Id.* § 354.3(f)(5)(iii). Again, the use of the singular "amount" instead of the plural "amounts" means that the amount collected and the amount remitted are one and the same.

In addition, the APHIS User Fee Statute and Regulations' creation of a trust fund for collected user fees indicates that airlines are required to remit only those fees they actually collect and are not liable for fees they do not collect. The obvious purpose of this provision is to protect the funds owed to the Government by placing them in a trust. Yet, the trust includes only APHIS "user fees collected from international passengers." *Id.* § 354.3(f)(4)(C); *see also* 21

U.S.C. § 136a(a)(3) ("Fees collected under this subsection by any person on behalf of the Secretary are held in trust for the United States . . . .").

For these reasons, Judge Braden correctly held that "the plain meaning of the AQI [APHIS] User Fee Regulations is inopposite to the interpretation that the Government now seeks to advance" and that "liability to pay this fee is imposed on the passenger, not upon the commercial airlines that are required only to collect and to remit any fees collected." *American Airlines*, 68 Fed. Cl. at 732.

### C. The Immigration and APHIS User Fees Are "Collected" Not "Incurred" User Fees

The historical distinction between a "collected" tax or user fee and an "incurred" tax or user fee further supports Continental's position. For the better part of a century the United States has imposed "collected" taxes and user fees to be paid by a purchaser of a good or service, and collected by the seller. The hallmark of a "collected" tax or user fee is that the collector is just that – a collector – and will not be liable for the tax if he or she fails to collect. In other words, a "collected" tax can only be imposed on the person required to pay the taxes, and not on the collector. The collector may be liable for penalties, but only if they are separately imposed by the law. Penalties, if any, are typically applied only where the failure to collect was willful. For example, a 1959 Revenue Ruling holds:

> The admissions tax is one of the so-called "collected" taxes. That is, the person paying the admissions charges is the taxpayer, whereas the person collecting the charge is responsible under the law for collecting and returning the tax to the Government. *Thus, the person collecting the charge is not the taxpayer and, even if he fails to collect the tax, willfully or otherwise, the tax as such cannot be asserted against him.* In the case of a willful failure to collect or pay over the tax, the law provides sanctions in the form of penalties.

Rev. Rul. 59-295, 1959-2 C.B. 420, 421[5] (App. 129) (emphasis added); *see also Allen v. Regents of Univ. Sys. of Ga.*, 304 U.S. 439, 447 (1938) (the Government's position was that the admissions tax statute "imposes no liability for the tax upon the vendor of the tickets who fails to collect, although it does impose a penalty for wilful failure to collect the tax"); *Turks Head Club v. Broderick*, 166 F.2d 877, 881 (1st Cir. 1948) ("the club is not liable for the tax if a member refuses to pay it or if for any other reason the tax cannot be collected from such member"). In the past, "collected" taxes have included taxes on admissions, club dues and initiation fees, and leases of safe deposit boxes. "Collected" taxes are also widely used today.[6]

As opposed to a "collected" tax, an "incurred" tax is one for which the person "collecting the payments for [goods or services] is the taxpayer" and where "[t]herefore, the proprietor remains liable for the tax without regard to whether he passes it on to his patrons." Rev. Rul. 59-295, 1959-2 C.B. 420, 421 (App. 129).

The distinction between a "collected" and an "incurred" tax or user fees is useful in analyzing this case. Continental's position is that the Immigration and APHIS User Fees are "collected" user fees (in which case there is no liability on the airline collectors). The

---

[5] Revenue Ruling 59-295 was declared obsolete in 1969 due to the repeal of the admissions tax. *See* Rev. Rul. 69-227, 1969-1 C.B. 315, 318 (App. 135). However, the Internal Revenue Service has indicated that a declaration of obsolescence of a Revenue Ruling "does not necessarily mean that [its] conclusion or the underlying rationale has no current applicability." Rev. Proc. 67-6, 1967-1 C.B. 576, 578. Consistent with this view, the Government has continued to cite Revenue Ruling 59-295. For example, a private letter ruling from 1984 cites Revenue Ruling 59-295 for the proposition that for a "collected" tax, "the person paying the admissions charge is the taxpayer" and "[t]he person collecting the charge is not the taxpayer and if he fails to collect the tax, willfully or otherwise, the tax cannot be asserted against him." P.L.R. 8426003 (Mar. 9, 1984) (App. 138).

