IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| CONTINENTAL AIRLINES, INC.<br>Plaintiff,<br>v.<br>THE UNITED STATES OF AMERICA,<br>Defendant. | Civil Action No. 06-432C<br>Judge Lawrence S. Margolis |

**PLAINTIFF'S APPENDIX**

Adam P. Feinberg
MILLER & CHEVALIER CHARTERED
655 15th Street, N.W.
Washington, D.C. 20005
(202) 626-6087
(202) 626-5801 (Facsimile)

Counsel for Plaintiff

*Of Counsel*:
Robert K. Huffman
MILLER & CHEVALIER CHARTERED
655 15th Street, N.W.
Washington, D.C. 20005
(202) 626-5824
(202) 626-5801 (Facsimile)

Dated: January 16, 2007

# TABLE OF CONTENTS

## STATUTES

8 U.S.C. § 1356 .......... 001

21 U.S.C. § 136a .......... 008

## REGULATIONS

7 C.F.R. § 354.3 .......... 011

8 C.F.R. § 215.2 .......... 021

8 C.F.R. § 215.3 .......... 025

8 C.F.R. § 273.3 .......... 030

8 C.F.R. § 286.1 .......... 034

8 C.F.R. § 286.2 .......... 038

8 C.F.R. § 286.3 .......... 042

8 C.F.R. § 286.4 .......... 046

8 C.F.R. § 286.5 .......... 050

8 C.F.R. § 286.6 .......... 055

8 C.F.R. § 286.7 .......... 059

8 C.F.R. § 286.8 .......... 063

8 C.F.R. § 286.9 .......... 067

8 C.F.R. § 1212.1 .......... 071

## MISCELLANEOUS

53 Fed. Reg. 5,756 (Feb. 26, 1988) .......... 077

56 Fed. Reg. 8,148 (Feb. 27, 1991) .......... 080

56 Fed. Reg. 14,837 (Apr. 12, 1991) .......... 089

57 Fed. Reg. 755 (Jan. 9, 1992) ....................................................................................099

62 Fed. Reg. 39,747 (July 24, 1997)..............................................................................118

Rev. Rul. 59-295, 1959-2 C.B. 420 .............................................................................127

Rev. Rul. 69-227, 1969-1 C.B. 315 ..............................................................................131

P.L.R. 8426003 (Mar. 9, 1984)......................................................................................137

LEXSTAT

UNITED STATES CODE SERVICE
Copyright © 2006 Matthew Bender & Company, Inc.,
one of the LEXIS Publishing (TM) companies
All rights reserved

*** CURRENT THROUGH P.L. 109-467, APPROVED 12/22/2006 ***
*** WITH GAPS OF 109-432, 435 thru 438, 441 thru 462, 465 and 466 ***

TITLE 8. ALIENS AND NATIONALITY
CHAPTER 12. IMMIGRATION AND NATIONALITY
ADJUSTMENT AND CHANGE OF STATUS
MISCELLANEOUS

**GO TO CODE ARCHIVE DIRECTORY FOR THIS JURISDICTION**

8 USCS § 1356

§ 1356. Disposition of moneys collected under the provisions of this title

(a) Detention, transportation, hospitalization, and all other expenses of detained aliens; expenses of landing stations. All moneys paid into the Treasury to reimburse the Service for detention, transportation, hospitalization, and all other expenses of detained aliens paid from the appropriation for the enforcement of this Act, and all moneys paid into the Treasury to reimburse the Service for expenses of landing stations referred to in section 238(b) [233(b)] [8 USCS § 1223(b)] paid by the Service from the appropriation for the enforcement of this Act, shall be credited to the appropriation for the enforcement of this Act for the fiscal year in which the expenses were incurred.

(b) Purchase of evidence. Moneys expended from appropriations for the Service for the purchase of evidence and subsequently recovered shall be reimbursed to the current appropriation for the Service.

(c) Fees and administrative fines and penalties; exception. Except as otherwise provided in subsection (a) and subsection (b), or in any other provision of this title, all moneys received in payment of fees and administrative fines and penalties under this title shall be covered into the Treasury as miscellaneous receipts: *Provided, however,* That all fees received from applicants residing in the Virgin Islands of the United States, and in Guam, required to be paid under section 281 [8 USCS § 1351], shall be paid over to the Treasury of the Virgin Islands and to the Treasury of Guam, respectively.

(d) Schedule of fees. In addition to any other fee authorized by law, the Attorney General shall charge and collect $ 7 per individual for the immigration inspection of each passenger arriving at a port of entry in the United States, or for the preinspection of a passenger in a place outside of the United States prior to such arrival, aboard a commercial aircraft or commercial vessel.

(e) Limitations on fees.
(1) Except as provided in paragraph (3), no fee shall be charged under subsection (d) for immigration inspection or preinspection provided in connection with the arrival of any passenger, other than aircraft passengers, whose journey originated in the following:
(A) Canada,
(B) Mexico,
(C) a State, territory or possession of the United States, or
(D) any adjacent island (within the meaning of section 101(b)(5) [8 USCS § 1101(b)(5)]).
(2) No fee may be charged under subsection (d) with respect to the arrival of any passenger--

(A) who is in transit to a destination outside the United States, and
(B) for whom immigration inspection services are not provided.

(3) The Attorney General shall charge and collect $ 3 per individual for the immigration inspection or pre-inspection of each commercial vessel passenger whose journey originated in the United States or in any place set forth in paragraph (1): *Provided,* That this requirement shall not apply to immigration inspection at designated ports of entry of passengers arriving by ferry, or by Great Lakes vessels on the Great Lakes and connecting waterways when operating on a regular schedule. For the purposes of this paragraph, the term "ferry" means a vessel, in other than ocean or coastwise service, having provisions only for deck passengers and/or vehicles, operating on a short run on a frequent schedule between two points over the most direct water route, and offering a public service of a type normally attributed to a bridge or tunnel.

(f) Collection.

(1) Each person that issues a document or ticket to an individual for transportation by a commercial vessel or commercial aircraft into the United States shall--
(A) collect from that individual the fee charged under subsection (d) at the time the document or ticket is issued; and
(B) identify on that document or ticket the fee charged under subsection (d) as a Federal inspection fee.

(2) If--
(A) a document or ticket for transportation of a passenger into the United States is issued in a foreign country; and
(B) the fee charged under subsection (d) is not collected at the time such document or ticket is issued;
the person providing transportation to such passenger shall collect such fee at the time such passenger departs from the United States and shall provide such passenger a receipt for the payment of such fee.

(3) The person who collects fees under paragraph (1) or (2) shall remit those fees to the Attorney General at any time before the date that is thirty-one days after the close of the calendar quarter in which the fees are collected, except the fourth quarter payment for fees collected from airline passengers shall be made on the date that is ten days before the end of the fiscal year, and the first quarter payment shall include any collections made in the preceding quarter that were not remitted with the previous payment. Regulations issued by the Attorney General under this subsection with respect to the collection of the fees charged under subsection (d) and the remittance of such fees to the Treasury of the United States shall be consistent with the regulations issued by the Secretary of the Treasury for the collection and remittance of the taxes imposed by subchapter C of chapter 33 of the Internal Revenue Code of 1986 [26 USCS § § 4261 et seq.], but only to the extent the regulations issued with respect to such taxes do not conflict with the provisions of this section.

(g) Provision of immigration inspection and preinspection services. Notwithstanding the Act of March 2, 1931, 46 Stat. 1467 (8 U.S.C. 1353b), or any other provision of law, the immigration services required to be provided to passengers upon arrival in the United States on scheduled airline flights shall be adequately provided when needed and at no cost (other than the fees imposed under subsection (d)) to airlines and airline passengers at:

(1) immigration serviced airports, and

(2) places located outside of the United States at which an immigration officer is stationed for the purpose of providing such immigration services.

(h) Disposition of receipts.

(1) (A) There is established in the general fund of the Treasury a separate account which shall be known as the "Immigration User Fee Account". Notwithstanding any other section of this title, there shall be deposited as offsetting receipts into the Immigration User Fee Account all fees collected under subsection (d) of this section, to remain available until expended. At the end of each 2-year period, beginning with the creation of this account, the Attorney General, following a public rulemaking with opportunity for notice and comment, shall submit a report to the Congress concerning the status of the account, including any balances therein, and recommend any adjustment in the prescribed fee that may be required to ensure that the receipts collected from the fee charged for the succeeding two years equal, as closely as possible, the cost of providing these services.

(B) Notwithstanding any other provisions of law, all civil fines or penalties collected pursuant to sections 243(c), 271, and 273 of this title [8 USCS § § 1253(c), 1321, 1323] and all liquidated damages and expenses collected pursuant to this Act shall be deposited in the Immigration User Fee Account.

(2) (A) The Secretary of the Treasury shall refund out of the Immigration User Fee Account to any appropriation the amount paid out of such appropriation for expenses incurred by the Attorney General in providing immigration inspection and preinspection services for commercial aircraft or vessels and in--
(i) providing overtime immigration inspection services for commercial aircraft or vessels;

(ii) administration of debt recovery, including the establishment and operation of a national collections office;

(iii) expansion, operation and maintenance of information systems for nonimmigrant control and debt collection;

(iv) detection of fraudulent documents used by passengers traveling to the United States, including training of, and technical assistance to, commercial airline personnel regarding such detection;

(v) providing detention and removal services for inadmissible aliens arriving on commercial aircraft and vessels and for any alien who is inadmissible under section 212(a) [8 USCS § 1182(a)] who has attempted illegal entry into the United States through avoidance of immigration inspection at air or sea ports-of-entry; and

(vi) providing removal and asylum proceedings at air or sea ports-of-entry for inadmissible aliens arriving on commercial aircraft and vessels including immigration removal proceedings resulting from presentation of fraudulent documents and failure to present documentation and for any alien who is inadmissible under section 212(a) [8 USCS § 1182(a)] who has attempted illegal entry into the United States through avoidance of immigration inspection at air or sea ports-of-entry.

The Attorney General shall provide for expenditures for training and assistance described in clause (iv) in an amount, for any fiscal year, not less than 5 percent of the total of the expenses incurred that are described in the previous sentence.

(B) The amounts which are required to be refunded under subparagraph (A) shall be refunded at least quarterly on the basis of estimates made by the Attorney General of the expenses referred to in subparagraph (A). Proper adjustments shall be made in the amounts subsequently refunded under subparagraph (A) to the extent prior estimates were in excess of, or less than, the amount required to be refunded under subparagraph (A).

(i) Reimbursement. Notwithstanding any other provision of law, the Attorney General is authorized to receive reimbursement from the owner, operator, or agent of a private or commercial aircraft or vessel, or from any airport or seaport authority for expenses incurred by the Attorney General in providing immigration inspection services which are rendered at the request of such person or authority (including the salary and expenses of individuals employed by the Attorney General to provide such immigration inspection services). The Attorney General's authority to receive such reimbursement shall terminate immediately upon the provision for such services by appropriation.

(j) Regulations. The Attorney General may prescribe such rules and regulations as may be necessary to carry out the provisions of this section.

(k) Advisory committee. In accordance with the provisions of the Federal Advisory Committee Act, the Attorney General shall establish an advisory committee, whose membership shall consist of representatives from the airline and other transportation industries who may be subject to any fee or charge authorized by law or proposed by the Immigration and Naturalization Service for the purpose of covering expenses incurred by the Immigration and Naturalization Service. The advisory committee shall meet on a periodic basis and shall advise the Attorney General on issues related to the performance of the inspectional services of the Immigration and Naturalization Service. This advice shall include, but not be limited to, such issues as the time periods during which such services should be performed, the proper number and deployment of inspection officers, the level of fees, and the appropriateness of any proposed fee. The Attorney General shall give substantial consideration to the views of the advisory committee in the exercise of his duties.

(l) Report to Congress. In addition to the reporting requirements established pursuant to subsection (h), the Attorney General shall prepare and submit annually to the Congress, not later than March 31st of each year, a statement of the financial condition of the "Immigration User Fee Account" including beginning account balance, revenues, withdrawals and their purpose, ending balance, projections for the ensuing fiscal year and a full and complete workload analysis showing on a port by port basis the current and projected need for inspectors. The statement shall indicate the success rate of the Immigration and Naturalization Service in meeting the forty-five minute inspection standard and shall provide detailed statistics regarding the number of passengers inspected within the standard, progress that is being made to expand the utilization of United States citizen by-pass, the number of passengers for whom the standard is not met and the length of their delay, locational breakdown of these statistics and the steps being taken to correct any nonconformity.

(m) Immigration Examinations Fee Account. Notwithstanding any other provisions of law, all adjudication fees as are designated by the Attorney General in regulations shall be deposited as offsetting receipts into a separate account entitled "Immigration Examinations Fee Account" in the Treasury of the United States, whether collected directly by the Attorney General or through clerks of courts: *Provided, however,* That all fees received by the Attorney General from

applicants residing in the Virgin Islands of the United States, and in Guam, under this subsection shall be paid over to the treasury of the Virgin Islands and to the treasury of Guam: *Provided further,* That fees for providing adjudication and naturalization services may be set at a level that will ensure recovery of the full costs of providing all such services, including the costs of similar services provided without charge to asylum applicants or other immigrants. Such fees may also be set at a level that will recover any additional costs associated with the administration of the fees collected.

(n) Reimbursement of administrative expenses; transfer of deposits to General Fund of United States Treasury. All deposits into the "Immigration Examinations Fee Account" shall remain available until expended to the Attorney General to reimburse any appropriation the amount paid out of such appropriation for expenses in providing immigration adjudication and naturalization services and the collection, safeguarding and accounting for fees deposited in and funds reimbursed from the "Immigration Examinations Fee Account".

