LEXSTAT

LEXISNEXIS' CODE OF FEDERAL REGULATIONS
Copyright (c) 2006, by Matthew Bender & Company, a member
of the LexisNexis Group. All rights reserved.

*** THIS SECTION IS CURRENT THROUGH THE JANUARY 2, 2007 ISSUE OF ***
*** THE FEDERAL REGISTER ***

TITLE 8 -- ALIENS AND NATIONALITY
CHAPTER I -- DEPARTMENT OF HOMELAND SECURITY (IMMIGRATION AND NATURALIZATION)
SUBCHAPTER B -- IMMIGRATION REGULATIONS
PART 286 -- IMMIGRATION USER FEE

**Go to the CFR Archive Directory**

8 CFR 286.3

§ 286.3 Exceptions.

The fees set forth in § § 286.2(a) and 286.2(b) shall not be charged or collected from passengers who fall within any one of the following categories:

(a) Persons arriving at designated ports-of-entry by the following vessels, when operating on a regular schedule: Great Lakes international ferries or Great Lakes vessels on the Great Lakes and connecting waterways;

(b) Persons directly connected with the operation, navigation, or business of the commercial aircraft or commercial vessel including working crew, deadheading crew, U.S. Federal Aviation Administration inspectors, sky marshals, and commercial airline or commercial vessel employees on official business;

(c) Persons who are listed as foreign diplomats on the accreditation list maintained by the U.S. Department of State or who are in possession of a diplomatic visa (A-1 and 2, G-1 thru 4) valid for entry into the United States;

(d) Persons who are passengers on any commercial aircraft or commercial vessel owned or operated exclusively by the Government of the United States or a foreign government, including any agency or political subdivision thereof, so long as that aircraft or vessel is not transporting any persons or property for commercial purposes.

(e) Persons who are passengers on commercial aircraft or commercial vessels under contract to the U.S. Department of Defense, if they have been preinspected outside of the United States under a joint Service and U.S. Department of Defense military inspection program;

(f) Persons arriving on an aircraft or vessel due to an emergency or forced landing when the original destination of the aircraft or vessel was not the United States; and

(g) Persons transiting the United States who are not inspected by the Service. Transit without visa passengers who are inspected by the Service are not excepted from payment of the fee under this section.

**HISTORY:** [53 FR 5757, Feb. 26, 1988; 59 FR 49348, Sept. 28, 1994; 68 FR 4090, 4092, Jan. 28, 2003]

**AUTHORITY:** 8 U.S.C. 1103, 1356; 8 CFR part 2.

**NOTES:** [EFFECTIVE DATE NOTE: 68 FR 4090, 4092, Jan. 28, 2003, revised the introductory text and paragraph (a), effective Feb. 27, 2003.]
NOTES APPLICABLE TO ENTIRE TITLE:

Other regulations issued by the Department of Justice appear in title 4, chapter II, title 21, chapter II, and title 28, chapters I, III, and V.

NOTES APPLICABLE TO ENTIRE CHAPTER:
CROSS REFERENCE: For State Department regulations pertaining to visas and Nationality and Passports, see 22 CFR, chapter I, subchapters E and F.
This table shows sections of title 8 of the United States Code and corresponding sections of the Immigration and Nationality Act and of parts in subchapters A, B, and C of chapter I of title 8 of the Code of Federal Regulations. Those sections of title 8 of the United States Code bearing an asterisk do not have a corresponding part in chapter I of title 8 of the Code of Federal Regulations.

| Section 8 USC | Sections I. & N. Act and 8 CFR |
|---|---|
| 1101* | 101 |
| 1102* | 102 |
| 1103* | 103 |
| 1104* | 104 |
| 1105* | 105 |
| 1105a* | 106 |
| 1151 | 201 |
| 1152* | 202 |
| 1153* | 203 |
| 1154 | 204 |
| 1155* | 205 |
| 1156* | 206 |
| 1181 | 211 |
| 1182 | 212 |
| 1183 | 213 |
| 1184 | 214 |
| 1185 | 215 |
| 1201 | 221 |
| 1202* | 222 |
| 1203 | 223 |
| 1204* | 224 |
| 1221 | 231 |
| 1222 | 232 |
| 1223 | 233 |
| 1224 | 234 |
| 1225 | 235 |
| 1226 | 236 |
| 1227 | 237 |
| 1228 | 238 |
| 1229 | 239 |
| 1230* | 240 |
| 1251 | 241 |
| 1252 | 242 |
| 1253 | 243 |
| 1254 | 244 |
| 1255 | 245 |
| 1256 | 246 |
| 1257 | 247 |
| 1258 | 248 |
| 1259 | 249 |
| 1260 | 250 |
| 1281 | 251 |

| Section 8 USC | Sections I. & N. Act and 8 CFR |
|---|---|
| 1282 | 252 |
| 1283 | 253 |
| 1284* | 254 |
| 1285* | 255 |
| 1286* | 256 |
| 1287* | 257 |
| 1301* | 261 |
| 1302* | 262 |
| 1303* | 263 |
| 1304 | 264 |
| 1305 | 265 |
| 1306* | 266 |
| 1321* | 271 |
| 1322* | 272 |
| 1323* | 273 |
| 1324 | 274 |
| 1325* | 275 |
| 1326* | 276 |
| 1327* | 277 |
| 1328* | 278 |
| 1329* | 279 |
| 1330 | 280 |
| 1351* | 281 |
| 1352 | 282 |
| 1353* | 283 |
| 1354* | 284 |
| 1355* | 285 |
| 1356* | 286 |
| 1357 | 287 |
| 1358* | 288 |
| 1359 | 289 |
| 1360* | 290 |
| 1361* | 291 |
| 1362 | 292 |
| 1401* | 301 |
| 1402* | 302 |
| 1403* | 303 |
| 1404* | 304 |
| 1405* | 305 |
| 1406 | 306 |
| 1407* | 307 |
| 1408* | 308 |
| 1409* | 309 |
| 1421* | 310 |
| 1422* | 311 |
| 1423 | 312 |
| 1424* | 313 |
| 1425* | 314 |
| 1426* | 315 |
| 1427 | 316 |
| 1428* | 317 |
| 1429 | 318 |
| 1430 | 319 |

| Section 8 USC | Sections I. & N. Act and 8 CFR |
|---|---|
| 1431* | 320 |
| 1432* | 321 |
| 1433 | 322 |
| 1434 | 323 |
| 1435 | 324 |
| 1436* | 325 |
| 1437 | 326 |
| 1438 | 327 |
| 1439 | 328 |
| 1440 | 329 |
| 1441 | 330 |
| 1442* | 331 |
| 1443 | 332 |
| 1444 | 333 |
| 1445 | 334 |
| 1446 | 335 |
| 1447 | 336 |
| 1448 | 337 |
| 1449 | 338 |
| 1450 | 339 |
| 1451 | 340 |
| 1452 | 341 |
| 1453 | 342 |
| 1454 | 343 |
| 1455 | 344 |
| 1457* | 346 |
| 1458* | 347 |
| 1459* | 348 |
| 1481 | 349 |
| 1482* | 350 |
| 1483* | 351 |
| 1484* | 352 |
| 1485* | 353 |
| 1486* | 354 |
| 1487* | 355 |
| 1488* | 356 |
| 1489* | 357 |
| 1501* | 358 |
| 1502* | 359 |
| 1503* | 360 |

317 words

LEXSTAT

LEXISNEXIS' CODE OF FEDERAL REGULATIONS
Copyright (c) 2006, by Matthew Bender & Company, a member
of the LexisNexis Group. All rights reserved.

*** THIS SECTION IS CURRENT THROUGH THE JANUARY 2, 2007 ISSUE OF ***
*** THE FEDERAL REGISTER ***

TITLE 8 -- ALIENS AND NATIONALITY
CHAPTER I -- DEPARTMENT OF HOMELAND SECURITY (IMMIGRATION AND NATURALIZATION)
SUBCHAPTER B -- IMMIGRATION REGULATIONS
PART 286 -- IMMIGRATION USER FEE

**Go to the CFR Archive Directory**

8 CFR 286.4

§ 286.4 Fee collection responsibility.

(a) It is the responsibility of the air or sea carriers, travel agents, tour wholesalers, or other parties, which issue tickets or documents for transportation on or after December 1, 1986, to collect the fee set forth in § 286.2 of this part from all passengers transported to the United States who are not excepted under § 286.3 of this part.

(b) Tickets and documents for transportation shall be marked by the collector of the fee to indicate that the required fee has been collected. Such markings shall be in accordance with the procedures set forth in the ARC Industry Agents Handbook, the SATO Ticketing Handbook, or compatible procedures set forth in the operations manual of individual collectors.

(c) It is the responsibility of the carrier transporting a passenger from the United States to collect the fee upon departure, if the passenger was not excepted under § 286.3 of this part and tickets or documents for transportation of the passenger do not reflect collection of the fee at the time of issuance. If at the time of departure such a passenger refuses to pay the fee, the carrier shall record the full name, complete address, nationality, passport number, and alien file number, if any, of the passenger and immediately notify the Associate Commissioner, Finance.

**HISTORY:** [53 FR 5757, Feb. 26, 1988; 59 FR 49349, Sept. 28,1994]

**AUTHORITY:** 8 U.S.C. 1103, 1356; 8 CFR part 2.

**NOTES:** NOTES APPLICABLE TO ENTIRE TITLE:
Other regulations issued by the Department of Justice appear in title 4, chapter II, title 21, chapter II, and title 28, chapters I, III, and V.

NOTES APPLICABLE TO ENTIRE CHAPTER:
CROSS REFERENCE: For State Department regulations pertaining to visas and Nationality and Passports, see 22 CFR, chapter I, subchapters E and F.
This table shows sections of title 8 of the United States Code and corresponding sections of the Immigration and Nationality Act and of parts in subchapters A, B, and C of chapter I of title 8 of the Code of Federal Regulations. Those sections of title 8 of the United States Code bearing an asterisk do not have a corresponding part in chapter I of title 8 of the Code of Federal Regulations.

| Section 8 USC | Sections I. & N. Act and 8 CFR |
|---|---|
| 1101* | 101 |
| 1102* | 102 |
| 1103* | 103 |
| 1104* | 104 |
| 1105* | 105 |
| 1105a* | 106 |
| 1151 | 201 |
| 1152* | 202 |
| 1153* | 203 |
| 1154 | 204 |
| 1155* | 205 |
| 1156* | 206 |
| 1181 | 211 |
| 1182 | 212 |
| 1183 | 213 |
| 1184 | 214 |
| 1185 | 215 |
| 1201 | 221 |
| 1202* | 222 |
| 1203 | 223 |
| 1204* | 224 |
| 1221 | 231 |
| 1222 | 232 |
| 1223 | 233 |
| 1224 | 234 |
| 1225 | 235 |
| 1226 | 236 |
| 1227 | 237 |
| 1228 | 238 |
| 1229 | 239 |
| 1230* | 240 |
| 1251 | 241 |
| 1252 | 242 |
| 1253 | 243 |
| 1254 | 244 |
| 1255 | 245 |
| 1256 | 246 |
| 1257 | 247 |
| 1258 | 248 |
| 1259 | 249 |
| 1260 | 250 |
| 1281 | 251 |
| 1282 | 252 |
| 1283 | 253 |
| 1284* | 254 |
| 1285* | 255 |
| 1286* | 256 |
| 1287* | 257 |
| 1301* | 261 |
| 1302* | 262 |
| 1303* | 263 |
| 1304 | 264 |
| 1305 | 265 |

| Section 8 USC | Sections I. & N. Act and 8 CFR |
|---|---|
| 1306* | 266 |
| 1321* | 271 |
| 1322* | 272 |
| 1323* | 273 |
| 1324 | 274 |
| 1325* | 275 |
| 1326* | 276 |
| 1327* | 277 |
| 1328* | 278 |
| 1329* | 279 |
| 1330 | 280 |
| 1351* | 281 |
| 1352 | 282 |
| 1353* | 283 |
| 1354* | 284 |
| 1355* | 285 |
| 1356* | 286 |
| 1357 | 287 |
| 1358* | 288 |
| 1359 | 289 |
| 1360* | 290 |
| 1361* | 291 |
| 1362 | 292 |
| 1401* | 301 |
| 1402* | 302 |
| 1403* | 303 |
| 1404* | 304 |
| 1405* | 305 |
| 1406 | 306 |
| 1407* | 307 |
| 1408* | 308 |
| 1409* | 309 |
| 1421* | 310 |
| 1422* | 311 |
| 1423 | 312 |
| 1424* | 313 |
| 1425* | 314 |
| 1426* | 315 |
| 1427 | 316 |
| 1428* | 317 |
| 1429 | 318 |
| 1430 | 319 |
| 1431* | 320 |
| 1432* | 321 |
| 1433 | 322 |
| 1434 | 323 |
| 1435 | 324 |
| 1436* | 325 |
| 1437 | 326 |
| 1438 | 327 |
| 1439 | 328 |
| 1440 | 329 |
| 1441 | 330 |

| Section 8 USC | Sections I. & N. Act and 8 CFR |
|---|---|
| 1442* | 331 |
| 1443 | 332 |
| 1444 | 333 |
| 1445 | 334 |
| 1446 | 335 |
| 1447 | 336 |
| 1448 | 337 |
| 1449 | 338 |
| 1450 | 339 |
| 1451 | 340 |
| 1452 | 341 |
| 1453 | 342 |
| 1454 | 343 |
| 1455 | 344 |
| 1457* | 346 |
| 1458* | 347 |
| 1459* | 348 |
| 1481 | 349 |
| 1482* | 350 |
| 1483* | 351 |
| 1484* | 352 |
| 1485* | 353 |
| 1486* | 354 |
| 1487* | 355 |
| 1488* | 356 |
| 1489* | 357 |
| 1501* | 358 |
| 1502* | 359 |
| 1503* | 360 |

217 words

LEXSTAT

LEXISNEXIS' CODE OF FEDERAL REGULATIONS
Copyright (c) 2006, by Matthew Bender & Company, a member
of the LexisNexis Group. All rights reserved.

*** THIS SECTION IS CURRENT THROUGH THE JANUARY 2, 2007 ISSUE OF ***
*** THE FEDERAL REGISTER ***

TITLE 8 -- ALIENS AND NATIONALITY
CHAPTER I -- DEPARTMENT OF HOMELAND SECURITY (IMMIGRATION AND NATURALIZATION)
SUBCHAPTER B -- IMMIGRATION REGULATIONS
PART 286 -- IMMIGRATION USER FEE

**Go to the CFR Archive Directory**

8 CFR 286.5

§ 286.5 Remittance and statement procedures.

(a) The air or sea carrier whose ticket stock or document for transportation reflects collection of the fee is responsible for remittance of the fee to the Service. The travel agent, tour wholesaler, or other entity, which issues their own non-carrier related ticket or document for transportation to an air or sea passenger who is not excepted from the fee pursuant to § 286.3 of this part, is responsible for remittance of the fee to the Service, unless by contract the carrier will remit the fee.

(b)(1) Fee remittances shall be sent to the Immigration and Naturalization Service, at a designated Treasury depository, for receipt no later than 31 days after the close of the calendar quarter in which the fees are collected, except the fourth quarter payment for fees collected shall be made on the date that is 10 days before the end of the U.S. Government's fiscal year, and the first quarter payment shall include any collections made in the preceding quarter that were not remitted with the previous payment. The fourth quarter payment shall include collections for the months of July and August. The fiscal year referenced is the U.S. Government's fiscal year which begins on October 1 and ends on September 30.

(2) Late payments will be subject to interest, penalty, and handling charges as provided in the Debt Collection Act of 1982 (31 U.S.C. 3717). Refunds by a remitter of fees collected in conjunction with unused tickets or documents for transportation shall be netted against the next subsequent remittance.

(c) Along with the remittance, as set forth in paragraph (b) of this section, each remitter making such remittance shall attach a statement which sets forth the following:

(1) Name and address;

(2) Taxpayer identification number;

(3) Calendar quarter covered by the payment;

(4) Interest and penalty charges; and

(5) Total amount collected and remitted.

(d) Remittances shall be made in U.S. dollars by check or money order through a U.S. bank, to Assistant Commissioner, Office of Financial Management, INS.

(e) Annually, each U.S. based remitter, which retains an independent accountant and which remits $ 10,000 or more in fees in any one calendar quarter, shall submit to the Assistant Commissioner, Financial Management a report from the independent accountant in accordance with the Statement on Standards for Attestation Engagements on the application of Passenger User Fee Collection and Remittance Procedures established by the American Institute of Certified Public Accountants and the Service, to the Assistant Commissioner, Financial Management. Each foreign-based remitter, which retains an independent accountant and which remits $ 10,000 or more in fees in any one calendar quarter, shall submit a similar report to the Assistant Commissioner, Financial Management from the independent accountant in accordance with generally accepted accounting principles of their respective countries. These reports from the independent accountants are to be submitted for receipt by the Assistant Commissioner, Financial Management no later than ninety (90) days after the close of the fiscal year of each remitter. Each remitter, which does not retain an independent accountant or which does not remit $ 10,000 or more in any one calendar quarter, shall certify under oath on each statement submitted pursuant to paragraph (c) of this section that they have complied with the applicable statutes and regulations.

