parties more time to make necessary preparations to implement the rule. Therefore, instead of the earlier projected effective date of April 1, 1991, user fee requirements will be made effective May 13, 1991. We have amended § 354.3(e)(4)(i) to reflect this change.

*Use of Fees—Deficit Reduction v. Augmenting Services*

Several comments favored the concept of user fees, but objected to using the fees for deficit reduction. Comments suggested that the fees be used to augment the APHIS budget and improve services.

The Farm Bill authorizes APHIS to collect user fees to cover the full cost of providing certain AQI services and authorizes APHIS to be reimbursed from the Account. However, the Farm Bill also provides that any reimbursements made from the Account are subject to appropriations. Therefore, establishing user fees simply shifts the financial support for certain AQI activities from the general taxpayer to identifiable recipients of these services. We believe that the user fee legislation will allow APHIS to enhance our AQI program; however, any increases must continue to be sought through the appropriations process. We anticipate receiving an appropriation approximating the amount of fees collected under this authority. However, that is a Congressional prerogative over which we have no control.

*Future Review and Revision of User Fees*

Several comments addressed the issue of revising user fees after they are adopted. As mentioned in our proposed regulations, we intend to monitor our fees throughout the year and review them on at least an annual basis. We will propose to adjust the fees up or down as the review warrants. We will publish, for public comment, any proposed fee changes in the **Federal Register**.

*Increased Cost of Doing Business*

Some comments stated that the fees would increase their cost of doing business. We realize that payment of the user fees will increase the up-front cost of doing business. However, as stated in our proposal, having the user, beneficiary, of the service pay for it directly will allow a reduction in general tax receipts.

*Collecting Fees Upon Departure of Airline Passengers*

Our proposed regulations included a provision that:

[if] the APHIS user fee applies to a passenger departing from the United States and if the passenger's tickets or travel documents were issued on or after May 13, 1991, but do not reflect collection of the APHIS user fee at the time of issuance, then the carrier transporting the passenger from the United States must collect the APHIS user fee upon departure. (proposed § 354.3(e)(4)(i)(B))

Numerous comments stated that it is impractical to collect user fees from airline passengers at the time they depart. According to the comments, passengers with tickets would have to be individually "audited" at the gate, and those whose tickets did not show payment of the APHIS user fee would have to be sent back to the ticket counter for payment of the fee and issuance of another ticket. The comments stated that major delays could occur as a result of this. Comments requested that our airline passenger user fee apply only to tickets issued on or after the effective date of the regulations.

We have carefully considered these comments. In response we have amended the regulations to provide that the APHIS user fee does not need to be collected from passengers traveling after the effective date of the regulations, if their ticket was issued prior to that date. However, the APHIS user fee would have to be collected from other airline passengers traveling after the effective date of the regulations who have not, for whatever reason, paid the fee. We realize that some fees will still need to be collected on departure. However, the number of such fees, and the delays cited in the comments, will be severely reduced. We have amended § 354.3(e)(4)(i)(B) to reflect these changes.

*Exemptions in General*

Some comments suggested that some or all exemptions from the user fees are unfair. Other comments stated that no user fee should be charged unless a service is provided. The exemptions we proposed fall into three broad categories: Situations where no service is provided by APHIS, and charging a user fee would therefore be unjustifiable; situations where a service is provided, but there is no practical way to collect a fee; and situations where a service is provided and a fee could be collected, but the means of conveyance or the person is exempt under either international law and custom or exempt under a coordinating user fee collection system.

We believe that the exemptions we proposed are both fair and necessary. It is not possible, for both legal and practical reasons and for reasons of fairness, to charge a user fee for every means of conveyance or person which enters the United States. For example, virtually no inspection services are provided along the U.S.-Canadian border. Therefore, it would be unfair to charge persons and means of conveyance crossing that border a user fee. As another example, we are not charging a user fee for private vehicles entering the United States because collecting the fee would cost more than the money received. As a final example, because of privileges traditionally accorded by one government to property and representatives of other governments, APHIS is exempting foreign diplomats arriving in the United States from paying the APHIS user fee.

