user fee program through the fees collected. The administrative costs which we included in our calculations are those costs we have or will incur as a direct result of developing, collecting, and monitoring the APHIS user fees. The Farm Bill also allowed for a "reasonable" balance in the AQI user fee account. We have determined that a reasonable balance, or reserve, is one-quarter of the annual costs of providing AQI services. This is consistent with the size of reserve funds established by other agencies within the Department. A reserve is necessary to ensure that APHIS has access to funds equal to three months normal operating expense. Payments into the APHIS user fee account will generally be made on a quarterly basis, with monies collected not remitted to APHIS until after the close of the quarter in which they were collected. The reserve fund will also ensure that APHIS has sufficient operating funds in cases of bad debt, carrier insolvency, and fluctuation in activity volumes.

We rounded the "raw fee" up to the nearest dollar. If we were to round down, even if it were only pennies, in certain service categories such as airline passengers, the fee would not fully recover our costs. We cannot recover that shortfall by charging a higher fee for another service category. We also chose to round up to the dollar so that each fee would be an even dollar figure. This makes collection and reporting easier. It also makes our fees consistent with those charged by other Federal agencies. Customs, the Immigration and Naturalization Service, and the United States Trade and Tourism Administration also collect user fees in whole dollar amounts.

Each service category was considered separately. Each category must, through user fee receipts, return enough money to APHIS to cover the cost of providing AQI services to that particular category. Therefore, when computing fees for one category, we cannot take into account the amount of the fees calculated for other service categories.

We intend to review, and revise as necessary, our user fees. If we determine that the fees are recovering more, or less, revenue than is necessary to cover all the cost of providing certain AQI services, we will change the fees. Likewise, if the size of our reserve fund increases beyond one-quarter of annual costs, we will adjust our fees. All fee changes will be published in the **Federal Register** for public comment.

One comment concerning the calculation of user fees had obviously misinterpreted the data presented in our proposed regulations. The comment stated that $20 million is the cost of providing AQI services for 6 months. That is incorrect. AQI services cost approximately $80 million annually, excluding the cost of domestic inspections in Hawaii and Puerto Rico and the cost of inspecting pedestrians and private vehicles at the Mexican border. $20 million is one-quarter of this amount. The commenter may have thought that the $20 million represented one-half of APHIS's AQI costs. However, it represents approximately one-quarter of a year's costs.

*Coupling Amount of User Fee and Service or Risk*

There were several comments questioning the amount of individual APHIS user fees. Comments suggested that if a means of conveyance poses a greater disease or pest risk, it should pay a higher fee. Other comments suggested the fee should be tied to the length of time an inspection takes or the amount of service provided.

We have carefully considered these comments and determined that no changes are necessary at this time. We realize that the degree of pest or disease risk posed by individual persons or means of conveyance varies. However, the number of variables which determine the actual risk, and, therefore, determine the amount of service or length of time required to provide service, is virtually infinite. A system which attempted to account for the variables would be unwieldy and expensive to administer and would require that the additional expenses would have to be included in the fee calculation.

*Prepaid Commercial Railroad Cars*

One comment stated that the annual prepayment option for commercial railroad cars was worthless because no railroad car makes enough trips into the United States in a year to justify prepaying. We are making no changes in the regulations based on this comment. The optional prepayment for commercial railroad cars is based on a similar Customs provision. Both the Customs and APHIS prepayment options are based on the same number of trips—20—into the United States in a year.

*Miscellaneous Comments*

One comment stated that Customs would, under our proposal, have to absorb the cost of collecting APHIS user fees and, therefore, would be less able to provide Customs services. This is incorrect. Under our proposal APHIS would pay Customs, through reimbursable agreements, for collecting APHIS user fees. The ability of Customs to conduct its own services would not be impaired.

Another comment suggested that we structure the fee collection system differently. It suggested that for trucks crossing into the United States from Mexico, we charge the importers the fee, rather than the trucks, and provide stickers to the importers. We are making no changes in the regulations at this time based on this comment as we have no means of collecting a user fee from importers at this time. Similarly, we are making no changes in the regulations based on the comments which suggested we impose a user fee on cargo rather than on vessels.

