**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| CONTINENTAL AIRLINES, INC.<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES OF AMERICA,<br><br>Defendant. | Civil Action No. 06-432C<br>Judge Lawrence S. Margolis |

**PLAINTIFF'S PROPOSED FINDINGS OF UNCONTROVERTED FACT**

Pursuant to Rule 56(h)(1) of the Rules of the United States Court of Federal Claims, Plaintiff Continental Airlines, Inc. ("Continental") respectfully submits the following Proposed Findings of Uncontroverted Fact in support of its motion for partial summary judgment:

1. Continental is the fifth largest commercial air carrier in the world and, with its regional partners operating as Continental Express and Continental Connection, offers more than 3,200 daily flights serving 151 U.S. and 137 international locations, including to and from Canada, Latin America, Europe, and Asia. Declaration of David V. Bowman ("Bowman Decl.") (Exhibit 1 hereto) ¶ 3.[1]

2. The Government has audited Continental's compliance in connection with the "Immigration User Fee" (*i.e.*, the fee imposed by 8 U.S.C. § 1356 and 8 C.F.R. § 286.1-286.9) and with the "APHIS User Fee" (*i.e.*, the fee imposed by 21 U.S.C. § 136a and 7 C.F.R.

[1] The Declaration of David V. Bowman attached hereto as Exhibit 1 contains five attachments, the pages of which are consecutively numbered. Citations containing a paragraph number (*e.g.*, "Bowman Decl. ¶ 3") are to the individually numbered paragraphs in the declaration itself. Citations to a page number (*e.g.*, "Bowman Decl. at 13") are to the attachments.

§ 354.3(f)) for audit periods beginning at least in 1999, on approximately an annual or biannual basis (the "User Fee Audits"). Bowman Decl. ¶ 5.

3. The Government has also audited Continental in connection with the "Customs User Fee" (*i.e.*, the fee imposed by 19 U.S.C. § 58c(a)(5)(A)), which is not at issue in this case. In connection with each of the User Fee Audits, the Government prepared an audit report, which it sent to Continental. Sometimes, an audit report covered more than one of the three user fees (Immigration, APHIS, and Customs). Bowman Decl. ¶¶ 6-7.

4. In connection with the User Fee Audits, the Government tested for collection, recording, reporting, and remittance compliance. Bowman Decl. ¶ 10.

5. For each of the User Fee Audits, the Government tested Continental's user fee collection compliance by reviewing Continental-issued tickets (*i.e.*, tickets sold on Continental ticket stock, which means it carries Continental's 005 code) from a sampling of Continental flights during the relevant period. The Government then checked each ticket for evidence that the user fees had been collected. Any ticket lacking such evidence (and for which Continental could not produce any other evidence that the fees had been collected or that the passenger was exempt from the fees) was deemed an "error" by the Government auditors. Bowman Decl. ¶ 11.

6. Many of these "errors" in which the tickets did not contain evidence of collection and for which Continental could not otherwise produce any evidence that the user fees had been collected, in fact represent instances where Continental did not collect a user fee. The vast majority of user fees are collected at the time of ticketing through an automated process that prices the tickets and marks them with evidence of collection. As a practical matter, although Continental makes attempts to do so, very few user fees are collected after the time of ticketing.



670859.1

In any case, in the course of each User Fee Audit, Continental staff searched Continental's relevant records for evidence that the user fees had been collected after the time of ticketing in connection with the "errors" in that audit. Any evidence found was presented to the Government auditors during the audit. Based on that information, such a ticket would not be included as an "error" (unless there was some independent problem with it). Bowman Decl. ¶ 12.

7. For each User Fee Audit, the Government auditors calculated an "error rate" by dividing the number of "errors" by the total number of qualifying tickets in the sample. Bowman Decl. ¶ 13.

8. For each User Fee Audit, the Government auditors then used the "error rate" to assess a liability against Continental by applying the "error rate" to the total dollar amount of applicable Immigration User Fees or APHIS User Fees that Continental had remitted during the period covered by the audit. Bowman Decl. ¶ 14.

9. Continental has paid each of the assessments from each of the User Fee Audits. Bowman Decl. ¶ 15.

10. Since at least 1999 until the present, Continental has had effective policies, procedures, and systems designed to collect Immigration User Fees and APHIS User Fees from all eligible passengers. Bowman Decl. ¶ 16.

11. Since at least 1999, Continental has experienced difficulties in collecting user fees from some international passengers, especially those whose flights originate from certain Central and South American countries. Bowman Decl. ¶ 17.