[6] *See, e.g.*, 26 U.S.C. §§ 4271 *et seq.* (with respect to air carriers engaged in transport of cargo within the United States for the cargo excise tax); 26 U.S.C. §§ 4181 *et seq.* (with respect to sellers of firearms required to collect the excise tax on the sale of firearms); 26 U.S.C. § 4001 (with respect to sellers of luxury passenger automobiles for the excise tax); 26 U.S.C. §§ 4131 *et seq.* (with respect to sellers of vaccines for the excise tax); 26 U.S.C. §§ 4041 *et seq.* (with respect to sellers of fuels for the excise tax); 26 U.S.C. §§ 4251 *et seq.* (with respect to telephone carriers for the communications excise tax).

Government's position is that they are "incurred" user fees (in which case there is liability on the airlines). For many reasons, there can be no doubt that the Immigration and APHIS User Fees are "collected" user fees.

First, whenever Congress has imposed an "incurred" tax, making the collector of the tax liable, it has unambiguously stated that the collector of the tax will be liable whether or not they actually collect. For example, Section 4261 of the Internal Revenue Code, 26 U.S.C. (the "I.R.C."), imposes a tax on the amount paid for transportation by air. This tax "shall be paid by the person making the payment subject to the tax," *i.e.*, the passenger paying for a ticket. I.R.C. § 4261(d). However, I.R.C. § 4291 requires that an airline collect the tax from any passenger paying for transportation subject to the tax. As a result of statutory amendments in 1997, if the tax "is not paid at the time payment for transportation is made" and not otherwise paid by the passenger, then the "tax shall be paid by the carrier providing the initial segment." I.R.C. § 4263(c). Thus, as of 1997, Congress expressly made air carriers liable for air transportation excise taxes they were supposed to, but did not, collect from passengers. Congress could have done the same in the Immigration and APHIS User Fee Statutes, but chose not to. *See Pinter v. Dahl*, 486 U.S. 622, 650 (1988) (not expanding liability beyond what was expressed in a statute, in part, because "[w]hen Congress wished to create such liability, it had little trouble doing so") (citation omitted).

Other "incurred" taxes and user fees are equally clear in imposing liability on the collector. The statute creating the $2.50 passenger security fee instituted after the events of September 11, 2001, calls for the fee to be collected from the passenger by the carrier, but unmistakably states that if the fee "is not collected from the passenger, the amount of the fee



672098.1

shall be paid by the carrier." 49 U.S.C. § 44940(d)(2). Again, such language is notably absent from the Immigration and APHIS User Fee Statutes and Regulations.

Second, the only two courts that have addressed this issue have rejected the Government's assertion that an obligation to collect is tantamount to an obligation to pay regardless of collection. Most importantly, Judge Braden addressed that precise question in the context of the very same user fees at issue here. She "reject[ed] the view that an obligation to pay uncollected fees necessarily arises by silent implication from the obligation to collect." *American Airlines, Inc. v. United States*, 68 Fed. Cl. 723, 732 (2005). The Government's argument was also rejected in *Air Tour Acquisition Corp. v. United States*, 781 F. Supp. 669 (D. Haw. 1991), which involved the tax on air transportation prescribed in I.R.C. § 4261 and discussed above. Importantly, that case was decided before the 1997 amendments that expressly made airlines liable for air transportation excise taxes they failed to collect. In *Air Tour*, the Internal Revenue Service ("IRS") sought to hold an airline, Air Tour, liable for additional Section 4261 taxes the IRS claimed should have been paid. The court held that Air Tour could not be liable under Section 4261 because the statute "imposed liability for excise tax on the buyer of the air transportation," (*i.e.*, the passenger), not on the airline. 781 F. Supp. at 672.

Just as the Government does here, the IRS in *Air Tour* argued that an obligation on the airlines to collect the tax (imposed by I.R.C. § 4291) also implied an obligation to pay regardless of actual collection of the tax from the passenger. *Id.* at 673. The court disagreed, finding that "Air Tour is not liable for the tax under section 4291." *Id.* The court's reasoning focused on two things. First, the court found that there was no case law supporting the IRS' claim that § 4291 (which imposes only collection responsibilities) made Air Tour liable for uncollected taxes. *Id.* Second, the court relied on the fact that the IRC provided for specific penalties when a collector

willfully failed to carry out his or her duties. The Government, however, had not alleged that the airline acted willfully, and thus the penalty provision had no application. *Id.* at 672 n.5.