(o) Annual financial reports to Congress. The Attorney General shall prepare and submit annually to Congress statements of financial condition of the "Immigration Examinations Fee Account", including beginning account balance, revenues, withdrawals, and ending account balance and projections for the ensuing fiscal year.

(p) Additional effective dates. The provisions set forth in subsections (m), (n), and (o) of this section apply to adjudication and naturalization services performed and to related fees collected on or after October 1, 1988.

(q) Land Border Inspection Fee Account.

(1) (A) (i) Notwithstanding any other provision of law, the Attorney General is authorized to establish, by regulation, not more than 96 projects under which a fee may be charged and collected for inspection services provided at one or more land border points of entry. Such projects may include the establishment of commuter lanes to be made available to qualified United States citizens and aliens, as determined by the Attorney General.

(ii) This subparagraph shall take effect, with respect to any project described in clause (1) [(i)] that was not authorized to be commenced before the date of the enactment of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 [enacted Sept. 30, 1996], 30 days after submission of a written plan by the Attorney General detailing the proposed implementation of such project.

(iii) The Attorney General shall prepare and submit on a quarterly basis a status report on each land border inspection project implemented under this subparagraph.

(iv) [Redesignated]

(B) The Attorney General, in consultation with the Secretary of the Treasury, may conduct pilot projects to demonstrate the use of designated ports of entry after working hours through the use of card reading machines or other appropriate technology.

(2) All of the fees collected under this subsection, including receipts for services performed in processing forms I-94, I-94W, and I-68, and other similar applications processed at land border ports of entry, shall be deposited as offsetting receipts in a separate account within the general fund of the Treasury of the United States, to remain available until expended. Such account shall be known as the Land Border Inspection Fee Account.

(3)

(A) The Secretary of the Treasury shall refund, at least on a quarterly basis amounts to any appropriations for expenses incurred in providing inspection services at land border points of entry. Such expenses shall include--

(i) the providing of overtime inspection services;

(ii) the expansion, operation and maintenance of information systems for nonimmigrant control;

(iii) the hire of additional permanent and temporary inspectors;

(iv) the minor construction costs associated with the addition of new traffic lanes (with the concurrence of the General Services Administration);

(v) the detection of fraudulent documents used by passengers travelling to the United States;

(vi) providing for the administration of said account.

(B) The amounts required to be refunded from the Land Border Inspection Fee Account for fiscal years 1992 and thereafter shall be refunded in accordance with estimates made in the budget request of the Attorney General for those fiscal years: *Provided,* That any proposed changes in the amounts designated in said budget requests shall only be made after notification to the Committees on Appropriations of the House of Representatives and the Senate in accordance with section 606 of Public Law 101-162 [unclassified].

(4) The Attorney General will prepare and submit annually to the Congress statements of financial condition of the Land Border Immigration Fee Account, including beginning account balance, revenues, withdrawals, and ending account balance and projection for the ensuing fiscal year.
(5) [Deleted]

(r) Breached Bond/Detention Fund.
(1) Notwithstanding any other provision of law, there is established in the general fund of the Treasury a separate account which shall be known as the Breached Bond/Detention Fund (in this subsection referred to as the "Fund").
(2) There shall be deposited as offsetting receipts into the Fund all breached cash and surety bonds, in excess of $ 8,000,000, posted under this Act which are recovered by the Department of Justice, and amount described in section 245(i)(3)(b) [8 USCS § 1255(i)(3)(b)].
(3) Such amounts as are deposited into the Fund shall remain available until expended and shall be refunded out of the Fund by the Secretary of the Treasury, at least on a quarterly basis, to the Attorney General for the following purposes--
(i) for expenses incurred in the collection of breached bonds, and
(ii) for expenses associated with the detention of illegal aliens.
(4) The amounts required to be refunded from the Fund for fiscal year 1998 and thereafter shall be refunded in accordance with estimates made in the budget request of the President for those fiscal years. Any proposed changes in the amounts designated in such budget requests shall only be made after Congressional reprogramming notification in accordance with the reprogramming guidelines for the applicable fiscal year.
(5) The Attorney General shall prepare and submit annually to the Congress, statements of financial condition of the Fund, including the beginning balance, receipts, refunds to appropriations, transfers to the general fund, and the ending balance.
(6) For fiscal year 1993 only, the Attorney General may transfer up to $ 1,000,000 from the Immigration User Fee Account to the Fund for initial expenses necessary to enhance collection efforts: *Provided*, That any such transfers shall be refunded from the Fund back to the Immigration User Fee Account by December 31, 1993.

(s) H-1B nonimmigrant petitioner account.
(1) In general. There is established in the general fund of the Treasury a separate account, which shall be known as the "H-1B Nonimmigrant Petitioner Account". Notwithstanding any other section of this title, there shall be deposited as offsetting receipts into the account all fees collected under paragraphs (9) and (11) of section 214(c) [8 USCS § 1184(c)].
(2) Use of fees for job training. 50 percent of amounts deposited into the H-1B Nonimmigrant Petitioner Account shall remain available to the Secretary of Labor until expended for demonstration programs and projects described in section 414(c) of the American Competitiveness and Workforce Improvement Act of 1998 [29 USCS § 2916a].
(3) Use of fees for low-income scholarship program. 30 percent of the amounts deposited into the H-1B Nonimmigrant Petitioner Account shall remain available to the Director of the National Science Foundation until expended for scholarships described in section 414(d) of the American Competitiveness and Workforce Improvement Act of 1998 [42 USCS § 1869c] for low-income students enrolled in a program of study leading to a degree in mathematics, engineering, or computer science.
(4) National Science Foundation competitive grant program for K-12 math, science and technology education.
(A) In general. 10 percent of the amounts deposited into the H-1B Nonimmigrant Petitioner Account shall remain available to the Director of the National Science Foundation until expended to carry out a direct or matching grant program to support private-public partnerships in K-12 education.
(B) Types of programs covered. The Director shall award grants to such programs, including those which support the development and implementation of standards-based instructional materials models and related student assessments that enable K-12 students to acquire an understanding of science, mathematics, and technology, as well as to develop critical thinking skills; provide systemic improvement in training K-12 teachers and education for students in science, mathematics, and technology; support the professional development of K-12 math and science teachers in the use of technology in the classroom; stimulate system-wide K-12 reform of science, mathematics, and technology in rural, economically disadvantaged regions of the United States; provide externships and other opportunities for students to increase their appreciation and understanding of science, mathematics, engineering, and technology (including summer institutes sponsored by an institution of higher education for students in grades 7-12 that provide instruction in such fields); involve partnerships of industry, educational institutions, and community organizations to address the educational needs of disadvantaged communities; provide college preparatory support to expose and prepare students for ca-

reers in science, mathematics, engineering, and technology; and provide for carrying out systemic reform activities under section 3(a)(1) of the National Science Foundation Act of 1950 (42 U.S.C. 1862(a)(1)).

(5) Use of fees for duties relating to petitions. 5 percent of the amounts deposited into the H-1B Nonimmigrant Petitioner Account shall remain available to the Secretary of Homeland Security until expended to carry out duties under paragraphs (1) and (9) of section 214(c) [8 USCS § 1184(c)] related to petitions made for nonimmigrants described in section 101(a)(15)(H)(i)(b) [8 USCS § 1101(a)(15)(H)(i)(b)], under paragraph (1) (C) or (D) of section 204 [8 USCS § 1154] related to petitions for immigrants described in section 203(b) [8 USCS § 1153(b)].

(6) Use of fees for application processing and enforcement. For fiscal year 1999, 5 percent [4 percent] of the amounts deposited into the H-1B Nonimmigrant Petitioner Account shall remain available to the Secretary of Labor until expended for decreasing the processing time for applications under section 212(n)(1) [8 USCS § 1182(n)(1)] and for carrying out section 212(n)(2) [8 USCS § 1182(n)(2)]. Beginning with fiscal year 2000, 5 percent of the amounts deposited into the H-1B Nonimmigrant Petitioner Account shall remain available to the Secretary of Labor until expended for decreasing the processing time for applications under section 212(n)(1) [8 USCS § 1182(n)(1)] and section 212(a)(5)(A) [8 USCS § 1182(a)(5)(A)].

(t) Genealogy Fee.

(1) There is hereby established the Genealogy Fee for providing genealogy research and information services. This fee shall be deposited as offsetting collections into the Examinations Fee Account. Fees for such research and information services may be set at a level that will ensure the recovery of the full costs of providing all such services.

(2) The Attorney General will prepare and submit annually to Congress statements of the financial condition of the Genealogy Fee.

(3) Any officer or employee of the Immigration and Naturalization Service shall collect fees prescribed under regulation before disseminating any requested genealogical information.

(u) Premium fee for employment-based petitions and applications. The Attorney General is authorized to establish and collect a premium fee for employment-based petitions and applications. This fee shall be used to provide certain premium-processing services to business customers, and to make infrastructure improvements in the adjudications and customer-service processes. For approval of the benefit applied for, the petitioner/applicant must meet the legal criteria for such benefit. This fee shall be set at $ 1,000, shall be paid in addition to any normal petition/application fee that may be applicable, and shall be deposited as offsetting collections in the Immigration Examinations Fee Account. The Attorney General may adjust this fee according to the Consumer Price Index.

(v) Fraud Prevention and Detection Account.

(1) In general. There is established in the general fund of the Treasury a separate account, which shall be known as the "Fraud Prevention and Detection Account". Notwithstanding any other provision of law, there shall be deposited as offsetting receipts into the account all fees collected under paragraph (12) or (13) of section 214(c) [8 USCS § 1184(c)].

(2) Use of fees to combat fraud.

(A) Secretary of State. One-third of the amounts deposited into the Fraud Prevention and Detection Account shall remain available to the Secretary of State until expended for programs and activities at United States embassies and consulates abroad--

(i) to increase the number diplomatic security personnel assigned exclusively to the function of preventing and detecting fraud by applicants for visas described in subparagraph (H)(i), (H)(ii), or (L) of section 101(a)(15) [8 USCS § 1101(a)(15)];

(ii) otherwise to prevent and detect such fraud pursuant to the terms of a memorandum of understanding or other cooperative agreement between the Secretary of State and the Secretary of Homeland Security; and

(iii) upon request by the Secretary of Homeland Security, to assist such Secretary in carrying out the fraud prevention and detection programs and activities described in subparagraph (B).

(B) Secretary of Homeland Security. One-third of the amounts deposited into the Fraud Prevention and Detection Account shall remain available to the Secretary of Homeland Security until expended for programs and activities to prevent and detect fraud with respect to petitions under paragraph (1) or (2)(A) of section 214(c) [8 USCS § 1184(c)] to grant an alien nonimmigrant status described in subparagraph (H)(i), (H)(ii), or (L) of section 101(a)(15) [8 USCS § 1101(a)(15)].

(C) Secretary of Labor. One-third of the amounts deposited into the Fraud Prevention and Detection Account shall remain available to the Secretary of Labor until expended for enforcement programs and activities described in section 212(n) [8 USCS § 1182(n)].

(D) Consultation. The Secretary of State, the Secretary of Homeland Security, and the Secretary of Labor shall consult one another with respect to the use of the funds in the Fraud Prevention and Detection Account or for programs and activities to prevent and detect fraud with respect to petitions under paragraph (1) or (2)(A) of section 214(c) [8 USCS § 1184(c)] to grant an alien nonimmigrant status described in section 101(a)(15)(H)(ii) [8 USCS § 1101(a)(15)(H)(ii)].

**HISTORY:**

(June 27, 1952, ch 477, Title II, Ch 9, § 286, 66 Stat. 232; Dec. 29, 1981, P.L. 97-116, § 13, 95 Stat. 1618; Oct. 18, 1986, P.L. 99-500; Title I, § 101(b) [Title II, § 205(a)], 100 Stat. 3341-53; Oct. 30, 1986, P.L. 100-591, § 101(b) [Title II, § 205(a), 100 Stat. 3341-53 (as amended Oct. 24, 1988, P.L. 100-525, § 4(a)(2)(A), 102 Stat. 2615); Nov. 14, 1986, P.L. 99-653, § 7(d)(1) (as added Oct. 24, 1988, P.L. 100-525, § 8(f), 102 Stat. 2617); July 11, 1987, P.L. 100-71, Title I, ch I, 101 Stat. 394; Oct. 1, 1988, P.L. 100-459, Title II, § 209(a), 102 Stat. 2203; Oct. 24, 1988, P.L. 100-525, § 4(a)(1), 102 Stat. 2614; Nov. 21, 1989, P.L. 101-162, Title II, 103 Stat. 1000; Nov. 5, 1990, P.L. 101-515, Title II, § 210(a), (d), 104 Stat. 2120, 2121; Dec. 12, 1991, P.L. 102-232, Title III, § 309(a)(1)(A)(i), (B), (2), (b)(12), 105 Stat. 1757, 1758, 1759; Oct. 6, 1992, P.L. 102-395, Title I, § 112, 106 Stat. 1843; Oct. 27, 1993, P.L. 103-121, Title I, 107 Stat. 1161; Oct. 25, 1994, P.L. 103-416, Title II, § 219(t), 108 Stat. 4317; Sept. 30, 1996, P.L. 104-208, Div C, Title I, Subtitle B, § 122(a), 124(a)(1), Title III, Subtitle A, § 308(d)(3)(A), (4)(K), (e)(1)(L), Subtitle F, § § 376(b), 382(b), Title VI, Subtitle E, § 671(b)(11), (e)(5), (6), 110 Stat. 3009-560, 3009-562, 3009-617, 3009-618, 3009-619, 3009-648, 3009-651, 3009-722, 3009-723.)