(f) The Commissioner reserves the right to conduct an independent audit of any collector or remitter not providing the report or certification required pursuant to paragraph (e) of this section or based upon other information indicating non-compliance in order to assure the accuracy of the remittances of fees collected and remitted and compliance with the applicable statutes and regulations.

(g) In order to enforce compliance with the provisions of this part, the Commissioner may issue a subpoena requiring the production of records, evidence, and witnesses pursuant to the procedures set forth in § 287.4 of this chapter. The authority to issue a subpoena pursuant to this section is limited to the Commissioner, Deputy Commissioner, Associate Commissioner for Management, Director for Program Inspection, all Regional Commissioners; and all District Directors.

**HISTORY:** [53 FR 5757, Feb. 26, 1988, as amended at 55 FR 729, Jan. 9, 1990; 59 FR 49348, 49349, Sept. 28, 1994; 63 FR 51271, 51272, Sept. 25, 1998]

**AUTHORITY:** 8 U.S.C. 1103, 1356; 8 CFR part 2.

**NOTES:** [EFFECTIVE DATE NOTE: 63 FR 51271, 51272, Sept. 25, 1998, amended paragraphs (d) and (e), effective Oct. 26, 1998.]
NOTES APPLICABLE TO ENTIRE TITLE:
Other regulations issued by the Department of Justice appear in title 4, chapter II, title 21, chapter II, and title 28, chapters I, III, and V.

NOTES APPLICABLE TO ENTIRE CHAPTER:
CROSS REFERENCE: For State Department regulations pertaining to visas and Nationality and Passports, see 22 CFR, chapter I, subchapters E and F.
This table shows sections of title 8 of the United States Code and corresponding sections of the Immigration and Nationality Act and of parts in subchapters A, B, and C of chapter I of title 8 of the Code of Federal Regulations. Those sections of title 8 of the United States Code bearing an asterisk do not have a corresponding part in chapter I of title 8 of the Code of Federal Regulations.

| Section 8 USC | Sections I. & N. Act and 8 CFR |
|---|---|
| 1101* | 101 |
| 1102* | 102 |
| 1103* | 103 |
| 1104* | 104 |
| 1105* | 105 |
| 1105a* | 106 |
| 1151 | 201 |
| 1152* | 202 |
| 1153* | 203 |
| 1154 | 204 |

| Section 8 USC | Sections I. & N. Act and 8 CFR |
|---|---|
| 1155* | 205 |
| 1156* | 206 |
| 1181 | 211 |
| 1182 | 212 |
| 1183 | 213 |
| 1184 | 214 |
| 1185 | 215 |
| 1201 | 221 |
| 1202* | 222 |
| 1203 | 223 |
| 1204* | 224 |
| 1221 | 231 |
| 1222 | 232 |
| 1223 | 233 |
| 1224 | 234 |
| 1225 | 235 |
| 1226 | 236 |
| 1227 | 237 |
| 1228 | 238 |
| 1229 | 239 |
| 1230* | 240 |
| 1251 | 241 |
| 1252 | 242 |
| 1253 | 243 |
| 1254 | 244 |
| 1255 | 245 |
| 1256 | 246 |
| 1257 | 247 |
| 1258 | 248 |
| 1259 | 249 |
| 1260 | 250 |
| 1281 | 251 |
| 1282 | 252 |
| 1283 | 253 |
| 1284* | 254 |
| 1285* | 255 |
| 1286* | 256 |
| 1287* | 257 |
| 1301* | 261 |
| 1302* | 262 |
| 1303* | 263 |
| 1304 | 264 |
| 1305 | 265 |
| 1306* | 266 |
| 1321* | 271 |
| 1322* | 272 |
| 1323* | 273 |
| 1324 | 274 |
| 1325* | 275 |
| 1326* | 276 |
| 1327* | 277 |
| 1328* | 278 |
| 1329* | 279 |

| Section 8 USC | Sections I. & N. Act and 8 CFR |
|---|---|
| 1330 | 280 |
| 1351* | 281 |
| 1352 | 282 |
| 1353* | 283 |
| 1354* | 284 |
| 1355* | 285 |
| 1356* | 286 |
| 1357 | 287 |
| 1358* | 288 |
| 1359 | 289 |
| 1360* | 290 |
| 1361* | 291 |
| 1362 | 292 |
| 1401* | 301 |
| 1402* | 302 |
| 1403* | 303 |
| 1404* | 304 |
| 1405* | 305 |
| 1406 | 306 |
| 1407* | 307 |
| 1408* | 308 |
| 1409* | 309 |
| 1421* | 310 |
| 1422* | 311 |
| 1423 | 312 |
| 1424* | 313 |
| 1425* | 314 |
| 1426* | 315 |
| 1427 | 316 |
| 1428* | 317 |
| 1429 | 318 |
| 1430 | 319 |
| 1431* | 320 |
| 1432* | 321 |
| 1433 | 322 |
| 1434 | 323 |
| 1435 | 324 |
| 1436* | 325 |
| 1437 | 326 |
| 1438 | 327 |
| 1439 | 328 |
| 1440 | 329 |
| 1441 | 330 |
| 1442* | 331 |
| 1443 | 332 |
| 1444 | 333 |
| 1445 | 334 |
| 1446 | 335 |
| 1447 | 336 |
| 1448 | 337 |
| 1449 | 338 |
| 1450 | 339 |
| 1451 | 340 |

| Section 8 USC | Sections I. & N. Act and 8 CFR |
|---|---|
| 1452 | 341 |
| 1453 | 342 |
| 1454 | 343 |
| 1455 | 344 |
| 1457* | 346 |
| 1458* | 347 |
| 1459* | 348 |
| 1481 | 349 |
| 1482* | 350 |
| 1483* | 351 |
| 1484* | 352 |
| 1485* | 353 |
| 1486* | 354 |
| 1487* | 355 |
| 1488* | 356 |
| 1489* | 357 |
| 1501* | 358 |
| 1502* | 359 |
| 1503* | 360 |

735 words

LEXSTAT

LEXISNEXIS' CODE OF FEDERAL REGULATIONS
Copyright (c) 2006, by Matthew Bender & Company, a member
of the LexisNexis Group. All rights reserved.

*** THIS SECTION IS CURRENT THROUGH THE JANUARY 2, 2007 ISSUE OF ***
*** THE FEDERAL REGISTER ***

TITLE 8 -- ALIENS AND NATIONALITY
CHAPTER I -- DEPARTMENT OF HOMELAND SECURITY (IMMIGRATION AND NATURALIZATION)
SUBCHAPTER B -- IMMIGRATION REGULATIONS
PART 286 -- IMMIGRATION USER FEE

**Go to the CFR Archive Directory**

8 CFR 286.6

§ 286.6 Maintenance of records.

Each collector and remitter shall maintain records necessary for the Service to verify the accuracy of fees collected and remitted and to otherwise determine compliance with the applicable statutes and regulations. Such records shall be maintained for a period of two years from the date of fee collection. Each remitter shall advise the Assistant Commissioner, Office of Financial Management of the name, address, and telephone number of a responsible officer who shall have the authority to verify and produce any records required to be maintained under this part. The Assistant Commissioner, Office of Financial Management shall be promptly notified of any changes of the responsible officer.

**HISTORY:** [53 FR 5757, Feb. 26, 1988; 59 FR 49349, Sept. 28, 1994; 63 FR 51271, 51272, Sept. 25, 1998]

**AUTHORITY:** 8 U.S.C. 1103, 1356; 8 CFR part 2.

**NOTES:** [EFFECTIVE DATE NOTE: 63 FR 51271, 51272, Sept. 25, 1998, substituted "Assistant Commissioner, Office of Financial Management" for "Associate Commissioner, Finance," effective Oct. 26, 1998.]
NOTES APPLICABLE TO ENTIRE TITLE:
Other regulations issued by the Department of Justice appear in title 4, chapter II, title 21, chapter II, and title 28, chapters I, III, and V.

NOTES APPLICABLE TO ENTIRE CHAPTER:
CROSS REFERENCE: For State Department regulations pertaining to visas and Nationality and Passports, see 22 CFR, chapter I, subchapters E and F.
This table shows sections of title 8 of the United States Code and corresponding sections of the Immigration and Nationality Act and of parts in subchapters A, B, and C of chapter I of title 8 of the Code of Federal Regulations. Those sections of title 8 of the United States Code bearing an asterisk do not have a corresponding part in chapter I of title 8 of the Code of Federal Regulations.

| Section 8 USC | Sections I. & N. Act and 8 CFR |
|---|---|
| 1101* | 101 |
| 1102* | 102 |
| 1103* | 103 |

| Section 8 USC | Sections I. & N. Act and 8 CFR |
|---|---|
| 1104* | 104 |
| 1105* | 105 |
| 1105a* | 106 |
| 1151 | 201 |
| 1152* | 202 |
| 1153* | 203 |
| 1154 | 204 |
| 1155* | 205 |
| 1156* | 206 |
| 1181 | 211 |
| 1182 | 212 |
| 1183 | 213 |
| 1184 | 214 |
| 1185 | 215 |
| 1201 | 221 |
| 1202* | 222 |
| 1203 | 223 |
| 1204* | 224 |
| 1221 | 231 |
| 1222 | 232 |
| 1223 | 233 |
| 1224 | 234 |
| 1225 | 235 |
| 1226 | 236 |
| 1227 | 237 |
| 1228 | 238 |
| 1229 | 239 |
| 1230* | 240 |
| 1251 | 241 |
| 1252 | 242 |
| 1253 | 243 |
| 1254 | 244 |
| 1255 | 245 |
| 1256 | 246 |
| 1257 | 247 |
| 1258 | 248 |
| 1259 | 249 |
| 1260 | 250 |
| 1281 | 251 |
| 1282 | 252 |
| 1283 | 253 |
| 1284* | 254 |
| 1285* | 255 |
| 1286* | 256 |
| 1287* | 257 |
| 1301* | 261 |
| 1302* | 262 |
| 1303* | 263 |
| 1304 | 264 |
| 1305 | 265 |
| 1306* | 266 |
| 1321* | 271 |
| 1322* | 272 |

| Section 8 USC | Sections I. & N. Act and 8 CFR |
|---|---|
| 1323* | 273 |
| 1324 | 274 |
| 1325* | 275 |
| 1326* | 276 |
| 1327* | 277 |
| 1328* | 278 |
| 1329* | 279 |
| 1330 | 280 |
| 1351* | 281 |
| 1352 | 282 |
| 1353* | 283 |
| 1354* | 284 |
| 1355* | 285 |
| 1356* | 286 |
| 1357 | 287 |
| 1358* | 288 |
| 1359 | 289 |
| 1360* | 290 |
| 1361* | 291 |
| 1362 | 292 |
| 1401* | 301 |
| 1402* | 302 |
| 1403* | 303 |
| 1404* | 304 |
| 1405* | 305 |
| 1406 | 306 |
| 1407* | 307 |
| 1408* | 308 |
| 1409* | 309 |
| 1421* | 310 |
| 1422* | 311 |
| 1423 | 312 |
| 1424* | 313 |
| 1425* | 314 |
| 1426* | 315 |
| 1427 | 316 |
| 1428* | 317 |
| 1429 | 318 |
| 1430 | 319 |
| 1431* | 320 |
| 1432* | 321 |
| 1433 | 322 |
| 1434 | 323 |
| 1435 | 324 |
| 1436* | 325 |
| 1437 | 326 |
| 1438 | 327 |
| 1439 | 328 |
| 1440 | 329 |
| 1441 | 330 |
| 1442* | 331 |
| 1443 | 332 |
| 1444 | 333 |

| Section 8 USC | Sections I. & N. Act and 8 CFR |
|---|---|
| 1445 | 334 |
| 1446 | 335 |
| 1447 | 336 |
| 1448 | 337 |
| 1449 | 338 |
| 1450 | 339 |
| 1451 | 340 |
| 1452 | 341 |
| 1453 | 342 |
| 1454 | 343 |
| 1455 | 344 |
| 1457* | 346 |
| 1458* | 347 |
| 1459* | 348 |
| 1481 | 349 |
| 1482* | 350 |
| 1483* | 351 |
| 1484* | 352 |
| 1485* | 353 |
| 1486* | 354 |
| 1487* | 355 |
| 1488* | 356 |
| 1489* | 357 |
| 1501* | 358 |
| 1502* | 359 |
| 1503* | 360 |

118 words

LEXSTAT

LEXISNEXIS' CODE OF FEDERAL REGULATIONS
Copyright (c) 2006, by Matthew Bender & Company, a member
of the LexisNexis Group. All rights reserved.

*** THIS SECTION IS CURRENT THROUGH THE JANUARY 2, 2007 ISSUE OF ***
*** THE FEDERAL REGISTER ***

TITLE 8 -- ALIENS AND NATIONALITY
CHAPTER I -- DEPARTMENT OF HOMELAND SECURITY (IMMIGRATION AND NATURALIZATION)
SUBCHAPTER B -- IMMIGRATION REGULATIONS
PART 286 -- IMMIGRATION USER FEE

**Go to the CFR Archive Directory**

8 CFR 286.7

§ 286.7 Penalties.

Failure of any air or sea carrier to comply with the provisions of section 286 of the Act and this part shall subject it to one or more of the following:

(a) Termination of existing agreements under the provisions of section 238 of the Act; and

(b) Suspension of enroute inspections or preinspections.

**HISTORY:** 53 FR 5757, Feb. 26, 1988.

**AUTHORITY:** 8 U.S.C. 1103, 1356; 8 CFR part 2.

**NOTES:** NOTES APPLICABLE TO ENTIRE TITLE:
Other regulations issued by the Department of Justice appear in title 4, chapter II, title 21, chapter II, and title 28, chapters I, III, and V.

NOTES APPLICABLE TO ENTIRE CHAPTER:
CROSS REFERENCE: For State Department regulations pertaining to visas and Nationality and Passports, see 22 CFR, chapter I, subchapters E and F.
This table shows sections of title 8 of the United States Code and corresponding sections of the Immigration and Nationality Act and of parts in subchapters A, B, and C of chapter I of title 8 of the Code of Federal Regulations. Those sections of title 8 of the United States Code bearing an asterisk do not have a corresponding part in chapter I of title 8 of the Code of Federal Regulations.

| Section 8 USC | Sections I. & N. Act and 8 CFR |
|---|---|
| 1101* | 101 |
| 1102* | 102 |
| 1103* | 103 |
| 1104* | 104 |
| 1105* | 105 |
| 1105a* | 106 |

| Section 8 USC | Sections I. & N. Act and 8 CFR |
|---|---|
| 1151 | 201 |
| 1152* | 202 |
| 1153* | 203 |
| 1154 | 204 |
| 1155* | 205 |
| 1156* | 206 |
| 1181 | 211 |
| 1182 | 212 |
| 1183 | 213 |
| 1184 | 214 |
| 1185 | 215 |
| 1201 | 221 |
| 1202* | 222 |
| 1203 | 223 |
| 1204* | 224 |
| 1221 | 231 |
| 1222 | 232 |
| 1223 | 233 |
| 1224 | 234 |
| 1225 | 235 |
| 1226 | 236 |
| 1227 | 237 |
| 1228 | 238 |
| 1229 | 239 |
| 1230* | 240 |
| 1251 | 241 |
| 1252 | 242 |
| 1253 | 243 |
| 1254 | 244 |
| 1255 | 245 |
| 1256 | 246 |
| 1257 | 247 |
| 1258 | 248 |
| 1259 | 249 |
| 1260 | 250 |
| 1281 | 251 |
| 1282 | 252 |
| 1283 | 253 |
| 1284* | 254 |
| 1285* | 255 |
| 1286* | 256 |
| 1287* | 257 |
| 1301* | 261 |
| 1302* | 262 |
| 1303* | 263 |
| 1304 | 264 |
| 1305 | 265 |
| 1306* | 266 |
| 1321* | 271 |
| 1322* | 272 |
| 1323* | 273 |
| 1324 | 274 |
| 1325* | 275 |

| Section 8 USC | Sections I. & N. Act and 8 CFR |
|---|---|
| 1326* | 276 |
| 1327* | 277 |
| 1328* | 278 |
| 1329* | 279 |
| 1330 | 280 |
| 1351* | 281 |
| 1352 | 282 |
| 1353* | 283 |
| 1354* | 284 |
| 1355* | 285 |
| 1356* | 286 |
| 1357 | 287 |
| 1358* | 288 |
| 1359 | 289 |
| 1360* | 290 |
| 1361* | 291 |
| 1362 | 292 |
| 1401* | 301 |
| 1402* | 302 |
| 1403* | 303 |
| 1404* | 304 |
| 1405* | 305 |
| 1406 | 306 |
| 1407* | 307 |
| 1408* | 308 |
| 1409* | 309 |
| 1421* | 310 |
| 1422* | 311 |
| 1423 | 312 |
| 1424* | 313 |
| 1425* | 314 |
| 1426* | 315 |
| 1427 | 316 |
| 1428* | 317 |
| 1429 | 318 |
| 1430 | 319 |
| 1431* | 320 |
| 1432* | 321 |
| 1433 | 322 |
| 1434 | 323 |
| 1435 | 324 |
| 1436* | 325 |
| 1437 | 326 |
| 1438 | 327 |
| 1439 | 328 |
| 1440 | 329 |
| 1441 | 330 |
| 1442* | 331 |
| 1443 | 332 |
| 1444 | 333 |
| 1445 | 334 |
| 1446 | 335 |
| 1447 | 336 |

| Section 8 USC | Sections I. & N. Act and 8 CFR |
|---|---|
| 1448 | 337 |
| 1449 | 338 |
| 1450 | 339 |
| 1451 | 340 |
| 1452 | 341 |
| 1453 | 342 |
| 1454 | 343 |
| 1455 | 344 |
| 1457* | 346 |
| 1458* | 347 |
| 1459* | 348 |
| 1481 | 349 |
| 1482* | 350 |
| 1483* | 351 |
| 1484* | 352 |
| 1485* | 353 |
| 1486* | 354 |
| 1487* | 355 |
| 1488* | 356 |
| 1489* | 357 |
| 1501* | 358 |
| 1502* | 359 |
| 1503* | 360 |

53 words

LEXSTAT

LEXISNEXIS' CODE OF FEDERAL REGULATIONS
Copyright (c) 2006, by Matthew Bender & Company, a member
of the LexisNexis Group. All rights reserved.