*Exemptions for Certain Airline Employees and Passengers*

The proposed regulations exempt on-duty airline crew members from paying the airline passenger APHIS user fee. Many comments requested that we extend this exemption to include other airline employees flying on airline business. Many comments also suggested that certain other passengers be exempt from paying the airline passenger user fee. The comments suggested that senior citizens traveling on open tickets, and any person traveling on non-paying marketing and promotional tickets be exempt from paying the airline passenger user fee.

We have reviewed these comments and have determined that airline employees traveling on official airline business, including "deadheading" crew members, should be exempt from paying the airline passenger APHIS user fee. This conforms to U.S. Customs Service (Customs) regulations. The airline industry indicated that for these passengers, the usual mechanisms for capturing the user fee in the automated fare system and collecting the fee at the point of sale are not present. This occurs because non-revenue documents are used. The airlines have indicated that it would cost more than the amount of the fee to collect it in these cases. If the airlines were to collect these fees from the airline employees, the employee would request that the airlines reimburse them for this as a business expense. Inspecting the airline employees is considered part of the cost of our services to the airlines; therefore, the costs associated with inspecting these airline employees can be recovered under our aircraft inspection user fee, which we intend to propose at a later date. With these changes in the regulations, user fee covering the cost of inspecting airline employees will still be



HeinOnline -- 56 Fed. Reg. 14839 1991

borne by the airlines, though through a different fee. Section 354.3(e)(2) of the regulations reflects this change.

We are not amending the regulations to exempt senior citizens traveling on open passes or passengers traveling on marketing or promotional tickets from the APHIS airline passenger APHIS user fee. We recognize that fees cannot be collected at the time the ticket is sold since there is no way to know if or how many times the ticket may be used on flights subject to the APHIS user fee. However, these passengers are subject to inspection. If these passengers are traveling on a ticket issued after the effective date of the regulations, the APHIS user fee must be collected from them upon departure.

*Overtime in General*

Several comments addressed the issue of overtime charges. Under the proposed regulations, the user fee for commercial vessels, trucks, and railroad cars includes the inspection services provided directly to the vehicle, and cargo inspection if the cargo is inspected concurrently with the means of conveyance, regardless of the time of inspection. Only if APHIS is requested to inspect cargo separately from the means of conveyance and outside of normal business hours would overtime charges apply. One comment suggested that "normal business hours" at each port should be adjusted to ensure that an inspector is scheduled to work during any time that inspection might be requested, thereby eliminating overtime charges. Some comments stated that the user fee should include overtime.

We do not believe any changes in the regulations are justified by these comments. Our system for charging overtime is set forth in 7 CFR 354.1 and understood by those affected. Our regular hours of service are 0800–1630 Monday through Friday as stated in the preamble to the proposed rule. As indicated above, those who use our inspection services can avoid overtime charges by having cargo inspected concurrently with vehicle inspection or scheduling inspection requests for normal duty hours.

*Overtime for Airlines*

Other comments suggested that the regulations specifically state that airlines carrying passengers subject to the airline passenger APHIS user fee are exempt from overtime charges.

We intended to exempt airlines from overtime charges for passenger inspection. Charging overtime for passenger inspections would be excessive, as the cost of providing passenger inspection is already covered by the APHIS user fee for airline passengers. Therefore, we have added new § 354.3(e)(8) to the regulations to include this provision.

*User Fees for Intransit and Lay-Over Passengers; Multiple User Fees*

Some comments stated that the regulations were not clear as to how the user fees would apply to intransit passengers and lay-over passengers, and they also questioned the payment of multiple user fees, that is, more than one user fee for the same trip. Intransit passengers are passengers who arrive at a port of entry, do *not* proceed through the federal clearance process, and then continue to another destination. Lay-over passengers are passengers who arrive at a port of entry, proceed through the federal clearance process, and then continue to another destination.

Intransit passengers would not pay the international passengers inspection fee for intransit stops since they would not go through the federal clearance process. Intransit passengers would pay the international inspection fee if and when they eventually clear through the federal inspection process at a subsequent port.

As explained above, we have deleted our proposed user fees for passengers departing Hawaii or Puerto Rico on certain domestic airline flights. Therefore, international layover passengers whose layovers occur in Hawaii or Puerto Rico would pay only an international inspection fee.