The Farm Bill authorizes us to charge user fees only for means of conveyance, not for cargo. Therefore, we cannot restructure our fee collection system as suggested by the comment.

One comment stated that the APHIS user fees could constitute a trade barrier between Mexico and the United States. We do not anticipate that this will occur. However, our authority does not require us to consider whether the APHIS user fee would have any impact on international trade. Our authority simply states that we may recover, from the users, the cost of providing AQI services. Therefore, we are making no changes in the regulations based on this comment.

One comment stated that individual railroads should be allowed to pay proposed APHIS user fees directly to APHIS, rather than through a central trade organization. This commenter appears to have misunderstood the regulations. The regulations state that individual railroads, and AMTRAK, must pay the APHIS user fee directly to APHIS (see § 354.3(d)(1)). The Association of American Railroads (AAR) does not remit the fees to APHIS. The AAR, under the regulations, must file monthly statements showing certain data for member railroad companies, including the total APHIS user fee due from each member railroad company.

Other comments stated that the APHIS user fee is a tax, not a few. We do not agree with this comment. A tax is money paid to support general government operations. A fee is money paid for a specific service. The APHIS user fees are designed to recover and fund the cost of providing specific services. As such, the APHIS user fee is a user fee, not a tax.

One comment suggested that as part of the regulations APHIS should establish an Advisory Committee to monitor operations and use of the APHIS user fee. We are taking no action based on this comment at this time. The



HeinOnline -- 56 Fed. Reg. 14842 1991

establishment of an Advisory Committee is outside the scope of this rulemaking proceeding.

One comment was received which purported to address the Economic Impact Analysis conducted in conjunction with the proposed regulations. However, the comments actually addressed how fees were calculated and other issues within the proposed regulations. We have attempted to respond to this comment in our discussions above.

One comment requested that "exporters of tobacco should not be subjected to the proposed user fees." The APHIS user fees do not apply to exports or to cargo. Therefore, no changes are made based on this comment.

The proposed regulations indicated that refunds of APHIS user fees collected in conjunction with unused tickets should be netted against the next subsequent remittance. This has been changed from advisory to mandatory to make it uniform and enforceable.

We have made minor non-substantive changes for clarity.

*Movement of Passengers From the United States Virgin Islands to Puerto Rico*

Because no APHIS inspection services are provided for passengers moving from the United States Virgin Islands to Puerto Rico, we have amended § 354.3(c)(2) to exempt these passengers from payment of an APHIS user fee.

**Executive Order 12291 and Regulatory Flexibility Act**

In accordance with Executive Order 12291, it has been determined that this rule is a "major rule."

The regulatory impact analysis indicates that the implementation of user fees for agricultural quarantine and inspection services would result in total savings to taxpayers of about $25 million in fiscal year 1991 and $77 million in subsequent years. The total discounted value is estimated to be over $268 million over five years. Total public administrative costs to Customs and the Department associated with fee collection are estimated to be about $520,000 in 1991 and $1.4 million in the following years. A discounted cost of about $5.0 million is estimated over the next five years.

The imposition of user fees on international passengers is expected to save taxpayers $15 million in 1991 and $50 million each year thereafter. A total discounted savings of $174 million is expected over the next five years.

The deadweight loss (the loss in consumer surplus associated with decreases in air travel resulting from the fees) are estimated to be $4,978 in 1991, $16,532 in subsequent years ($57,382 discounted over five years) for international passengers. Administrative costs to Customs and the Department for implementing these user fees are estimated to be about $172,000 in 1991, $452,000 in subsequent years ($1.6 million over five years).

User fees on commercial trucks, commercial railroad cars and commercial vessels are expected to accrue a total savings to taxpayers of over $10 million in 1991 and $27 million in each year thereafter ($2.7 million from commercial trucks, $943,000 for commercial railroad cars, and $23 million for commercial vessels). The discounted savings over five years are $11.4 million for commercial trucks, $3.9 million for commercial railroad cars and $96 million for commercial vessels. Public administrative costs for these fees are estimated to be $348,000 in fiscal year 1991 and $924,000 in subsequent years. A discounted value of about $3 million is estimated over the next five years.