12. Continental offers flights to and from these countries. Bowman Decl. ¶ 18.

13. Some passengers and travel agencies from these countries claim that either their

country's laws prohibit, or its sovereignty would be injured, if the United States or its agents collected any fees or taxes from their country's citizens. Bowman Decl. ¶ 19.

14. It is well known within the airline industry that there are difficulties collecting user fees from some passengers, especially those in certain Central and South American countries. Bowman Decl. ¶ 20.

15. In connection with a user fee audit of American Airlines in 2003, the Government's audit report states that, with respect to the Dominican Republic and seven other South and Central American countries: "those countries prohibit ticket agents from collecting user fees/taxes for foreign countries at the time of ticket sale." Declaration of Barbara Blessing (Exhibit 2 hereto) ¶ 14;[2] Exhibit 3 hereto at 13.[3]

16. These difficulties mean that some passengers will not have paid their fees at the time they purchase their tickets. Bowman Decl. ¶ 21.

17. Some foreign passengers who did not pay user fees when they purchased their tickets also fail to pay the user fees at the airport. Bowman Decl. ¶ 22.

**<u>The Immigration User Fee Audit For April 1, 1999 through December 31, 2000</u>**

18. On or about March 27-30, 2001, the Government audited Continental in connection with Immigration User Fee remittances for the period April 1, 1999 through December 31, 2000. Bowman Decl. at 13.

---

[2] The Declaration of Barbara Blessing attached hereto as Exhibit 2 was originally filed by the Government on May 26, 2005, in *American Airlines, Inc. v. United States*, U.S. Court of Federal Claims Case No. 04-1736 (Doc. No. 21).

[3] The document attached hereto as Exhibit 3 was originally filed by American Airlines, Inc. on April 14, 2005, in *American Airlines, Inc. v. United States*, U.S. Court of Federal Claims Case No. 04-1736 (Doc. No. 15).

19. The Government auditors found that Continental remitted $55,542,318 in Immigration User Fees during the audit period. Bowman Decl. at 13.

20. Using the sampling methodology described above, the Government's audit personnel audited Continental's passenger tickets for the audit period and concluded there were 8 "errors" out of 1,056 qualifying sampled tickets, which translated to an "error rate" of 0.76 percent. Bowman Decl. at 15.

21. The auditors applied the "error rate" to the amount of Immigration User Fees remitted by Continental during the audit period and assessed an additional Immigration User Fee liability of $420,784. Bowman Decl. at 15, 17.

22. In response to this assessment, on or about October 18, 2001, Continental paid $420,784 to the Government. Bowman Decl. ¶ 24.

**The Immigration User Fee Audit For January 1, 2001 through December 31, 2001**

23. On or about August 5-8, 2002, the Government audited Continental in connection with Immigration User Fee remittances for the period January 1, 2001 through December 31, 2001. Bowman Decl. at 21.

24. The Government auditors found that Continental remitted $32,756,501 in Immigration User Fees during the audit period. Bowman Decl. at 21-22.

25. Using the sampling methodology described above, the Government's audit personnel audited Continental's passenger tickets for the audit period and concluded there were 11 "errors" out of 879 qualifying sampled tickets, which translated to an "error rate" of 1.25 percent. Bowman Decl. at 22, 25.

26. The auditors applied the "error rate" to the amount of Immigration User Fees remitted by Continental during the audit period and assessed an additional Immigration User Fee liability of $414,639. Bowman Decl. at 25.

27. In response to this assessment, on or about December 2, 2002, Continental paid $414,639 to the Government. Bowman Decl. ¶ 26.

**The Immigration User Fee Audit For January 1, 2002 through December 31, 2003**

28. On or about May 10-14, 2004, the Government audited Continental in connection with Immigration User Fee remittances for the period January 1, 2002 through December 31, 2003. Bowman Decl. at 33.

29. The Government auditors found that Continental remitted $74,086,268 in Immigration User Fees during the audit period. Bowman Decl. at 35.

30. Using the sampling methodology described above, the Government's audit personnel audited Continental's passenger tickets for the audit period and concluded there were 4 "errors" out of 1,270 qualifying sampled tickets, which translated to an "error rate" of 0.31 percent. Bowman Decl. at 34, 36.

31. The auditors applied the "error rate" to the amount of Immigration User Fees remitted by Continental during the audit period and assessed an additional Immigration User Fee liability of $230,547. Bowman Decl. at 36-37, 39.

32. In response to this assessment, on or about July 21, 2004, Continental paid $230,547 to the Government. Bowman Decl. ¶ 28.