The reasoning in *Air Tour* applies equally, if not more, to this case. As was the case in *Air Tour* where the airlines "shall collect the amount of the tax" from the passengers (I.R.C. § 4291), the Immigration and APHIS User Fee Statute and Regulations at issue here create fees which passengers must pay and airlines "shall collect." The *Air Tour* court held that a requirement that an airline "shall collect" a tax from its passengers *does not* impose liability on the airline for uncollected taxes. Further, as in *Air Tour*, the Immigration User Fee Regulations provide for penalties that could be imposed on airlines for failing to carry out their collection responsibilities, but the Government does not claim Continental acted willfully or that any penalties should apply. With respect to the APHIS User Fee, the fact that the Government's trust includes only *collected* funds also indicates that airlines are not liable for fees they do not collect from passengers. *See* 781 F. Supp. at 673-75. In addition, the Government has cited no case law suggesting that collectors of the Immigration or APHIS User Fees (or any other "collected" tax or user fee) should be liable whenever they fail to collect.

Third, in the case of the APHIS User Fee, the agency itself intended the fee to be a "collected" fee in which airlines are not liable, rather than an "incurred" fee in which airlines are liable. APHIS specifically considered – and rejected – changing its fee to the "incurred" system the Government now presses the Court to adopt:

> It seems appropriate that passengers themselves pay the APHIS user fees for passengers. Although airlines collect the APHIS passenger user fee along with the price of the ticket and then remit the APHIS user fee to APHIS, *the airlines could be charged a user fee that would cover the entire cost of both aircraft and passenger inspections. If we decide to consider such a change, we will publish a proposal in the Federal Register for public comment.*

62 Fed. Reg. 39747, 39749 (July 24, 1997) (emphasis added).

Fourth, in the case of the Immigration User Fee, the existence of an express penalty provision also indicates a "collected," not an "incurred" user fee. The reason is simple: if the collector must pay regardless of whether they actually collect the tax or fee, there is no need to separately penalize a failure to collect. Thus, the fact that the Immigration User Fee Regulations enumerate the penalties to be imposed on an airlines for not complying with Immigration User Fee Statute also augers heavily in favor of concluding that this is a "collected" user fee and that airlines are not liable for user fees they fail to collect. *See* 8 C.F.R. § 286.7. Those penalties do not include liability for uncollected fees.[7] *Id.* Accordingly, making the airlines liable for uncollected user fees would "impose a penalty on carriers that is not authorized by statute or required by regulation." *American Airlines*, 68 Fed. Cl. at 731.

Fifth, and also in connection with the Immigration User Fee, the requirement that carriers notify the government whenever a passenger refuses to pay likewise indicates a "collected," not an "incurred" user fee. The obvious purpose of this provision "is to facilitate enforcement" of the user fee upon the passenger. *American Airlines*, 68 Fed. Cl. at 731. "If the carrier was liable for the fees, providing that information would serve no purpose." *Id.* The Government attempts to avoid this inescapable conclusion by conjuring up a new provision that allows "Continental not to collect and remit a user fee . . . only when a passenger affirmatively refuses to pay and

---

[7] Had it wanted to, Congress could have imposed a penalty on a tax collector in the amount of tax they failed to collect. For example, the IRC provides that:

> Any person required to collect, truthfully account for, and pay over any tax imposed by [the IRC] who willfully fails to collect such tax . . . shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax . . . not collected . . .

I.R.C. § 6672(a). Of course, because Continental has not willfully failed to collect the user fees at issue (nor has such willfulness been alleged), Continental would not be liable for any such penalty.

Continental so notifies the Government." Gov't Br. at 9; *see also id.* at 11-12. This exception, according to the Government, "provides a reasonable accommodation for instances of non-collection that are beyond the airlines' control." *Id.* at 11-12. While such an exception might make the Government's reading of the statute more palatable, it is pure fiction. Nothing in the statute or regulations carves out any exceptions of this sort, just as nothing in the statute or regulations imposes liability on airlines for uncollected fees.

Finally, the very existence of "collected" taxes and user fees illustrates the fundamental flaw in the Government's position. Because nothing in the statutes or regulations expressly imposes liability on airlines for uncollected fees (*i.e.*, nothing in the statute or regulations expressly imposes an "incurred" user fee), the Government's basic argument in this case is that a requirement to "collect and remit" in-and-of-itself imposes liability on the collector for each applicable user fee "regardless of whether [it] was collected from a passenger." Gov't Br. at 11. If that were true, the concept of "collected" taxes or user fees – in which there is a requirement to collect, but no liability for non-collection – could not exist. Because they obviously do, the Government's reasoning must be incorrect.