(As amended Nov. 26, 1997, P.L. 105-119, Title I, § 110(1), (2), 111 Stat. 2458; Oct. 21, 1998, P.L. 105-277, Div A, § 101(b) [Title I, § 114], Div C, Title IV, § 414(b), 112 Stat. 2681-68, 2681-652; Nov. 29, 1999, P.L. 106-113, Div B, § 1000(a)(1), 113 Stat. 1535; Oct. 17, 2000, P.L. 106-313, Title I, § § 110(a), 113, 114 Stat. 1255, 1261; Dec. 21, 2000, P.L. 106-553, § 1(a)(2), 114 Stat. 2762; Dec. 21, 2000, P.L. 106-554, § 1(a)(1), 114 Stat. 2763; Nov. 28, 2001, P.L. 107-77, Title I, § § 109, 110, 115 Stat. 765; May 14, 2002, P.L. 107-173, Title IV, § 403(a), 116 Stat. 559; Aug. 2, 2002, P.L. 107-206, Title I, Ch. 2, § 202, 116 Stat. 832; Nov. 2, 2002, P.L. 107-273, Div C, Title I, Subtitle A, § 11016(2), 116 Stat. 1824; Nov. 25, 2002, P.L. 107-296, Title IV, Subtitle E, § 457, 116 Stat. 2201; Feb. 20, 2003, P.L. 108-7, Div B, Title I, § 108, Div L, § 107, 117 Stat. 67, 532; Sept. 3, 2003, P.L. 108-77, Title IV, § 402(d)(2), 117 Stat. 946; Dec. 8, 2004, P.L. 108-447, Div J, Title IV, Subtitle B, § § 426(b), 427, 118 Stat. 3357, 3358; May 11, 2005, P.L. 109-13, Div A, Title VI, § 6046, Div B, Title IV, § 403(b), 119 Stat. 295, 319.)

LEXSTAT

UNITED STATES CODE SERVICE
Copyright © 2006 Matthew Bender & Company, Inc.,
one of the LEXIS Publishing (TM) companies
All rights reserved

*** CURRENT THROUGH P.L. 109-467, APPROVED 12/22/2006 ***
*** WITH GAPS OF 109-432, 435 thru 438, 441 thru 462, 465 and 466 ***

TITLE 21. FOOD AND DRUGS
CHAPTER 4. ANIMALS, MEATS, AND MEAT AND DAIRY PRODUCTS
PREVENTION OF INTRODUCTION AND SPREAD OF CONTAGION

**Go to Code Archive Directory for this Jurisdiction**

21 USCS § 136a

§ 136a. Collection of fees for inspection services

(a) Quarantine and inspection fees.

(1) Fees authorized. The Secretary of Agriculture may prescribe and collect fees sufficient--

(A) to cover the cost of providing agricultural quarantine and inspection services in connection with the arrival at a port in the customs territory of the United States, or the preclearance or preinspection at a site outside the customs territory of the United States, of an international passenger, commercial vessel, commercial aircraft, commercial truck, or railroad car;

(B) to cover the cost of administering this subsection; and

(C) through fiscal year 2002, to maintain a reasonable balance in the Agricultural Quarantine Inspection User Fee Account established under paragraph (5).

(2) Limitation. In setting the fees under paragraph (1), the Secretary shall ensure that the amount of the fees is commensurate with the costs of agricultural quarantine and inspection services with respect to the class of persons or entities paying the fees. The costs of the services with respect to passengers as a class includes the costs of related inspections of the aircraft or other vehicle.

(3) Status of fees. Fees collected under this subsection by any person on behalf of the Secretary are held in trust for the United States and shall be remitted to the Secretary in such manner and at such times as the Secretary may prescribe.

(4) Late payment penalties. If a person subject to a fee under this subsection fails to pay the fee when due, the Secretary shall assess a late payment penalty, and the overdue fees shall accrue interest, as required by section 3717 of title 31, United States Code.

(5) Agricultural quarantine inspection user fee account.

(A) Establishment. There is established in the Treasury of the United States a fund, to be known as the "Agricultural Quarantine Inspection User Fee Account", which shall contain all of the fees collected under this subsection and late payment penalties and interest charges collected under paragraph (4) through fiscal year 2002.

(B) Use of account. For each of fiscal years 1996 through 2002, funds in the Agricultural Quarantine Inspection User Fee Account shall be available, in such amounts as are provided in advance in appropriations Acts, to cover the costs associated with the provision of agricultural quarantine and inspection services and the administration of this subsection. Amounts made available under this subparagraph shall be available until expended.

(C) Excess fees. Fees and other amounts collected under this subsection in any of fiscal years 1996 through 2002 in excess of $ 100,000,000 shall be available for the purposes specified in subparagraph (B) until expended, without further appropriation.

(6) Use of amounts collected after fiscal year 2002. After September 30, 2002, the unobligated balance in the Agricultural Quarantine Inspection User Fee Account and fees and other amounts collected under this subsection shall be credited to the Department of Agriculture accounts that incur the costs associated with the provision of agricultural quaran-

tine and inspection services and the administration of this subsection. The fees and other amounts shall remain available to the Secretary until expended without fiscal year limitation.

(7) Staff years. The number of full-time equivalent positions in the Department of Agriculture attributable to the provision of agricultural quarantine and inspection services and the administration of this subsection shall not be counted toward the limitation on the total number of full-time equivalent positions in all agencies specified in section 5(b) of the Federal Workforce Restructuring Act of 1994 (Public Law 103-226; 5 U.S.C. 3101 note) or other limitation on the total number of full-time equivalent positions.

(b) [Omitted]

(c) Animal inspection and veterinary diagnostics.

(1) Animal inspection. The Secretary may prescribe and collect fees to reimburse the Secretary for the cost of carrying out the provisions of the Federal Animal Quarantine Laws that relate to the importation, entry, and exportation of animals, articles, or means of conveyance.

(2) Veterinary diagnostics. The Secretary may prescribe and collect fees to recover the costs of carrying out the provisions of the Animal Health Protection Act that relate to veterinary diagnostics.

(3) Fees. All fees collected pursuant to this subsection and any late payment penalties or accrued interest collected pursuant to this subsection shall be credited to the accounts that incur the cost and shall remain available until expended without fiscal year limitation.

(4) Liability. Any person for whom an activity related to the importation, entry, or exportation of an animal, article, or means of conveyance or relating to veterinary diagnostics, is performed pursuant to the section, shall be liable for payment of fees assessed. Upon failure to pay such fees when due, the Secretary shall assess a late payment penalty, and such overdue fees shall accrue interest, as required by section 3717 of title 31, United States Code. All fees, late payment penalties, and accrued interest collected shall be credited to such accounts that incur the costs and shall remain available until expended without fiscal year limitation.

(5) Leins [Liens].

(A) In general. The Secretary shall have a lien against the animal, article, means of conveyance, or facility for which services have been provided under this section for the fees, any late payment penalty, and any accrued interest assessed under this subsection.

(B) Other animals, etc. In the case of any person who fails to make payment when due under this subsection, the Secretary shall have a lien against any animal, article, or means of conveyance thereafter imported, moved in interstate commerce, or attempted to be exported by the person after the date of such failure until the date on which such owner or operator make [makes] full payment to the Secretary under this subsection.

(C) Sales of animals, etc.

(i) Authority. The Secretary may, if a person does not pay fees, late payment penalties, or accrued interest on such, after providing reasonable notice of default to such person, sell at public sale after reasonable public notice, or otherwise dispose of, any such animal, article, means of conveyance or facility on which the Secretary has a lien under this paragraph.

(ii) Excess proceeds. If the sale proceeds under clause (i) exceed the fees due, any late payment penalty assessed, any accrued interest on such, and the expenses associated with the sale, such excess shall be paid to the owner of the animal, article, means of conveyance, or facility if such owner submits an application for such excess together with proof of ownership not later than 6 months after the date of such sale. If no such application is made, such excess shall be credited to accounts that incur the costs associated with the fees collected and shall remain available until expended, without fiscal year limitation. The Secretary shall suspend performance of services to persons who have failed to pay fees, late payment penalty, or accrued interest under this section.

(d) Regulations. The Secretary may prescribe such regulations as the Secretary determines necessary to carry out the provisions of this section.

(e) Recovery of amounts owed. An action may be brought for the recovery of fees, late payment penalties, and accrued interest which have not been paid in accordance with this section against any person obligated for payment of such assessments under this section in any United States district court or other United States court for any territory or possession in any jurisdiction in which such person is found or resides or transacts business, and such court shall have jurisdiction to hear and decide such action.

(f) Definitions.

(1) Animal quarantine laws. For purposes of this section, the term "animal quarantine laws" means--

(A) section 306 of the Tariff Act of 1930 (19 U.S.C. 1306);

(B) section 9 of the Act of August 30, 1890 (21 U.S.C. 101);

(C) the Animal Health Protection Act; or

(D) any other Act administered by the Secretary relating to plant or animal diseases or pests.

(2) Customs territory. For the purposes of subsection (a), the term "customs territory of the United States" means the 50 States, the District of Columbia, and Puerto Rico.

(3) Person. For the purposes of this section, the term "person", means an individual, corporation, partnership, trust, association, or any other public or private entity, or any officer, employee, or agent thereof.

(4) United States. For the purposes of subsection (b), the term "United States" means the several States of the United States, the District of Columbia, Guam, the Commonwealth of the Northern Mariana Islands, the Commonwealth of Puerto Rico, the Virgin Islands of the United States, and all other territories and possessions of the United States.

(5) Vessel. For the purposes of subsection (a), the term "vessel" does not include any ferry.

**HISTORY:**

(Nov. 28, 1990, P.L. 101-624, Title XXV, § 2509, 104 Stat. 4069; Nov. 5, 1990, P.L. 101-508, Title I, Subtitle B, § 1203, 104 Stat. 1388-11; Dec. 13, 1991, P.L. 102-237, Title X, § 1015, 105 Stat. 1902; April 4, 1996, P.L. 104-127, Title IX, Subtitle B, § 917, 110 Stat. 1187; May 13, 2002, P.L. 107-171, Title X, Subtitle E, § 10418(b)(5), 116 Stat. 509.)

LEXSTAT 7 CFR 354.3

LEXISNEXIS' CODE OF FEDERAL REGULATIONS
Copyright © 2006, by Matthew Bender & Company, a member
of the LexisNexis Group. All rights reserved.

*** THIS SECTION IS CURRENT THROUGH THE JANUARY 2, 2007 ISSUE OF ***
*** THE FEDERAL REGISTER ***

TITLE 7 -- AGRICULTURE
SUBTITLE B -- REGULATIONS OF THE DEPARTMENT OF AGRICULTURE
CHAPTER III -- ANIMAL AND PLANT HEALTH INSPECTION SERVICE, DEPARTMENT OF AGRICULTURE
PART 354 -- OVERTIME SERVICES RELATING TO IMPORTS AND EXPORTS; AND USER FEES

**Go to the CFR Archive Directory**

*7 CFR 354.3*

THERE ARE MULTIPLE VERSIONS OF THIS DOCUMENT.

§ 354.3 User fees for certain international services. [Effective until Mar. 1, 2007.]

[PUBLISHER'S NOTE: This section was amended at *71 FR 50320, 50328,* Aug. 25, 2006, effective Nov. 24, 2006. *71 FR 67436,* Nov. 22, 2006, delayed the effective date of the amendment appearing at *71 FR 50320* until Mar. 1, 2007, except for the amendments to paragraphs (f)(2) and (f)(3), which are delayed until Jan. 1, 2007. For the convenience of the user, the section has been set out twice. The version effective until Mar. 1, 2007, immediately follows this note. For the version effective Mar. 1, 2007, see the version following this section, also numbered § 354.3.]

(a) Definitions. Whenever in this section the following terms are used, unless the context otherwise requires, they shall be construed, respectively, to mean:

APHIS. The Animal and Plant Health Inspection Service of the United States Department of Agriculture.

Arrival. Arrival at a port of entry in the customs territory of the United States, or at any place served by a port of entry as specified in *19 CFR 101.3.*

Calendar year. The period from January 1 to December 31, inclusive, of any particular year.

Commercial aircraft. Any aircraft used to transport persons or property for compensation or hire.

Commercial purpose. The intention of receiving compensation, or making a gain or profit.

Commercial railroad car. A railroad car used or capable of being used for transporting property for compensation or hire.

Commercial shipment. A shipment for gain or profit.

Commercial truck. A self-propelled vehicle, designed and used for transporting property for compensation or hire. Empty trucks and truck cabs without trailers fitting this description are included.

Commercial vessel. Any watercraft or other contrivance used or capable of being used as a means of transportation on water to transport property for compensation or hire, with the exception of any aircraft or ferry.

Customs. The Bureau of Customs and Border Protection, U.S. Department of Homeland Security.

Customs territory of the United States. The 50 States, the District of Columbia, and Puerto Rico.

Designated State or county inspector. A State or county plant regulatory official designated by the Secretary of Agriculture to inspect and certify to shippers and other interested parties as to the phytosanitary condition of plant products inspected under the Plant Protection Act.

Export certificate for processed plant products. A certificate (PPQ Form 578) issued by an inspector, describing the plant health condition of processed or manufactured plant products based on inspection of submitted samples and/or by virtue of the processing received.