*** THIS SECTION IS CURRENT THROUGH THE JANUARY 2, 2007 ISSUE OF ***
*** THE FEDERAL REGISTER ***

TITLE 8 -- ALIENS AND NATIONALITY
CHAPTER I -- DEPARTMENT OF HOMELAND SECURITY (IMMIGRATION AND NATURALIZATION)
SUBCHAPTER B -- IMMIGRATION REGULATIONS
PART 286 -- IMMIGRATION USER FEE

**Go to the CFR Archive Directory**

8 CFR 286.8

§ 286.8 Establishment of pilot programs for the charging of a land border fee for inspection services.

Under the provisions of section 286(q) of the Act, the Service may establish pilot programs at one or more land border ports-of-entry to charge fees for immigration inspection services to be collected by the Commissioner. Individual ports-of-entry selected by the Commissioner to participate in such pilot programs may charge a fee to enhance inspection services and to recover the cost of:

(a) Hiring additional immigration inspectors, including all associated personnel costs such as salary, benefits, and overtime;

(b) Expansion, operation, and maintenance of information systems for nonimmigrant control;

(c) Construction costs, including those associated with adding new primary traffic lanes (with the concurrence of the General Services Administration);

(d) Procuring detection devices and conducting training to identify fraudulent documents used by applicants for entry to the United States; and

(e) Other administrative costs associated with the PORTPASS Program.

(f) Costs associated with the administration of the Land Border Inspection Fee account.

**HISTORY:** [56 FR 21919, May 13, 1991; 60 FR 16041, Mar. 29, 1995; 60 FR 50386, 50390, Sept. 29, 1995, as confirmed and amended at 61 FR 53830, 53831, 53833, Oct. 16, 1996]

**AUTHORITY:** 8 U.S.C. 1103, 1356; 8 CFR part 2.

**NOTES:** EFFECTIVE DATE NOTE: 61 FR 53830, 53833, Oct. 16, 1996, added paragraph (f), effective Oct. 16, 1996.
NOTES APPLICABLE TO ENTIRE TITLE:
Other regulations issued by the Department of Justice appear in title 4, chapter II, title 21, chapter II, and title 28, chapters I, III, and V.

NOTES APPLICABLE TO ENTIRE CHAPTER:

CROSS REFERENCE: For State Department regulations pertaining to visas and Nationality and Passports, see 22 CFR, chapter I, subchapters E and F.

This table shows sections of title 8 of the United States Code and corresponding sections of the Immigration and Nationality Act and of parts in subchapters A, B, and C of chapter I of title 8 of the Code of Federal Regulations. Those sections of title 8 of the United States Code bearing an asterisk do not have a corresponding part in chapter I of title 8 of the Code of Federal Regulations.

| Section 8 USC | Sections I. & N. Act and 8 CFR |
|---|---|
| 1101* | 101 |
| 1102* | 102 |
| 1103* | 103 |
| 1104* | 104 |
| 1105* | 105 |
| 1105a* | 106 |
| 1151 | 201 |
| 1152* | 202 |
| 1153* | 203 |
| 1154 | 204 |
| 1155* | 205 |
| 1156* | 206 |
| 1181 | 211 |
| 1182 | 212 |
| 1183 | 213 |
| 1184 | 214 |
| 1185 | 215 |
| 1201 | 221 |
| 1202* | 222 |
| 1203 | 223 |
| 1204* | 224 |
| 1221 | 231 |
| 1222 | 232 |
| 1223 | 233 |
| 1224 | 234 |
| 1225 | 235 |
| 1226 | 236 |
| 1227 | 237 |
| 1228 | 238 |
| 1229 | 239 |
| 1230* | 240 |
| 1251 | 241 |
| 1252 | 242 |
| 1253 | 243 |
| 1254 | 244 |
| 1255 | 245 |
| 1256 | 246 |
| 1257 | 247 |
| 1258 | 248 |
| 1259 | 249 |
| 1260 | 250 |
| 1281 | 251 |
| 1282 | 252 |
| 1283 | 253 |
| 1284* | 254 |
| 1285* | 255 |
| 1286* | 256 |

| Section 8 USC | Sections I. & N. Act and 8 CFR |
|---|---|
| 1287* | 257 |
| 1301* | 261 |
| 1302* | 262 |
| 1303* | 263 |
| 1304 | 264 |
| 1305 | 265 |
| 1306* | 266 |
| 1321* | 271 |
| 1322* | 272 |
| 1323* | 273 |
| 1324 | 274 |
| 1325* | 275 |
| 1326* | 276 |
| 1327* | 277 |
| 1328* | 278 |
| 1329* | 279 |
| 1330 | 280 |
| 1351* | 281 |
| 1352 | 282 |
| 1353* | 283 |
| 1354* | 284 |
| 1355* | 285 |
| 1356* | 286 |
| 1357 | 287 |
| 1358* | 288 |
| 1359 | 289 |
| 1360* | 290 |
| 1361* | 291 |
| 1362 | 292 |
| 1401* | 301 |
| 1402* | 302 |
| 1403* | 303 |
| 1404* | 304 |
| 1405* | 305 |
| 1406 | 306 |
| 1407* | 307 |
| 1408* | 308 |
| 1409* | 309 |
| 1421* | 310 |
| 1422* | 311 |
| 1423 | 312 |
| 1424* | 313 |
| 1425* | 314 |
| 1426* | 315 |
| 1427 | 316 |
| 1428* | 317 |
| 1429 | 318 |
| 1430 | 319 |
| 1431* | 320 |
| 1432* | 321 |
| 1433 | 322 |
| 1434 | 323 |
| 1435 | 324 |

| Section 8 USC | Sections I. & N. Act and 8 CFR |
|---|---|
| 1436* | 325 |
| 1437 | 326 |
| 1438 | 327 |
| 1439 | 328 |
| 1440 | 329 |
| 1441 | 330 |
| 1442* | 331 |
| 1443 | 332 |
| 1444 | 333 |
| 1445 | 334 |
| 1446 | 335 |
| 1447 | 336 |
| 1448 | 337 |
| 1449 | 338 |
| 1450 | 339 |
| 1451 | 340 |
| 1452 | 341 |
| 1453 | 342 |
| 1454 | 343 |
| 1455 | 344 |
| 1457* | 346 |
| 1458* | 347 |
| 1459* | 348 |
| 1481 | 349 |
| 1482* | 350 |
| 1483* | 351 |
| 1484* | 352 |
| 1485* | 353 |
| 1486* | 354 |
| 1487* | 355 |
| 1488* | 356 |
| 1489* | 357 |
| 1501* | 358 |
| 1502* | 359 |
| 1503* | 360 |

182 words

LEXSTAT

LEXISNEXIS' CODE OF FEDERAL REGULATIONS
Copyright (c) 2006, by Matthew Bender & Company, a member
of the LexisNexis Group. All rights reserved.

*** THIS SECTION IS CURRENT THROUGH THE JANUARY 2, 2007 ISSUE OF ***
*** THE FEDERAL REGISTER ***

TITLE 8 -- ALIENS AND NATIONALITY
CHAPTER I -- DEPARTMENT OF HOMELAND SECURITY (IMMIGRATION AND NATURALIZATION)
SUBCHAPTER B -- IMMIGRATION REGULATIONS
PART 286 -- IMMIGRATION USER FEE

**Go to the CFR Archive Directory**

8 CFR 286.9

§ 286.9 Fee for processing applications and issuing documentation at land border Ports-of-Entry.

(a) General. A fee may be charged and collected by the Commissioner for the processing and issuance of specified Service documents at land border Ports-of-Entry. These fees, as specified in § 103.7(b)(1) of this chapter, shall be dedicated to funding the cost of providing application-processing services at land border ports.

(b) Forms for which a fee may be charged. (1) A nonimmigrant alien who is required to be issued, or requests to be issued, Form I-94, Arrival/Departure Record, for admission at a land border Port-of-Entry must remit the required fee for issuance of Form I-94 upon determination of admissibility.

(2) A nonimmigrant alien applying for admission at a land border Port-of-Entry as a Visa Waiver Pilot Program applicant pursuant to § 217.2(c) or § 217.3(c) of this chapter must remit the required fee for issuance of Form I-94W upon determination of admissibility.

(3) A Mexican national in possession of a valid Form DSP-150, B-1/B-2 Visa and Border Crossing Card, issued by the DOS, or a passport and combined B-1/B-2 visa and non-biometric BCC (or similar stamp in a passport) issued by the DOS, who is required to be issued Form I-94, Arrival/Departure Record, pursuant to § 235.1(f) of this chapter, must remit the required fee for issuance of Form I-94 upon determination of admissibility.

(4) A citizen or lawful permanent resident alien of the United States or a Canadian citizen or permanent resident of Canada who is a national of a designated Visa Waiver Program country listed in § 217.2(a) of this chapter who requests Form I-68, Canadian Border Boat Landing Permit, pursuant to § 235.1(e) of this chapter, for entry to the United States from Canada as an eligible pleasure boater on a designated body of water, must remit the required fee at the time of application for Form I-68.

**HISTORY:** [60 FR 40069, Aug. 7, 1995; 62 FR 10312, 10390, March 6, 1997; 67 FR 71443, 71450, Dec. 2, 2002; 68 FR 5190, 5194, Jan. 31, 2003]

**AUTHORITY:** 8 U.S.C. 1103, 1356; 8 CFR part 2.

**NOTES:** [EFFECTIVE DATE NOTE: 67 FR 71443, 71450, Dec. 2, 2002, revised paragraph (b)(3) and removed paragraphs (b)(5) and (b)(6), effective Oct. 1, 2002; 68 FR 5190, 5194, Jan. 31, 2003, revised paragraph (b)(4), effective Mar. 17, 2003.]
NOTES APPLICABLE TO ENTIRE TITLE:

Other regulations issued by the Department of Justice appear in title 4, chapter II, title 21, chapter II, and title 28, chapters I, III, and V.

NOTES APPLICABLE TO ENTIRE CHAPTER:
CROSS REFERENCE: For State Department regulations pertaining to visas and Nationality and Passports, see 22 CFR, chapter I, subchapters E and F.
This table shows sections of title 8 of the United States Code and corresponding sections of the Immigration and Nationality Act and of parts in subchapters A, B, and C of chapter I of title 8 of the Code of Federal Regulations. Those sections of title 8 of the United States Code bearing an asterisk do not have a corresponding part in chapter I of title 8 of the Code of Federal Regulations.

| Section 8 USC | Sections I. & N. Act and 8 CFR |
|---|---|
| 1101* | 101 |
| 1102* | 102 |
| 1103* | 103 |
| 1104* | 104 |
| 1105* | 105 |
| 1105a* | 106 |
| 1151 | 201 |
| 1152* | 202 |
| 1153* | 203 |
| 1154 | 204 |
| 1155* | 205 |
| 1156* | 206 |
| 1181 | 211 |
| 1182 | 212 |
| 1183 | 213 |
| 1184 | 214 |
| 1185 | 215 |
| 1201 | 221 |
| 1202* | 222 |
| 1203 | 223 |
| 1204* | 224 |
| 1221 | 231 |
| 1222 | 232 |
| 1223 | 233 |
| 1224 | 234 |
| 1225 | 235 |
| 1226 | 236 |
| 1227 | 237 |
| 1228 | 238 |
| 1229 | 239 |
| 1230* | 240 |
| 1251 | 241 |
| 1252 | 242 |
| 1253 | 243 |
| 1254 | 244 |
| 1255 | 245 |
| 1256 | 246 |
| 1257 | 247 |
| 1258 | 248 |
| 1259 | 249 |
| 1260 | 250 |
| 1281 | 251 |

| Section 8 USC | Sections I. & N. Act and 8 CFR |
|---|---|
| 1282 | 252 |
| 1283 | 253 |
| 1284* | 254 |
| 1285* | 255 |
| 1286* | 256 |
| 1287* | 257 |
| 1301* | 261 |
| 1302* | 262 |
| 1303* | 263 |
| 1304 | 264 |
| 1305 | 265 |
| 1306* | 266 |
| 1321* | 271 |
| 1322* | 272 |
| 1323* | 273 |
| 1324 | 274 |
| 1325* | 275 |
| 1326* | 276 |
| 1327* | 277 |
| 1328* | 278 |
| 1329* | 279 |
| 1330 | 280 |
| 1351* | 281 |
| 1352 | 282 |
| 1353* | 283 |
| 1354* | 284 |
| 1355* | 285 |
| 1356* | 286 |
| 1357 | 287 |
| 1358* | 288 |
| 1359 | 289 |
| 1360* | 290 |
| 1361* | 291 |
| 1362 | 292 |
| 1401* | 301 |
| 1402* | 302 |
| 1403* | 303 |
| 1404* | 304 |
| 1405* | 305 |
| 1406 | 306 |
| 1407* | 307 |
| 1408* | 308 |
| 1409* | 309 |
| 1421* | 310 |
| 1422* | 311 |
| 1423 | 312 |
| 1424* | 313 |
| 1425* | 314 |
| 1426* | 315 |
| 1427 | 316 |
| 1428* | 317 |
| 1429 | 318 |
| 1430 | 319 |

| Section 8 USC | Sections I. & N. Act and 8 CFR |
|---|---|
| 1431* | 320 |
| 1432* | 321 |
| 1433 | 322 |
| 1434 | 323 |
| 1435 | 324 |
| 1436* | 325 |
| 1437 | 326 |
| 1438 | 327 |
| 1439 | 328 |
| 1440 | 329 |
| 1441 | 330 |
| 1442* | 331 |
| 1443 | 332 |
| 1444 | 333 |
| 1445 | 334 |
| 1446 | 335 |
| 1447 | 336 |
| 1448 | 337 |
| 1449 | 338 |
| 1450 | 339 |
| 1451 | 340 |
| 1452 | 341 |
| 1453 | 342 |
| 1454 | 343 |
| 1455 | 344 |
| 1457* | 346 |
| 1458* | 347 |
| 1459* | 348 |
| 1481 | 349 |
| 1482* | 350 |
| 1483* | 351 |
| 1484* | 352 |
| 1485* | 353 |
| 1486* | 354 |
| 1487* | 355 |
| 1488* | 356 |
| 1489* | 357 |
| 1501* | 358 |
| 1502* | 359 |
| 1503* | 360 |

308 words

LEXSTAT

LEXISNEXIS' CODE OF FEDERAL REGULATIONS
Copyright (c) 2006, by Matthew Bender & Company, a member
of the LexisNexis Group. All rights reserved.

*** THIS SECTION IS CURRENT THROUGH THE JANUARY 2, 2007 ISSUE OF ***
*** THE FEDERAL REGISTER ***

TITLE 8 -- ALIENS AND NATIONALITY
CHAPTER V – EXECUTIVE OFFICE FOR IMMIGRATION REVIEW, DEPARTMENT OF JUSTICE
SUBCHAPTER B -- IMMIGRATION REGULATIONS
PART 1212 -- DOCUMENTARY REQUIREMENTS: NONIMMIGRANTS; WAIVERS; ADMISSION OF CERTAIN INADMISSIBLE ALIENS; PAROLE

**Go to the CFR Archive Directory**

8 CFR 1212.1

§ 1212.1 Documentary requirements for nonimmigrants.

[PUBLISHER'S NOTE: 68 FR 10349, 10353, Mar. 5, 2003, purported to substitute "of 8 CFR chapter I" for "of this chapter" in paragraph (g)(3) of § 1212.1. However this could not implemented, since paragraph (g)(3) did not exist in § 1212.1. It was determined that paragraph (g)(3) of § 1212.2 should instead be amended. For the convenience of the user, the amendment has been implemented according to the apparent intent of the agency. A correction is anticipated.]