*Marking of Airline Tickets*

Airline tickets are marked to show the various fees and taxes which are included in the price of the ticket. Comments indicated some confusion concerning these requirements. Airline tickets include a box where combined federal user fees are recorded. The amount of the APHIS airline passenger fee will be added to all other federal user fees which are also collected on the ticket. No separate mark needs to be applied to the ticket for the APHIS user fee. We are also deleting the requirement that the markings on the ticket must be in accordance with procedures set forth in the ARC Industry Agents Handbook, the SATO Ticketing Handbook, or compatible procedures set forth in the operations manual of the person who collects the APHIS user fee. There are no such procedures at the current time in those handbooks or manuals concerning APHIS user fees. It will be up to the industry to develop a workable system for this purpose by adding markings for collection of the APHIS user fee into markings for other fees collected, such as the Customs and Immigration and Naturalization Service fees, or to develop some other system.

*Bundling User Fees Into Airline Fares*

One comment suggested that the APHIS user fee for airline passengers be "bundled" into the fare, without any indication to the passenger that it was included. We are making no changes based on this comment. Other Federal user fees which apply to airline passengers are indicated on the ticket. We believe our user fee system should be consistent with those of other federal agencies.

*Reporting Procedures*

Several comments addressed the issue of reporting procedures for airlines selling space to tour operators and wholesalers. Some stated that the procedures should be simplified; others stated that the requirement should be eliminated for any airline that collects APHIS user fees through the tickets sold.

We have determined, based on these comments, that § 354.3(e)(6) should be amended to state that the reporting requirements apply only to instances in which airlines sell a block of seats and individual airline tickets are not issued for those seats. Under this amendment, airlines would only need to report ticketed sales when collection of the APHIS user fee was not marked on the ticket and remitted to APHIS.

*Violation of International Treaties and Agreements*

Several comments suggested that the proposed regulations violate the General Agreement on Trade and Tariffs (GATT). The GATT does not apply to persons or means of conveyance; the GATT does apply to cargo. The APHIS user fees apply only to persons and means of conveyance. Moreover, the GATT permits user fees imposed on or in connection with importations, for inspection and quarantine services, if such fees are limited in amount to the approximate cost of services rendered.

One comment suggested that the proposed regulations are inconsistent with the Caribbean Basin Economic Recovery Act because the Conference Report on the Farm Bill instructed the Department of Agriculture to waive the APHIS inspection fees based on "good-neighbor policies with bordering countries." The commenter asserted that imposing user fees on Caribbean nations such as Jamaica is clearly contrary to the goals of this legislation.

The Caribbean Basin Economic Recovery Act provides for duty-free treatment for articles which are the



HeinOnline -- 56 Fed. Reg. 14840 1991

growth, product or manufacture of a beneficiary country. It does not apply to user fees for inspection of passengers and means of conveyances.

Also, the Farm Bill does not contain any provision for waiving inspection fees based on good neighbor policies with bordering countries. Reliance on the legislative history is misplaced because legislative history cannot change the clear words of the statute. Further, even if the legislative history were reflected in the statute, it would not apply to Caribbean countries because they are not bordering countries of the United States.

Another comment suggested that the regulations violate the US-Jamaican Bilateral Aviation Agreement of 1969. That agreement requires user fees to be "established at reasonable and non-discriminatory levels, consistent with the costs of providing the relevant services and facilities, and be equitably apportioned among categories of users." (Article 10(7)) According to the comment, the APHIS user fees do not meet these criteria.

However, the APHIS user fees do not violate this agreement. It is not clear that the user fees proposed are encompassed by this provision of the Agreement. However, even if they are, they are in compliance with the Agreement. As explained elsewhere in this document, the user fees have been established to accurately reflect the actual cost of providing certain AQI services to individual users of those services. Within each category of service, the user fee is the same. Under these circumstances, we conclude that the APHIS user fees meet the criteria of this Agreement.

Another comment listed the International Civil Aviation Convention (ICAO) and the US air transport agreement with Austria (Austrian agreement) as being violated by the APHIS user fees.