The analysis on affected small entities indicates that the impact on airline recordkeeping costs is likely to be insignificant. Airlines currently collect fees for Customs and INS and it is unlikely that these groups, regardless of their size, will incur significant increases in their collection or recordkeeping expenses. Travel agents and tour operators will be unaffected since they do not currently remit these fees.

The impact on small railroad companies is likely to be minor since the $7.00 user fee represents less than 0.005 percent of total revenue for the affected entities. The impact on operating expenses for liner vessels is estimated to be less than 0.05 percent, and a similar magnitude of impact is also expected for bulk vessels. The $2.00 fee assessed on trucks crossing from Mexico into the U.S. is expected to increase operating expenses between 0.12 percent to 2.4 percent for both agricultural and nonagricultural commodities.

**Executive Order 12606**

We have analyzed these regulations in accordance with Executive Order 12606, and have determined that this rule has no potential impact on the family well-being. We have determined that this rule: does not affect the stability of the family, and particularly, the marital commitment; does not affect the authority and rights of parents in the education, nurture, and supervision of their children; does not help or hinder the family to perform its functions; does not substitute governmental activity for family functions; and does not affect family earnings. We have also determined that the benefits of this action justify any impact they may have on the family budget, and that this activity cannot be carried out by a lower level of government or by the family itself. This rule sends no message, intended or otherwise, to the public concerning the status of the family or to young people concerning the relationship between their behavior, their personal responsibility, and the norms of our society.

**Paperwork Reduction Act**

In accordance with section 3507 of the Paperwork Reduction Act of 1980 (44 U.S.C. chapter 35), the information collection provisions that are included in this final rule have been submitted for approval to the Office of Management and Budget. We have requested the Office of Management and Budget to complete its Paperwork Reduction Act review of the information collection provisions on an expedited basis and provide us with a determination by May 13, 1991.

**Executive Order 12372**

This program activity is listed in the Catalog of Federal Domestic Assistance under No. 10.025 and is subject to Executive Order 12372, which requires intergovernmental consultation with State and local officials. (See 7 CFR part 3015, subpart V.)

**Lists of Subjects**

*7 CFR Part 320*

Agricultural commodities, Imports, International boundaries, Mexico, Plant diseases, Plant pests, Plants (agriculture), Quarantine, Transportation.

*7 CFR Part 330*

Customs duties and inspection, Garbage, Imports, Plant diseases, Plant pests, Plants (agriculture), Quarantine, Soil, stone and quarry products, Transportation.

*7 CFR Part 352*

Agricultural commodities, Customs duties and inspection, Imports, Plant diseases, Plant pests, Plants (agriculture), Postal Service, Quarantine, Transportation.

*7 CFR Part 354*

Agricultural commodities, Exports, Government employees, Imports, Plants (agriculture), Quarantine, Transportation.



HeinOnline -- 56 Fed. Reg. 14843 1991

Accordingly, we are amending 7 CFR parts 320, 330, 352 and 354 as follows:

## PART 320—MEXICAN BORDER REGULATIONS

1. The authority citation for part 320 is revised to read as follows:

Authority: 7 U.S.C. 149 and 150ee; 21 U.S.C. 136 and 136a; 7 CFR 2.17, 2.51, and 371.2(c).

**§ 320.7 [Amended]**

2. In § 320.7, the last sentence is removed and the following is added in its place: "All costs incident to entry, opening, and cleaning shall be paid by the owner or agent in charge. Services of the inspector during regularly assigned hours of duty at the usual places of duty shall be furnished without cost to the person requesting the services, unless a user fee is payable under § 354.3 of this chapter."

**§ 320.9 [Removed]**

**§ 320.10 [Redesignated as § 320.9]**

3. In part 320, § 320.9 is removed and § 320.10 is redesignated § 320.9.

## PART 330—FEDERAL PLANT PEST REGULATIONS; GENERAL; PLANT PESTS; SOIL, STONE, AND QUARRY PRODUCTS; GARBAGE

4. The authority citation for part 330 is revised to read as follows:

Authority: 7 U.S.C. 147a, 150bb, 150dd–150ff, 161, 162, 164a, 450, 2260; 19 U.S.C. 1306; 21 U.S.C. 111, 114a; 136 and 136a; 31 U.S.C. 9701; 42 U.S.C. 4331, 4332; 7 CFR 2.17, 2.51, and 371.2(c).