**The Immigration User Fee Audit For January 1, 2004 through September 30, 2005**

33. On or about February 27 through March 3, 2006, the Government audited

Continental in connection with Immigration User Fee remittances for the period January 1, 2004 through September 30, 2005. Bowman Decl. at 49-50.

34. The Government auditors found that Continental remitted $80,069,918.50 in Immigration User Fees during the audit period. Bowman Decl. at 50.

35. Using the sampling methodology described above, the Government's audit personnel audited Continental's passenger tickets for the audit period and concluded there were 4 "errors" out of 1,279 qualifying sampled tickets. Bowman Decl. at 52.

36. At the time of the audit, the Government auditors were aware that this Court had already held in *American Airlines, Inc. v. United States*, 68 Fed. Cl. 723 (2005), that airlines are not liable for Immigration User Fees they do not collect from passengers. Bowman Decl. at 69.

37. The Government's audit report states that 3 of these 4 "errors" represent instances where Continental collected but did not correctly remit the user fee. Bowman Decl. at 54.

38. The Government's audit report states that the remaining "error" represents an instance "where Continental did not prove collection and remittance of the" user fee. Bowman Decl. at 54.

39. During the audit, Continental told the Government auditors that this "error" represented an instance where Continental had not collected a user fee from the passenger. Bowman Decl. at 51.

40. The Government auditors did not conduct any testing to verify Continental's claim that this user fee had not been collected from the passenger. Bowman Decl. at 51, 55.

41. Despite this and despite knowing of this Court's holding in the *American Airlines* case, the Government auditors assessed a liability against Continental for this "error." Bowman

Decl. at 51, 54-56.

42. Specifically, the Government auditors computed an “error rate” of 0.08 percent based on this single “error.” The auditors applied this “error rate” to the amount of Immigration User Fees remitted by Continental during the audit period and assessed an additional Immigration User Fee liability of $62,503.29.[4] Bowman Decl. at 54-56.

43. In response to this assessment, on or about September 12, 2006, Continental paid this $62,503.29 to the Government (in addition to the other amounts assessed in the audit). After learning of this assessment, but before paying it, Continental explained to the Government auditors that it would pay the assessment, but that it believed this amount was being illegally exacted from it and that it reserved its rights to sue to recover such amount. [Bowman Decl. ¶ 31; *id*. at 69.

**<u>The APHIS User Fee Audit For July 1999 through December 2001</u>**

44. On or about January 28-February 1, 2002, the Government audited Continental in connection with APHIS User Fee remittances for the period July 1, 1999 through December 31, 2001. Bowman Decl. at 76-77.

45. The Government auditors found that Continental remitted $30,704,044.94 in APHIS User Fees during the audit period. Bowman Decl. at 75.

---

[4] The Government auditors computed a separate “error rate” and liability based on the three “errors” that they claimed represented instances where Continental collected but did not properly remit the user fee. Bowman Decl. at 54-55, 57.

46. Using the sampling methodology described above, the Government's audit personnel audited Continental's passenger tickets for the audit period and concluded there were 24.21 "errors" out of 862 qualifying sampled tickets, which translated to an "error rate" of 2.81 percent. Bowman Decl. at 77.

47. The auditors applied the "error rate" to the amount of APHIS User Fees remitted by Continental during the audit period and assessed an additional APHIS User Fee liability of $863,979.89. Bowman Decl. at 77.

48. In response to this assessment, on or about July 30, 2002, Continental paid $863,979.89 to the Government. Bowman Decl. ¶ 34.

49. In addition, the Government assessed interest charges of $48,687.60 on the amount described in Paragraph 48. Continental paid that $48,687.60 to the Government on or about November 15, 2002. Bowman Decl. ¶ 35.

**The APHIS User Fee Audit For January 2002 through December 2003**

50. On or about May 10-14, 2004, the Government audited Continental in connection with APHIS User Fee remittances for the period January 1, 2002 through December 31, 2003. Bowman Decl. at 33.

51. The Government auditors found that Continental remitted $27,952,069 in APHIS User Fees during the audit period. Bowman Decl. at 35.

52. Using the sampling methodology described above, the Government's audit personnel audited Continental's passenger tickets for the audit period and concluded there were 5 "errors" out of 1,270 qualifying sampled tickets, which translated to an "error rate" of 0.39

percent. Bowman Decl. at 34.

53. The auditors applied the "error rate" to the amount of APHIS User Fees remitted by Continental during the audit period and assessed an additional APHIS User Fee liability of $109,535. Bowman Decl. at 36, 41.

54. In response to this assessment, on or about July 21, 2004, Continental paid $109,535 to the Government. Bowman Decl. ¶ 28.