For all these reasons, the Immigration and APHIS User Fees are not "incurred" user fees in which the collector is liable for uncollected fees, but are rather "collected" user fees where the collector is not liable.

**D. Continental's Inability to Collect 100% of the User Fees Is Understandable, Was Anticipated by the User Fee Statutes and Regulations, and Provides Additional Evidence that Airlines Are Only Responsible for Remitting Fees They Actually Collect**

There can be no doubt that Continental has made a good faith effort to collect the user fees it is required to collect. If nothing else, that is evident from the higher than 99% collection rate achieved by Continental during most audit periods.

However, both Congress and the relevant agencies clearly recognized that airlines would not be able to collect fees from every single passenger. For example, although the Immigration User Fee and the APHIS User Fee apply to each passenger arriving in the United States and are to be collected at the time the tickets are issued, both fee schemes anticipate this will not always happen and therefore require the fee to be collected from a passenger departing the United States if not already collected. 8 U.S.C. § 1356(f)(2)(B); 8 C.F.R. § 286.4(c); 7 C.F.R. § 354.3(f)(4)(B). The Government in one of its audits of another airline recognized one reason for this: some South and Central American "countries prohibit ticket agents from collecting user fees/taxes for foreign countries at the time of ticket sale." PFUF ¶ 15.

In addition, in 1988, the former INS noted that various airlines were worried that some passengers would simply refuse to pay the user fees:

> Numerous commenters expressed concern about the responsibility for collection of the immigration user fee upon departure of a passenger,[8] especially in the case of refusal by a passenger to pay . . . .

53 Fed. Reg. 5756, 5756 (Feb. 26, 1988).

The notice requirement in the Immigration User Fee Regulations also anticipates that some passengers will refuse to pay the fee when departing the United States:

> If at the time of departure such a passenger refuses to pay the fee, the carrier shall record the full name, complete address, nationality, passport number, and alien file number, if any, of the passenger and immediately notify the Associate Commissioner, Finance [of the Immigration and Naturalization Service].

8 C.F.R. § 286.4(c). In the event a passenger refuses to pay when departing the United States, airlines are not directed to refuse to board that passenger, as airlines are directed to do in other instances. *See* 49 U.S.C. § 44902(a); 8 C.F.R. § 273.3(b). Instead, airlines are directed to simply

---

[8] The duty to collect the fee from a passenger upon departure applies only to foreign passengers whose tickets are "issued in a foreign country." 8 U.S.C. § 1356(f)(2)(A).

take down that person's name and other information, and give it to an agency official in Washington so that the Government can pursue collection from the passenger. Obviously, none of this would be necessary if it were possible for airlines to achieve 100% collection rates.

APHIS was even more direct in recognizing that some passengers would refuse to pay the user fee. In fact, APHIS took this into consideration when setting the amount of the proposed new fee in 1991. For each type of fee, in addition to covering the cost of the AQI services, APHIS

> also included in the proposed fee an amount which would provide for a reasonable balance in the [user fee] Account . . . , [which, among other things, would] be used to offset any uncollectible debts that result when clients are unwilling or unable to pay for our services.

56 Fed. Reg. 8148, 8151 (Feb. 27, 1991). Thus, APHIS assumed some passengers would refuse to pay the user fee and it raised the amount of the fee to account for that. This is inconsistent with holding airlines liable for the uncollected fees, because those amounts are already being recouped by APHIS through another mechanism.

In short, it was fully expected that airlines would be unable to collect the user fees from every single passenger. That fact, coupled with the fact that the agencies dealt with that problem by implementing a mechanism to collect from the passengers directly and by accounting for some instances of non-collection when setting the amount of the fee, additionally demonstrates that airlines are not liable for uncollected fees.

## CONCLUSION

For these reasons, Continental respectfully requests that this Court deny the Government's Motion to Dismiss and grant partial summary judgment in Continental's favor as to liability on all counts in the Complaint.

Respectfully submitted,

s/ Adam P. Feinberg
Adam P. Feinberg
MILLER & CHEVALIER CHARTERED
655 15th Street, N.W.
Washington, D.C. 20005
(202) 626-6087
(202) 626-5801 (Facsimile)

Counsel for Plaintiff

*Of Counsel*:
Robert K. Huffman
MILLER & CHEVALIER CHARTERED
655 15th Street, N.W.
Washington, D.C. 20005
(202) 626-5824
(202) 626-5801 (Facsimile)

Dated: January 16, 2007