Person. An individual, corporation, partnership, trust, association, or any other public or private entity, or any officer, employee, or agent thereof.

Phytosanitary certificate. A certificate (PPQ Form 577) issued by an inspector, giving the phytosanitary condition of domestic plants or unprocessed or unmanufactured plant products based on inspection of the entire lot or representative samples drawn by a Federal or State employee authorized to conduct such sampling.

Phytosanitary certificate for reexport. A certificate (PPQ Form 579) issued by an inspector, giving the phytosanitary condition of foreign plants and plant products legally imported into the United States and subsequently offered for reexport. The certificate certifies that, based on the original foreign phytosanitary certificate and/or additional inspection or treatment in the United States, the plants and plant products are considered to conform to the current phytosanitary regulations of the receiving country and have not been subjected to the risk of infestation or infection during storage in the United States. Plants and plant products which transit the United States under Customs bond are not eligible to receive the phytosanitary certificate for reexport.

(b) Fee for inspection of commercial vessels of 100 net tons or more. (1) Except as provided in paragraph (b)(2) of this section, the master, licensed deck officer, or purser of any commercial vessel which is subject to inspection under part 330 of this chapter or 9 CFR chapter I, subchapter D, and which is either required to make entry at the customs house under *19 CFR 4.3* or is a United States-flag vessel proceeding coastwise under *19 CFR 4.85*, shall, upon arrival, proceed to Customs and pay an agricultural quarantine and inspection (AQI) user fee. The AQI user fee for each arrival, not to exceed 15 payments in a calendar year (i.e., no additional fee will be charged for a 16th or subsequent arrival in a calendar year), is shown in the following table. The AQI user fee shall be collected at each port of arrival.

| *Effective dates* | *Amount* |
|---|---|
| January 1, 2005, through September 30, 2005 | $ 486.00 |
| October 1, 2005, through September 30, 2006 | 488.00 |
| October 1, 2006, through September 30, 2007 | 490.00 |
| October 1, 2007, through September 30, 2008 | 492.00 |
| October 1, 2008, through September 30, 2009 | 494.00 |
| October 1, 2009, through September 30, 2010 | 496.00 |

(2) The following categories of commercial vessels are exempt from paying an AQI user fee:

(i) Foreign passenger vessels making at least three trips a week from a port in the United States to the high seas (including "cruises to nowhere") and returning to the same port in the United States, not having touched any foreign port or place other than in Canada, or taken on any stores other than in Canada;

(ii) Any vessel which, at the time of arrival, is being used solely as a tugboat;

(iii) Vessels used exclusively in the governmental service of the United States or a foreign government, including any agency or political subdivision of the United States or a foreign government, so long as the vessel is not carrying persons or merchandise for commercial purposes;

(iv) Vessels arriving in distress or to take on bunkers, sea stores, or ship's stores;

(v) Tugboats towing vessels on the Great Lakes; and

(vi) Any vessel which sails only between United States and Canadian ports, when the Master of such vessel arriving from Canada certifies, in the "Particulars of Voyage" block of the Vessel Entrance or Clearance Statement, CBP Form 1300, that the vessel has sailed solely between the United States and Canada for the previous 2 years.

(c) Fee for inspection of commercial trucks. (1) Except as provided in paragraph (c)(2) of this section, the driver or other person in charge of a commercial truck that is entering the customs territory of the United States and that is subject to inspection under part 330 of this chapter or under 9 CFR, chapter I, subchapter D, must, upon arrival, proceed to Customs and pay an AQI user fee for each arrival, as shown in the following table:

| Effective dates | Amount |
|---|---|
| January 1, 2005, through September 30, 2005 | $ 5.00 |
| October 1, 2005, through September 30, 2006 | 5.25 |
| October 1, 2006, through September 30, 2007 | 5.25 |
| October 1, 2007, through September 30, 2008 | 5.25 |
| October 1, 2008, through September 30, 2009 | 5.25 |
| October 1, 2009, through September 30, 2010 | 5.25 |

(2) The following categories of commercial trucks are exempt from paying an AQI user fee:

(i) Trucks entering the customs territory of the United States from Canada.

(ii) [Reserved]

(3) Prepayment.

(i) The owner or operator of a commercial truck, if entering the customs territory of the United States from Mexico and applying for a prepaid Customs permit for a calendar year, must apply for a prepaid AQI permit for the same calendar year. Applicants must apply to Customs for prepaid AQI permits. n1 The following information must be provided, together with payment of an amount 20 times the AQI user fee for each arrival:

n1 Applicants should refer to Customs and Border Protection regulations (19 CFR part 24) for specific instructions.

(A) Vehicle make, model, and model year.

(B) Vehicle Identification Number (VIN).

(C) License numbers issued by State, Province, or country.

(D) Owner's name and address.

(ii) No credit toward the prepaid AQI permit will be given for user fees paid for individual arrivals.

(d) Fee for inspection of commercial railroad cars. (1) Except as provided in paragraph (d)(2) of this section, an AQI user fee will be charged for each loaded commercial railroad car which is subject to inspection under part 330 of this chapter or under 9 CFR chapter I, subchapter D, upon each arrival. The railroad company receiving a commercial railroad car in interchange at a port of entry or, barring interchange, the railroad company moving a commercial railroad car in line haul service into the customs territory of the United States, is responsible for paying the AQI user fee. The AQI user fee for each arrival of a loaded railroad car is shown in the following table. If the AQI user fee is prepaid for all arrivals of a commercial railroad car during a calendar year, the AQI user fee is an amount 20 times the AQI user fee for each arrival.

| Effective dates | Amount |
|---|---|
| January 1, 2005, through September 30, 2005 | $ 7.50 |
| October 1, 2005, through September 30, 2006 | 7.50 |
| October 1, 2006, through September 30, 2007 | 7.75 |
| October 1, 2007, through September 30, 2008 | 7.75 |
| October 1, 2008, through September 30, 2009 | 7.75 |
| October 1, 2009, through September 30, 2010 | 7.75 |

(2) The following categories of commercial railroad cars are exempt from paying an AQI user fee:

(i) Commercial railroad cars entering the customs territory of the United States from Canada;

(ii) Any commercial railroad car that is part of a train whose journey originates and terminates in the United States, if --

(A) The commercial railroad car is part of the train when the train departs the United States; and

(B) No passengers board or disembark from the commercial railroad car, and no cargo is loaded or unloaded from the commercial railroad car, while the train is within any country other than the United States; and

(iii) Locomotives and cabooses.

(3) Prepayment.

(i) Railroad companies may, at their option, prepay the AQI user fee for each commercial railroad car for a calendar year. This payment must be remitted in accordance with paragraph (d)(5) of this section.

(ii) No credit toward the calendar year AQI user fee will be given for AQI user fees paid for individual arrivals.

(4) Statement procedures. The Association of American Railroads (AAR), and the National Railroad Passenger Corporation (AMTRAK), shall file monthly statements with the U.S. Bank, United States Department of Agriculture (USDA), APHIS, AQI, P.O. Box 952181, St. Louis, MO 63195-2181, within 60 days after the end of each calendar month. Each statement shall indicate:

(i) The number of loaded commercial railroad cars entering the customs territory of the United States from Mexico during the relevant period;

(ii) The number of those commercial railroad cars pulled by each railroad company; and

(iii) The total monthly AQI user fee due from each railroad company.

(5) Remittance procedures. Individual railroad companies shall remit the AQI user fees calculated by AAR, and AMTRAK shall remit the AQI user fees it has calculated, within 60 days after the end of each calendar month in which commercial railroad cars entered the customs territory of the United States. AQI user fees, together with monthly statements, must be remitted to the U.S. Bank, United States Department of Agriculture (USDA), APHIS, AQI, P.O. Box 952181, St. Louis, MO 63195-2181.

(6) Compliance. AAR, AMTRAK, and each railroad company responsible for making AQI user fee payments must allow APHIS personnel to verify the accuracy of AQI user fees collected and remitted and otherwise determine compliance with *21 U.S.C. 136a* and this paragraph. The AAR, AMTRAK, and each railroad company responsible for making AQI user fee payments must advise the U.S. Bank, United States Department of Agriculture (USDA), APHIS, AQI, P.O. Box 952181, St. Louis, MO 63195-2181, of the name, address, and telephone number of a responsible officer who is authorized to verify AQI user fee calculations, collections, and remittances, as well as any changes in the identifying information submitted.

(e) Fee for inspection of commercial aircraft. (1) Except as provided in paragraph (e)(2) of this section, an AQI user fee will be charged for each commercial aircraft which is arriving, or which has arrived and is proceeding from one United States airport to another under a Bureau of Customs and Border Protection "Permit to Proceed," as specified in *19 CFR 122.81* through *122.85*, or an "Agricultural Clearance or Safeguard Order" (PPQ Form 250), used pursuant to § 330.400 of this chapter and *9 CFR 94.5*, and which is subject to inspection under part 330 of this chapter or 9 CFR chapter I, subchapter D. Each carrier is responsible for paying the AQI user fee. The AQI user fee for each arrival is shown in the following table:

| Effective dates | Amount |
|---|---|
| January 1, 2005, through September 30, 2005 | $ 70.00 |
| October 1, 2005, through September 30, 2006 | 70.25 |
| October 1, 2006, through September 30, 2007 | 70.50 |
| October 1, 2007, through September 30, 2008 | 70.50 |
| October 1, 2008, through September 30, 2009 | 70.75 |
| October 1, 2009, through September 30, 2010 | 70.75 |

(2) The following categories of commercial aircraft are exempt from paying an AQI user fee:

(i) Any aircraft moving solely between the United States and Canada;

(ii) Any aircraft used exclusively in the governmental services of the United States or a foreign government, including any Agency or political subdivision of the United States or a foreign government, as long as the aircraft is not carrying persons or merchandise for commercial purposes;

(iii) Any aircraft making an emergency or forced landing when the original destination of the aircraft was a foreign port;

(iv) Any passenger aircraft with 64 or fewer seats, which is not carrying the following cargo: Fresh fruits, fresh vegetables, plants, unprocessed plant products, cotton or covers, sugarcane, or fresh or processed meats; and which does not offer meal service other than beverages and prepackaged snacks that do not contain meats derived from ruminants, swine, or poultry or fresh fruits and fresh vegetables. Aircraft exempt from the user fee under this paragraph would still be subject to the garbage handling requirements found in § 330.400 of this chapter and *9 CFR 94.5*;

(v) Any aircraft moving from the United States Virgin Islands to Puerto Rico; and

(vi) Any aircraft making an intransit stop at a port of entry, during which the aircraft does not proceed through any portion of the Federal clearance process, such as inspection or clearance by APHIS or the Bureau of Customs and Border Protection, no cargo is removed from or placed on the aircraft, no passengers get on or off the aircraft, no crew members get on or off the aircraft, no food is placed on the aircraft, and no garbage is removed from the aircraft.

(3) Remittance and statement procedures. (i) Each carrier must remit the appropriate fees to the U.S. Bank, United States Department of Agriculture (USDA), APHIS, AQI, P.O. Box 952181, St. Louis, MO 63195-2181, for receipt no later than 31 days after the close of the calendar quarter in which the aircraft arrivals occurred. Late payments will be subject to interest, penalty, and handling charges as provided in the Debt Collection Act of 1982, as amended by the Debt Collection Improvement Act of 1996 *(31 U.S.C. 3717)*.

(ii) The remitter must mail with the remittance a written statement to the U.S. Bank, United States Department of Agriculture (USDA), APHIS, AQI, P.O. Box 952181, St. Louis, MO 63195-2181. The statement must include the following information:

(A) Name and address of the person remitting payment;

(B) Taxpayer identification number of the person remitting payment;

(C) Calendar quarter covered by the payment;

(D) Ports of entry at which inspections occurred;

(E) Number of arrivals at each port; and

(F) Amount remitted.

(iii) Remittances must be made by check or money order, payable in United States dollars, through a United States bank, to "The Animal and Plant Health Inspection Service."

(4) Compliance. Each carrier subject to this section must allow APHIS personnel to verify the accuracy of the AQI user fees remitted and to otherwise determine compliance with *21 U.S.C. 136a* and this paragraph. Each carrier must advise the U.S. Bank, United States Department of Agriculture (USDA), APHIS, AQI, P.O. Box 952181, St. Louis, MO 63195-2181, of the name, address, and telephone number of a responsible officer who is authorized to verify AQI user fee calculations and remittances, as well as any changes in the identifying information submitted.

(5) Limitations on charges. (i) Airlines will not be charged reimbursable overtime for inspection of aircraft if the aircraft is subject to the AQI user fee for arriving aircraft as prescribed by this section.

(ii) Airlines will not be charged reimbursable overtime for inspection of cargo from an aircraft if:

(A) The aircraft is subject to the AQI user fee for arriving aircraft as prescribed by this section; and

(B) The cargo is inspected between 8 a.m. and 4:30 p.m., Monday through Friday; or

(C) The cargo is inspected concurrently with the aircraft.