A valid unexpired visa and an unexpired passport, valid for the period set forth in section 212(a)(26) of the Act, shall be presented by each arriving nonimmigrant alien except that the passport validity period for an applicant for admission who is a member of a class described in section 102 of the Act is not required to extend beyond the date of his application for admission if so admitted, and except as otherwise provided in the Act, this chapter, and for the following classes:

(a) Citizens of Canada or Bermuda, Bahamian nationals or British subjects resident in certain islands.

(1) Canadian citizens. A passport is not required except after a visit outside of the Western Hemisphere. A visa is not required.

(2) Citizens of the British Overseas Territory of Bermuda. A passport is not required except after a visit outside of the Western Hemisphere. A visa is not required.

(3) Bahamian nationals or British subjects resident in the Bahamas. A passport is required. A visa required of such an alien unless, prior to or at the time of embarkation for the United States on a vessel or aircraft, the alien satisfied the examining U.S. immigration officer at the Bahamas, that he or she is clearly and beyond a doubt entitled to admission, under section 212(a) of the Immigration and Nationality Act, in all other respects.

(4) British subjects resident in the Cayman Islands or in the Turks and Caicos Islands. A passport is required. A visa is required of such an alien unless he or she arrives directly from the Cayman Islands or the Turks and Caicos Islands and presents a current certificate from the Clerk of Court of the Cayman Islands or the Turks and Caicos Islands indicating no criminal record.

(b) Certain Caribbean residents. (1) British, French, and Netherlands nationals, and nationals of certain adjacent islands of the Caribbean which are independent countries. A visa is not required of a British, French, or Netherlands national, or of a national of Barbados, Grenada, Jamaica, or Trinidad and Tobago, who has his or her residence in British,

French, or Netherlands territory located in the adjacent islands of the Caribbean area, or in Barbados, Grenada, Jamaica, or Trinidad and Tobago, who:

(i) Is proceeding to the United States as an agricultural worker;

(ii) Is the beneficiary of a valid, unexpired indefinite certification granted by the Department of Labor for employment in the Virgin Islands of the United States and is proceeding to the Virgin Islands of the United States for such purpose, or

(iii) Is the spouse or child of an alien described in paragraph (b)(1)(i) or (b)(1)(ii) of this section, and is accompanying or following to join him or her.

(2) Nationals of the British Virgin Islands. A visa is not required of a national of the British Virgin Islands who has his or her residence in the British Virgin Islands, if:

(i) The alien is seeking admission solely to visit the Virgin Islands of the United States; or

(ii) At the time of embarking on an aircraft at St. Thomas, U.S. Virgin Islands, the alien meets each of the following requirements:

(A) The alien is traveling to any other part of the United States by aircraft as a nonimmigrant visitor for business or pleasure (as described in section 101(a)(15)(B) of the Act);

(B) The alien satisfies the examining U.S. Immigration officer at the port-of-entry that he or she is clearly and beyond a doubt entitled to admission in all other respects; and

(C) The alien presents a current Certificate of Good Conduct issued by the Royal Virgin Islands Police Department indicating that he or she has no criminal record.

(c) Mexican nationals.

(1) A visa and a passport are not required of a Mexican national who:

(i) Is in possession of a Form DSP-150, B-1/B-2 Visa and Border Crossing Card, containing a machine-readable biometric identifier, issued by the DOS and is applying for admission as a temporary visitor for business or pleasure from contiguous territory.

(ii) Is a Mexican national entering solely for the purpose of applying for a Mexican passport or other official Mexican document at a Mexican consular office on the United States side of the border.

(2) A visa shall not be required of a Mexican national who:

(i) Is in possession of a Form DSP-150, with a biometric identifier, issued by the DOS, and a passport, and is applying for admission as a temporary visitor for business or pleasure from other than contiguous territory;

(ii) Is a crew member employed on an aircraft belonging to a Mexican company owned carrier authorized to engage in commercial transportation into the United States; or

(iii) Bears a Mexican diplomatic or official passport and who is a military or civilian official of the Federal Government of Mexico entering the United States for 6 months or less for a purpose other than on assignment as a permanent employee to an office of the Mexican Federal Government in the United States, and the official's spouse or any of the official's dependent family members under 19 years of age, bearing diplomatic or official passports, who are in the actual company of such official at the time of admission into the United States. This provision does not apply to the spouse or any of the official's family members classifiable under section 101(a)(15)(F) or (M) of the Act.

(3) A Mexican national who presents a BCC at a POE must present the DOS-issued DSP-150 containing a machine-readable biometric identifier. The alien will not be permitted to cross the border into the United States unless the biometric identifier contained on the card matches the appropriate biometric characteristic of the alien.

(4) Mexican nationals presenting a combination B-1/B-2 nonimmigrant visa and border crossing card (or similar stamp in a passport), issued by DOS prior to April 1, 1998, that does not contain a machine-readable biometric identifier, may be admitted on the basis of the nonimmigrant visa only, provided it has not expired and the alien remains admissible. A passport is also required.

(5) Aliens entering pursuant to International Boundary and Water Commission Treaty. A visa and a passport are not required of an alien employed either directly or indirectly on the construction, operation, or maintenance of works in the United States undertaken in accordance with the treaty concluded on February 3, 1944, between the United States and Mexico regarding the functions of the International Boundary and Water Commission, and entering the United States temporarily in connection with such employment.

(d) Citizens of the Freely Associated States, formerly Trust Territory of the Pacific Islands. Citizens of the Republic of the Marshall Islands and the Federated States of Micronesia may enter into, lawfully engage in employment, and establish residence in the United States and its territories and possessions without regard to paragraphs (14), (20) and (26) of section 212(a) of the Act pursuant to the terms of Pub. L. 99-239. Pending issuance by the aforementioned governments of travel documents to eligible citizens, travel documents previously issued by the Trust Territory of the Pacific Islands will continue to be accepted for purposes of identification and to establish eligibility for admission into the United States, its territories and possessions.

(e) Aliens entering Guam pursuant to section 14 of Pub. L. 99-396, "Omnibus Territories Act." (1) A visa is not required of an alien who is a citizen of a country enumerated in paragraph (e)(3) of this section who:

(i) Is classifiable as a vistor for business or pleasure;

(ii) Is solely entering and staying on Guam for a period not to exceed fifteen days;

(iii) Is in possession of a round-trip nonrefundable and nontransferable transportation ticket bearing a confirmed departure date not exceeding fifteen days from the date of admission to Guam;

(iv) Is in possession of a completed and signed Visa Waiver Information Form (Form I-736);

(v) Waives any right to review or appeal the immigration officer's determination of admissibility at the port of entry at Guam; and

(vi) Waives any right to contest any action for deportation, other than on the basis of a request for asylum.

(2) An alien is eligible for the waiver provision if all of the eligibility criteria in paragraph (e)(1) of this section have been met prior to embarkation and the alien is a citizen of a country that:

(i) Has a visa refusal rate of 16.9% or less, or a country whose visa refusal rate exceeds 16.9% and has an established preinspection or preclearance program, pursuant to a bilateral agreement with the United States under which its citizens traveling to Guam without a valid United States visa are inspected by the Immigration and Naturalization Service prior to departure from that country;

(ii) Is within geographical proximity to Guam, unless the country has a substantial volume of nonimmigrant admissions to Guam as determined by the Commissioner and extends reciprocal privileges to citizens of the United States;

(iii) Is not designated by the Department of State as being of special humanitarian concern; and

(iv) Poses no threat to the welfare, safety or security of the United States, its territories, or commonwealths.

Any potential threats to the welfare, safety, or security of the United States, its territories, or commonwealths will be dealt with on a country by country basis, and a determination by the Commissioner of the Immigration and Naturalization Service that a threat exists will result in the immediate deletion of that country from the listing in paragraph (e)(3) of this section.

(3)(i) The following geographic areas meet the eligibility criteria as stated in paragraph (e)(2) of this section: Australia, Brunei, Indonesia, Japan, Malaysia, Nauru, New Zealand, Papua New Guinea, Republic of Korea, Singapore, Solomon Islands, Taiwan (residents thereof who begin their travel in Taiwan and who travel on direct flights from Taiwan to Guam without an intermediate layover or stop except that the flights may stop in a territory of the United States enroute), the United Kingdom (including the citizens of the colony of Hong Kong), Vanuatu, and Western Samoa. The provision that flights transporting residents of Taiwan to Guam may stop at a territory of the United States enroute may be rescinded whenever the number of inadmissible passengers arriving in Guam who have transited a territory of the United States enroute to Guam exceeds 20 percent of all the inadmissible passengers arriving in Guam within any consecutive two-month period. Such rescission will be published in the FEDERAL REGISTER.

(ii) For the purposes of this section, the term citizen of a country as used in 8 CFR 212.1(e)(1) when applied to Taiwan refers only to residents of Taiwan who are in possession of Taiwan National Identity Cards and a valid Taiwan

passport with a valid re-entry permit issued by the Taiwan Ministry of Foreign Affairs. It does not refer to any other holder of a Taiwan passport or a passport issued by the People's Republic of China.

(4) Admission under this section renders an alien ineligible for:

(i) Adjustment of status to that of a temporary resident or, except under the provisions of section 245(i) of the Act, to that of a lawful permanent resident;

(ii) Change of nonimmigrant status; or

(iii) Extension of stay.

(5) A transportation line bringing any alien to Guam pursuant to this section shall:

(i) Enter into a contract on Form I-760, made by the Commissioner of the Immigration and Naturalization Service in behalf of the government;

(ii) Transport only an alien who is a citizen and in possession of a valid passport of a country enumerated in paragraph (e)(3) of this section;

(iii) Transport only an alien in possession of a round-trip, nontransferable transportation ticket:

(A) Bearing a confirmed departure date not exceeding fifteen days from the date of admission to Guam,

(B) Valid for a period of not less than one year,

(C) Nonrefundable except in the country in which issued or in the country of the alien's nationality or residence,

(D) Issued by a carrier which has entered into an agreement described in part (5)(i) of this section, and

(E) Which the carrier will unconditionally honor when presented for return passage; and

(iv) Transport only an alien in possession of a completed and signed Visa Waiver Information Form I-736.

(f) Direct transits -- (1) Transit without visa. A passport and visa are not required of an alien who is being transported in immediate and continuous transit through the United States in accordance with the terms of an agreement entered into between the transportation line and the Service under the provisions of section 238(d) of the Act on Form I-426 to insure such immediate and continuous transit through, and departure from, the United States en route to a specifically designated foreign country: Provided, That such alien is in possession of a travel document or documents establishing his/her identity and nationality and ability to enter some country other than the United States.

(2) Unavailability to transit. This waiver of passport and visa requirement is not available to an alien who is a citizen of Afghanistan, Angola, Bangladesh, Belarus, Bosnia-Herzegovina, Burma, Burundi, Central African Republic, People's Republic of China, Columbia, Congo (Brazzaville), Cuba, India, Iran, Iraq, Libya, Nigeria, North Korea, Pakistan, Serbia, Seirra Leone, Somalia, Sri Lanka, and Sudan.

(3) Foreign government officials in transit. If an alien is of the class described in section 212(d)(8) of the Act, only a valid unexpired visa and a travel document valid for entry into a foreign country for at least 30 days from the date of admission to the United States are required.

(g) Unforeseen emergency. A nonimmigrant seeking admission to the United States must present an unexpired visa and a passport valid for the amount of time set forth in section 212(a)(7)(B) of the Act or a valid biometric border crossing card, issued by the DOS on Form DSP-150, at the time of application for admission, unless the nonimmigrant satisfies the requirements described in one or more of the paragraphs (a) through (f),(i) or (o) of this section. Upon a nonimmigrant's application on Form I-193, Application for Waiver of Passport and/or Visa, a district director may, in the exercise of his or her discretion, on a case-by-case basis, waive the documentary requirements if satisfied that the nonimmigrant cannot present the required documents because of an unforeseen emergency. The district director or the Deputy Commissioner may at any time revoke a waiver previously authorized pursuant to this paragraph and notify the nonimmigrant in writing to that effect.

(h) Nonimmigrant spouses, fiancees, fiances, and children of U.S. citizens. Notwithstanding any of the provisions of this part, an alien seeking admission as a spouse, fiancee, fiance, or child of a U.S. citizen, or as a child of the spouse, fiane, or finacee of a U.S. citizen, pursuant to section 101(a)(15)(K) of the Act shall be in possession of an unexpired

nonimmigrant visa issued by an American consular officer classifying the alien under that section, or be inadmissible under section 212(a)(7)(B) of the Act.

(i) Visa Waiver Pilot Program. A visa is not required of any alien who is eligible to apply for admission to the United States as a Visa Waiver Pilot Program applicant pursuant to the provisions of section 217 of the Act and part 217 of this chapter if such alien is a national of a country designated under the Visa Waiver Pilot Program, who seeks admission to the United States for a period of 90 days or less as a visitor for business or pleasure.

(j) Officers authorized to act upon recommendations of United States consular officers for waiver of visa and passport requirements. All district directors, the officers in charge are authorized to act upon recommendations made by United States consular officers or by officers of the Visa Office, Department of State, pursuant to the provisions of 22 CFR 41.7 for waiver of visa and passport requirements under the provisions of section 212(d)(4)(A) of the Act. The District Director at Washington, DC, has jurisdiction in such cases recommended to the Service at the seat of Government level by the Department of State. Neither an application nor fee are required if the concurrence in a passport or visa waiver is requested by a U.S. consular officer or by an officer of the Visa Office. The district director or the Deputy Commissioner, may at any time revoke a waiver previously authorized pursuant to this paragraph and notify the nonimmigrant alien in writing to that effect.

(k) Cancellation of nonimmigrant visas by immigration officers. Upon receipt of advice from the Department of State that a nonimmigrant visa has been revoked or invalidated, and request by that Department for such action, immigration officers shall place an appropriate endorsement thereon.

(l) Treaty traders and investors. Notwithstanding any of the provisions of this part, an alien seeking admission as a treaty trader or investor under the provisions of Chapter 16 of the North American Free Trade Agreement (NAFTA) pursuant to section 101(a)(15)(E) of the Act, shall be in possession of a nonimmigrant visa issued by an American consular officer classifying the alien under that section.

(m) Aliens in S classification. Notwithstanding any of the provisions of this part, an alien seeking admission pursuant to section 101(a)(15)(S) of the Act must be in possession of appropriate documents issued by a United States consular officer classifying the alien under that section.

(n) Alien in Q-2 classification. Notwithstanding any of the provisions of this part, an alien seeking admission as a principal according to section 101(a)(15)(Q)(ii) of the Act must be in possession of a Certification Letter issued by the Department of State's Program Administrator documenting participation in the Irish peace process cultural and training programs.

(o) Alien in T-2 through T-4 classification. Individuals seeking T-2 through T-4 nonimmigrant status may avail themselves of the provisions of paragraph (g) of this section, except that the authority to waive documentary requirements resides with the Service Center.

**HISTORY:** [26 FR 12066, Dec. 16, 1961; 51 FR 18769, 44783; 52 FR 48083, 1987; 53 FR 24900, 1988; 54 FR 13, 48577, 1989; 55 FR 36259, 1990; 58 FR 4891, Jan. 19, 1993; 58 FR 38046, July 15, 1993, as confirmed at 59 FR 35615, July 13, 1994; 58 FR 43438, Aug. 16, 1993; 58 FR 69210, Dec. 30, 1993, as corrected at 59 FR 1992, Jan. 13, 1994, and confirmed at 63 FR 1331, 1334, Jan. 9, 1998; 59 FR 1467, Jan. 11, 1994; 59 FR 35615, July 13, 1994; 59 FR 51095, Oct. 7, 1994; 60 FR 44260, 44264, Aug. 25, 1995; 61 FR 11717, 11720, March 22, 1996; 64 FR 7989, 7990, Feb. 18, 1999; 65 FR 14774, 14777, Mar. 17, 2000; 66 FR 235, 236, Jan. 3, 2001, as confirmed at 66 FR 51821, 51822, Oct. 11, 2001; 66 FR 1017, 1018, Jan. 5, 2001; 66 FR 8743, Feb. 2, 2001; 66 FR 17321, 17322, Mar. 30, 2001; 66 FR 32529, 32530, June 15, 2001; 66 FR 42587, 42593, Aug. 14, 2001; 67 FR 4784, 4795, Jan. 31, 2002; 67 FR 71443, 71447, Dec. 2, 2002; 68 FR 5190, 5193, Jan. 31, 2003; 68 FR 9824, 9835, Feb. 28, 2003]

**AUTHORITY:** *(Secs. 103, 104, 212 of the Immigration and Nationality Act, as amended (8 U.S.C. 1103,* 1104, 1132))

**NOTES:** [EFFECTIVE DATE NOTE: 67 FR 4784, 4795, Jan. 31, 2002, revised paragraph (g) and added paragraph (o), effective Mar. 4, 2002; 67 FR 71443, 71447, Dec. 2, 2002, amended this section, effective Oct. 1, 2002; 68 FR 5190, 5193, Jan. 31, 2003, revised paragraph (a), effective Mar. 17, 2003; 68 FR 9824, 9835, Feb. 28, 2003, duplicated Title 8, Chapter I, Part 212 as Title 8, Chapter V, Part 1212, effective Feb. 28, 2003.]
NOTES APPLICABLE TO ENTIRE TITLE:
Other regulations issued by the Department of Justice appear in title 4, chapter II, title 21, chapter II, and title 28, chapters I, III, and V.