According to the comment, the ICAO Council recommends in ICAO Document 9082/3, that:

(i) When any significant revision of charges or imposition of new charges is contemplated by an airport operator or other competent authority, appropriate prior notice should, so far as possible, be given 4 to 6 months in advance to the principal users, either directly or through their representative bodies in accordance with the regulations applicable in each State.

(ii) In any such revision of charges or imposition of new charges the airport users should, so far as is possible, be given the opportunity to submit their views to and consult with the airport operator or competent authority. For this purpose the airport users should be provided with adequate financial information.

(iii) Reasonable advance notice of the final decision on any revision of charges or imposition of new charges should be given to the airport users.

These provisions do not impose requirements. Furthermore, according to this document, ICAO applies to "airport operator[s] or other competent authorit[ies]."

We do not believe ICAO applies to APHIS. APHIS is not an airport operator. Neither do we believe APHIS is an "other competent authority" within the intended meaning of ICAO.

However, even if ICAO did apply to APHIS, we believe APHIS has given "appropriate prior notice * * * so far as possible * * * in advance to principal users." We have also given, under the circumstances explained in our proposal, "reasonable advance notice of the final decision on any revision of charges or imposition of new charges * * * to airport users."

Regarding the U.S. air transport agreement with Austria, the comment quotes that agreement as stating that:

"* * * Reasonable notice shall be given prior to changes in user charges. Each Party shall encourage consultations between the competent charging authorities or bodies in its territory and airlines using the services and facilities, and shall encourage the competent charging authorities or bodies and the airlines to exchange such information as may be necessary to permit an accurate review of the reasonableness of the charges * * *"

This section applies to the charges for use of facilities and services at airport facilities and not inspection services for which APHIS is proposing fees. However, even if it did apply, APHIS has complied with these requirements by publishing the proposed APHIS user fee regulations for comment and by considering and responding to the comments received as a result of that proposal.

*Proliferating User Fees*

Several comments complained that federal user fees are proliferating, without any clear overall picture of how they will be used or allocated. APHIS has no control over other user fees which may be authorized or imposed by Congress. However, we have coordinated, as much as possible, our user fee collection system with the existing user fee collection system of Customs. By doing this we are attempting to minimize the impact of the user fees. With regard to the use or allocation of APHIS user fees, the Farm Bill is clear—these must be used only by USDA and only for certain AQI services.

Some comments expressed concern that if APHIS adopts the user fees it has already proposed, it will adopt additional user fees in the future. As we stated in our proposal, we do intend to propose user fees covering other AQI services we provide. This is in compliance with authority granted us in the Farm Bill.

*Calculation of Fees*

Some comments stated that airline passenger, commercial vessel, and commercial railroad car fees were too high. Some comments stated that the fee for commercial railroad cars was too high as compared with the fee for commercial trucks. Other comments questioned whether we should include certain cost factors, for example, agency-level overhead charges and a reserve fund, in calculating fees. Some comments also stated that we would recover more money from our proposed fees than it costs to provide AQI services. Other comments questioned our method of rounding the "raw fee" up to the nearest dollar and the size of our reserve fund.

We did not make any changes in the regulations based on these comments. The initial APHIS user fees are based, in part, on estimates of the traffic volume in various service categories: International passengers, domestic passengers, aircraft arrival, air cargo inspection, vessel inspection, maritime cargo clearance, truck arrival, rail car arrival, and phytosanitary certificates.[2] Costs were assigned directly to a category when the cost directly related to providing the service. Where a cost benefitted all categories of service, it was pro-rated among the categories based on historic direct labor staff hours. The total cost in each service category was divided by activity volume to arrive at a final fee. We estimated activity volume for 1992 by obtaining data for prior years from the Department of Transportation, Customs, and our own records. We adjusted these figures for anticipated changes in volume, based on past changes and on current world conditions which could affect volume, such as the Persian Gulf situation. This calculation provided the "raw fee."

We included administrative costs and a reserve fund in our cost calculations. The Farm Bill provides that we may recover the cost of administering the

[2] APHIS user fees were not proposed for all of the listed service categories. However, to determine the costs applicable to the categories for which APHIS did propose a user fee, it was necessary to gather data on other service categories.



HeinOnline -- 56 Fed. Reg. 14841 1991