5. Section 330.107 is revised to read as follows:

**§ 330.107 Costs.**

All costs (including those incurred under § 330.106 of this part by the government or the owner) incident to the inspection, handling, cleaning, safeguarding, treating, or other disposal of means of conveyance or products, articles, or plant pests under this part shall be borne by the owner. Services of the inspector during regularly assigned hours of duty at the usual places of duty shall be furnished without cost to the person requesting the services, unless a user fee is payable under § 354.3 of this chapter.

Cross reference: See note following § 330.105.

## PART 352—PLANT QUARANTINE SAFEGUARD REGULATIONS

6. The authority citation for part 352 is revised to read as follows:

Authority: 7 U.S.C. 149, 150bb, 150dd, 150ee, 150ff, 154, 159, 160, 162, and 2260; 21 U.S.C. 136 and 136a; 31 U.S.C. 9701; 7 CFR 2.17, 2.51, and 371.2c.

7. Section 352.14 is revised to read as follows:

**§ 352.14 Costs.**

All costs incident to the inspection, handling, safeguarding, or other disposal of prohibited or restricted products or articles under the provisons in this part shall be borne by the owner. Services of the inspector during regularly assigned hours of duty at the usual places of duty shall be furnished without cost to the person requesting the services, unless a user fee is payable under § 354.3 of this chapter.

## PART 354—OVERTIME SERVICES RELATING TO IMPORTS AND EXPORTS; AND USER FEES

8. The authority citation for part 354 is revised to read as follows:

Authority: 7 U.S.C. 2260, 21 U.S.C. 136 and 136a; 49 U.S.C. 1741; 7 CFR 2.17, 2.51, and 371.2(c).

9. The heading of part 354 is revised to read as set forth above.

10. Part 354 is amended by adding new § 354.3 to read as follows:

**§ 354.3 User fees for certain international services.**

(a) *Definitions.* Whenever in this section the following terms are used, unless the context otherwise requires, they shall be construed, respectively, to mean:

*APHIS.* The Animal and Plant Health Inspection Service of the United States Department of Agriculture.

*Arrival.* Arrival at a port of entry in the customs territory of the United States, or at any place served by a port of entry as specified in 19 CFR 101.3.

*Calendar year.* The period from January 1 to December 31, inclusive, of any particular year.

*Commercial railroad car.* A railroad car used or capable of being used for transporting property for compensation or hire.

*Commercial truck.* A self-propelled vehicle, designed and used for transporting property for compensation or hire. Empty trucks and truck cabs without trailers fitting this description are included.

*Commercial vessel.* Any watercraft or other contrivance used or capable of being used as a means of transportation on water to transport property for compensation or hire, with the exception of any aircraft or ferry.

*Customs.* The United States Customs Service, United States Department of the Treasury.

*Customs territory of the United States.* The 50 States, the District of Columbia, and Puerto Rico.

*Person.* An individual, corporation, partnership, trust, association, or any other public or private entity, or any officer, employee, or agent thereof.

(b) *Fee for inspection of commercial vessels of 100 net tons or more.* (1) Except as provided in paragraph (b)(2) of this section, the master, licensed deck officer, or purser of any commercial vessel which is subject to inspection under part 330 of this chapter or 9 CFR chapter I, subchapter D, and which is either required to make entry at the customs house under 19 CFR 4.3 or is a United States-flag vessel proceeding coastwise under 19 CFR 4.85, shall, upon arrival, proceed to Cusoms and pay an APHIS user fee. The APHIS user fee is $544 for each arrival, not to exceed 15 times that amount in a calendar year. The APHIS user fee shall be collected at each port of arrival.

(2) The following categories of commercial vessels are exempt from paying an APHIS user fee:

(i) Foreign passenger vessels making at least three trips a week from a port in the United States to the high seas (including "cruises to nowhere") and returning to the same port in the United States, not having touched any foreign port or place other than in Canada, or taken on any stores other than in Canada;

(ii) Any vessel which, at the time of arrival, is being used solely as a tugboat;

(iii) Vessels used exclusively in the governmental service of the United States or a foreign government, including any agency or political subdivision of the United States or a foreign government, so long as the vessel is not carrying persons or merchandise for commercial purposes;

(iv) Vessels arriving in distress or to take on bunkers, sea stores, or ship's stores;

(v) Tugboats towing vessels on the Great Lakes; and

(vi) Any vessel which sails only between United States and Canadian ports.