55. In addition, the Government assessed interest and penalty charges of $15,476.68 on the amount described in Paragraph 54. Continental paid that $15,476.68 to the Government on or about January 5, 2005. Bowman Decl. ¶ 29.

**The APHIS User Fee Audit For January 1, 2004 through September 30, 2005**

56. On or about February 27 through March 3, 2006, the Government audited Continental in connection with APHIS User Fee remittances for the period January 1, 2004 through September 30, 2005. Bowman Decl. at 49-50.

57. The Government auditors found that Continental remitted $38,486,753.34 in APHIS User Fees during the audit period. Bowman Decl. at 50.

58. Using the sampling methodology described above, the Government's audit personnel audited Continental's passenger tickets for the audit period and concluded there were 4 "errors" out of 1,260 qualifying sampled tickets. Bowman Decl. at 52, 62-63.

59. At the time of the audit, the Government auditors were aware that this Court had already held in *American Airlines, Inc. v. United States*, 68 Fed. Cl. 723 (2005), that airlines are not liable for APHIS User Fees they do not collect from passengers. Bowman Decl. at 69.

60. The Government's audit report states that 3 of these 4 "errors" represent instances

where Continental collected but did not correctly remit the user fee. Bowman Decl. at 62.

61. The Government's audit report states that the remaining "error" represents an instance where "Continental did not prove collection and remittance of the" user fee. Bowman Decl. at 62.

62. During the audit, Continental told the Government auditors that this "error" represented an instance where Continental had not collected a user fee from the passenger. Bowman Decl. at 51.

63. The Government auditors did not conduct any testing to verify Continental's claim that this user fee had not been collected from the passenger. Bowman Decl. at 51, 63.

64. Despite this and despite knowing of this Court's holding in the *American Airlines* case, the Government auditors assessed a liability against Continental for this "error." Bowman Decl. at 51, 62-64.

65. Specifically, the Government auditors computed an "error rate" of 0.08 percent based on this single "error." The auditors applied this "error rate" to the amount of APHIS User Fees remitted by Continental during the audit period and assessed an additional APHIS User Fee liability of $30,428.57.[5] Bowman Decl. at 51, 62-64.

---

[5] The Government auditors computed a separate "error rate" and liability based on the three "errors" that they claimed represented instances where Continental collected but did not properly remit the user fee. Bowman Decl. at 62-63, 65.



670859.1

66. In response to this assessment, on or about September 12, 2006, Continental paid this $30,428.57 to the Government (in addition to the other amounts assessed in the audit). After learning of this assessment, but before paying it, Continental explained to the Government auditors that it would pay the assessment, but that it believed this amount was being illegally exacted from it and that it reserved its rights to sue to recover such amount. Bowman Decl. ¶ 31; *id*. at 69.

67. In addition, the Government auditors found that "Continental failed to collect the correct amount for" the APHIS User Fee in connection with 3,111 passengers on flights by one of the charter companies that Continental contracts with. Bowman Decl. at 52, 66.

68. Specifically, although the amount of the APHIS User Fee had changed from $3.10 to $4.95 during the audit period, the Government auditors found that only $3.10 was collected from each of these passengers. Bowman Decl. at 66.

69. For each of the 3,111 passengers, the Government assessed an additional liability against Continental for the $1.85 difference between the $4.95 APHIS User Fee and the $3.10 actually collected from the passengers. Bowman Decl. at 66-67.

70. The total amount of this assessment was $5,755.35 ($1.85 times 3,111). Bowman Decl. at 66-67.

71. The $1.85 assessed against Continental for each of these 3,111 passengers represents user fee amounts that were not collected from the passengers. Bowman Decl. at 66-67.

72. In response to this assessment, on or about September 12, 2006, Continental paid

this $5,755.35 to the Government (in addition to the other amounts assessed in the audit). After learning of this assessment, but before paying it, Continental explained to the Government auditors that it would pay the assessment, but that it believed this amount was being illegally exacted from it and that it reserved its rights to sue to recover such amount. Bowman Decl. ¶ 31; *id*. at 69.

Respectfully submitted,

s/ Adam P. Feinberg

Adam P. Feinberg
MILLER & CHEVALIER CHARTERED
655 15th Street, N.W.
Washington, D.C. 20005
(202) 626-6087
(202) 626-5801 (Facsimile)

Counsel for Plaintiff

*Of Counsel*:
Robert K. Huffman
MILLER & CHEVALIER CHARTERED
655 15th Street, N.W.
Washington, D.C. 20005
(202) 626-5824
(202) 626-5801 (Facsimile)

Dated: January 16, 2007