(f) Fee for inspection of international passengers. (1) Except as specified in paragraph (f)(2) of this section, each passenger aboard a commercial aircraft who is subject to inspection under part 330 of this chapter or 9 CFR, chapter I,

subchapter D, upon arrival from a place outside of the customs territory of the United States, must pay an AQI user fee. The AQI user fee for each arrival is shown in the following table:

| Effective dates fn1 | Amount |
|---|---|
| January 1, 2005, through September 30, 2005 | $ 4.95 |
| October 1, 2005, through September 30, 2006 | 5.00 |
| October 1, 2006, through September 30, 2007 | 5.00 |
| October 1, 2007, through September 30, 2008 | 5.00 |
| October 1, 2008, through September 30, 2009 | 5.00 |
| October 1, 2009, through September 30, 2010 | 5.00 |

fn1 Persons who issue international airline tickets or travel documents are responsible for collecting the AQI international airline passenger user fee from ticket purchasers. Issuers must collect the fee applicable at the time tickets are sold. In the event that ticket sellers do not collect the AQI user fee when tickets are sold, the air carrier must collect the user fee from the passenger upon departure. Carriers must collect the fee applicable at the time of departure from the traveler.

(2) The following categories of passengers are exempt from paying an AQI user fee:

(i) [Reserved]

(ii) Crew members who are on duty on a commercial aircraft;

(iii) Airline employees, including "deadheading" crew members, who are traveling on official airline business;

(iv) Diplomats, except for United States diplomats, who can show that their names appear on the accreditation listing maintained by the United States Department of State. In lieu of the accreditation listing, an individual diplomat may present appropriate proof of diplomatic status to include possession of a diplomatic passport or visa, or diplomatic identification card issued by a foreign government;

(v) Passengers departing and returning to the United States without having touched a foreign port or place;

(vi) Passengers arriving on any commercial aircraft used exclusively in the governmental service of the United States or a foreign government, including any agency or political subdivision of the United States or a foreign government, so long as the aircraft is not carrying persons or merchandise for commercial purposes. Passengers on commercial aircraft under contract to the United States Department of Defense (DOD) are exempted if they have been precleared abroad under the joint DOD/APHIS Military Inspection Program;

(vii) Passengers arriving on an aircraft due to an emergency or forced landing when the original destination of the aircraft was a foreign port;

(viii) Passengers transiting the United States and not subject to inspection; and

(ix) Passengers moving from the United States Virgin Islands to Puerto Rico.

(3) AQI user fees shall be collected under the following circumstances:

(i) When through tickets or travel documents are issued indicating travel to the customs territory of the United States that originates in any foreign country; and

(ii) When passengers arrive in the customs territory of the United States in transit from a foreign country and are inspected by APHIS or Customs.

(4) Collection of fees. (i) Any person who issues tickets or travel documents on or after May 13, 1991, is responsible for collecting the AQI user fee from all passengers transported into the customs territory of the United States to whom the AQI user fee applies.

(A) Tickets or travel documents must be marked by the person who collects the AQI user fee to indicate that the required AQI user fee has been collected from the passenger.

(B) If the AQI user fee applies to a passenger departing from the United States and if the passenger's tickets or travel documents were issued on or after May 13, 1991, but do not reflect collection of the AQI user fee at the time of

issuance, then the carrier transporting the passenger from the United States must collect the AQI user fee upon departure.

(C) AQI user fees collected from international passengers pursuant to paragraph (f) of this section shall be held in trust for the United States by the person collecting such fees, by any person holding such fees, or by the person who is ultimately responsible for remittance of such fees to APHIS. AQI user fees collected from international passengers shall be accounted for separately and shall be regarded as trust funds held by the person possessing such fees as agents, for the beneficial interest of the United States. All such user fees held by any person shall be property in which the person holds only a possessory interest and not an equitable interest. As compensation for collecting, handling, and remitting the AQI user fees for international passengers, the person holding such user fees shall be entitled to any interest or other investment return earned on the user fees between the time of collection and the time the user fees are due to be remitted to APHIS under this section. Nothing in this section shall affect APHIS' right to collect interest for late remittance.

(5) Remittance and statement procedures. (i) The carrier whose ticket stock or travel document reflects collection of the AQI user fee must remit the fee to the U.S. Bank, United States Department of Agriculture (USDA), APHIS, AQI, P.O. Box 952181, St. Louis, MO 63195-2181. The travel agent, United States-based tour wholesaler, or other entity, which issues its own non-carrier related ticket or travel document to a passenger who is subject to an AQI user fee under this part, must remit the fee to APHIS, unless by contract the carrier will remit the fee.

(ii) AQI user fees must be remitted to the U.S. Bank, United States Department of Agriculture (USDA), APHIS, AQI, P.O. Box 952181, St. Louis, MO 63195-2181, for receipt no later than 31 days after the close of the calendar quarter in which the AQI user fees were collected. Late payments will be subject to interest, penalty, and handling charges as provided in the Debt Collection Act of 1982, as amended by the Debt Collection Improvement Act of 1996 *(31 U.S.C. 3717)*. Refunds by a remitter of AQI user fees collected in conjunction with unused tickets or travel documents shall be netted against the next subsequent remittance.

(iii) The remitter must mail with the remittance a written statement to the U.S. Bank, United States Department of Agriculture (USDA), APHIS, AQI, P.O. Box 952181, St. Louis, MO 63195-2181. The statement must include the following information:

(A) Name and address of the person remitting payment;

(B) Taxpayer identification number of the person remitting payment;

(C) Calendar quarter covered by the payment; and

(D) Amount collected and remitted.

(iv) Remittances must be made by check or money order, payable in United States dollars, through a United States bank, to "The Animal and Plant Health Inspection Service."

(6) Carriers contracting with United States-based tour wholesalers are responsible for notifying the U.S. Bank, United States Department of Agriculture (USDA), APHIS, AQI, P.O. Box 952181, St. Louis, MO 63195-2181, of all flights contracted, the number of spaces contracted for, and the name, address, and taxpayer identification number of the United States-based tour wholesaler, within 31 days after the close of the calendar quarter in which such a flight occurred; except that, carriers are not required to make notification if tickets, marked to show collection of the AQI user fee, are issued for the individual contracted spaces.

(7) Compliance. Each carrier, travel agent, United States-based tour wholesaler, or other entity subject to this section must allow APHIS personnel to verify the accuracy of the AQI user fees collected and remitted and to otherwise determine compliance with *21 U.S.C. 136a* and this paragraph. Each carrier, travel agent, United States-based tour wholesaler, or other entity must advise the U.S. Bank, United States Department of Agriculture (USDA), APHIS, AQI, P.O. Box 952181, St. Louis, MO 63195-2181, of the name, address, and telephone number of a responsible officer who is authorized to verify AQI user fee calculations, collections, and remittances, as well as any changes in the identifying information submitted.

(8) Limitation on charges. Airlines will not be charged reimbursable overtime for passenger inspection services required for any aircraft on which a passenger arrived who has paid the airline passenger AQI user fee for that flight.

(g) Fees for export certification of plants and plant products. (1) For each certificate issued by APHIS personnel, the recipient must pay the applicable AQI user fee at the time and place the certificate is issued, or, in the case of a block of certificates, at the time the certificates are given to the shipper.

(2) There is no AQI user fee for a certificate issued by a designated State or county inspector.

(3) If a designated State inspector issues a certificate, the State where the certificate is issued may charge for inspection services provided in that State.

(4) Any State which wishes to charge a fee for services it provides to issue certificates must establish fees in accordance with one of the following guidelines:

(i) Calculation of a "cost-per-certificate" fee. The State must:

(A) Estimate the annual number of certificates to be issued;

(B) Determine the total cost of issuing certificates by adding together delivery, n2 support, n3 and administrative n4 costs; and

n2 Delivery costs are costs such as employee salary and benefits, transportation, per diem, travel, purchase of specialized equipment, and user fee costs associated with maintaining field offices. Delivery hours are similar hours taken by inspectors, including travel time, inspection time, and time taken to complete paperwork.

n3 Support costs are costs at supervisory levels which are similar to delivery costs, and user fee costs such as training, automated data processing, public affairs, enforcement, legal services, communications, postage, budget and accounting services, and payroll, purchasing, billing, and collecting services. Support hours are similar hours taken at supervisory levels, as well as hours taken in training, automated data processing, enforcement, legal services, communication, budgeting and accounting, payroll purchasing, billing, and collecting.

n4 Administrative costs are costs incurred as a direct result of collecting and monitoring Federal phytosanitary certificates. Administrative hours are hours taken as a direct result of collecting and monitoring Federal phytosanitary certificates.

(C) Divide the cost of issuing certificates by the estimated number of certificates to be issued to obtain a "raw" fee. The State may round the "raw" fee up to the nearest quarter, if necessary for ease of calculation, collection, or billing; or

(ii) Calculation of a "cost-per-hour" fee. The State must:

(A) Estimate the annual number of hours taken to issue certificates by adding together delivery,<2> support,<3> and administrative <4> hours;

(B) Determine the total cost of issuing certificates by adding together delivery, support, and administrative costs; and

(C) Divide the cost of issuing certificates by the estimated number of hours taken to issue certificates to obtain a "cost-per-hour" fee. The State may round the "cost-per-hour" fee up to the nearest quarter, if necessary for ease of calculation, collection, or billing.

(5) The AQI user fees are:

(i)(A) $ 50 for a certificate for a commercial shipment; or

(B) $ 23 for a certificate for a low-value commercial shipment, if the following criteria are met:

(1) The items being shipped are identical to those identified on the phytosanitary certificate;

(2) The shipment is accompanied by an invoice which states that the items being shipped are worth less than $ 1,250; and

(3) The shipper requests that user fee charged be based on the low value of the shipment;

(ii) $ 23 for a certificate for a noncommercial shipment;

(iii)(A) $ 50 for a certificate for reexport of a commercial shipment; or

(B) $ 23 for a certificate for reexport of a low value commercial shipment, if the following criteria are met:

(1) The items being shipped are identical to those identified on the phytosanitary certificate;

(2) The shipment is accompanied by an invoice which states that the items being shipped are worth less than $ 1,250; and

(3) The shipper requests that the user fee charged be based on the low value of the shipment;

(iv) $ 50 for a processed product certificate for a commercial shipment; and

(v) $ 7 for reissuing any certificate or certificate for reexport.

(h) Refunds of AQI user fees. (1) A shipper who pays for a block of certificates to cover commercial shipments may obtain a refund or a credit against future AQI user fees under the following circumstances:

(i) If a certificate from the block is voided;

(ii) If a certificate from the block is returned unused;

(iii) If the shipper pays for inspection outside of normal business hours (8 a.m. to 4:30 p.m.) under § 354.1 of this part.

(iv) If a certificate from the block is used for a noncommercial shipment; or

(v) If a certificate from the block is used to reissue another certificate.

(2) The amount of any refund or credit will be the amount overcharged, less $ 7 to cover APHIS administrative expenses.

(i) Payment methods. For payment of any of the AQI user fees required in paragraph (g) of this section, we will accept personal checks for amounts less than $ 100, and checks drawn on commercial accounts, cashier's checks, certified checks, traveler's checks, and money orders for any amount. All payments must be for the exact amount due.

(j) The person for whom the service is provided and the person requesting the service are jointly and severally liable for payment of user fees for any import or entry services listed below, of $ 56 per hour, or $ 14 per quarter hour, with a minimum fee of $ 14 for each employee required to perform the following services. If the services must be conducted on a Sunday or holiday or at any other time outside the normal tour of duty of the employee, then the premium user fee rate as listed below applies, as well as the 2-hour minimum charge and a commuted traveltime period required by § 354.1(a)(2). If the services requested are performed on a Sunday, the hourly user fee rate will be $ 74, or $ 18.50 per quarter hour, with a $ 18.50 minimum. If the services requested are performed on a day other than Sunday outside the normal tour of duty of the employee providing the service, the hourly user fee rate will be $ 65, or $ 16.25 per quarter hour, with a $ 16.25 minimum:

(1) Conducting inspections, on vessels or in storage areas, of solid wood packing material or cargo when a shipment arrives without a certificate or exporter statement required under § 319.40-5(g) or § 319.40-5(h) of this chapter, or with an incomplete certificate or exporter statement; and

(2) Supervising the separation of cargo from solid wood packing material denied entry under this subpart and the destruction or reexportation of the solid wood packing material. (Approved by the Office of Management and Budget under control numbers 1651-0019, 0579-0094, or 0579-0052).

**HISTORY:** *[56 FR 14844,* Apr. 12, 1991, as amended at *57 FR 769, 770,* Jan. 9, 1992; *57 FR 62472, 62473,* Dec. 31, 1992; *58 FR 62472,* Dec. 31, 1992 as finalized at *58 FR 59356,* Nov. 11, 1993; *58 FR 14307,* Mar. 17, 1993; *58 FR 38270,* July 16, 1993; *61 FR 2660, 2664,* Jan. 29, 1996; *61 FR 15365, 15371,* Apr. 8, 1996; *62 FR 39747, 39754,* July 24, 1997; *63 FR 50100, 50111,* Sept. 18, 1998; *64 FR 62089, 62096,* Nov. 16, 1999; *66 FR 21049, 21060,* Apr. 27, 2001; *67 FR 56217, 56218,* Sept. 3, 2002, as confirmed at *68 FR 3375,* Jan. 24, 2003; *69 FR 71660, 71679,* Dec. 9, 2004; *71 FR 67436,* Nov. 22, 2006]

**AUTHORITY:** AUTHORITY NOTE APPLICABLE TO ENTIRE PART:
*7 U.S.C. 7701-7772,* 7781-7786, and 8301-8317; *21 U.S.C. 136* and 136a; *49 U.S.C. 80503; 7 CFR 2.22, 2.80,* and *371.3.*

**NOTES:** [EFFECTIVE DATE NOTE: *69 FR 71660, 71679,* Dec. 9, 2004, revised this section, effective Jan. 1, 2005; *71 FR 67436,* Nov. 22, 2006, amended paragraph (f)(2) and revised paragraph (f)(3), effective Jan. 1, 2007.]
NOTES APPLICABLE TO ENTIRE TITLE:
CROSS REFERENCES: Animal and Plant Health Inspection Service, Department of Agriculture, see 7 CFR chapter III; 9 CFR chapter I.
Commodity Futures Trading Commission, see 17 CFR chapter I.
Commodity Credit Corporation, Department of Agriculture, see 7 CFR chapter XIV.
Customs Service, Department of the Treasury, see 19 CFR chapter I.
Farm Credit Administration, see 12 CFR chapter VI.
Farmers Home Administration, Department of Agriculture, see 7 CFR chapter XVIII.
Federal Crop Insurance Corporation, Department of Agriculture, see 7 CFR chapter IV.
Fish and Wildlife Service, Department of the Interior, see 50 CFR chapters I and IV.
Food and Drug Administration, Department of Health and Human Services, see 21 CFR chapter I.
Food Safety and Inspection Service, Meat and Poultry Inspection, Department of Agriculture, see 9 CFR chapter III.
Forest Service, Department of Agriculture, see 36 CFR chapter II.
Rural Electrification Administration, Department of Agriculture, see 7 CFR chapter XVII.
Soil Conservation Service, Department of Agriculture, see 7 CFR chapter VI.
United States International Trade Commission, see 19 CFR chapter II.
Other regulations issued by the Department of Agriculture appear in chapters I to XLI of title 7, and chapter 4 of title 48.