3172 words

076

Kentucky Beef Cattle Association
Lousiana Beef Industry Council
Maryland Beef Council
Michigan Beef Industry Commission
Minnesota Beef Council
Mississippi Cattle Industry Board
Missouri Beef Industry Council
Montana Beef Council
Nebraska Beef Industry Development Board
Nevada Beef Council
New Mexico Beef Council
New York Beef Industry Council
North Carolina Cattlemen's Association
North Dakota Beef Commission
Ohio Beef Council
Oklahoma Beef Commission
Oregon Beef Council
Pennsylvania Beef Council, Inc.
South Carolina Cattle and Beef Board
South Dakota Beef Industry Council
Tennessee Beef Industry Council
Texas Beef Industry Council
Utah Beef Council
Vermont Beef Council
Virginia Cattle Industry Board
Washington State Beef Commission
West Virginia Beef Industry
Wisconsin Beef Council
Wyoming Beef Council

**§ 1260.316 Paperwork Reduction Act assigned number.**

The information collection and recordkeeping requirements contained in this Part have been approved by the Office of Management and Budget (OMB) under the provisions of 44 U.S.C. Chapter 35 and have been assigned OMB control number 0851–0152.

Done at Washington, DC, on February 22, 1988.

James P. Boyle,

*Administrator, Agricultural Marketing Service.*

[FR Doc. 88–4069 Filed 2–25–88; 8:45 am]

BILLING CODE 3410-02-M

**DEPARTMENT OF JUSTICE**

**Immigration and Naturalization Service**

**8 CFR Part 286**

**[INS No. 1025–88]**

**Immigration User Fee**

**AGENCY:** Immigration and Naturalization Service, Justice.

**ACTION:** Final rule.

**SUMMARY:** This final rule adds a new Part 286 to implement the provisions of section 205 of the Department of Justice Appropriation Act, 1987 (Pub. L. 99–591; enacted October 30, 1986) establishing an immigration user fee.

**EFFECTIVE DATE:** March 28, 1988.

**FOR FURTHER INFORMATION CONTACT:** Charles S. Thomason, Jr., Systems Accountant, Finance Branch, Immigration and Naturalization Service, 425 I Street NW., Washington, DC 20536; (202) 633–4705.

**SUPPLEMENTARY INFORMATION:** The Immigration and Naturalization Service (Service) published a proposed rule on August 12, 1987, at 52 FR 29863, to add a new Part 286 in order to implement the provisions of section 205 of the Department of Justice Appropriation Act, 1987, which authorizes the charging and collection of an immigration user fee to be paid by passengers (with certain exceptions) arriving in the United States by commercial aircraft or commercial vessel. The comment period ended on October 13, 1987. A total of 12 comments were received during the comment period and considered before preparing this final rule. The following summary addresses the substantive comments.

1. Certain commenters raised concerns about the inclusion of Guam and the U.S. Virgin Islands in the definition of "port of entry" and urged that those locations be deleted to be consistent with the collection of a user fee by the U.S. Customs Service. Both locations are part of the United States as defined in section 101(a)(38) of the Immigration and Nationality Act of 1952, as amended, (Act). The definition section has been revised to clarify the geographical applicability of the immigration user fee.

2. Commenters, also, raised concerns about the definition of "originated", especially with regard to cruise itineraries that commence in excepted locations but include one or more non-excepted locations before returning to the excepted location. The final rule has been revised to indicate that any travel which includes a non-excepted location requires collection of the immigration user fee. The intent of the statute is that a passenger who travels from a non-excepted location shall pay the immigration user fee.

3. Some commenters assert that the exceptions set forth in § 286.3 are unclear. That section has been revised to clarify the exceptions, and the definitions in § 286.1 have been revised, as indicated above, to clarify the geographical applicability of the immigration user fee.

4. Numerous commenters expressed concern about the responsibility for collection of the immigration user fee upon departure of a passenger, especially in the case of refusal by a passenger to pay or when a tour wholesaler is involved. The statute and proposed rule indicate that it is the responsibility of the departing carrier to collect any immigration user fee which was not collected at the time of issuance of a ticket or document for transportation. Any refusal to pay should immediately be brought to the attention of the Service.

5. One commenter requested that the regulations include guidance on the method of indicating collection of the immigration user fee on the tickets or documents for transportation. Such guidance has been included in a revised § 286.4. Section 286.4 in the proposed rule has been deleted.

6. Some commenters expressed concern that § 286.6 does not reflect the elimination of certain expense responsibilities of carriers nor the extent of the provision of inspection services. Section 286.6 has been deleted. This rule addresses the assessment, collection, and remittance of the immigration user fee, not inspection services or other expenses addressed in the statute. The provision of inspection services and other expenses are the subject of other sections of the regulations, which will be amended, if necessary.

7. Numerous commenters expressed concern about the reporting and audit requirements regarding: (a) Numbers of tickets or documents for transportation issued without collection of the immigration user fee; (b) submission of certified assurance statements; (c) independent audits by the Attorney General; and (d) information on contracts with foreign-based tour wholesalers. The reporting of ticket or document for transportation issuance without collection of the immigration user fee and § 286.8 of the proposed rule regarding information on contracts with foreign-based tour wholesalers have been deleted. The provisions regarding the submission of certified assurance statements have been revised. The intent of these provisions is to satisfy the need for independent review of compliance without imposing an undue burden upon the collectors and remitters of the immigration user fee. Independent audits by the Service of collectors and remitters would be based on failures to submit required certified statements or reports or other information indicating non-compliance with the applicable statutes or regulations.

8. Various commenters raised concerns about § 286.11 of the proposed rule which provided for the transfer to the General Fund of the U.S. Treasury of any balance remaining in the Immigration User Fee Account at the

HeinOnline -- 53 Fed. Reg. 5756 1988

end of each two-year period. Section 286.11 has been deleted.

As a result of the deletion of §§ 286.4, 286.6, 286.8, and 286.11 in the proposed rule, the sections in this final rule have been renumbered.

In compliance with 5 U.S.C. 605(b), the Commissioner of Immigration and Naturalization Service certifies that this rule will not have a significant economic impact on a substantial number of small entities. This rule is not a major rule within the meaning of section 1(b) of Executive Order 12291.

The information collection requirements contained in this final rule have been approved by the Office of Management and Budget, pursuant to the provisions of the Paperwork Reduction Act, under Control Number 1115–0142.

**List of Subjects in 8 CFR Part 286**

Aircraft, Immigration, Reporting and recordkeeping requirements, Vessels.

Accordingly, Chapter I of Title 8 of the *Code of Federal Regulations* is amended as follows:

Part 286 is added to read as follows:

## PART 286—IMMIGRATION USER FEE

Sec.
286.1 Definitions.
286.2 Fee for arrival of passengers aboard commercial aircraft or commercial vessels.
286.3 Exceptions.
286.4 Fee collection responsibility.
286.5 Remittance and statement procedures.
286.6 Maintenance of records.
286.7 Penalties.

**Authority:** 8 U.S.C. 1103, 1356.

**§ 286.1 Definitions.**

The following definitions apply to the following terms in this part:

(a) The term "adjacent islands" means Anguilla, Antigua, Aruba, Bahamas, Barbados, Barbuda, Bermuda, Bonaire, British Virgin Islands, Cayman Islands, Cuba, Curacao, Dominica, the Dominican Republic, Grenada, Guadeloupe, Haiti, Jamaica, Marie-Galante, Martinique, Miquelon, Montserrat, Saba, Saint Barthélemy, Saint Christopher, Saint Eustatius, Saint Kitts-Nevis, Saint Lucia, Saint Maarten, Saint Martin, Saint Pierre, Saint Vincent and Grenadines, Trinidad and Tobago, Turks and Caicos Islands, and other British, French and Netherlands territory or possessions bordering on the Caribbean Sea.

(b) The term "collector" means an air or sea carrier, travel agent, tour wholesaler, or other entity which collects, but may or may not be required to remit, fees pursuant to this part.

(c) The term "commercial aircraft" means any civilian aircraft being used to transport persons or property for compensation or hire.

(d) The term "commercial vessel" means any civilian vessel being used to transport persons or property for compensation or hire.

(e) The term "Comptroller" means the Office of the Comptroller, Immigration and Naturalization Service, Room 6307, 425 I Street NW., Washington, DC 20536.

(f) The term "fee" means the immigration user fee.

(g) The term "port of entry" means a port or place designated by the Commissioner at which a person may apply for admission into the United States.

(h) The term "remitter" means an air or sea carrier, travel agent, tour wholesaler, or other entity which collects, including receipt of fees collected by collectors which are not required to remit fees, and remits fees pursuant to this part.

(i) The term "territories or possessions of the United States" means American Samoa, Baker Island, Howland Island, Jarvis Island, Johnston Atoll, Kingman Reef, Midway, the Northern Mariana Islands, Swains Island, Palmyra Island, and Wake Island.

(j) The term "document for transportation" means any document accepted by a carrier in return for transportation.

(k) The term "United States", when used in a geographical sense, means the continental United States, Alaska, Hawaii, Puerto Rico, Guam, and the Virgin Islands of the United States.

**§ 286.2 Fee for arrival of passengers aboard commercial aircraft or commercial vessels.**

Under the provisions of section 286(b) of the Act a $5.00 fee per individual is charged and collected by the Commissioner for the immigration inspection of each passenger aboard a commercial aircraft or commercial vessel, arriving at a port of entry in the United States, or for the preinspection of a passenger in a place outside the United States prior to such arrival, except as provided in § 286.3 of this part.

**§ 286.3 Exceptions.**

The fee set forth in § 286.2 of this part shall not be charged or collected from passengers who fall within any one of the following categories:

(a) Persons whose travel is limited to Canada, Mexico, the United States, adjacent islands, and territories or possessions of the United States;

(b) Persons directly connected with the operation, navigation, or business of the commercial aircraft or commercial vessel including working crew, deadheading crew, U.S. Federal Aviation Administration inspectors, sky marshals, and commercial airline or commercial vessel employees on official business;

(c) Persons who are listed as foreign diplomats on the accreditation list maintained by the U.S. Department of State or who are in possession of a diplomatic visa (A–1 and 2, G–1 thru 4) valid for entry into the United States;

(d) Persons who are passengers on any commercial aircraft or commercial vessel owned or operated exclusively by the Government of the United States or a foreign government, including any agency or political subdivision thereof, so long as that aircraft or vessel is not transporting any persons or property for commercial purposes.

(e) Persons who are passengers on commercial aircraft or commercial vessels under contract to the U.S. Department of Defense, if they have been preinspected outside of the United States under a joint Service and U.S. Department of Defense military inspection program;

(f) Persons arriving on an aircraft or vessel due to an emergency or forced landing when the original destination of the aircraft or vessel was not the United States; and

(g) Persons transiting the United States who are not inspected by the Service. Transit without visa passengers who are inspected by the Service are not excepted from payment of the fee under this section.

**§ 286.4 Fee collection responsibility.**

(a) It is the responsibility of the air or sea carriers, travel agents, tour wholesalers, or other parties, which issue tickets or documents for transportation on or after December 1, 1986, to collect the fee set forth in § 286.2 of this part from all passengers transported to the United States who are not excepted under § 286.3 of this part.

(b) Tickets and documents for transportation shall be marked by the collector of the fee to indicate that the required fee has been collected. Such markings shall be in accordance with the procedures set forth in the ARC Industry Agents Handbook, the SATO Ticketing Handbook, or compatible procedures set forth in the operations manual of individual collectors.

(c) It is the responsibility of the carrier transporting a passenger from the United States to collect the fee upon departure, if the passenger was not excepted under § 286.3 of this part and tickets or documents for transportation of the passenger do not reflect collection

of the fee at the time of issuance. If at the time of departure such a passenger refuses to pay the fee, the carrier shall record the full name, complete address, nationality, passport number, and alien file number, if any, of the passenger and immediately notify the Comptroller.

**§ 286.5 Remittance and statement procedures.**

(a) The air or sea carrier whose ticket stock or document for transportation reflects collection of the fee is responsible for remittance of the fee to the Service. The travel agent, tour wholesaler, or other entity, which issues their own non-carrier related ticket or document for transportation to an air or sea passenger who is not excepted from the fee pursuant to § 286.3 of this part, is responsible for remittance of the fee to the Service, unless by contract the carrier will remit the fee.

(b) Fees shall be remitted to the Immigration User Fee Account, Department of the Treasury, by transmission in the Treasury Financial Communication System, using Agency Location Code (ALC) 15 12 0003, for receipt no later than 31 days after the close of the calendar quarter in which the fees are collected. Late payments will be subject to interest, penalty, and handling charges as provided in the Debt Collection Act of 1982 (31 U.S.C. 3717). Refunds by a remitter of fees collected in conjunction with unused tickets or documents for transportation should be netted against the next subsequent remittance.

(c) Concurrent with transmission of a remittance, as set forth in paragraph (b) of this section, each remitter making such remittance shall mail a written statement to the Comptroller which sets forth the following:

(1) Name and address;
(2) Taxpayer identification number;
(3) Calendar quarter covered by the payment; and
(4) Amount collected and remitted.

(d) If a remitter is unable to make a remittance by transmission as set forth in paragraph (b) of this section, remittance with a statement as set forth in paragraph (c) of this section must be made by check or money order payable in U.S. dollars, through a U.S. bank, to "Comptroller, INS", and mailed to the Comptroller for receipt no later than thirty-one (31) days after the close of the calendar quarter in which the fees are collected.

(e) Annually, each U.S. based remitter, which retains an independent accountant and which remits $10,000 or more in fees in any one calendar quarter, shall submit to the Comptroller a report from the independent accountant in accordance with the *Statement on Auditing Standards for Attestation Engagements* on the application of Passenger User Fee Collection and Remittance Procedures established by the American Institute of Certified Public Accountants and the Service, to the Comptroller. Each foreign-based remitter, which retains an independent accountant and which remits $10,000 or more in fees in any one calendar quarter, shall submit a similar report to the Comptroller from the independent accountant in accordance with generally accepted accounting principles of their respective countries. These reports from the independent accountants are to be submitted for receipt by the Comptroller no later than ninety (90) days after the close of the fiscal year of each remitter. Each remitter, which does not retain an independent accountant or which does not remit $10,000 or more in any one calendar quarter, shall certify under oath on each statement submitted pursuant to paragraph (c) of this section that they have complied with the applicable statutes and regulations.

(f) The Commissioner reserves the right to conduct an independent audit of any collector or remitter not providing the report or certification required pursuant to paragraph (e) of this section or based upon other information indicating non-compliance in order to assure the accuracy of the remittances of fees collected and remitted and compliance with the applicable statutes and regulations.

(g) In order to enforce compliance with the provisions of this part, the Commissioner may issue a subpoena requiring the production of records, evidence, and witnesses pursuant to the procedures set forth in § 287.4 of this chapter. The authority to issue a subpoena pursuant to this section is limited to the Commissioner, Deputy Commissioner, Associate Commissioner for Management, Director for Program Inspection, all Regional Commissioners; and all District Directors.

**§ 286.6 Maintenance of records.**

Each collector and remitter shall maintain records necessary for the Service to verify the accuracy of fees collected and remitted and to otherwise determine compliance with the applicable statutes and regulations. Such records shall be maintained for a period of two years from the date of fee collection. Each remitter shall advise the Comptroller of the name, address, and telephone number of a responsible officer who shall have the authority to verify and produce any records required to be maintained under this part. The Comptroller shall be promptly notified of any changes of the responsible officer.

**§ 286.7 Penalties.**

Failure of any air or sea carrier to comply with the provisions of section 286 of the Act and this part shall subject it to one or more of the following:

(a) Termination of existing agreements under the provisions of section 238 of the Act; and

(b) Suspension of enroute inspections or preinspections.

Dated: February 9, 1988.

Alan C. Nelson,

*Commissioner, Immigration and Naturalization Service.*

[FR Doc. 88-4088 Filed 2-25-88; 8:45 am]

BILLING CODE 4410-10-M

## DEPARTMENT OF AGRICULTURE

## Animal and Plant Health Inspection Service

## 9 CFR Part 94

[Docket No. 87-147]

## Importation of Eviscerated Wild Pheasant and Grouse Carcasses

**AGENCY:** Animal and Plant Health Inspection Service, USDA.

**ACTION:** Final rule.

**SUMMARY:** We are revising the regulations on importing the carcasses of wild pheasants and wild grouse to permit them to be imported under the same conditions as the carcasses of other game birds. Also, to reflect the general understanding of game, we are including wild pheasants and grouse in the definition of "game birds" and removing them from the definition of "poultry." We are also clarifying the requirements for importing carcasses of "game birds." This amendment will benefit those who hunt wild pheasants or wild grouse by making it unnecessary to cook those carcasses, if eviscerated, with heads and feet removed, before bringing them into the United States.