(c) *Fee for inspection of commercial trucks.* (1) Except as provided in paragraph (c)(2) of this section, the driver or other person in charge of a commercial truck which is entering the customs territory of the United States and which is subject to inspection under part 330 of this chapter or under 9 CFR, chapter I, subchapter D, must, upon arrival, proceed to Customs and pay an APHIS user fee. The APHIS user fee is $2 for each arrival.



HeinOnline -- 56 Fed. Reg. 14844 1991

(2) The following categories of commercial trucks are exempt from paying an APHIS user fee:

(i) Trucks entering the customs territory of the United States from Canada.

(ii) [Reserved]

(3) Prepayment.

(i) The owner or operator of a commercial truck, *if* entering the customs territory of the United States from Mexico *and* applying for a prepaid Customs permit for a calendar year, must apply for a prepaid APHIS permit for the same calendar year. Applicants must apply to Customs for prepaid APHIS permits.[1] The following information, together with payment of an amount 20 times the APHIS user fee for each arrival, must be provided:

(A) Vehicle make, model, and model year.

(B) Vehicle Identification Number (VIN).

(C) License numbers issued by state, province, or country.

(D) Owner's name and address.

(ii) No credit toward the prepaid APHIS permit will be given for user fees paid for individual arrivals.

(d) *Fee for inspection of commercial railroad cars.* (1) Except as provided in paragraph (d)(2) of this section, an APHIS user fee will be charged for each loaded commercial railroad car which is subject to inspection under part 330 of this chapter or under 9 CFR chapter I, subchapter D, upon each arrival. The railroad company receiving a commercial railroad car in interchange at a port of entry or, barring interchange, the railroad company moving a commercial railroad car in line haul service into the customs territory of the United States, is responsible for paying the APHIS user fee. The APHIS user fee is $7 for each arrival of a loaded commercial railroad car, or, if the APHIS user fee is prepaid for all arrivals of a commercial railroad car during a calendar year, an amount 20 times the APHIS user fee for each arrival.

(2) The following categories of commercial railroad cars are exempt from paying an APHIS user fee:

(i) Commercial railroad cars entering the customs territory of the United States from Canada;

(ii) Any commercial railroad car that is part of a train whose journey originates and terminates in the United States, if—

(A) The commercial railroad car is part of the train when the train departs the United States and

(B) No passengers board or disembark from the commercial railroad car, and no cargo is loaded or unloaded from the commercial railroad car, while the train is within any country other than the United States; and

(iii) Locomotives and cabooses.

(3) Prepayment.

(i) Railroad companies may, at their option, prepay the APHIS user fee for each commercial railroad car for a calendar year. This payment must be remitted in accordance with paragraph (d)(5) of this section.

(ii) No credit toward the calendar year APHIS user fee will be given for APHIS user fees paid for individual arrivals.

(4) Remittance and statement procedures. The Association of American Railroads (AAR), and the National Railroad Passenger Corporation (AMTRAK), shall file monthly statements with the United States Department of Agriculture, National Finance Center, Billings and Collections Branch, P.O. Box 60950, New Orleans, LA 70160, within 60 days after the end of each calendar month. Each statement shall indicate:

(i) The number of loaded commercial railroad cars entering the customs territory of the United States from Mexico during the relevant period;

(ii) The number of those commercial railroad cars pulled by each railroad company; and

(iii) The total monthly APHIS user fee due from each railroad company.

(5) Individual railroad companies shall remit the APHIS user fees calculated by AAR, and AMTRAK shall remit the APHIS user fees it has calculated, within 60 days after the end of each calendar month in which commercial railroad cars entered the customs territory of the United States. Montly statements must be sent to the United States Department of Agriculture, National Finance Center, Billings and Collections Branch, P.O. Box 60950, New Orleans, LA 70160, and APHIS user fees must be remitted to the United States Department of Agriculture, National Finance Center, COD Field Office, P.O. Box 70791, Chicago, IL 60673.