NOTES APPLICABLE TO ENTIRE PART:
[PUBLISHER'S NOTE: For Federal Register citations concerning Part 354 clarifications, see *63 FR 56781,* Oct. 23, 1998.]

5624 words

LEXSTAT

LEXISNEXIS' CODE OF FEDERAL REGULATIONS
Copyright (c) 2006, by Matthew Bender & Company, a member
of the LexisNexis Group. All rights reserved.

*** THIS SECTION IS CURRENT THROUGH THE JANUARY 2, 2007 ISSUE OF ***
*** THE FEDERAL REGISTER ***

TITLE 8 -- ALIENS AND NATIONALITY
CHAPTER I -- DEPARTMENT OF HOMELAND SECURITY (IMMIGRATION AND NATURALIZATION)
SUBCHAPTER B -- IMMIGRATION REGULATIONS
PART 215 -- CONTROLS OF ALIENS DEPARTING FROM THE UNITED STATES

**Go to the CFR Archive Directory**

8 CFR 215.2

§ 215.2 Authority of departure-control officer to prevent alien's departure from the United States.

(a) No alien shall depart, or attempt to depart, from the United States if his departure would be prejudicial to the interests of the United States under the provisions of § 215.3. Any departure-control officer who knows or has reason to believe that the case of an alien in the United States comes within the provisions of § 215.3 shall temporarily prevent the departure of such alien from the United States and shall serve him with a written temporary order directing him not to depart, or attempt to depart, from the United States until notified of the revocation of the order.

(b) The written order temporarily preventing an alien, other than an enemy alien, from departing from the United States shall become final 15 days after the date of service thereof upon the alien, unless prior thereto the alien requests a hearing as hereinafter provided. At such time as the alien is served with an order temporarily preventing his departure from the United States, he shall be notified in writing concerning the provisions of this paragraph, and shall be advised of his right to request a hearing if entitled thereto under § 215.4. In the case of an enemy alien, the written order preventing departure shall become final on the date of its service upon the alien.

(c) Any alien who seeks to depart from the United States may be required, in the discretion of the departure-control officer, to be examined under oath and to submit for official inspection all documents, articles, and other property in his possession which are being removed from the United States upon, or in connection with, the alien's departure. The departure-control officer may permit certain other persons, including officials of the Department of State and interpreters, to participate in such examination or inspection and may exclude from presence at such examination or inspection any person whose presence would not further the objectives of such examination or inspection. The departure-control officer shall temporarily prevent the departure of any alien who refuses to submit to such examination or inspection, and may, if necessary to the enforcement of this requirement, take possession of the alien's passport or other travel document.

**HISTORY:** [45 FR 65516, Oct. 3, 1980]

**AUTHORITY:** AUTHORITY NOTE APPLICABLE TO ENTIRE PART:
8 U.S.C. 1104; 1184; 1185 (pursuant to Executive Order 13323, published January 2, 2004), 1365a note, 1379, 1731-32.

**NOTES:** NOTES APPLICABLE TO ENTIRE TITLE:
Other regulations issued by the Department of Justice appear in title 4, chapter II, title 21, chapter II, and title 28, chapters I, III, and V.

NOTES APPLICABLE TO ENTIRE CHAPTER:

CROSS REFERENCE: For State Department regulations pertaining to visas and Nationality and Passports, see 22 CFR, chapter I, subchapters E and F.

This table shows sections of title 8 of the United States Code and corresponding sections of the Immigration and Nationality Act and of parts in subchapters A, B, and C of chapter I of title 8 of the Code of Federal Regulations. Those sections of title 8 of the United States Code bearing an asterisk do not have a corresponding part in chapter I of title 8 of the Code of Federal Regulations.

| Section 8 USC | Sections I. & N. Act and 8 CFR |
|---|---|
| 1101* | 101 |
| 1102* | 102 |
| 1103* | 103 |
| 1104* | 104 |
| 1105* | 105 |
| 1105a* | 106 |
| 1151 | 201 |
| 1152* | 202 |
| 1153* | 203 |
| 1154 | 204 |
| 1155* | 205 |
| 1156* | 206 |
| 1181 | 211 |
| 1182 | 212 |
| 1183 | 213 |
| 1184 | 214 |
| 1185 | 215 |
| 1201 | 221 |
| 1202* | 222 |
| 1203 | 223 |
| 1204* | 224 |
| 1221 | 231 |
| 1222 | 232 |
| 1223 | 233 |
| 1224 | 234 |
| 1225 | 235 |
| 1226 | 236 |
| 1227 | 237 |
| 1228 | 238 |
| 1229 | 239 |
| 1230* | 240 |
| 1251 | 241 |
| 1252 | 242 |
| 1253 | 243 |
| 1254 | 244 |
| 1255 | 245 |
| 1256 | 246 |
| 1257 | 247 |
| 1258 | 248 |
| 1259 | 249 |
| 1260 | 250 |
| 1281 | 251 |
| 1282 | 252 |
| 1283 | 253 |
| 1284* | 254 |

| Section 8 USC | Sections I. & N. Act and 8 CFR |
|---|---|
| 1285* | 255 |
| 1286* | 256 |
| 1287* | 257 |
| 1301* | 261 |
| 1302* | 262 |
| 1303* | 263 |
| 1304 | 264 |
| 1305 | 265 |
| 1306* | 266 |
| 1321* | 271 |
| 1322* | 272 |
| 1323* | 273 |
| 1324 | 274 |
| 1325* | 275 |
| 1326* | 276 |
| 1327* | 277 |
| 1328* | 278 |
| 1329* | 279 |
| 1330 | 280 |
| 1351* | 281 |
| 1352 | 282 |
| 1353* | 283 |
| 1354* | 284 |
| 1355* | 285 |
| 1356* | 286 |
| 1357 | 287 |
| 1358* | 288 |
| 1359 | 289 |
| 1360* | 290 |
| 1361* | 291 |
| 1362 | 292 |
| 1401* | 301 |
| 1402* | 302 |
| 1403* | 303 |
| 1404* | 304 |
| 1405* | 305 |
| 1406 | 306 |
| 1407* | 307 |
| 1408* | 308 |
| 1409* | 309 |
| 1421* | 310 |
| 1422* | 311 |
| 1423 | 312 |
| 1424* | 313 |
| 1425* | 314 |
| 1426* | 315 |
| 1427 | 316 |
| 1428* | 317 |
| 1429 | 318 |
| 1430 | 319 |
| 1431* | 320 |
| 1432* | 321 |
| 1433 | 322 |

| Section 8 USC | Sections I. & N. Act and 8 CFR |
|---|---|
| 1434 | 323 |
| 1435 | 324 |
| 1436* | 325 |
| 1437 | 326 |
| 1438 | 327 |
| 1439 | 328 |
| 1440 | 329 |
| 1441 | 330 |
| 1442* | 331 |
| 1443 | 332 |
| 1444 | 333 |
| 1445 | 334 |
| 1446 | 335 |
| 1447 | 336 |
| 1448 | 337 |
| 1449 | 338 |
| 1450 | 339 |
| 1451 | 340 |
| 1452 | 341 |
| 1453 | 342 |
| 1454 | 343 |
| 1455 | 344 |
| 1457* | 346 |
| 1458* | 347 |
| 1459* | 348 |
| 1481 | 349 |
| 1482* | 350 |
| 1483* | 351 |
| 1484* | 352 |
| 1485* | 353 |
| 1486* | 354 |
| 1487* | 355 |
| 1488* | 356 |
| 1489* | 357 |
| 1501* | 358 |
| 1502* | 359 |
| 1503* | 360 |

373 words

LEXSTAT 8 CFR 215.3

LEXISNEXIS' CODE OF FEDERAL REGULATIONS
Copyright (c) 2006, by Matthew Bender & Company, a member
of the LexisNexis Group. All rights reserved.

*** THIS SECTION IS CURRENT THROUGH THE JANUARY 2, 2007 ISSUE OF ***
*** THE FEDERAL REGISTER ***

TITLE 8 -- ALIENS AND NATIONALITY
CHAPTER I -- DEPARTMENT OF HOMELAND SECURITY (IMMIGRATION AND NATURALIZATION)
SUBCHAPTER B -- IMMIGRATION REGULATIONS
PART 215 -- CONTROLS OF ALIENS DEPARTING FROM THE UNITED STATES

**Go to the CFR Archive Directory**

*8 CFR 215.3*

§ 215.3 Aliens whose departure is deemed prejudicial to the interests of the United States.

The departure from the United States of any alien within one or more of the following categories shall be deemed prejudicial to the interests of the United States.

(a) Any alien who is in possession of, and who is believed likely to disclose to unauthorized persons, information concerning the plans, preparation, equipment, or establishments for the national defense and security of the United States.

(b) Any alien who seeks to depart from the United States to engage in, or who is likely to engage in, activities of any kind designed to obstruct, impede, retard, delay or counteract the effectiveness of the national defense of the United States or the measures adopted by the United States or the United Nations for the defense of any other country.

(c) Any alien who seeks to depart from the United States to engage in, or who is likely to engage in, activities which would obstruct, impede, retard, delay, or counteract the effectiveness of any plans made or action taken by any country cooperating with the United States in measures adopted to promote the peace, defense, or safety of the United States or such other country.

(d) Any alien who seeks to depart from the United States for the purpose of organizing, directing, or participating in any rebellion, insurrection, or violent uprising in or against the United States or a country allied with the United States, or of waging war against the United States or its allies, or of destroying, or depriving the United States of sources of supplies or materials vital to the national defense of the United States, or to the effectiveness of the measures adopted by the United States for its defense, or for the defense of any other country allied with the United States.

(e) Any alien who is subject to registration for training and service in the Armed Forces of the United States and who fails to present a Registration Certificate (SSS Form No. 2) showing that he has complied with his obligation to register under the Universal Military Training and Service Act, as amended.

(f) Any alien who is a fugitive from justice on account of an offense punishable in the United States.

(g) Any alien who is needed in the United States as a witness in, or as a party to, any criminal case under investigation or pending in a court in the United States: Provided, That any alien who is a witness in, or a party to, any criminal case pending in any criminal court proceeding may be permitted to depart from the United States with the consent of the appropriate prosecuting authority, unless such alien is otherwise prohibited from departing under the provisions of this part.

(h) Any alien who is needed in the United States in connection with any investigation or proceeding being, or soon to be, conducted by any official executive, legislative, or judicial agency in the United States or by any governmental committee, board, bureau, commission, or body in the United States, whether national, state, or local.

(i) Any alien whose technical or scientific training and knowledge might be utilized by an enemy or a potential enemy of the United States to undermine and defeat the military and defensive operations of the United States or of any nation cooperating with the United States in the interests of collective security.

(j) Any alien, where doubt exists whether such alien is departing or seeking to depart from the United States voluntarily except an alien who is departing or seeking to depart subject to an order issued in extradition, exclusion, or deportation proceedings.

(k) Any alien whose case does not fall within any of the categories described in paragraphs (a) to (j), inclusive, of this section, but which involves circumstances of a similar character rendering the alien's departure prejudicial to the interests of the United States.

**HISTORY:** *[45 FR 65516*, Oct. 3, 1980]

**AUTHORITY:** AUTHORITY NOTE APPLICABLE TO ENTIRE PART:
*8 U.S.C. 1104;* 1184; 1185 (pursuant to Executive Order 13323, published January 2, 2004), 1365a note, 1379, 1731-32.

**NOTES:** NOTES APPLICABLE TO ENTIRE TITLE:
Other regulations issued by the Department of Justice appear in title 4, chapter II, title 21, chapter II, and title 28, chapters I, III, and V.