**EFFECTIVE DATE:** March 28, 1988.

**FOR FURTHER INFORMATION CONTACT:** Dr. Richard Bowen, Senior Staff Veterinarian, Import-Export and Emergency Planning Staff, VS, APHIS, USDA, Room 809, Federal Building, 6505 Belcrest Road, Hyattsville, MD 20782, 301-436-8499.

# Proposed Rules

Federal Register
Vol. 56, No. 39
Wednesday, February 27, 1991

This section of the FEDERAL REGISTER contains notices to the public of the proposed issuance of rules and regulations. The purpose of these notices is to give interested persons an opportunity to participate in the rule making prior to the adoption of the final rules.

**DEPARTMENT OF AGRICULTURE**

**Animal and Plant Health Inspection Service**

**7 CFR Parts 318, 320, 330, 352, and 354**

**[Docket 90-247]**

**RIN: 0579-AA43**

## User Fees

**AGENCY:** Animal and Plant Health Inspection Service, USDA.

**ACTION:** Proposed rule.

**SUMMARY:** We are proposing to amend 7 CFR parts 320, 330, 352 and 354, to establish user fees for agricultural quarantine and inspection services we provide in connection with the arrival at ports in the customs territory of the United States of commercial vessels, commercial trucks, commercial railroad cars, and passengers on commercial aircraft. This action would implement section 2509 of the Food, Agriculture, Conservation and Trade Act of 1990 (21 U.S.C. 136a) and section 1203 of the Omnibus Budget Reconciliation Act of 1990 (Public Law 101-508).

We are also proposing to amend 7 CFR parts 318 and 354, to establish user fees for agricultural quarantine and inspection services we provide in connection with the departure of passengers from Puerto Rico and Hawaii on certain domestic airline flights.

The effect of these proposed regulations would be to require certain persons to pay fees for agircultural quarantine and inspection services.

**DATES:** Consideration will be given only to comments received on or before March 14, 1991.

**ADDRESSES:** To help ensure that your comments are considered, send an original and three copies of Chief, Regulatory Analysis and Development, PPD, APHIS, USDA, Room 866, Federal Building, 6505 Belcrest Road, Hyattsville, MD 20782. Please state that your comments refer to Docket Number 90-247. Comments received may be inspected at USDA, Room 1141, South Building, 14th and Independence Avenue SW., Washington, DC, between 8 a.m. and 4:30 p.m., Monday through Friday, except holidays.

**FOR FURTHER INFORMATION CONTACT:** Charles A. Havens, Chief Operations Officer, Port Operations, PPQ, APHIS, USDA, Federal Building, Room 635, 6505 Belcrest Road, Hyattsville, MD 20782, 301-436-8295.

**SUPPLEMENTARY INFORMATION:**

### Background

*User Fees For International Inspection Services*

The Food, Agriculture, Conservation and Trade Act of 1990, as amended by the Omnibus Budget Reconciliation Act of 1990 (Budget Reconciliation Act), hereinafter referred to as the Farm Bill, authorizes the Secretary of Agriculture to prescribe and collect fees to cover the cost of providing certain agricultural quarantine and inspection services. The services are "agricultural quarantine and inspection services in connection with the arrival at a port in the customs territory of the United States,[1] or the preclearance or preinspection at a site outside the customs territory of the United States, of an international passenger, commercial vessel, commercial aircraft, commercial truck, or railroad car" (section 2509 of the Farm Bill). In this document we will refer to these services as AQI services.

It should be noted the Farm Bill does not authorize the Secretary of Agriculture to charge a user fee for pedestrians or private vehicles entering the customs territory of the United States.

The Farm Bill establishes a fund in the Treasury of the United States, known as the "Agricultural Quarantine Inspection User Fee Account" (the Account) for the Secretary of Agriculture to use for fees collected for AQI services. All fees collected for AQI services are to be deposited in the Account. Fees collected within a calendar quarter are to be deposited no later than 31 days after the close of that quarter. The Farm Bill further requires the Secretary of the Treasury to reimburse, from the Account, any appropriations accounts that incur costs associated with AQI services for which the Secretary of Agriculture is authorized to collect user fees, if the amounts are provided in advance in appropriation acts. (See section 2509(a)(3)(B)(ii) of the Farm Bill)

*User Fees for Domestic Inspection Services*

In addition to specific authority we have under the Farm Bill, we also have general authority to collect user fees under 31 U.S.C. 9701 (the User Fee Statute). This statute states, in part, that:

> (a) It is the sense of the Congress that each service or thing of value provided by an agency * * * to a person (except a person on official business of the United States government) is to be self-sustaining to the extent possible.
>
> (b) The head of each agency * * * may prescribe regulations establishing the charge for a service or thing of value provided by the agency.

Each agency must deposit fees collected pursuant to 31 U.S.C. 9701 into the Treasury of the United States.

Under the User Fee Statute, we may charge for quarantine and inspection services we provide in connection with traffic departing certain domestic quarantine areas for other locations within the United States. Domestic quarantine areas are areas within the United States—Hawaii and Puerto Rico—which are quarantined because of the presence of various plant diseases or pests. Individuals and means of conveyance departing these areas for any other part of the United States are subject to inspection (see 7 CFR 318.13 and 318.58).

Under the Farm Bill we have authority to charge for AQI services "in connection with * * * preclearance" at a site outside the customs territory of the United States" for various persons and means of conveyance. Because the United States Virgin Islands (U.S. Virgin Islands) are outside the customs territory of the United States, we have authority under the Farm Bill to charge a user fee for AQI services provided certain persons and means of conveyance departing the U.S. Virgin Islands for other parts of the United States. Because Hawaii and Puerto Rico are within the customs area of the United States we do not have authority under the Farm Bill to charge a user fee for persons and means of conveyance departing Hawaii and Puerto Rico, our

[1] The Farm Bill defines "customs territory of the United States" as "[t]he 50 States, the District of Columbia, and Puerto Rico." (§ 2509(f)(2))



HeinOnline -- 56 Fed. Reg. 8148 1991

other domestic quarantine areas, for other parts of the United States.

Therefore, we are proposing to charge user fees in connection with Puerto Rico and Hawaii under authority of the User Fee Statute and user fees in connection with the U.S. Virgin Islands under authority of the Farm Bill.

*Fee Collection System*

In order to meet the deficit reduction goals emobided in the Budget Reconciliation Act, we need to offset AQI costs by approximately $20 million in fees during fiscal year 1991. To do this, we must institute user fees beginning April 1, 1991. The fees we propose to start collecting on that date include fees for inspection of certain international passengers and means of conveyance and certain domestic passengers.

The Budget Reconciliation Act presumes that we can recover almost all AQI costs through user fees. As explained above, we have authority under the Farm Bill to impose certain user fees. Under the User Fee Statute we have authority to impose certain other user fees. However, a portion of our AQI costs is attributable to pedestrian and private vehicular traffic entering the customs territory of the United States. Under the Farm Bill the Secretary of Agriculture has no authority to charge a user fee for pedestrians, though there is authority to charge passengers in private vehicles. For practical reasons we are not proposing to charge private vehicle passengers a user fee. The cost of collecting user fees would be greater than the cost of the AQI services they receive. Therefore, to cover AQI costs we intend to seek an appropriation to cover our AQI costs which are attributable to pedestrians and private vehicular traffic.

With regard to the user fees we are proposing, we have determined that we can begin collecting fees most efficiently if we utilize the United States Customs Service (Customs) and various commercial ticketing agents, such as commercial airlines and other transportation companies, to collect our fees for us. Customs currently collects their own user fees, and commercial ticketing agents and other transportation companies currently collect user fees for both Customs and the Immigration and Naturalization Service (INS).[2] They have existing collection and disbursement systems, and they are experienced in the necessary procedures.

In order to take full advantage of this situation, to make our porposed regulations effective more quickly, and to minimize the impact on affected parties by using existing fee collection systems, we are modeling our proposed regulations concerning user fees for international inspections on existing Customs regulations and practices.[3]

Customs provides various services to persons and means of conveyance entering the customs territory of the United States. Customs, and airlines and other ticketing agents and transportation companies currently collect certain federal user fees. The persons and means of conveyance for which they collect fees include the persons and means of conveyance for which we are authorized to collect an agricultural quarantine and inspection user fee. In order to take advantage of these existing fee collection mechanisms, we are proposing to collect fees only for persons and means of conveyance entering the customs territory of the United States: (1) If they are subject to AHIS inspection and (2) Customs or INS user fees are currently collected for them.

Similarly, we are proposing at this time to collect user fees for domestic inspection services we provide only if we are proposing to collect user fees for equivalent international inspection services. For example, we are not proposing at this time, as explained elsewhere in this document, to charge a user fee for commercial aircraft inspection. Therefore, we are not proposing at this time to charge a user fee for this service when performed domestically.

We are also proposing to collect domestic user fees only in situations in which airlines and other ticketing agents or transport companies are already collecting or prepared to collect fees. We are doing this to take advantage of existing collection systems, and to make our user fees effective more quickly. We propose to amend 7 CFR part 354, which concerns overtime charges for various APHIS services, to require user fees. With some exceptions, the following means of conveyance or persons would be required to pay a fee when they enter the customs territory of the United States:

Commercial vessels of 100 net tons or more (see proposed 7 CFR 354.3(b))

Commercial trucks (see proposed 7 CFR 354.3(c))

Loaded commercial railroad cars (see proposed 7 CFR 354.3(d))

Passengers aboard commercial aircraft (see proposed 7 CFR 354.3(e))

Commercial aircraft passengers departing from Hawaii or Puerto Rico enroute to any portion of the United States would also be required to pay a user fee[4] (see proposed 7 CFR 354.4(b)).

We are not proposing to collect user fees for services in connection with commercial vessels of less than 100 net tons, and passengers aboard private aircraft, because the cost of collection would be greater than the amount collected, and very few such passengers and vessels are actually inspected. We are not proposing to collect user fees for services in connection with empty commercial railroad cars because Customs charges only for loaded railroad cars. Customs developed this system at the request of the railroad industry. The fee charged for loaded railroad cars would be sufficient to cover the cost of inspecting empty railroad cars.

As explained above, we are not proposing at this time to collect user fees from any persons or means of conveyance for whom there is no existing fee collection system. For that reason, though we have statutory authority under the Farmn Bill to do so, we are not proposing to collect fees at this time for services in connection with the arrival of commercial aircraft or for phytosanitary certification of agricultural products intended for export from the United States. For the same reason, though we have statutory authority under the User Fee Statute to do so, we are not proposing to collect fees at this time for inspection of commercial aircraft or vessels moving from Hawaii or Puerto Rico to other portions of the United States. We do intend to propose user fees for these services and other services for which we have the authority to charge a user fee but which are not included in this proposal. We anticipate that, if adopted, user fees for these additional services

[2] INS regulations concerning user fees are in Title 8, Code of Federal Regulations, Part 286.

[3] Customs regulations concerning user fees are in Title 19, Code of Federal Regulations, Part 24. Pertinent Customs' statutory authority is in Title 19, United States Code § 58c. For additional information concerning both Customs and INS user fees, see Travel Industry Tips * * * the collection process for Federal inspection fees, Department of the Treasury, U.S. Customs Service, Publication Number 529, November 1988.

[4] Although Guam, American Samoa, the Northern Mariana Islands, and the U.S. Virgin Islands are considered to be part of the United States for most purposes, they are not part of the "customs territory of the United States." Therefore, passengers on commercial aircraft departing from Guam, American Samoa, the Northern Mariana Islands, or the U.S. Virgin Islands for other portions of the United States, would be considered international passengers for the purposes of these regulations.



HeinOnline -- 56 Fed. Reg. 8149 1991

would be effective no later than October 1, 1991.

With regard to user fees for international services, we are proposing to exempt some means of conveyance or persons from our proposed user fees. With the exceptions explained below, these exemptions all conform to exemptions already established by Customs to their user fees. We are proposing to adopt the same exemptions in part because Customs, or various ticketing agents or transportation companies, would, if our proposed user fees are adopted, collect fees for international agricultural quarantine and inspection services for us. Neither Customs nor the various ticketing agents or other transportation companies are prepared to collect fees other than from means of conveyance and persons from which they now collect fees. By adopting parallel exemptions, no additional recordkeeping systems need be implemented or developed. In the case of user fees for inspection services connected with travel from Hawaii or Puerto Rico, there are no existing fee collection systems other than those of commercial airlines and other agents issuing airline tickets. Therefore, with respect to traffic from these areas, we are only proposing to charge user fees for commercial aircraft passengers at this time.

*Exemptions, Prepayments, and Maximum Fees*

We are proposing to exempt passengers, commercial vessels, commercial trucks, commercial aircraft, and commercial railroad cars moving solely between the United States and Canada from paying user fees. These means of conveyance pose little animal or plant disease or pest risk to United States agriculture, and we do not provide AQI services for them. Therefore we do not believe a user fee is justified.

We are also proposing to exempt foreign passenger vessels making at least three trips a week from a port in the United States to the high seas and returning to the same United States port without having touched any foreign port or place other than in Canada, or having taken on any stores other than in Canada. Similarly, any commercial railroad car would be exempt from the APHIS user fee if it is part of a train whose journey originates and terminates in the United States, and if the commercial railroad car was part of the train when the train departed the United States and no passengers boarded or disembarked, and no cargo was loaded or unloaded, from the railroad car while the train was within a country other than the United States. These means of conveyance pose little animal or plant disease or pest risk to United States agriculture, and we do not provide AQI services for them. Therefore, we do not believe a user fee is justified.

Commercial aircraft passengers who are transiting the United States and not subject to inspection, and passengers on commercial aircraft who are returning to the United States without having touched a foreign port or place, other than Canada, would also be exempt. These passengers receive no AQI services from APHIS because they pose little animal or plant disease or pest risk to United States agriculture. We do not believe requiring them to pay a user fee is justified.

We are also proposing to exempt tugboats, ferries, locomotives and cabooses. By themselves these means of conveyance pose little animal or plant disease or pest risk to United States agriculture. It is the commercial barges and commercial vessles they tow, and the commercial railroad cars they accompany, that may pose a risk to United States agriculture. Commercial barges, commercial vessels and commercial railroad cars are subject to inspection under our regulations, and we are proposing that they be required to pay a user fee.

Vessels and aircraft used exclusively in the governmental service of the United States or a foreign government would be exempt from paying a user fee under our proposed regulations, as would foreign diplomats and passengers on commercial aircraft used exclusively in the governmental service of the United States government or a foreign government. Governments traditionally accord certain privileges to the property and representatives of other governments. One of these privileges is exemption from fees. With regard to means of conveyance, to qualify for the exemption, the means of conveyance could not be carrying any persons or merchandise for commercial purposes.

We are also proposing to exempt vessels arriving in distress and passengers on aircraft making forced landings. In these situations, the means of conveyance and the passengers normally continue their journeys as soon as possible. Nothing may be removed or brought on board a vessel in distress except passengers in need of medical attention or equipment and parts for repair. Passengers on aircraft making forced landings move to another departing aircraft or remain in the airport until their aircraft departs. In these circumstances, we believe there is little animal or plant disease or pest risk to United States agriculture and we do not conduct AQI inspections.

With regard to user fees for commercial aircraft passengers from Hawaii and Puerto Rico, we are proposing to exempt persons transiting Hawaii or Puerto Rico and subject to inspection under 7 CFR part 330. We are proposing to exempt these passengers because they would be charged a user fee under proposed § 354.3.

We are also proposing to exempt diplomats and passengers departing on any aircraft used exclusively in the governmental service of the United States or a foreign government, for the same reasons explained above.

Finally, we are proposing to exempt crew members on duty on commercial aircraft. These persons are not fare-paying passengers, but necessary for operation of the aircraft. Costs of providing service for inspection of crew members will be included in the fee that will be proposed at a later date for the inspection of commercial aircraft.

With regard to user fee for international services, we are proposing a maximum fee for commercial vessels. We are also proposing to allow commercial trucks to purchase a decal covering an entire calendar year by paying an annual fee. No credit toward the annual fee would be given for payments made in connection with previous arrivals at a port in the customs territory of the United States. In addition, we are proposing that the user fee for commercial railroad cars could be paid for in advance on a yearly basis. As with commercial trucks, no credit would be given toward the yearly fee for payments made in connection with previous arrivals at a port in the customs territory of the United States.

Customs has extensive experience collecting user fees from commercial trucks, commercial vessels, and for commercial railroad cars. Their experience shows that it is less expensive and more efficient to impose a cap on fees for commercial vessels and to allow prepayment of fees for commercial trucks and commercial railroad cars, than to attempt to collect and process a fee for each arrival. It is possible that individual means of conveyance might pay more in user fees if there were no maximum fee or prepayment provisions. However, Customs' experience is that the possible loss is more than offset by the savings of a more efficient collection system.

*Calculation of User Fees*

We are proposing to prescribe user fees which would cover the cost of AQI services. For each category of service,



HeinOnline -- 56 Fed. Reg. 8150 1991

we have estimated the annual number of passengers or means of conveyance that would be subject to inspection, including services relating to persons and means of conveyance which are exempt from paying the fee. Our estimates are based on Department of Transportation and Customs reports and on our own Work Accomplishment Data.