(6) Compliance. AAR, AMTRAK, and each railroad company responsible for making APHIS user fee payments must allow APHIS personnel to verify the accuracy of APHIS user fees collected and remitted and otherwise determine compliance with 21 U.S.C. 136a and this paragraph. The AAR, AMTRAK, and each railroad company responsible for making APHIS user fee payments must advise the United States Department of Agriculture, National Finance Center, Billings and Collections Branch, P.O. Box 60950, New Orleans, LA 70160, of the name, address, and telephone number of a responsible officer who is authorized to verify APHIS user fee calculations, collections, and remittances. The United States Department of Agriculture, National Finance Center, Billings and Collections Branch, P.O. Box 60950, New Orleans, LA 70160, must be promptly notified of any changes in the identifying information submitted.

(e) *Fee for inspection of international passengers.* (1) Except as specified in paragraph (e)(2) of this section, each passenger aboard a commercial aircraft who is subject to inspection under part 330 of this chapter or 9 CFR, chapter I, subchapter D, upon arrival from a place outside of the customs territory of the United States, must pay an APHIS user fee. The APHIS user fee is $2 for each arrival.

(2) The following categories of passengers are exempt from paying an APHIS user fee:

(i) Passengers arriving from Canada whose journey originates in Canada;

(ii) Crew members who are on duty on a commercial aircraft;

(iii) Airline employees, including "deadheading" crew members, who are traveling on official airline business;

(iv) Diplomats, except for United States diplomats, who can show that their names appear on the accreditation listing maintained by the United States Department of State. In lieu of the accreditation listing an individual diplomat may present appropriate proof of diplomatic status to include possession of a diplomatic passport or visa, or diplomatic identification card issued by a foreign government;

(v) Passengers departing and returning to the United States without having touched a foreign port or place other than Canada;

(vi) Passengers arriving on any commercial aircraft used exclusively in the governmental service of the United States or a foreign government, including any agency or political subdivision of the United States or a foreign government, so long as the aircraft is not carrying persons or merchandise for commercial purposes. Passengers on commercial aircraft under contract to the United States Department of Defense (DOD) are exempted if they have been precleared abroad under the joint DOD/APHIS Military Inspection Program;

(vii) Passengers arriving on an aircraft due to an emergency or forced landing when the original destination of the aircraft was a foreign port; and

[1] Applicants should refer to Customs Service regulations (19 CFR part 24) for specific instructions.



HeinOnline -- 56 Fed. Reg. 14845 1991

(viii) Passengers transiting the United States and not subject to inspection.

(ix) Passengers moving from the United States Virgin Islands to Puerto Rico.

(3) APHIS user fees shall be collected under the following circumstances:

(i) When through tickets or travel documents are issued indicating travel to the customs territory of the United States which originates in any location other than Canada;

(ii) When through tickets or travel documents are issued in Canada indicating an arrival in the customs territory of the United States following a stopover (layover) in a location other than Canada; and

(iii) When passengers arrive in the customs territory of the United States in transit from a location other than Canada and are inspected by APHIS.

(4) Collection of fees.

(i) Any person who issues tickets or travel documents on or after May 13, 1991, is responsible for collecting the APHIS user fee from all passengers transported into the customs territory of the United States to whom the APHIS user fee applies.

(A) Tickets or travel documents must be marked by the person who collects the APHIS user fee to indicate that the required APHIS user fee has been collected from the passenger.

(B) If the APHIS user fee applies to a passenger departing from the United States and if the passenger's tickets or travel documents were issued on or after May 13, 1991, but do not reflect collection of the APHIS user fee at the time of issuance, then the carrier transporting the passenger from the United States must collect the APHIS user fee upon departure.

(5) Remittance and statement procedures.

(i) The carrier whose ticket stock or travel document reflects collection of the APHIS user fee must remit the fee to the United States Department of Agriculture, National Finance Center, COD Field Office, P.O. Box 70791, Chicago, IL 60673. The travel agent, United States-based tour wholesaler, or other entity, which issues its own non-carrier related ticket or travel document to a passenger who is subject to an APHIS user fee under this part, must remit the fee to APHIS, unless by contract the carrier will remit the fee.