NOTES APPLICABLE TO ENTIRE CHAPTER:
CROSS REFERENCE: For State Department regulations pertaining to visas and Nationality and Passports, see 22 CFR, chapter I, subchapters E and F.
This table shows sections of title 8 of the United States Code and corresponding sections of the Immigration and Nationality Act and of parts in subchapters A, B, and C of chapter I of title 8 of the Code of Federal Regulations. Those sections of title 8 of the United States Code bearing an asterisk do not have a corresponding part in chapter I of title 8 of the Code of Federal Regulations.

| Section 8 USC | Sections I. & N. Act and 8 CFR |
|---|---|
| 1101* | 101 |
| 1102* | 102 |
| 1103* | 103 |
| 1104* | 104 |
| 1105* | 105 |
| 1105a* | 106 |
| 1151 | 201 |
| 1152* | 202 |
| 1153* | 203 |
| 1154 | 204 |
| 1155* | 205 |
| 1156* | 206 |
| 1181 | 211 |
| 1182 | 212 |
| 1183 | 213 |
| 1184 | 214 |
| 1185 | 215 |
| 1201 | 221 |
| 1202* | 222 |
| 1203 | 223 |
| 1204* | 224 |
| 1221 | 231 |

| Section 8 USC | Sections I. & N. Act and 8 CFR |
|---|---|
| 1222 | 232 |
| 1223 | 233 |
| 1224 | 234 |
| 1225 | 235 |
| 1226 | 236 |
| 1227 | 237 |
| 1228 | 238 |
| 1229 | 239 |
| 1230* | 240 |
| 1251 | 241 |
| 1252 | 242 |
| 1253 | 243 |
| 1254 | 244 |
| 1255 | 245 |
| 1256 | 246 |
| 1257 | 247 |
| 1258 | 248 |
| 1259 | 249 |
| 1260 | 250 |
| 1281 | 251 |
| 1282 | 252 |
| 1283 | 253 |
| 1284* | 254 |
| 1285* | 255 |
| 1286* | 256 |
| 1287* | 257 |
| 1301* | 261 |
| 1302* | 262 |
| 1303* | 263 |
| 1304 | 264 |
| 1305 | 265 |
| 1306* | 266 |
| 1321* | 271 |
| 1322* | 272 |
| 1323* | 273 |
| 1324 | 274 |
| 1325* | 275 |
| 1326* | 276 |
| 1327* | 277 |
| 1328* | 278 |
| 1329* | 279 |
| 1330 | 280 |
| 1351* | 281 |
| 1352 | 282 |
| 1353* | 283 |
| 1354* | 284 |
| 1355* | 285 |
| 1356* | 286 |
| 1357 | 287 |
| 1358* | 288 |
| 1359 | 289 |
| 1360* | 290 |
| 1361* | 291 |

8 CFR 215.3

| Section 8 USC | Sections I. & N. Act and 8 CFR |
|---|---|
| 1362 | 292 |
| 1401* | 301 |
| 1402* | 302 |
| 1403* | 303 |
| 1404* | 304 |
| 1405* | 305 |
| 1406 | 306 |
| 1407* | 307 |
| 1408* | 308 |
| 1409* | 309 |
| 1421* | 310 |
| 1422* | 311 |
| 1423 | 312 |
| 1424* | 313 |
| 1425* | 314 |
| 1426* | 315 |
| 1427 | 316 |
| 1428* | 317 |
| 1429 | 318 |
| 1430 | 319 |
| 1431* | 320 |
| 1432* | 321 |
| 1433 | 322 |
| 1434 | 323 |
| 1435 | 324 |
| 1436* | 325 |
| 1437 | 326 |
| 1438 | 327 |
| 1439 | 328 |
| 1440 | 329 |
| 1441 | 330 |
| 1442* | 331 |
| 1443 | 332 |
| 1444 | 333 |
| 1445 | 334 |
| 1446 | 335 |
| 1447 | 336 |
| 1448 | 337 |
| 1449 | 338 |
| 1450 | 339 |
| 1451 | 340 |
| 1452 | 341 |
| 1453 | 342 |
| 1454 | 343 |
| 1455 | 344 |
| 1457* | 346 |
| 1458* | 347 |
| 1459* | 348 |
| 1481 | 349 |
| 1482* | 350 |
| 1483* | 351 |
| 1484* | 352 |
| 1485* | 353 |

| Section 8 USC | Sections I. & N. Act and 8 CFR |
|---|---|
| 1486* | 354 |
| 1487* | 355 |
| 1488* | 356 |
| 1489* | 357 |
| 1501* | 358 |
| 1502* | 359 |
| 1503* | 360 |

642 words

LEXSTAT

LEXISNEXIS' CODE OF FEDERAL REGULATIONS
Copyright (c) 2006, by Matthew Bender & Company, a member
of the LexisNexis Group. All rights reserved.

*** THIS SECTION IS CURRENT THROUGH THE JANUARY 2, 2007 ISSUE OF ***
*** THE FEDERAL REGISTER ***

TITLE 8 -- ALIENS AND NATIONALITY
CHAPTER I -- DEPARTMENT OF HOMELAND SECURITY (IMMIGRATION AND NATURALIZATION)
SUBCHAPTER B -- IMMIGRATION REGULATIONS
PART 273 -- CARRIER RESPONSIBILITIES AT FOREIGN PORTS OF EMBARKATION; REDUCING, REFUNDING, OR WAIVING FINES UNDER SECTION 273 OF THE ACT

**Go to the CFR Archive Directory**

8 CFR 273.3

§ 273.3 Screening procedures.

(a) Applicability. The terms and conditions contained in paragraph (b) of this section apply to those owners, operators, or agents of carriers which transport passengers to the United States.

(b) Procedures at ports of embarkation. At each port of embarkation carriers shall take reasonable steps to prevent the boarding of improperly documented aliens destined to the United States by taking the following steps:

(1) Screening of passengers by carrier personnel prior to boarding and examination of their travel documents to ensure that:

(i) The passport or travel document presented is not expired and is valid for entry into the United States;

(ii) The passenger is the rightful holder; and

(iii) If the passenger requires a visa, the visa is valid for the holder and any other accompanying passengers named in the passport.

(2) Refusing to board any passenger determined to be improperly documented. Failure to refuse boarding when advised to do so by a Service or Consular Officer may be considered by the Service as a factor in its evaluation of applications under § 273.5.

(3) Implementing additional safeguards such as, but not necessarily limited to, the following:

(i) For instances in which the carrier suspects fraud, assessing the adequacy of the documents presented by asking additional, pertinent questions or by taking other appropriate steps to corroborate the identity of passengers, such as requesting secondary information.

(ii) Conducting a second check of passenger documents, when necessary at high-risk ports of embarkation, at the time of boarding to verify that all passengers are properly documented consistent with paragraph (b)(1) of this section. This includes a recheck of documents at the final foreign port of embarkation for all passengers, including those originally boarded at a prior stop or who are being transported to the United States under the Transit Without Visa (TWOV) or International-to-International (ITI) Programs.

(iii) Providing a reasonable level of security during the boarding process so that passengers are unable to circumvent any carrier document checks.

**HISTORY:** [63 FR 23643, 23655, Apr. 30, 1998]

**AUTHORITY:** AUTHORITY NOTE APPLICABLE TO ENTIRE PART:
8 U.S.C. 1103, 1323; 8 CFR part 2.

**NOTES:** [EFFECTIVE DATE NOTE: 63 FR 23643, 23655, Apr. 30, 1998, added Part 273, effective June 1, 1998.]
NOTES APPLICABLE TO ENTIRE TITLE:
Other regulations issued by the Department of Justice appear in title 4, chapter II, title 21, chapter II, and title 28, chapters I, III, and V.

NOTES APPLICABLE TO ENTIRE CHAPTER:
CROSS REFERENCE: For State Department regulations pertaining to visas and Nationality and Passports, see 22 CFR, chapter I, subchapters E and F.
This table shows sections of title 8 of the United States Code and corresponding sections of the Immigration and Nationality Act and of parts in subchapters A, B, and C of chapter I of title 8 of the Code of Federal Regulations. Those sections of title 8 of the United States Code bearing an asterisk do not have a corresponding part in chapter I of title 8 of the Code of Federal Regulations.

| Section 8 USC | Sections I. & N. Act and 8 CFR |
|---|---|
| 1101* | 101 |
| 1102* | 102 |
| 1103* | 103 |
| 1104* | 104 |
| 1105* | 105 |
| 1105a* | 106 |
| 1151 | 201 |
| 1152* | 202 |
| 1153* | 203 |
| 1154 | 204 |
| 1155* | 205 |
| 1156* | 206 |
| 1181 | 211 |
| 1182 | 212 |
| 1183 | 213 |
| 1184 | 214 |
| 1185 | 215 |
| 1201 | 221 |
| 1202* | 222 |
| 1203 | 223 |
| 1204* | 224 |
| 1221 | 231 |
| 1222 | 232 |
| 1223 | 233 |
| 1224 | 234 |
| 1225 | 235 |
| 1226 | 236 |
| 1227 | 237 |
| 1228 | 238 |
| 1229 | 239 |
| 1230* | 240 |
| 1251 | 241 |
| 1252 | 242 |
| 1253 | 243 |

| Section 8 USC | Sections I. & N. Act and 8 CFR |
|---|---|
| 1254 | 244 |
| 1255 | 245 |
| 1256 | 246 |
| 1257 | 247 |
| 1258 | 248 |
| 1259 | 249 |
| 1260 | 250 |
| 1281 | 251 |
| 1282 | 252 |
| 1283 | 253 |
| 1284* | 254 |
| 1285* | 255 |
| 1286* | 256 |
| 1287* | 257 |
| 1301* | 261 |
| 1302* | 262 |
| 1303* | 263 |
| 1304 | 264 |
| 1305 | 265 |
| 1306* | 266 |
| 1321* | 271 |
| 1322* | 272 |
| 1323* | 273 |
| 1324 | 274 |
| 1325* | 275 |
| 1326* | 276 |
| 1327* | 277 |
| 1328* | 278 |
| 1329* | 279 |
| 1330 | 280 |
| 1351* | 281 |
| 1352 | 282 |
| 1353* | 283 |
| 1354* | 284 |
| 1355* | 285 |
| 1356* | 286 |
| 1357 | 287 |
| 1358* | 288 |
| 1359 | 289 |
| 1360* | 290 |
| 1361* | 291 |
| 1362 | 292 |
| 1401* | 301 |
| 1402* | 302 |
| 1403* | 303 |
| 1404* | 304 |
| 1405* | 305 |
| 1406 | 306 |
| 1407* | 307 |
| 1408* | 308 |
| 1409* | 309 |
| 1421* | 310 |
| 1422* | 311 |

| Section 8 USC | Sections I. & N. Act and 8 CFR |
|---|---|
| 1423 | 312 |
| 1424* | 313 |
| 1425* | 314 |
| 1426* | 315 |
| 1427 | 316 |
| 1428* | 317 |
| 1429 | 318 |
| 1430 | 319 |
| 1431* | 320 |
| 1432* | 321 |
| 1433 | 322 |
| 1434 | 323 |
| 1435 | 324 |
| 1436* | 325 |
| 1437 | 326 |
| 1438 | 327 |
| 1439 | 328 |
| 1440 | 329 |
| 1441 | 330 |
| 1442* | 331 |
| 1443 | 332 |
| 1444 | 333 |
| 1445 | 334 |
| 1446 | 335 |
| 1447 | 336 |
| 1448 | 337 |
| 1449 | 338 |
| 1450 | 339 |
| 1451 | 340 |
| 1452 | 341 |
| 1453 | 342 |
| 1454 | 343 |
| 1455 | 344 |
| 1457* | 346 |
| 1458* | 347 |
| 1459* | 348 |
| 1481 | 349 |
| 1482* | 350 |
| 1483* | 351 |
| 1484* | 352 |
| 1485* | 353 |
| 1486* | 354 |
| 1487* | 355 |
| 1488* | 356 |
| 1489* | 357 |
| 1501* | 358 |
| 1502* | 359 |
| 1503* | 360 |

359 words

LEXSTAT

LEXISNEXIS' CODE OF FEDERAL REGULATIONS
Copyright (c) 2006, by Matthew Bender & Company, a member
of the LexisNexis Group. All rights reserved.

*** THIS SECTION IS CURRENT THROUGH THE JANUARY 2, 2007 ISSUE OF ***
*** THE FEDERAL REGISTER ***

TITLE 8 -- ALIENS AND NATIONALITY
CHAPTER I -- DEPARTMENT OF HOMELAND SECURITY (IMMIGRATION AND NATURALIZATION)
SUBCHAPTER B -- IMMIGRATION REGULATIONS
PART 286 -- IMMIGRATION USER FEE

**Go to the CFR Archive Directory**

8 CFR 286.1

§ 286.1 Definitions.

The following definitions apply to the following terms in this part:

(a) The term adjacent islands means Anguilla, Antigua, Aruba, Bahamas, Barbados, Barbuda, Bermuda, Bonaire, British Virgin Islands, Cayman Islands, Cuba, Curacao, Dominica, the Dominican Republic, Grenada, Guadeloupe, Haiti, Jamaica, Marie-Galante, Martinique, Miquelon, Montserrat, Saba, Saint Barthe1lemy, Saint Christopher, Saint Eustatius, Saint Kitts-Nevis, Saint Lucia, Saint Maarten, Saint Martin, Saint Pierre, Saint Vincent and Grenadines, Trinidad and Tobago, Turks and Caicos Islands, and other British, French and Netherlands territory or possessions bordering on the Caribbean Sea.

(b) The term collector means an air or sea carrier, travel agent, tour wholesaler, or other entity which collects, but may or may not be required to remit, fees pursuant to this part.

(c) The term commercial aircraft means any civilian aircraft being used to transport persons or property for compensation or hire.

(d) The term commercial vessel means any civilian vessel being used to transport persons or property for compensation or hire.