For each category of service, we have determined the total cost of providing AQI inspection service to that category. Included in the total cost are delivery costs, program support costs, and agency-level support costs. Delivery costs include, but are not limited to, employee salary and benefits, travel, purchase of specialized equipment, and all costs associated with maintaining field office. Program support costs include these same items at the regional and headquarters level, and include reimbursable agreements with Customs. Agency-level support costs include, but are not limited to, training, legislative and public affairs, regulatory enforcement, communications, postage, budget and accounting services, and payroll, purchasing, billing and collection services. We have also included administrative expenses we would incur by adopting these proposed regulations.

We have also included in the proposed fee an amount which would provide for a reasonable balance in the Account. The proposed fee is designed so that the balance would be one quarter of APHIS's Agricultural Quarantine Inspection appropriation. Since the majority of the fees would be remitted in arrears, a sufficient balance must be maintained to meet current expenses. In addition, we believe that a balance of this size would be necessary to ensure that sufficient funds are available to carry out agricultural quarantine and inspection activities in cases in which the volume of fee-paying passengers and means of conveyance may deivate from the anticipated volume upon which our fees are based. The anticipated volume of activity could fluctuate greatly due to changes in travel and trade. The balance would also be used to offset any uncollectible debts that result when clients are unwilling or unable to pay for our services. We would monitor the balance closely and propose adjustments in our fees as necessary to ensure a reasonable balance.

Our final step in calculating our proposed fees was to divide the sum of the cost of providing service and the amount necessary to maintain a reasonable balance in each service category by the anticipated number of passengers or means of conveyance subject to inspection, thereby arriving at a "raw" fee. To determine the fees we are proposing to charge, we raised the "raw" fees up to the next whole dollar. We did this to simplify collection and accounting. We realize that rounding to the next whole dollar adds to the balance in the Account. The magnitude of this additional amount varies by category of service in the fees we are proposing at this time, and would vary similarly in fees we intend to propose in the future, if the same technique were used. We would monitor the effects of rounding to the next whole dollar on balances in the Account and propose adjustments in the fees as necessary. Such adjustments could include setting the fee at levels other than whole dollars. We invite comments specifically addressing the advantages and disadvantages of the rounding technique.

Below is a table showing the categories of service, the cost of providing service plus a reasonable balance in each category, the number of means of conveyance or persons subject to inspection in each category (labeled "volume"), the "raw" fee, and the proposed fee. Additional supporting data and computations are available for inspection at the Animal and Plant Health Inspection Service, Room 245, Federal Building, 6505 Belcrest Road, Hyattsville, Maryland, between 8 a.m. and 4:30 p.m., Monday through Friday.

CALCULATION OF USER FEES

| Activity/category | Total cost plus balance (thousands) | Volume | "Raw" fee | Proposed fee |
|---|---|---|---|---|
| Airport Operations: | | | | |
| International passengers | $43,401 | 25,087,291 | $1.73 | $2.00 |
| Domestic passengers | 13,999 | 9,130,919 | 1.53 | 2.00 |
| Maritime Operations: | | | | |
| Vessels [1] | 22,994 | 42,273 | 543.93 | 544.00 |
| Land Border Operations: | | | | |
| Trucks [2] | 1,865 | 1,362,000 | 1.37 | 2.00 |
| Railroad cars [3] | 884 | 134,654 | 6.56 | 7.00 |

[1] As explained in this document, the user fee for commercial vessels is "capped" at 15 times the fee for each arrival.
[2] As explained in this document, the user fee for commercial trucks may be prepaid on a calendar year basis.
[3] As explained in this document, the user fee for commercial railroad cars may be prepaid on a calendar year basis.

Whatever fees may be adopted would be periodically reexamined and any further adjustments necessary to reflect costs of providing AQI services would be included in a future rulemaking proceeding.

The user fees for means of conveyance would cover inspection of cargo and related services if: (1) such services occur during regular hours of service (0800–1630, Monday through Friday); or (2) inspection of the cargo is concurrent with inspection of the means of conveyance. Owners of cargo may request inspection outside of regular hours of service and pay reimbursable overtime under 7 CFR 354.1.

*Remittance and Statement Procedures*

The remittance and statement procedures were developed by Customs through consultation with commercial railroads and their representatives, with commercial airline companies and their representatives, and with other affected parties. The procedures and the information required are needed to ensure that the correct user fees are collected and remitted in full in a timely manner. The requirements, including the taxpayer identification number, are also needed to ensure that the fees are properly credited. The system has worked well for Customs. Therefore, we are proposing the same system.

*Compliance*

Under these proposed regulations, we must rely on others to collect and remit fees for us. However, we are responsible for ensuring that the fees collected are correct and that they are remitted in full and in a timely manner. To ensure this,



HeinOnline -- 56 Fed. Reg. 8151 1991

we are proposing that the party (Customs, ticketing agents, or transportation companies) responsible for collecting and remitting fees must allow APHIS personnel to verify the accuracy of the fees collected and remitted, and otherwise determine compliance with the statute and regulations. We are also proposing to require that whoever is responsible for making fee payments must advise us of the name, address, and telephone number of a responsible officer who is authorized to verify fee calculations, collections, and remittances. In addition, we are also proposing to require that we be promptly notified of any change in that information.

*Miscellaneous Provisions*

The regulations contain several sections where addresses are to be inserted. They are: § 354.3 (d)(5), (d)(6) and (d)(7); § 354.3 (e)(6) (ii) through (iv), (e)(7), and (e)(8), § 354.4 (b)(6) (i) through (iv), and (b)(8).

We do not have the addresses at this time. However, if these proposed regulations are adopted, we will insert the correct addresses in the final rule.

*Miscellaneous Amendments*

Title 7 contains many provisions which state that services of an inspector will be provided without charge. However, if this proposed rule is adopted as a final rule, that would no longer be true in all cases. Therefore, we are proposing to amend the following sections to clarify that a user fee is payable under certain circumstances: §§ 318.13–15, 318.58–15, 318.82–3, 320.7, 330.107, and 352.14.

Many of the regulations in Title 7, Code of Federal Regulations, deal with inspection services. Most of these regulations have virtually identical provisions referring to inspection services provided during regularly scheduled hours of duty and at the regular place of duty. Regardless of their wording, these provisions are all interpreted and enforced in a uniform manner. However, § 320.7 does not include this reference. We believe all the provisions should be as uniform as possible. Therefore, we propose to amend § 320.7 to add a reference to regularly scheduled hours of duty at the regular place of duty.

We also propose to delete § 320.9 from Title 7, Code of Federal Regulations. This section provides that railroad cars and other vehicles from Mexico may be disinfected in government-owned facilities in the United States. However, no such facilities exist, and we do not anticipate that any will be established in the foreseeable future. Therefore, this section of the regulations is unnecessary and misleading.

**Public Comment Date**

James W. Glosser, Administrator of the Animal and Plant Health Inspection Service, has determined that this rulemaking proceeding should be expedited by allowing a 15-day comment period on this proposal. In order to meet the deficit reduction goals embodied in the Budget Reconciliation Act, we need to collect approximately $20 million in fees during fiscal year 1991. To do this, we must institute user fees beginning April 1, 1991. A shortened comment period is necessary to allow for timely consideration of comments, and publication and implementation of a final rule.

**Executive Order 12291 and Regulatory Flexibility Act Analysis**

We are proposing this rule in conformance with Executive Order 12291, and we have determined that it may be a "major rule" within the broad intent of the Executive Order. Based on preliminary information compiled by the Department, it appears that the proposed action may have an effect on the economy of more than $100 million.

This effect is mainly due to the direct increase in costs to various persons created by imposition of the proposed user fees. Various persons are currently subsidized by the taxpayers in general, in that those who benefit from AQI services do not directly pay for the services. Requiring persons to pay a fee for AQI services would eliminate the subsidy, general appropriations from taxes would no longer be needed, and costs to taxpayers in general would be reduced.

Our preliminary regulatory impact analysis indicates that the implementation of user fees for AQI services would result in total savings to domestic taxpayers of about $95 million per year, a discounted value of about $396 million over five years. Total public administrative costs to Customs and the Department associated with fee collection are estimated to be about $3 million per year, a discounted value of about $12 million over five years.

The implementation of user fees on travel into the customs territory of the United States is expected to save domestic taxpayers about $50 million a year, or a total discounted savings of $209 million over five years. For domestic travel, taxpayer savings per year are estimated to be about $18 million, a discounted value of $76 million over five years. Deadweight losses (losses associated with decreases in air travel resulting from the fees) are estimated to be $16,532 ($68,936 discounted over five years) for travel into the customs territory of the United States and $34,927 (discounted cost of $145,641) for domestic travel. Administrative costs to Customs and the Department for implementing these user fees are estimated to be about $2 million per year ($9 million discounted over five years).

User fees on commercial trucks, railroad cars, and vessels are expected to result in total savings to taxpayers of about $27 million a year (about $3 million from trucks, $1 million for railroad cars, and $23 million for vessels). The discounted savings over five years are $11 million, $4 million and $96 million, respectively. Administrative costs for these fees are estimated to be less than $1 million per year, a discounted value of about $3 million over five years.

The proposed action may also have a significant economic impact on a substantial number of small entities. However, we do not currently have all the data necessary for a comprehensive analysis of the effects of this rule on small entities, and we invite comments on these impacts. In particular, we are interested in determining the number of small entities which may incur costs associated with reporting requirements for user fees. We are particularly interested in the following entities: (1) air or sea travel agents or tour wholesalers; (2) truck owners or operators who haul agricultural and non-agricultural commodities from Mexico; and (3) importers of agricultural and non-agricultural commodities from Mexico.

Our preliminary Regulatory Impact Analysis is available for inspection at USDA, room 1141, South Building, 14th Street and Independence Avenue SW., Washington, DC, between 8 a.m. and 4:30 p.m., Monday through Friday, except holidays, or by telephoning (202) 382–1368.

**Paperwork Reduction Act**

In accordance with section 3507 of the Paperwork Reduction Act of 1980 (44 U.S.C. chapter 35), the information collection provisions that are included in this proposed rule have been submitted for approval to the Office of Management and Budget. Your written comments will be considered if you submit them to the Office of Information and Regulatory Affairs, OMB, Attention: Desk Officer for APHIS, Washington, DC 20503. You should submit a duplicate copy of your comments to: (1) Chief, Regulatory Analysis and Development,



HeinOnline -- 56 Fed. Reg. 8152 1991

PPD, APHIS, USDA, room 866, Federal Building, 6505 Belcrest Road, Hyattsville, MD 20782 and (2) Clearance Officer, OIRM, USDA, room 404–W, 14th Street and Independence Avenue SW., Washington, DC 20250.

**Executive Order 12372**

This program/activity is listed in the Catalog of Federal Domestic Assistance under No. 10.025 and is subject to Executive Order 12372, which requires intergovernmental consultation with State and local officials. (See 7 CFR part 3015, subpart V.)

**Lists of Subjects**

*7 CFR Part 318*

Agricultural commodities, Guam, Plant diseases, Plant pests, Plants (Agriculture), Puerto Rico, Quarantine, Transportation, Virgin Islands, Hawaii.

*7 CFR Part 320*

Agricultural commodities, Imports, International boundaries, Mexico, Plant diseases, Plant pests, Plants (agriculture), Quarantine, Transportation.

*7 CFR Part 330*

Customs duties and inspection, Garbage, Imports, Plant diseases, Plant pests, Plants (agriculture), Quarantine, Soil, stone and quarry products, Transportation.

*7 CFR Part 352*

Agricultural commodities, Customs duties and inspection, Imports, Plant diseases, Plant pests, Plants (agriculture), Postal Service, Quarantine, Transportation.

*7 CFR Part 354*

Agricultural commodities, Exports, Government employees, Imports, Plants (agriculture), Quarantine, Transportation.

Accordingly, we are proposing to amend 7 CFR parts 318, 320, 330, 352 and 354 as follows:

## PART 318—HAWAIIAN AND TERRITORIAL QUARANTINE NOTICES

1. The authority citation for part 318 would be revised to read as follows:

**Authority:** 7 U.S.C. 150bb, 150dd, 150ee, 150ff, 161, 162, 164a, 167; 31 U.S.C. 9701; 7 CFR 2.17, 2.51, and 371.2(c).

**§ 318.13–15 [Amended]**

2. In part 318, Subpart—Hawaiian Fruits and Vegetables, at the end of the first sentence of § 318.15–15 the period would be removed and ", unless a user fee is payable under § 354.4 of this chapter." added in its place.

**§ 318.58–15 [Amended]**

3. In part 318, Subpart—Fruits and Vegetables from Puerto Rico or Virgin Islands, at the end of the first sentence of § 318.58–15 the period would be removed and ", unless a user fee is payable under §§ 354.3 or 354.4 of this chapter." added in its place.

## PART 320—MEXICAN BORDER REGULATIONS

4. The authority citation for part 320 would be revised to read as follows:

**Authority:** 7 U.S.C. 149 and 150ee; 21 U.S.C. 136 and 136a; 31 U.S.C. 9701; Sec. 1203, Pub. L. 101–508; 7 CFR 2.17, 2.51, and 371.2(c).

**§ 320.7 [Amended]**

5. In § 320.7, at the end of the last sentence the period would be removed and the following would be added in its place: "all costs incident to entry, opening, and cleaning shall be paid by the owner or agent in charge. Services of the inspector during regularly assigned hours of duty at the usual places of duty shall be furnished without cost to the person requesting the services, unless a user fee is payable under § 354.3 of this chapter."

**§ 320.9 [Removed]**

**§ 320.10 [Redesignated as § 320.9]**

6. In part 320, § 320.9 would be removed and § 320.10 would be redesignated § 320.9.

## PART 330—FEDERAL PLANT PEST REGULATIONS; GENERAL; PLANT PESTS; SOIL, STONE, AND QUARRY PRODUCTS; GARBAGE

7. The authority citation for part 330 would be revised to read as follows:

**Authority:** 7 U.S.C. 147a, 150bb, 150dd–150ff, 161, 162, 164a, 450, 2260; 19 U.S.C. 1306; 21 U.S.C. 111, 114a; 136 and 136a; 31 U.S.C. 9701; 42 U.S.C. 4331, 4332; § 1203, Pub. L. 101–508; 7 CFR 2.17, 2.51, and 371.2(c).

8. Section 330.107 would be revised to read as follows:

**§ 330.107 Costs.**

All costs (including those incurred under § 330.106 of this part by the government or the owner) incident to the inspection, handling, cleaning, safeguarding, treating, or other disposal of means of conveyance or products, articles, or plant pests under this part shall be borne by the owner. Services of the inspector during regularly assigned hours of duty at the usual places of duty shall be furnished without cost to the person requesting the services, unless a user fee is payable under § 354.3 of this chapter.

**Cross Reference:** See note following § 330.105.

## PART 352—PLANT QUARANTINE SAFEGUARD REGULATIONS

9. The authority citation for part 352 would be revised to read as follows:

**Authority:** 7 U.S.C. 149, 150bb, 150dd, 150ff, 154, 159, 160, 162, and 2260; 21 U.S.C. 136 and 136a; 31 U.S.C. 9701; § 1203, Pub. L. 101–508; 7 CFR 2.17, 2.51, and 371.2(c).

10 Section 352. 14 would be revised to read as follows:

**§ 352.14 Costs.**

All costs incident to the inspection, handling, safeguarding, or other disposal of prohibited or restricted products or articles under the provisions in this part shall be borne by the owner. Services of the inspector during regularly assigned hours of duty at the usual places of duty shall be furnished without cost to the person requesting the services, unless a user fee is payable under § 354.3 of this chapter.

## PART 354—OVERTIME SERVICES RELATING TO IMPORTS AND EXPORTS; AND USER FEES FOR CERTAIN INSPECTION SERVICES

11. The authority citation for part 354 would be revised to read as follows:

**Authority:** 7 U.S.C. 2260, 21 U.S.C. 136 and 136a; 31 U.S.C. 9701, 49 U.S.C. 1741; 1203, Pub. L. 101–508; 7 CFR 2.17, 2.51, and 371.2(c).

12. The heading of part 354 would be revised to read as set forth above.

13. Part 354 would be amended by adding new §§ 354.3 and 354.4 to read as follows:

**§ 354.3 User fees for certain international services.**

(a) *Definitions.* Whenever in this section the following terms are used, unless the context otherwise requires, they shall be construed, respectively, to mean:

*APHIS.* The Animal and Plant Health Inspection Service of the United States Department of Agriculture.

*Arrival.* Arrival at a port of entry in the customs territory of the United States, or at any place served by a port of entry as specified in 19 CFR 101.3.

*Calendar year.* The period from January 1 to December 31, inclusive, of any particular year.

*Commercial railroad car.* A railroad car used or capable of being used for transporting property for compensation or hire.

*Commercial truck.* A self-propelled vehicle, designed and used for transporting property for compensation or hire. Empty trucks and truck cabs without trailers fitting this description are included.