(ii) APHIS user fees must be remitted to the United States Department of Agriculture, National Finance Center, COD Field Office, P.O. Box 70791, Chicago, IL 60673, for receipt no later than 31 days after the close of the calendar quarter in which the APHIS user fees were collected. Late payments will be subject to interest, penalty, and handling charges as provided in the Debt Collection Act of 1982 (31 U.S.C. 3717). Refunds by a remitter of APHIS user fees collected in conjunction with unused tickets or travel documents shall be netted against the next subsequent remittance.

(iii) At the same time a remittance is submitted, the remitter must mail a written statement to the United States Department of Agriculture, National Finance Center, Billings and Collections Branch, P.O. Box 60950, New Orleans, LA 70160. The statement must include the following information:

(A) Name and address of the person remitting payment;

(B) Taxpayer identification number of the person remitting payment;

(C) Calendar quarter covered by the payment; and

(D) Amount collected and remitted.

(iv) Remittances must be made by check or money order, payable in United States dollars, through a United States bank, to "The Animal and Plant Health Inspection Service."

(6) Carriers contracting with United States-based tour wholesalers are responsible for notifying the United States Department of Agriculture, National Finance Center, Billings and Collections Branch, P.O. Box 60950, New Orleans, LA 70160, of all flights contracted, the number of spaces contracted for, and the name, address, and taxpayer identification number of the United States-based tour wholesaler, within 31 days after the close of the calendar quarter in which such a flight occurred; *except that*, carriers are not required to make notification if tickets, marked to show collection of the APHIS user fee, are issued for the individual contracted spaces.

(7) *Compliance*. Each carrier, travel agent, United States-based tour wholesaler, or other entity, subject to this section, must allow APHIS personnel to verify the accuracy of the APHIS user fees collected and remitted and to otherwise determine compliance with the 21 U.S.C. 136a and this paragraph. Each carrier, travel agent, United States-based tour wholesaler, or other entity must advise the United States Department of Agriculture, National Finance Center, Billings and Collections Branch, P.O. Box 60950, New Orleans, LA 70160, of the name, address, and telephone number of a responsible officer who is authorized to verify APHIS user fee calculations, collections, and remittances. The United States Department of Agriculture, National Finance Center, Billings and Collections Branch, P.O. Box 60950, New Orleans, LA 70160, must be promptly notified of any changes in the identifying information submitted.

(8) *Limitation on charges*. Airlines will not be charged reimbursable overtime for passenger inspection services required for any aircraft on which a passenger arrived who has paid the airline passenger APHIS user fee for that flight.

Done in Washington, DC, this 6th day of April, 1991.

**Edward Madigan,**

*Secretary, U.S. Department of Agriculture.*

[FR Doc. 91-8784 Filed 4-11-91; 8:45 am]

BILLING CODE 3410-34-M

---

**Commodity Credit Corporation**

**7 CFR Part 1425**

## Cooperative Marketing Associations; Eligibility Requirements for Price Support

**AGENCY:** Commodity Credit Corporation, USDA.

**ACTION:** Final rule.

**SUMMARY:** The proposed rule published in the Federal Register on January 22, 1991, (56 FR 2147), amending the regulations at 7 CFR part 1425 is adopted as a final rule without change. The proposed amendment changed the regulations governing cooperative marketing associations to provide that ten days after a cooperative is suspended from further participation in the price support program on behalf of its members, or anytime thereafter, CCC may on demand call all outstanding CCC price support loans made to the cooperative. The commodities pledged as collateral for such loans may be redeemed not later than the date specified by CCC.

**EFFECTIVE DATE:** April 12, 1991.

**FOR FURTHER INFORMATION CONTACT:** Richard M. Ackley, Chief, Cooperative and Analysis Branch, Cotton, Grain, and Rice Price Support Division, ASCS, U.S. Department of Agriculture, P.O. Box 2415, Washington, DC 20013, (202) 447-6689.

**SUPPLEMENTARY INFORMATION:** This final rule has been reviewed under U.S. Department of Agriculture (USDA) procedures established in accordance with provisions of Departmental Memorandum 1512-1 and Executive Order 12291, and has been classified "not major". It has been determined that these program provisions will not result in: (1) An annual effect on the economy of $100 million or more; (2) a major increase in costs or prices for consumers, individual industries,



HeinOnline -- 56 Fed. Reg. 14846 1991