(e) The term Assistant Commissioner, Office of Financial Management means the Office of the Assistant Commissioner, Financial Management, Immigration and Naturalization Service, Room 6307, 425 I Street NW., Washington, DC 20536.

(f) The term fee means the immigration user fee.

(g) The term port of entry means a port or place designated by the Commissioner at which a person may apply for admission into the United States.

(h) The term remitter means an air or sea carrier, travel agent, tour wholesaler, or other entity which collects, including receipt of fees collected by collectors which are not required to remit fees, and remits fees pursuant to this part.

(i) The term territories or possessions of the United States means American Samoa, Baker Island, Howland Island, Jarvis Island, Johnston Atoll, Kingman Reef, Midway, the Northern Mariana Islands, Swains Island, Palmyra Island, and Wake Island.

(j) The term document for transportation means any document accepted by a carrier in return for transportation.

(k) The term United States, when used in a geographical sense, means the continental United States, Alaska, Hawaii, Puerto Rico, Guam, and the Virgin Islands of the United States.

**HISTORY:** [53 FR 5757, Feb. 26, 1988; 59 FR 49349, Sept. 28, 1994; 63 FR 51271, 51272, Sept. 25, 1998]

**AUTHORITY:** 8 U.S.C. 1103, 1356; 8 CFR part 2.

**NOTES:** [EFFECTIVE DATE NOTE: 63 FR 51271, 51272, Sept. 25, 1998, amended paragraph (e), effective Oct. 26, 1998.]
NOTES APPLICABLE TO ENTIRE TITLE:
Other regulations issued by the Department of Justice appear in title 4, chapter II, title 21, chapter II, and title 28, chapters I, III, and V.

NOTES APPLICABLE TO ENTIRE CHAPTER:
CROSS REFERENCE: For State Department regulations pertaining to visas and Nationality and Passports, see 22 CFR, chapter I, subchapters E and F.
This table shows sections of title 8 of the United States Code and corresponding sections of the Immigration and Nationality Act and of parts in subchapters A, B, and C of chapter I of title 8 of the Code of Federal Regulations. Those sections of title 8 of the United States Code bearing an asterisk do not have a corresponding part in chapter I of title 8 of the Code of Federal Regulations.

| Section 8 USC | Sections I. & N. Act and 8 CFR |
|---|---|
| 1101* | 101 |
| 1102* | 102 |
| 1103* | 103 |
| 1104* | 104 |
| 1105* | 105 |
| 1105a* | 106 |
| 1151 | 201 |
| 1152* | 202 |
| 1153* | 203 |
| 1154 | 204 |
| 1155* | 205 |
| 1156* | 206 |
| 1181 | 211 |
| 1182 | 212 |
| 1183 | 213 |
| 1184 | 214 |
| 1185 | 215 |
| 1201 | 221 |
| 1202* | 222 |
| 1203 | 223 |
| 1204* | 224 |
| 1221 | 231 |
| 1222 | 232 |
| 1223 | 233 |
| 1224 | 234 |
| 1225 | 235 |
| 1226 | 236 |
| 1227 | 237 |
| 1228 | 238 |
| 1229 | 239 |
| 1230* | 240 |
| 1251 | 241 |

| Section 8 USC | Sections I. & N. Act and 8 CFR |
|---|---|
| 1252 | 242 |
| 1253 | 243 |
| 1254 | 244 |
| 1255 | 245 |
| 1256 | 246 |
| 1257 | 247 |
| 1258 | 248 |
| 1259 | 249 |
| 1260 | 250 |
| 1281 | 251 |
| 1282 | 252 |
| 1283 | 253 |
| 1284* | 254 |
| 1285* | 255 |
| 1286* | 256 |
| 1287* | 257 |
| 1301* | 261 |
| 1302* | 262 |
| 1303* | 263 |
| 1304 | 264 |
| 1305 | 265 |
| 1306* | 266 |
| 1321* | 271 |
| 1322* | 272 |
| 1323* | 273 |
| 1324 | 274 |
| 1325* | 275 |
| 1326* | 276 |
| 1327* | 277 |
| 1328* | 278 |
| 1329* | 279 |
| 1330 | 280 |
| 1351* | 281 |
| 1352 | 282 |
| 1353* | 283 |
| 1354* | 284 |
| 1355* | 285 |
| 1356* | 286 |
| 1357 | 287 |
| 1358* | 288 |
| 1359 | 289 |
| 1360* | 290 |
| 1361* | 291 |
| 1362 | 292 |
| 1401* | 301 |
| 1402* | 302 |
| 1403* | 303 |
| 1404* | 304 |
| 1405* | 305 |
| 1406 | 306 |
| 1407* | 307 |
| 1408* | 308 |
| 1409* | 309 |

8 CFR 286.1

| Section 8 USC | Sections I. & N. Act and 8 CFR |
|---|---|
| 1421* | 310 |
| 1422* | 311 |
| 1423 | 312 |
| 1424* | 313 |
| 1425* | 314 |
| 1426* | 315 |
| 1427 | 316 |
| 1428* | 317 |
| 1429 | 318 |
| 1430 | 319 |
| 1431* | 320 |
| 1432* | 321 |
| 1433 | 322 |
| 1434 | 323 |
| 1435 | 324 |
| 1436* | 325 |
| 1437 | 326 |
| 1438 | 327 |
| 1439 | 328 |
| 1440 | 329 |
| 1441 | 330 |
| 1442* | 331 |
| 1443 | 332 |
| 1444 | 333 |
| 1445 | 334 |
| 1446 | 335 |
| 1447 | 336 |
| 1448 | 337 |
| 1449 | 338 |
| 1450 | 339 |
| 1451 | 340 |
| 1452 | 341 |
| 1453 | 342 |
| 1454 | 343 |
| 1455 | 344 |
| 1457* | 346 |
| 1458* | 347 |
| 1459* | 348 |
| 1481 | 349 |
| 1482* | 350 |
| 1483* | 351 |
| 1484* | 352 |
| 1485* | 353 |
| 1486* | 354 |
| 1487* | 355 |
| 1488* | 356 |
| 1489* | 357 |
| 1501* | 358 |
| 1502* | 359 |
| 1503* | 360 |

392 words

LEXSTAT

LEXISNEXIS' CODE OF FEDERAL REGULATIONS
Copyright (c) 2006, by Matthew Bender & Company, a member
of the LexisNexis Group. All rights reserved.

*** THIS SECTION IS CURRENT THROUGH THE JANUARY 2, 2007 ISSUE OF ***
*** THE FEDERAL REGISTER ***

TITLE 8 -- ALIENS AND NATIONALITY
CHAPTER I -- DEPARTMENT OF HOMELAND SECURITY (IMMIGRATION AND NATURALIZATION)
SUBCHAPTER B -- IMMIGRATION REGULATIONS
PART 286 -- IMMIGRATION USER FEE

**Go to the CFR Archive Directory**

8 CFR 286.2

§ 286.2 Fee for arrival of passengers aboard commercial aircraft or commercial vessels.

(a) A fee, in the amount prescribed in section 286(d) of the Act, per individual is charged and collected by the Commissioner for the immigration inspection of each passenger aboard a commercial aircraft or commercial vessel, arriving at a port-of-entry in the United States, or for the preinspection of a passenger in a place outside the United States prior to such arrival, except as provided in § 286.3.

(b) A fee, in the amount prescribed in section 286(e)(3) of the Act, per individual, is charged and collected by the Commissioner for the immigration inspection at a port-of-entry in the United States, or for the preinspection in a place outside the United States of each commercial vessel passenger whose journey originated in the United States, Canada, Mexico, territories or possessions of the United States, or adjacent islands, except as provided in § 286.3. All tickets or documents for transportation on voyages that are booked on or after February 27, 2003, will be subject to this immigration user fee.

(c) Each commercial aircraft and vessel carrier or ticket-selling agent whose monthly collections in any month exceed $ 50,000 shall submit a summary statement showing the amount of user fees collected that month. The summary statement is due on the last business day of the following month. This information shall be forwarded to the Immigration and Naturalization Service, Chief, Analysis and Formulation Branch, 425 I Street, NW., Room 6307, Washington, DC 20536. For the months of December, March, June, and August, the quarterly remittance and statement required by § 286.5 will serve as the monthly report for those months. Therefore, a monthly report is required for all other months in which monthly collections exceed $ 50,000.

**HISTORY:** [53 FR 5757, Feb. 26, 1988; 59 FR 49348, Sept. 28, 1994; 63 FR 51271, 51272, Sept. 25, 1998; 67 FR 15333, 15334, Apr. 1, 2002; 68 FR 4090, 4092, Jan. 28, 2003]

**AUTHORITY:** 8 U.S.C. 1103, 1356; 8 CFR part 2.

**NOTES:** [EFFECTIVE DATE NOTE: 67 FR 15333, 15334, Apr. 1, 2002, revised paragraph (a), effective May 1, 2002; 68 FR 4090, 4092, Jan. 28, 2003, redesignated paragraph (b) as paragraph (c), and added a new paragraph (b), effective Feb. 27, 2003.]
NOTES APPLICABLE TO ENTIRE TITLE:
Other regulations issued by the Department of Justice appear in title 4, chapter II, title 21, chapter II, and title 28, chapters I, III, and V.

NOTES APPLICABLE TO ENTIRE CHAPTER:
CROSS REFERENCE: For State Department regulations pertaining to visas and Nationality and Passports, see 22 CFR, chapter I, subchapters E and F.
This table shows sections of title 8 of the United States Code and corresponding sections of the Immigration and Nationality Act and of parts in subchapters A, B, and C of chapter I of title 8 of the Code of Federal Regulations. Those sections of title 8 of the United States Code bearing an asterisk do not have a corresponding part in chapter I of title 8 of the Code of Federal Regulations.

| Section 8 USC | Sections I. & N. Act and 8 CFR |
|---|---|
| 1101* | 101 |
| 1102* | 102 |
| 1103* | 103 |
| 1104* | 104 |
| 1105* | 105 |
| 1105a* | 106 |
| 1151 | 201 |
| 1152* | 202 |
| 1153* | 203 |
| 1154 | 204 |
| 1155* | 205 |
| 1156* | 206 |
| 1181 | 211 |
| 1182 | 212 |
| 1183 | 213 |
| 1184 | 214 |
| 1185 | 215 |
| 1201 | 221 |
| 1202* | 222 |
| 1203 | 223 |
| 1204* | 224 |
| 1221 | 231 |
| 1222 | 232 |
| 1223 | 233 |
| 1224 | 234 |
| 1225 | 235 |
| 1226 | 236 |
| 1227 | 237 |
| 1228 | 238 |
| 1229 | 239 |
| 1230* | 240 |
| 1251 | 241 |
| 1252 | 242 |
| 1253 | 243 |
| 1254 | 244 |
| 1255 | 245 |
| 1256 | 246 |
| 1257 | 247 |
| 1258 | 248 |
| 1259 | 249 |
| 1260 | 250 |
| 1281 | 251 |
| 1282 | 252 |
| 1283 | 253 |

| Section 8 USC | Sections I. & N. Act and 8 CFR |
|---|---|
| 1284* | 254 |
| 1285* | 255 |
| 1286* | 256 |
| 1287* | 257 |
| 1301* | 261 |
| 1302* | 262 |
| 1303* | 263 |
| 1304 | 264 |
| 1305 | 265 |
| 1306* | 266 |
| 1321* | 271 |
| 1322* | 272 |
| 1323* | 273 |
| 1324 | 274 |
| 1325* | 275 |
| 1326* | 276 |
| 1327* | 277 |
| 1328* | 278 |
| 1329* | 279 |
| 1330 | 280 |
| 1351* | 281 |
| 1352 | 282 |
| 1353* | 283 |
| 1354* | 284 |
| 1355* | 285 |
| 1356* | 286 |
| 1357 | 287 |
| 1358* | 288 |
| 1359 | 289 |
| 1360* | 290 |
| 1361* | 291 |
| 1362 | 292 |
| 1401* | 301 |
| 1402* | 302 |
| 1403* | 303 |
| 1404* | 304 |
| 1405* | 305 |
| 1406 | 306 |
| 1407* | 307 |
| 1408* | 308 |
| 1409* | 309 |
| 1421* | 310 |
| 1422* | 311 |
| 1423 | 312 |
| 1424* | 313 |
| 1425* | 314 |
| 1426* | 315 |
| 1427 | 316 |
| 1428* | 317 |
| 1429 | 318 |
| 1430 | 319 |
| 1431* | 320 |
| 1432* | 321 |

| Section 8 USC | Sections I. & N. Act and 8 CFR |
|---|---|
| 1433 | 322 |
| 1434 | 323 |
| 1435 | 324 |
| 1436* | 325 |
| 1437 | 326 |
| 1438 | 327 |
| 1439 | 328 |
| 1440 | 329 |
| 1441 | 330 |
| 1442* | 331 |
| 1443 | 332 |
| 1444 | 333 |
| 1445 | 334 |
| 1446 | 335 |
| 1447 | 336 |
| 1448 | 337 |
| 1449 | 338 |
| 1450 | 339 |
| 1451 | 340 |
| 1452 | 341 |
| 1453 | 342 |
| 1454 | 343 |
| 1455 | 344 |
| 1457* | 346 |
| 1458* | 347 |
| 1459* | 348 |
| 1481 | 349 |
| 1482* | 350 |
| 1483* | 351 |
| 1484* | 352 |
| 1485* | 353 |
| 1486* | 354 |
| 1487* | 355 |
| 1488* | 356 |
| 1489* | 357 |
| 1501* | 358 |
| 1502* | 359 |
| 1503* | 360 |

296 words