HeinOnline -- 56 Fed. Reg. 8153 1991

*Commercial vessel.* Any watercraft or other contrivance used or capable of being used as a means of transportation on water to transport property for compensation or hire, with the exception of any aircraft or ferry.

*Customs.* The United States Customs Service, United States Department of the Treasury.

*Customs territory of the United States.* The 50 States, the District of Columbia, and Puerto Rico.

*Person.* An individual, corporation, partnership, trust, association, or any other public or private entity, or any officer, employee, or agent thereof.

(b) *Fee for inspection of commercial vessels of 100 net tons or more.* (1) Except as provided in paragraph (b)(2) of this section, the master, licensed deck officer, or purser of any commercial vessel which is subject to inspection under part 330 of this chapter or 9 CFR chapter I, subchaper D, and which is either required to make entry at the customs house under 19 CFR 4.3 or is a United States-flag vessel proceeding coastwises under 19 CFR 4.85, shall, upon arrival, proceed to Customs and pay an APHIS user fee. The APHIS user fee is $544 for each arrival, not to exceed 15 times that amount in a calendar year. The APHIS user fee shall be collected at each port or arrival.

(2) The following categories of commercial vessels are exempt from paying an APHIS user fee:

(i) Foreign passenger vessels making at least three trips a week from a port in the United States to the high seas (including "cruises to nowhere") and returning to the same port in the United States, not having touched any foreign port or place other than in Canada, or taken on any stores other than in Canada;

(ii) Any vessel which, at the time of arrival, is being used solely as a tugboat;

(iii) Vessels used exclusively in the governmental service of the United States or a foreign government, including any agency or political subdivision of the United States or a foreign government, so long as the vessel is not carrying persons or merchandise for commercial purposes;

(iv) Vessels arriving in distress or to take on bunkers, sea stores, or ship's stores;

(v) Tugboats towing vessels on the Great Lakes; and

(vi) Any vessel which sails only between United States and Canadian ports.

(c) *Fee for inspection of commercial trucks.* (1) Except as provided in paragraph (c)(2) of this section, the driver or other person in charge of a commercial truck which is entering the customs territory of the United States and which is subject to inspection under part 330 of this chapter or under 9 CFR, chapter I, subchapter D, must, upon arrival, proceed to Customs and pay an APHIS user fee. The APHIS user fee is $2 for each arrival.

(2) The following categories of commercial trucks are exempt from paying an APHIS user fee:

(i) Trucks entering the customs territory of the United States from Canada.

(ii) [Reserved]

(3) Prepayment.

(i) The owner or operator of a commercial truck, *if* entering the customs territory of the United States from Mexico *and* applying for a prepaid customs permit for a calendar year, must apply for a prepaid APHIS permit for the same calendar year. Applicants must apply to Customs for prepaid permits.[1] The following information, together with payment of an amount 20 times the APHIS user fee for each arrival, must be provided:

(A) Vehicle make, model, and model year.

(B) Vehicle Identification Number (VIN).

(C) License numbers issued by state, province, or country.

(D) Owner's name and address.

(ii) No credit toweard the prepaid APHIS permit will be given for user fees paid for individual arrivals.

(d) *Fee for inspection of commercial railroad cars.* (1) Except as provided in paragraph (d)(2) of this section, an APHIS user fee will be charged for each loaded commercial railroad car which is subject to inspection under part 330 of this chapter or under 9 CFR chapter I, Subchapter D, upon each arrival in the customs territory of the United States. The railroad company receiving a commercial railroad car in interchange at a port of entry or, barring interchange, the company moving a car in line haul service into the customs territory of the United States, is responsible for paying the APHIS user fee. The APHIS user fee is $7 for each arrival of a loaded commercial railroad car, or, if the APHIS user fee is prepaid for all arrivals of a commercial railroad car during a calendar year, an amount 20 times the APHIS user fee for each arrival.

(2) The following categories of commercial railroad cars are exempt from paying an APHIS user fee:

(i) Commercial railroad cars entering the customs territory of the United States from Canada;

(ii) Any commercial railroad car that is part of a train whose journey originates and terminates in the United States, if—

(A) The commercial railroad car is part of the train when the train departs the United States; and

(B) No passengers board or disembark from the commercial railroad car, and no cargo is loaded or unloaded from the commercial railroad car, while the train is within any country other than the United States; and

(iii) Locomotives and cabooses.

(3) Prepayment.

(i) Railroad companies may, at their option, prepay the APHIS user fee for each commercial railroad car for a calendar year. This payment must be remitted in accordance with the provisions of paragraph (d)(5) of this section.

(ii) No credit toward the calendar year APHIS user fee will be given for APHIS user fees paid for individual arrivals.

(4) Remittance and statement procedures. The Association of American Railroads (AAR), and the National Railroad Passenger Corporation (AMTRAK), shall file monthly statements with ______ within 60 days after the end of each calendar month. Each statement shall indicate:

(i) The number of loaded commercial railroad cars entering the customs territory of the United States from Mexico during the relevant period;

(ii) The number of those commercial railroad cars pulled by each railroad company; and

(iii) The total monthly APHIS user fee due from each railroad company.

(5) Individual railroad companies shall remit the fees calculated by AAR, and AMTRAK shall remit the fees it has calculated, within 60 days after the end of each calendar month in which commercial railroad cars entered the customs territory of the United Stats. Monthly statements must be sent to ______, and fees must be remitted to ______.

(6) Compliance. AAR, AMTRAK, and each railroad company responsible for making fee payments must allow APHIS personnel to verify the accuracy of fees collected and remitted and othewise determine compliance with 21 U.S.C. 136a and this paragraph. The AAR, AMTRAK, and each railroad company responsible for making fee payments must advise the ______ of the name, address, and telephone number of a responsible officer who is authorized to verify fee calculations, collections, and remittances. ______ must be

[1] Applicants should refer to Customs Service regulations (19 CFR Part 24) for specific instructions.



HeinOnline -- 56 Fed. Reg. 8154 1991

promptly notified of any changes in the identifying information submitted.

(e) *Fee for inspection of international passengers.* (1) Except as specified in paragraph (e)(2) of this section, each passenger aboard a commercial aircraft who is subject to inspection under Part 330 of this chapter or 9 CFR, chapter I, subchapter D, on arrival within the customs territory of the United States from a place outside of the customs territory of the United States must pay an APHIS user fee. The APHIS user fee is $2 for each arrival.

(2) The following categories of passengers are exempt from paying an APHIS user fee:

(i) Passengers arriving from Canada whose journey originates in Canada;

(ii) Crew members who are on duty on a commercial aircraft;

(iii) Diplomats, except for United States diplomats, who can show that their names appear on the accreditation listing maintained by the United States Department of State. In lieu of such listing an individual diplomat may present appropriate proof of diplomatic status to include possession of a diplomatic passport or visa, or diplomatic identification card issued by a foreign government;

(iv) Passengers departing and returning to the United States without having touched a foreign port or place other than Canada;

(v) Passengers arriving on any commercial aircraft used exclusively in the governmental service of the United States or a foreign government, including any agency or political subdivision of the United States or a foreign government, so long as the aircraft is not carrying persons or merchandise for commercial purposes. Passengers on commercial aircraft under contract to the United States Department of Defense (DOD) are exempted if they have been precleared abroad under the joint DOD/APHIS Military Inspection Program;

(vi) Persons arriving on an aircraft due to an emergency or forced landing when the original destination of the aircraft was a foreign port; and

(vii) Persons transiting the United States and not subject to inspection.

(3) APHIS user fees shall be collected under the following circumstances:

(i) When through tickets or travel documents are issued indicating travel to the customs territory of the United States which originates in any location other than Canada;

(ii) When through tickets or travel documents are issued in Canada indicating an arrival in the customs territory of the United States following a stopover (layover) in a location other than Canada; and

(iii) When passengers arrive in the customs territory of the United States in transit from a location other than Canada and are inspected by APHIS.

(4) Collection of fees.

(i) Any person who issues tickets or documents for transportation on or after April 1, 1991, is responsible for collecting the APHIS user fee from all passengers transported into the customs territory of the United States to whom the APHIS user fee applies.

(A) Tickets or travel documents must be marked by the person who collects the APHIS user fee to indicate that the required APHIS user fee has been collected from the passenger. Markings must be in accordance with the procedures set forth in the ARC Industry Agents Handbook, the SATO Ticketing Handbook, or compatible procedures set forth in the operations manual of the person who collects the APHIS user fee.

(B) If the APHIS user fee applies to a passenger departing from the United States and if the passenger's tickets or transportation document do not reflect collection of the APHIS user fee at the time of issuance, then the carrier transporting the passenger from the United States must collect the APHIS user fee upon departure.

(5) Remittance and statement procedures.

(i) The carrier whose ticket stock or document for transportation reflects collection of the APHIS user fee must remit the fee to APHIS. The travel agent, tour wholesaler, or other entity, which issues its own non-carrier related ticket or document for transportation to a passenger who is subject to an APHIS user fee under this part, must remit the fee to APHIS, unless by contract the carrier will remit the fee.

(ii) APHIS user fees must be remitted to ________, for receipt no later than 31 days after the close of the calendar quarter in which the APHIS user fees were collected. Late payments will be subject to interest, penalty, and handling charges as provided in the Debt Collection Act of 1982 (31 U.S.C. 3717). Refunds by a remitter of APHIS user fees collected in conjunction with unused tickets or documents for transportation should be netted against the next subsequent remittance.

(iii) At the same time a remittance is submitted, the remitter must mail a written statement to ________. The statement must include the following information:

(A) Name and address of the party remitting payment;

(B) Taxpayer identification number of the party remitting payment;

(C) Calendar quarter covered by the payment; and

(D) Amount collected and remitted.

(iv) Remittances must be made by check or money order, payable in United States dollars, through a United States bank, to "The Animal and Plan Health Inspection Service."

(6) Carriers contracting with the United States-based wholesalers are responsible for notifying ________ of all flights contracted, the number of spaces contracted for, and the name, address, and taxpayer identification number of the tour wholesaler, all within 31 days after the close of the calendar quarter in which such a flight occurred.

(7) *Compliance.* Each carrier, travel agent, tour wholesaler, or other entity subject to this section, must allow APHIS personnel to verify the accuracy of the APHIS user fees collected and remitted and to otherwise determine compliance with the 21 U.S.C. 136a and this paragraph. Each carrier, travel agent, tour wholesaler, or other entity must advise ________ of the name, address, and telephone number of a responsible officer who is authorized to verify fee calculations, collections, and remittances. ________ must be promptly notified of any changes in the identifying information submitted.

**§ 354.4 User fees for certain domestic services.**

(a) *Definitions.* Whenever in this section the following terms are used, unless the context otherwise requires, they shall be construed, respectively, to mean:

*APHIS.* The Animal and Plant Health Inspection Service of the United States Department of Agriculture.

*Calendar year.* The period from January 1 to December 31, inclusive, of any particular year.

*Departure.* Departure from Hawaii or Puerto Rico for any other location within the United States.

*Person.* An individual, corporation, partnership, trust, association, or any other public or private entity, or any officer, employee, or agent thereof.

(b) *Fee for inspection of commercial aircraft passengers from Hawaii and Puerto Rico.* (1) Except as set forth in paragraph (b)(2) of this section, each passenger aboard a commercial aircraft who is subject to inspection under § 318.13-8 or § 318.59-8 of this chapter must pay an APHIS user fee. The APHIS user fee is $2 for each departure for passengers departing Hawaii or Puerto Rico.



HeinOnline -- 56 Fed. Reg. 8155 1991

(2) The following categories of passengers are exempt from paying a user fee:

(i) Crew members who are on duty on a commercial aircraft.

(ii) Diplomats, except for United States diplomats, who can show that their names appear on the accreditation listing maintained by the United States Department of State. In lieu of such listing an individual diplomat may present appropriate proof of diplomatic status to include possession of a diplomatic passport or visa, or diplomatic identification card issued by a foreign government.

(iii) Persons departing as passengers on any aircraft used exclusively in the governmental service of the United States or a foreign government, including any agency or political subdivision of the United States or a foreign government, so long as the aircraft is not carrying persons or merchandise for commercial purposes.

(iv) Persons transiting Hawaii or Puerto Rico and subject to inspection under part 330 of this chapter.

(3) Fees shall be collected when tickets or travel documents are issued indicating travel from Hawaii or Puerto Rico, to or through any other State, Commonwealth or Territory of the United States other than Guam.

(4) Collection of fees. Any person who issues tickets or documents for transportation on or after April 1, 1991, is responsible for collecting the APHIS user fee from all passengers to whom the APHIS user fee applies.

(i) Tickets or travel documents must be marked by the collector to indicate that the required APHIS user fee has been collected from the passenger. Markings must be in accordance with the procedures set forth in the ARC Industry Agents Handbook, the SATO Ticketing Handbook, or compatible procedures set forth in the operations manual of the person who collects the user fee.

(ii) If the APHIS user fee applies to a passenger departing from Hawaii or Puerto Rico, and if the passenger's tickets or transportation document do not reflect collection of the APHIS user fee at the time of issuance, then the carrier transporting the passenger must collect the fee upon departure.

(5) Remittance and statement procedures.

(i) The carrier whose ticket stock or document for transportation reflects collection of the APHIS user fee must remit the fee to ________. The travel agent, tour wholesaler, or other entity, which issues its own non-carrier related ticket or document for transportation to a passenger who is subject to an APHIS user fee under this part, must remit the fee to ________, unless by contract the carrier will remit the fee.

(ii) APHIS user fees must be remitted to ________, for receipt no later than 31 days after the close of the calendar quarter in which the fees were collected. Late payments will be subject to interest, penalty, and handling charges as provided in the Debt Collection Act of 1982 (31 U.S.C. 3717). Refunds by a remitter of APHIS user fees collected in conjunction with unused tickets or documents for transportation should be netted against the next subsequent remittance.

(iii) At the same time a remittance is transmitted, the remitter must mail a written statement to ________. The statement must include the following information:

(A) Name and address of the party remitting payment;

(B) Taxpayer identification number of the party remitting payment;

(C) Calendar quarter covered by the payment; and

(D) Amount collected and remitted.

(iv) Remittances must be made by check or money order, payable in United States dollars, through a United States bank, to ________.

(6) Carriers contracting with U.S.-based wholesalers are responsible for notifying APHIS of all flights contracted, the number of spaces contracted for, and the name, address, and taxpayer identification number of the tour wholesaler, all within 31 days after the close of the calendar quarter in which such a flight occurred.

(7) Compliance. Each carrier, travel agent, tour wholesaler, or other entity which is subject to this section must allow APHIS personnel to verify the accuracy of APHIS user fees collected and remitted and to otherwise determine compliance with 31 U.S.C. 9701 and this paragraph. Each carrier, travel agent, tour wholesaler, or other entity must advise ________, of the name, address, and telephone number of a responsible officer who is authorized to verify fee calculations, collections, and remittances. ________ must be promptly notified of any changes in the identifying information submitted.

Done in Washington, DC, this 25th day of February 1991.

**Robert Melland,**

*Acting Administrator, Animal and Plant Health Inspection Service.*

[FR Doc. 91-4702 Filed 2-26-91; 8:45 am]

BILLING CODE 3410-34-M

## Cooperative State Research Service

### 7 CFR Part 3407

### Agency Procedures to Implement the National Environmental Policy Act

**AGENCY:** Cooperative State Research Service, USDA.

**ACTION:** Notice of proposed rulemaking.

**SUMMARY:** The Cooperative State Research Service (CSRS), U.S. Department of Agriculture (USDA), proposes regulations to ensure compliance with the National Environmental Policy Act of 1969, as amended (42 U.S.C. 4321 *et seq.*), and with implementing regulations promulgated by the Council on Environmental Quality (40 CFR parts 1500–1508), as adopted and supplemented by USDA at 7 CFR part 1b. This document sets forth policies and procedures to be used by CSRS in carrying out its responsibilities under these implementing regulations.

**DATES:** Written comments concerning this proposed rule are invited from interested organizations and individuals. To be considered in the formulation of a Final Rule, all relevant material must be received on or before April 29, 1991.

**ADDRESSES:** Comments should be addressed to Dr. Clare I. Harris, Associate Administrator, Cooperative State Research Service, U.S. Department of Agriculture, room 305A Administration Building, 14th and Independence Avenue, SW., Washington, DC 20250-2200. All written comments received in response to this Notice will be made available for public inspection during regular business hours.

**FOR FURTHER INFORMATION CONTACT:** Dr. Clare I. Harris at (202) 447-7441.

**SUPPLEMENTARY INFORMATION:**

#### Paperwork Reduction

In accordance with the provisions of the Paperwork Reduction Act of 1980 (44 U.S.C. chapter 35), the collection of information requirements contained in this proposed rule have been submitted to OMB for approval.

#### Executive Order No. 12291

This proposed rule has been reviewed under Executive Order No. 12291, and it has been determined that it is not a major rule because it does not involve a substantial or major impact on the Nation's economy or on large numbers of individuals or businesses. There will be no major increase in costs or prices for consumers, agencies, or geographical



HeinOnline -- 56 Fed. Reg. 8156 1991