610 S. Canal St.
Chicago, IL 60607-4523

U.S. Customs and
Border Protection

DATE: August 29, 2006
FILE: AUD-1-ST:RA: FO 361 EJR

Mr. David Bowman
Director Operating Taxes
Continental Airlines, Inc.
P.O. Box 4607 HQSTX
Houston, Texas 77210-4607

Dear Mr. Bowman:

United States (U.S.) Customs and Border Protection (CBP) has completed a user fee audit of Continental Airlines, Inc. (Continental) for the period of January 1, 2004, through September 30, 2005, for Immigration User Fees (IUF), CBP Passenger Processing Fees (PPF), and for Animal and Plant Health Inspection Service (APHIS) Passenger and Aircraft Clearance Fees. Our objectives were to determine the company's compliance with regulations pertaining to the collection and remittance of user fees and quantify any monetary impact.

Continental was not compliant with regulations pertaining to the collection and remittance of IUF, CBP PPF, and APHIS Passenger Fees. Continental was compliant with the remittance of the APHIS Aircraft Clearance Fee. Detailed information on the results of our review is included in the attached User Fee Audit Report Number 361-05-UF1-UF-20263, and the following summarizes financial liabilities based on our findings (NOTE: the financial liabilities noted below only represent our findings, and do not include interest and penalties – see note (1) below):

| User Fee | Liability Amount | | | Notes |
|---|---|---|---|---|
| | No proof of collection and remittance | Fee collected and not remitted | Fee over remitted | |
| IUF | $62,503.29 | $188,607.54 | - | 1 &2 |
| CBP PPF | $79,497.01 | - | $125,790.97 | 1, 2 & 4 |
| APHIS Passenger Fee | $30,428.57 | $91,817.00 | - | 1 & 3 |
| APHIS Passenger Fee – Charter Flights | $5,755.35 | - | - | 1 & 3 |

**SENSITIVE – PROPRIETARY INFORMATION**

**NOTES:**

(1) The Department of Homeland Security (DHS) and the U.S. Department of Agriculture (USDA) are authorized by Federal statute (Debt Collection Improvement Act of 1996) and regulation (31 CFR 901.9) to issue interest and any administrative charge assessments and/or penalties considered appropriate as a result of the findings in this audit. Any interest or additional charges will be issued in a separate mailing from this final audit report directly from the CBP Revenue Division for the IUF and CBP PPF fees; and from the APHIS collections office for the APHIS fees.
(2) See Attachment A for CBP remittance instructions.
(3) See Attachment B for APHIS remittance instructions.
(4) Contact the CBP Revenue Division to determine how to properly handle the projected over remittance of the CBP PPF.

We appreciate the assistance and cooperation extended by you and your staff during the review. If you require additional information regarding this audit, please contact John P. Nicholson, Assistant Field Director, Minneapolis, Minnesota, at (612) 373-1260, extension 554.

Sincerely,

Thomas H. Kudelka
Field Director, Regulatory Audit Field Office
Chicago, Illinois

Attachments

Attachment A
CBP Remittance Instructions

**Remittances of the IUF and PPF amounts due may be made by:**

**CHECKS:** Checks should be mailed to:

U.S. Customs and Border Protection
Revenue Division
Attn: User Fee Team
6650 Telecom Drive
Indianapolis, Indiana 46278

Please enclose the Finding Sheet Attachment(s) from the audit with your check for clarity of payment intent.

**WIRE TRANSFERS:** ABA #021030004
Account #70 05 0096
U.S. Treasury – FRB New York
33 Liberty Street
New York, New York 10045
(212) 720-5000

The sender should make certain the following information is put on the payment:

1. Company Name
2. Company Internal Revenue Service (IRS) number
3. An indication of what the payment is for (include Finding Sheet Attachment(s) from the audit):
   a. Passenger User Fees for quarter and year
   b. Railroad User Fees for month and year
   c. Promissory Note number, bill number or audit finding, if applicable.

Any questions concerning fed wire transfers can be addressed to Ms. Zelda Gantt at (202) 874-6894.

**ACH CREDIT:** Automated Clearinghouse (ACH) credit is an electronic process that allows companies to transmit their payment directly to the U.S. Customs and Border Protection, without disclosing their company's bank account information. If you have questions concerning the ACH credit process or would like to set up an account, please contact Ms. Erika Brown of the U.S. Customs and Border Protection at (317) 614-4428.

IUF and PPF billing and payment questions should be addressed to Kara Welty of the Revenue Division, at (317) 614-4614.

Attachment B
APHIS Remittance Instructions

**Remittances due for APHIS Passenger and Landing Fees:**

Remit funds for APHIS fees to:

Lockbox
USDA, APHIS, AQI
PO Box 979044
St Louis, MO 63197-9000

Overnight Deliveries
US Bank
Attn: Government Lockbox-979044
1005 Convention Plaza
St Louis, MO 63101

Electronic Fund Transfer (EFT)
The following information is needed by your bank to make an EFT payment to APHIS.

| | |
|---|---|
| Bank: | US Bank<br>60 Livingston Avenue<br>St. Paul, MN 55107<br>USA |
| ABA Number: | 081000210 |
| Name on Account: | USDA, APHIS |
| Account Number: | 1001104072 |
| SWIFT Number: | USBKUS44IMT |

Include the following information with your payment:

- Organization Name / Company Name
- Account Information
- Purpose of payment
- PO Box Number where payment would normally be mailed

*Note: Any fees associated with the Electronic Fund Transfer transaction are the responsibility of the remitter. Check with your financial institution regarding these fees.*

To ensure prompt and accurate posting of your payment, please let us know, either by fax (612) 370-2293, or by e-mail ABShelpline@aphis.usda.gov, that a payment was sent. Along with the information noted above, include a contact name and telephone number.

Any questions regarding payment of APHIS user fees should be addressed to the collection office at the e-mail address provided or by calling the APHIS Helpline at (612) 336-3400 or toll free in the U.S. at (877) 777-2128. To aid in all payments, please include a copy of the exhibits with the appropriate payments

**SENSITIVE – PROPRIETARY INFORMATION**

DEPARTMENT OF HOMELAND SECURITY
U.S. CUSTOMS AND BORDER PROTECTION

User Fee Audit Report

# CONTINENTAL AIRLINES, INC.
361-05-UF1-UF-20263

August 29, 2006

Regulatory Audit Division
Chicago Field Office
Minneapolis Branch

**WARNING: CRIMINAL PENALTIES**

This document contains trade secrets and commercial and financial information relating to the confidential business of private parties. The Trade Secrets Act (18 U.S.C. 1905) provides penalties for disclosure of such information. Federal employees who violate this act by making wrongful disclosures of confidential commercial information may be subject to a personal fine of not more than the greater of $100,000 or, if the person derives a financial gain from the offense, or the offense results in a financial loss to another person, a fine up to twice the gross gain or loss (18 U.S.C. 3571(b), (d)), imprisonment for not more than one year, or both; and shall be removed from employment. Also, improper disclosure of certain information contained in this document may constitute a violation of the Privacy Act (5. U.S.C. 552a) and violators could be subject to a fine of not more than $5,000.

Any disclosure, dissemination, or reproduction of this document or any of its contents or associated data contained in the working papers is prohibited without the approval of the Regulatory Audit Division Director who signed the report.

# CONTINENTAL AIRLINES, INC.
## 361-05-UF1-UF-20263

## TABLE OF CONTENTS


| SECTION | PAGE |
|---|---|
| Introduction | 1 |
| Background | 1 |
| Airline Alliances and Code Share Partners | 1 |
| CBP Bond Sufficiency | 1 |
| Audit History | 2 |
| Scope and Methodology for Audit | 2 |
| Summary of Audit Results | 4 |
| Schedule of Audit Results | 5 |
| Findings | |
| Immigration User Fee | Finding Sheet 1 |
| IUF Liability Calculations: | |
| No Proof of Collection and Remittance | Attachment A |
| Collected But Not Remitted | Attachment B |
| Customs and Border Protection Passenger Processing Fee | Finding Sheet 2 |
| CBP PPF Liability Calculations | Attachment A |
| CBP PPF Over Remittance Calculations | Attachment B |
| Animal and Plant Health Inspection Service Passenger Fee | Finding Sheet 3 |
| APHIS Passenger Fee Liability Calculations: | |
| No Proof of Collection and Remittance | Attachment A |
| Collected But Not Remitted | Attachment B |
| APHIS Passenger Fee – Charter Flights | Finding Sheet 4 |
| APHIS Passenger Fee Liability Calculations – Charter Flights | Attachment |
| Appendix | |
| Comments of Company Officials | I |

# CONTINENTAL AIRLINES, INC.
# 361-05-UF1-UF-20263

## Introduction

United States Customs and Border Protection (CBP) has completed a user fee audit of Continental Airlines, Inc. (Continental) covering the Immigration and Naturalization Service User Fees (IUF), CBP Passenger Processing Fees (PPF), and Animal and Plant Health Inspection Service (APHIS) Passenger and Aircraft Clearance Fees. Our objectives were to determine the company's compliance with regulations pertaining to the collection and remittance of user fees and quantify any monetary impact. The audit fieldwork was performed at the company's headquarters in Houston, Texas between February 27 and March 3, 2006.

## Background

Founded in 1934, Continental is identified by International Civil Aviation Organization (ICAO) code COA. Together with its global travel partners, Continental serves over 151 domestic and 133 international destinations. Continental has hubs in New York, Houston, Cleveland, and Guam. Continental's headquarters is located at 1600 Smith Street, Houston, Texas 77002. Continental has over 42,000 employees worldwide and is the world's sixth largest airline.

### Airline Alliances and Code Share Partners

Continental is Skyteam Global Alliance partners with the following airlines (with respective ICAO codes): Aeroméxico (AMX), Air France (AFR), Alitalia (AZA), CSA Czech (CSA), Delta Air Lines (DAL), KLM Royal Dutch Airlines (KLM), Korean Air (KAL), and Northwest Airlines (NWA).

Continental also has alliances with the following airlines (with respective ICAO codes): Air Europa (AEA), Alaska Airlines (ASA), British European flybe (BEE), Cape Air (CTO), Colgan Air (CJC), CommutAir (UCA), Copa Airlines (CMP), Emirates (UAE), EVA Air (EVA), Gulfstream International Airlines (GFT), Hawaiian Airlines (HAL), Horizon Air (QXE), Island Air (PRI), SNCF – French National Railway (TGV), TAP Air Portugal (TAP), and Virgin Atlantic Airways (VIR).

### CBP Bond Sufficiency

Continental, Importer of Record 74-209972400, holds a type 3A3 bond number 530301295 covering the CBP PPF, in the amount of $7,300,000. The CBP Revenue Division determined that this bond is insufficient.

Audit History

The scope of the previous user fee audit was January 1, 2002, through December 31, 2003, and disclosed the following findings:

1. *Continental had IUF liability of $230,547, CBP PPF liability of $67,598 and* APHIS Passenger Fee liability of $109,535.

2. In addition, Continental's Ireland sales offices included IUF, PPF and APHIS Passenger Fees in an XP tax code, instead of XY (IUF), YC (PPF), and XA (APHIS) tax code. As a result, the IUF, PPF, and APHIS Passenger Fees for the Ireland sales office were not remitted. The respective outstanding user fee *liabilities as result of under remittance for the review period were:*

| | |
|---|---|
| IUF | $53,087 |
| CBP PPF | $39,285 |
| APHIS Passenger Fees | $24,357 |

3. Continental also failed to remit the APHIS Aircraft Clearance Fee for 755 aircraft *landings, resulting in an additional liability of $49,264.*

**Scope and Methodology for Audit**

Our audit was performed in accordance with Generally Accepted Government Auditing Standards and included such tests and procedures as were considered necessary under the circumstances.

The scope of the audit was January 1, 2004, through September 20, 2005, for the IUF, CBP PPF, and APHIS Passenger and Aircraft Clearance Fees.

Continental remitted the following user fees for the review period:

| | |
|---|---|
| IUF | $ 80,069,918.50 |
| CBP PPF | $ 30,147,502.88 |
| APHIS Passenger Fee | $ 38,486,753.34 |
| APHIS Aircraft Clearance Fee | $ 5,831,699.62 |

We performed the following steps to determine the company's compliance with regulations pertaining to the collection and remittance of user fees and quantify any monetary impact:

- judgmentally selected sample flights arriving in the United States from CBP's Entrance/Clearance Aircraft System (ECAS) data, while ensuring that the sample flights covered the entire audit scope and were representative of the universe;
- traced a sample auditor coupon judgmentally selected from the airport ticket office (ATO) in Ciudad de Mexico (MEX), for sales occurring on August 31, 2005, through

the associated sales report to the applicable general ledger accounts identified by Continental;

- traced a sample auditor coupon judgmentally selected from the City Ticket Offices (CTO) in New Jersey, for sales occurring on August 31, 2005, through the associated sales report to the applicable general ledger accounts identified by Continental;
- traced a sample auditor coupon judgmentally selected from the Airlines Reporting Corporation (ARC) occurring in 2005, bank 04, month 8, week 4, cycle 1 through the associated sales report to the applicable general ledger accounts identified by Continental;
- traced a sample auditor coupon judgmentally selected from the Billing and Settlement Plan (BSP) in Mexico for the second half of August 2005 through the associated sales report to the applicable general ledger accounts identified by Continental;
- compared the number of flights per the remittances to the number of flights per the ECAS data and determined if the company was compliant with Aircraft Clearance Fee regulations;
- reviewed the user fee payments made by the company for charter flights and determined if the company was compliant with user fee regulations for charter flight passengers;
- reviewed the user fee payments made by the company on charter flights and traced through the associated sales report to the applicable general ledger accounts identified by Continental;
- reconciled the number of tickets for each flight in the sample to the flight manifest and ECAS summaries;
- reviewed the tickets in the sample to verify the collection of the applicable passenger user fees;
- for tickets that did not show evidence of user fee collection, the audit team requested and reviewed, when provided, additional information from Continental to substantiate that the user fees had been collected;
- when Continental failed to provide evidence that the user fees were properly collected and remitted for qualifying tickets, the audit team deemed these as errors (Note: The audit team did not conduct testing to verify Continental's claim of non-collection);
- traced the applicable user fees on judgmentally selected sample tickets through the sales report to the applicable general ledger accounts identified by Continental;
- identified with the company, the cause of errors;
- reviewed the reasons for the ticket errors and determined if a unique situation accounted for a larger portion of the errors;
- computed error rates; and
- computed monetary effects (i.e., liability) for errors.

**Summary of Audit Results**

Based on the errors identified during our review, Continental was not compliant with regulations pertaining to the collection and remittance of the IUF, CBP PPF and APHIS Passenger User Fees. Continental was compliant with regulations pertaining to the remittance of the APHIS Aircraft Clearance Fee.

The monetary impact of errors for each fee is summarized below:

IUF – Our review of 1,279 qualifying tickets for IUF resulted in exceptions on 4 tickets. For three of these tickets, the fee was collected but incorrectly remitted, resulting in an additional liability of $188,607.54. For the one other ticket, Continental did not prove the collection and remittance of the appropriate IUF, resulting in $62,503.29 in additional liability.

CBP PPF – Our review of 1,140 qualifying tickets for CBP PPF resulted in exceptions on 3 tickets resulting in $79,497.01 in additional liability. Continental did not prove collection and remittance of the appropriate CBP PPF for these tickets. We also found that Continental over remitted the CBP PPF in the amount of $125,790.97. Continental should contact the CBP Revenue Division to determine how to properly handle the projected over remittance of the CBP PPF.

APHIS PASSENGER FEE– Our review of 1,260 qualifying tickets for APHIS Passenger Fees resulted in exceptions on 4 tickets. For three of these tickets, the fee was collected but incorrectly remitted, resulting in an additional liability of $91,817.00. For the one other ticket, Continental did not prove the collection and remittance of the appropriate APHIS Passenger Fee, resulting in $30,428.57 in additional liability.

APHIS PASSENGER FEE – CHARTER FLIGHTS – Our review of Continental's charter flights indicated that Continental incorrectly collected and remitted the APHIS Passenger Fee for 3,111 passengers, resulting in $5,755.35 in additional liability.

APHIS AIRCRAFT CLEARANCE FEE – Our review of inspected aircraft landings from ECAS data and the company's landing data revealed that Continental was compliant with the APHIS aircraft landing fee regulations, and has no further liability for the APHIS Aircraft Clearance Fee.

The attached Schedule of Audit Results and Finding Sheets provide additional information on our conclusions.

Thomas H. Kudelka
Field Director, Regulatory Audit Field Office
Chicago, Illinois

CONTINENTAL AIRLINES, INC.
361-05-UF1-UF-20263

SCHEDULE OF AUDIT RESULTS

| Finding Sheet | User Fee | Compliance with User Fee Regulations | Collected/ Remitted | Liability * |
|---|---|---|---|---|
| 1 | IUF | Noncompliant | No proof of collection and remittance | $62,503.29 |
| | | Noncompliant | Collected but not remitted | $188,607.54 |
| 2 | CBP PPF | Noncompliant | No proof of collection and remittance | $79,497.01** |
| 3 | APHIS Passenger Fee | Noncompliant | No proof of collection and remittance | $30,428.57 |
| | | Noncompliant | Collected but not remitted | $91,817.00 |
| 4 | APHIS Passenger Fee – Charter Flights | Noncompliant | Incorrectly collected and remitted | $5,755.35 |
| - | APHIS Aircraft Clearance Fee | Compliant | Collection not applicable - Fee was remitted | - |

*The CBP Revenue Division and the USDA APHIS Collections office will determine if interest and penalty amounts are due on respective user fees collected by the carrier but not remitted. Interest and penalties may be computed back to the period when the fees should have been remitted. Audit liability amounts attributable to errors (such as those found by sampling during the audit process) may be subject to interest and penalty.

**Note: Continental has a CBP PPF liability of $79,497.01, but also over remitted the CBP PPF by $125,790.97. Contact the CBP Revenue Division to determine how to properly handle the projected over remittance of the CBP PPF.

**CONTINENTAL AIRLINES, INC.**
**IMMIGRATION USER FEE**

## SUB-OBJECTIVE

To determine the company's compliance with regulations pertaining to the collection and remittance of the Immigration User Fee (IUF) and quantify any monetary impact.

## CONCLUSION

Continental Airlines, Inc. (Continental) was not compliant with regulations pertaining to the collection and remittance of the IUF. The monetary impact (i.e. liability) of the errors where Continental did not prove collection and remittance of the IUF is $62,503.29. The monetary impact (i.e. liability) of the errors where Continental collected but did not remit the IUF is $188,607.54.

## CRITERIA

Title 8 United States Code 1356(d) states the fee for immigration inspection is $7.

Title 8 Code of Federal Regulations (CFR) 286.2(a) states a fee per individual is charged and collected by the Commissioner for the immigration inspection of each passenger aboard a commercial aircraft arriving at a port-of-entry in the United States.

Title 8 CFR 286.4(a) states it is the responsibility of the air carriers, travel agents, tour wholesalers, or other parties, which issue tickets or documents for transportation to collect the fee set forth in Sec 286.2 of this part from all passengers transported to the United States who are not excepted under Sec. 286.3 of this part.

Title 8 CFR 286.4(c) further stipulates it is the responsibility of the carrier transporting a passenger from the United States to collect the fee upon departure, if the passenger was not excepted under Sec. 286.3 of this part and tickets or documents for transportation of the passenger do not reflect collection of the fee at the time of issuance.

Title 8 CFR 286.5(a) states the air carrier whose ticket stock reflects collection of the fee is responsible for remittance of the fee to the Service.

## CONDITION

Our review of 1,279 sample IUF tickets resulted in exceptions on 4 tickets. For one ticket, Continental did not prove collection and remittance of the fee. Accordingly, the error rate was 0.08 percent. For the other three tickets, the fee was collected and incorrectly remitted as other user fees. This translated to an error rate of 0.24 percent.

## CAUSE

Continental stated that the first exception was due to agent error. Additionally, they stated that for two of the remaining exceptions, the agent collected the IUF and remitted it as Customs and Border Protection (CBP) Passenger Processing Fees (PPF). For the final exception, the agent collected the IUF and remitted it to the United States Department of Transportation (US).

The audit team did not conduct a review of user fee related internal controls and therefore could not verify the causes provided by the company.

## EFFECT

We identified the following additional liability as a result the errors.

| User Fee | Collected / Remitted | Liability | Attachment |
|---|---|---|---|
| IUF | No proof of collection and remittance | $62,503.29 | See Attachment A to Finding Sheet 1 |
| | Collected but not remitted | $188,607.54 | See Attachment B to Finding Sheet 1 |
| | **Total Liability:** | $251,110.83 | |

## RECOMMENDATIONS

We recommend that Continental remit the total additional liability due of $251,110.83.

## COMMENTS OF COMPANY OFFICIALS

Refer to Appendix I, for written comments of Company Officials.

## AUDITORS' REJOINDER

The company comments state "Continental Airlines, Inc. ("Continental") does not believe United States Customs and Border Protection ("CBP") has the authority to assess liability against Continental for Immigration, Customs, or APHIS user fees that *are not collected* by Continental from its passengers." As noted in the report, in calculating audit liabilities, the audit team did not verify whether Continental did or did *not actually collect the user fees from its passengers; rather, the audit team relied solely* on the evidence of fee collection and remittance provided by Continental.

Finding Sheet 1
361-05-UF1-UF-20263
Attachment A

## CONTINENTAL AIRLINES, INC.
## IMMIGRATION USER FEE – LIABILITY CALCULATIONS
## NO PROOF OF COLLECTION AND REMITTANCE

| | |
|---|---|
| Sampled qualifying tickets: | 1,279 |
| IUF Errors: | 1 |
| Error rate: | 0.08% |

| Year | Periods | Net Collections Recorded in the G/L | +Error Rate (1) | Total IUF Due (2) | IUF Remitted | IUF Outstanding |
|---|---|---|---|---|---|---|
| | | | | | | |
| 2004 | Jan-Mar | $ 10,963,104.12 | $ 8,557.90 | $ 10,971,662.02 | $ 10,963,104.12 | $ 8,557.90 |
| | Apr-Jun | $ 12,580,881.15 | $ 9,820.75 | $ 12,590,701.90 | $ 12,580,881.15 | $ 9,820.75 |
| | Jul-Aug | $ 3,891,001.04 | $ 3,037.35 | $ 3,894,038.39 | $ 3,891,001.04 | $ 3,037.35 |
| | Sep | $ 7,271,227.84 | $ 5,675.98 | $ 7,276,903.82 | $ 7,271,227.84 | $ 5,675.98 |
| | Oct-Dec | $ 10,444,644.32 | $ 8,153.18 | $ 10,452,797.50 | $ 10,444,644.32 | $ 8,153.18 |
| | | | | | | |
| 2005 | Jan-Mar | $ 12,949,319.27 | $ 10,108.35 | $ 12,959,427.62 | $ 12,949,319.27 | $ 10,108.35 |
| | Apr-Jun | $ 13,986,368.60 | $ 10,917.88 | $ 13,997,286.48 | $ 13,986,368.60 | $ 10,917.88 |
| | Jul-Sep | $ 7,983,372.16 | $ 6,231.89 | $ 7,989,604.05 | $ 7,983,372.16 | $ 6,231.89 |
| | **TOTAL** | **$ 80,069,918.50** | **$ 62,503.29** | **$ 80,132,421.79** | **$ 80,069,918.50** | **$ 62,503.29** |

**(1) [Recorded / (1-error rate)] - Recorded**
**(2) Recorded + Error Rate**

Finding Sheet 1
361-05-UF1-UF-20263
Attachment B

**CONTINENTAL AIRLINES, INC.**
**IMMIGRATION USER FEE – LIABILITY CALCULATIONS**
**COLLECTED BUT NOT REMITTED**

| | |
|---|---|
| Sampled qualifying tickets: | 1,279 |
| IUF Errors: | 3 |
| Error rate: | 0.24% |

| Year | Periods | Net Collections Recorded in the G/L | +Error Rate (1) | Total IUF Due (2) | IUF Remitted | IUF Outstanding |
|---|---|---|---|---|---|---|
| | | | | | | |
| 2004 | Jan-Mar | $ 10,963,104.12 | $ 25,823.98 | $ 10,988,928.10 | $ 10,963,104.12 | $ 25,823.98 |
| | Apr-Jun | $ 12,580,881.15 | $ 29,634.71 | $ 12,610,515.86 | $ 12,580,881.15 | $ 29,634.71 |
| | Jul-Aug | $ 3,891,001.04 | $ 9,165.39 | $ 3,900,166.43 | $ 3,891,001.04 | $ 9,165.39 |
| | Sep | $ 7,271,227.84 | $ 17,127.64 | $ 7,288,355.48 | $ 7,271,227.84 | $ 17,127.64 |
| | Oct-Dec | $ 10,444,644.32 | $ 24,602.73 | $ 10,469,247.05 | $ 10,444,644.32 | $ 24,602.73 |
| | | | | | | |
| 2005 | Jan-Mar | $ 12,949,319.27 | $ 30,502.58 | $ 12,979,821.85 | $ 12,949,319.27 | $ 30,502.58 |
| | Apr-Jun | $ 13,986,368.60 | $ 32,945.39 | $ 14,019,313.99 | $ 13,986,368.60 | $ 32,945.39 |
| | Jul-Sep | $ 7,983,372.16 | $ 18,805.12 | $ 8,002,177.28 | $ 7,983,372.16 | $ 18,805.12 |
| | **TOTAL** | **$ 80,069,918.50** | **$188,607.54** | **$ 80,258,526.04** | **$ 80,069,918.50** | **$ 188,607.54** |

**(1) [Recorded / (1-error rate)] - Recorded**
**(2) Recorded + Error Rate**

SENSITIVE – PROPRIETARY INFORMATION

# CONTINENTAL AIRLINES, INC.
# CUSTOMS AND BORDER PROTECTION PASSENGER PROCESSING FEE

## SUB-OBJECTIVE

To determine the company's compliance with regulations pertaining to the collection and remittance of the Customs and Border Protection (CBP) Passenger Processing Fee (PPF) and quantify any monetary impact.

## CONCLUSION

Continental Airlines, Inc. (Continental) was not compliant with regulations pertaining to the collection and remittance of the CBP PPF. The monetary impact (i.e. liability) of the errors is $79,497.01. Continental over remitted the CBP PPF in the amount of $125,790.97. Continental should contact the CBP Revenue Division to determine how to properly handle the projected over remittance of the CBP PPF.

## CRITERIA

Title 19 Code of Federal Regulations (CFR) 24.22(g)(1) states that a fee of $5 must be collected and remitted to CBP for services provided in connection with the arrival of each passenger aboard a commercial aircraft from a place outside the United States, other than Canada, Mexico, one of the territories and possessions of the United States, or one of the adjacent islands.

Title 19 CFR 24.22(g)(4) states that each air or sea carrier, travel agent, tour wholesaler, or other party issuing a ticket or travel document for transportation into the customs territory of the United States is responsible for collecting from the passenger the applicable fee, including the fee applicable to any infant traveling without a separate ticket or travel document.

## CONDITION

Our review of 1,140 sample CBP PPF tickets resulted in exceptions on 3 tickets. For these tickets Continental did not prove the collection and remittance of the fee. Accordingly, the error rate was 0.26 percent. Our review also revealed that Continental over remitted the CBP PPF for 4.78 passengers. This translated to an error rate of -0.42 percent.

## CAUSE

Continental stated that all three of the CBP PPF ticket exceptions were due to agent error. Additionally, they stated that for two of the ticket exceptions, the Billing

Settlement Plan agent made an error, and for the third exception the agent made a manual error while selling the ticket.

Continental also stated that for the over remittance of the CBP PPF, the agent misallocated other fees to the CBP PPF account, resulting in the over remittance of the CBP PPF.

The audit team did not conduct a review of user fee related internal controls and therefore could not verify the causes provided by the company.

## EFFECT

We identified the following additional liability as a result the errors.

| User Fee | Collected / Remitted | Liability | Attachment |
|---|---|---|---|
| CBP PPF | No proof of collection and remittance | $79,497.01 | See Attachment A to Finding Sheet 2 |
| | Over remitted | ($125,790.97) | See Attachment B to Finding Sheet 2 |

## RECOMMENDATIONS

We recommend that Continental contact the CBP Revenue Division to determine how to properly handle the liability of $79,497.01 and over remittance of $125,790.97.

## COMMENTS OF COMPANY OFFICIALS

Refer to Appendix I, for written comments of Company Officials.

## AUDITORS' REJOINDER

The company comments state "Continental Airlines, Inc. ("Continental") does not believe United States Customs and Border Protection ("CBP") has the authority to assess liability against Continental for Immigration, Customs, or APHIS user fees that *are not collected* by Continental from its passengers." As noted in the report, in calculating audit liabilities, the audit team did not verify whether Continental did or did not actually collect the user fees from its passengers; rather, the audit team relied solely on the evidence of fee collection and remittance provided by Continental.

Finding Sheet 2
361-05-UF1-UF-20263
Attachment A

CONTINENTAL AIRLINES, INC.
CUSTOMS PASSENGER PROCESSING FEE – LIABILITY CALCULATIONS
NO PROOF OF COLLECTION AND REMITTANCE

| | |
|---|---|
| Sampled qualifying tickets: | 1,140 |
| CBP PPF Errors: | 3 |
| Error rate: | 0.26% |

| Year | Periods | Net Collections Recorded in the G/L | +Error Rate (1) | Total PPF Due (2) | PPF Remitted | PPF Outstanding |
|---|---|---|---|---|---|---|
| | | | | | | |
| 2004 | Jan-Mar | $ 3,737,766.74 | $ 9,856.25 | $ 3,747,622.99 | $ 3,737,766.74 | $ 9,856.25 |
| | Apr-Jun | $ 4,565,090.46 | $12,037.85 | $ 4,577,128.31 | $ 4,565,090.46 | $ 12,037.85 |
| | Jul-Sep | $ 4,066,710.12 | $10,723.65 | $ 4,077,433.77 | $ 4,066,710.12 | $ 10,723.65 |
| | Oct-Dec | $ 3,615,896.81 | $ 9,534.89 | $ 3,625,431.70 | $ 3,615,896.81 | $ 9,534.89 |
| | | | | | | |
| 2005 | Jan-Mar | $ 4,490,642.99 | $11,841.53 | $ 4,502,484.52 | $ 4,490,642.99 | $ 11,841.53 |
| | Apr-Jun | $ 5,324,027.65 | $14,039.12 | $ 5,338,066.77 | $ 5,324,027.65 | $ 14,039.12 |
| | Jul-Sep | $ 4,347,368.11 | $11,463.73 | $ 4,358,831.84 | $ 4,347,368.11 | $ 11,463.73 |
| | | | | | | |
| | **TOTAL** | **$30,147,502.88** | **$79,497.01** | **$ 30,226,999.89** | **$ 30,147,502.88** | **$ 79,497.01** |

**(1) [Recorded / (1-error rate)] - Recorded**
**(2) Recorded + Error Rate**

SENSITIVE – PROPRIETARY INFORMATION

Finding Sheet 2
361-05-UF1-UF-20263
Attachment B

# CONTINENTAL AIRLINES, INC.
## CUSTOMS PASSENGER PROCESSING FEE – OVER REMITTANCE CALCULATIONS

| | |
|---|---|
| Sampled qualifying tickets: | 1,140 |
| CBP PPF Errors: | -4.78 |
| Error rate: | -0.42% |

| Year | Periods | Net Collections Recorded in the G/L | +Error Rate (1) | Total PPF Due (2) | PPF Remitted | PPF Outstanding |
|---|---|---|---|---|---|---|
| | | | | | | |
| **2004** | Jan-Mar | $ 3,737,766.74 | $ (15,595.90) | $ 3,722,170.84 | $ 3,737,766.74 | $ (15,595.90) |
| | Apr-Jun | $ 4,565,090.46 | $ (19,047.92) | $ 4,546,042.54 | $ 4,565,090.46 | $ (19,047.92) |
| | Jul-Sep | $ 4,066,710.12 | $ (16,968.42) | $ 4,049,741.70 | $ 4,066,710.12 | $ (16,968.42) |
| | Oct-Dec | $ 3,615,896.81 | $ (15,087.39) | $ 3,600,809.42 | $ 3,615,896.81 | $ (15,087.39) |
| | | | | | | |
| **2005** | Jan-Mar | $ 4,490,642.99 | $ (18,737.28) | $ 4,471,905.71 | $ 4,490,642.99 | $ (18,737.28) |
| | Apr-Jun | $ 5,324,027.65 | $ (22,214.60) | $ 5,301,813.05 | $ 5,324,027.65 | $ (22,214.60) |
| | Jul-Sep | $ 4,347,368.11 | $ (18,139.47) | $ 4,329,228.64 | $ 4,347,368.11 | $ (18,139.47) |
| | | | | | | |
| | TOTAL | **$ 30,147,502.88** | **$ (125,790.97)** | **$ 30,021,711.91** | **$ 30,147,502.88** | **$ (125,790.97)** |

**(1) [Recorded / (1-error rate)] - Recorded**
**(2) Recorded + Error Rate**

# CONTINENTAL AIRLINES, INC.
# ANIMAL AND PLANT HEALTH INSPECTION SERVICE
# PASSENGER FEE

## SUB-OBJECTIVE

To determine the company's compliance with regulations pertaining to the collection and remittance of the Animal and Plant Health Inspection Service (APHIS) Passenger Fee, and quantify any monetary impact.

## CONCLUSION

Continental Airlines, Inc. (Continental) was not compliant with regulations pertaining to the collection and remittance of the APHIS Passenger Fee. The monetary impact (i.e. liability) of the errors where Continental did not prove collection and remittance is $30,428.57. The monetary impact (i.e. liability) of the errors where Continental collected but did not remit the APHIS Passenger Fee is $91,817.00.

## CRITERIA

Title 7 Code of Federal Regulations (CFR) 354.3 (f)(1) states that the fee for agricultural quarantine inspection (AQI) user fee is $4.95.

Title 7 CRF 354.3 (f)(4) states that any person who issues tickets or travel documents is responsible for collecting the AQI user fee from all passengers transported into the customs territory of the United States to whom the AQI user fee applies.

## CONDITION

Our review of 1,260 sample tickets resulted in exceptions on 4 tickets. For one of the tickets Continental did not prove collection and remittance of the appropriate APHIS Passenger Fees. Accordingly, the error rate was 0.08 percent. For the other three tickets the fees were collected and incorrectly remitted as other user fees. This translated to an error rate of 0.24 percent.

## CAUSE

Continental stated that the first exception was due to agent error. Additionally, they stated that for two of the remaining exceptions, the agent collected the APHIS Passenger Fee as CBP PPF. For the final exception, the agent collected the IUF and remitted it to the United States Department of Transportation (US).

The audit team did not conduct a review of user fee related internal controls and therefore could not verify the causes provided by the company.

## EFFECT

We identified the following additional liability as a result of the errors:

| User Fee | Collected / Remitted | Liability | Attachment |
|---|---|---|---|
| APHIS Passenger Fee | No proof of collection and remittance | $30,428.57 | See Attachment A to Finding Sheet 3 |
| | Collected but not remitted | $91,817.00 | See Attachment B to Finding Sheet 3 |
| | **Total Liability:** | $122,245.57 | |

## RECOMMENDATIONS

We recommend that Continental remit the additional liability due of $122,245.57.

## COMMENTS OF COMPANY OFFICIALS

Refer to Appendix I, for written comments of Company Officials.

## AUDITORS' REJOINDER

The company comments state "Continental Airlines, Inc. ("Continental") does not believe United States Customs and Border Protection ("CBP") has the authority to assess liability against Continental for Immigration, Customs, or APHIS user fees that *are not collected* by Continental from its passengers." As noted in the report, in calculating audit liabilities, the audit team did not verify whether Continental did or did not actually collect the user fees from its passengers; rather, the audit team relied solely on the evidence of fee collection and remittance provided by Continental.

Finding Sheet 3
361-05-UF1-UF-20263
Attachment A

**CONTINENTAL AIRLINES, INC.**
**ANIMAL AND PLANT HEALTH INSPECTION SERVICE (APHIS)**
**PASSENGER FEE**
**NO PROOF OF COLLECTION AND REMITTANCE**

| | |
|---|---|
| Sampled qualifying tickets: | 1,260 |
| APHIS Errors: | 1 |
| Error rate: | 0.08% |

| Year | Periods | Net Collections Recorded in the G/L | +Error Rate (1) | Total APHIS Due (2) | APHIS Remitted | APHIS Outstanding |
|---|---|---|---|---|---|---|
| | | | | | | |
| 2004 | Jan-Mar | $ 3,921,352.44 | $ 3,100.32 | $ 3,924,452.76 | $ 3,921,352.44 | $ 3,100.32 |
| | Apr-Jun | $ 4,435,800.97 | $ 3,507.05 | $ 4,439,308.02 | $ 4,435,800.97 | $ 3,507.05 |
| | Jul-Sep | $ 4,123,322.71 | $ 3,260.00 | $ 4,126,582.71 | $ 4,123,322.71 | $ 3,260.00 |
| | Oct-Dec | $ 3,682,779.82 | $ 2,911.70 | $ 3,685,691.52 | $ 3,682,779.82 | $ 2,911.70 |
| | | | | | | |
| 2005 | Jan-Mar | $ 7,291,589.18 | $ 5,764.91 | $ 7,297,354.09 | $ 7,291,589.18 | $ 5,764.91 |
| | Apr-Jun | $ 8,214,859.99 | $ 6,494.87 | $ 8,221,354.86 | $ 8,214,859.99 | $ 6,494.87 |
| | Jul-Sep | $ 6,817,048.23 | $ 5,389.73 | $ 6,822,437.96 | $ 6,817,048.23 | $ 5,389.73 |
| | | | | | | |
| | TOTAL | **$38,486,753.34** | **$ 30,428.57** | **$ 38,517,181.91** | **$ 38,486,753.34** | **$ 30,428.57** |

**(1) [Recorded / (1-error rate)] - Recorded**
**(2) Recorded + Error Rate**

Finding Sheet 3
361-05-UF1-UF-20263
Attachment B

CONTINENTAL AIRLINES, INC.
ANIMAL AND PLANT HEALTH INSPECTION SERVICE (APHIS)
PASSENGER FEE
COLLECTED BUT NOT REMITTED

| | |
|---|---|
| Sampled qualifying tickets: | 1,260 |
| APHIS Errors: | 3 |
| Error rate: | 0.24% |

| Year | Periods | Net Collections Recorded in the G/L | +Error Rate (1) | Total APHIS Due (2) | APHIS Remitted | APHIS Outstanding |
|---|---|---|---|---|---|---|
| | | | | | | |
| 2004 | Jan-Mar | $ 3,921,352.44 | $ 9,355.08 | $ 3,930,707.52 | $ 3,921,352.44 | $ 9,355.08 |
| | Apr-Jun | $ 4,435,800.97 | $ 10,582.39 | $ 4,446,383.36 | $ 4,435,800.97 | $ 10,582.39 |
| | Jul-Sep | $ 4,123,322.71 | $ 9,836.92 | $ 4,133,159.63 | $ 4,123,322.71 | $ 9,836.92 |
| | Oct-Dec | $ 3,682,779.82 | $ 8,785.93 | $ 3,691,565.75 | $ 3,682,779.82 | $ 8,785.93 |
| | | | | | | |
| 2005 | Jan-Mar | $ 7,291,589.18 | $ 17,395.38 | $ 7,308,984.56 | $ 7,291,589.18 | $ 17,395.38 |
| | Apr-Jun | $ 8,214,859.99 | $ 19,598.01 | $ 8,234,458.00 | $ 8,214,859.99 | $ 19,598.01 |
| | Jul-Sep | $ 6,817,048.23 | $ 16,263.28 | $ 6,833,311.51 | $ 6,817,048.23 | $ 16,263.28 |
| | | | | | | |
| | TOTAL | $38,486,753.34 | $ 91,817.00 | $ 38,578,570.34 | $ 38,486,753.34 | $ 91,817.00 |

**(1) [Recorded / (1-error rate)] - Recorded**
**(2) Recorded + Error Rate**

SENSITIVE – PROPRIETARY INFORMATION

**CONTINENTAL AIRLINES, INC.
ANIMAL AND PLANT HEALTH INSPECTION SERVICE
PASSENGER FEE – CHARTER FLIGHTS**

## SUB-OBJECTIVE

To determine the company's compliance with regulations pertaining to the collection and remittance of the Animal and Plant Health Inspection Service (APHIS) Passenger Fee, and quantify any monetary impact.

## CONCLUSION

Continental Airlines, Inc. (Continental) was not compliant with regulations pertaining to the collection and remittance of the APHIS Passenger Fee for its charter flights. The monetary impact (i.e. liability) of the errors is $5,755.35.

## CRITERIA

Title 7 Code of Federal Regulations (CFR) 354.3 (f)(1) states that the fee for agricultural quarantine inspection (AQI) user fee was $4.95, for the time period of January 1, 2005, through September 30, 2005. Prior to January 1, 2005, the AQI user fee was $3.10.

Title 7 CRF 354.3 (f)(4) states that any person who issues tickets or travel documents is responsible for collecting the AQI user fee from all passengers transported into the customs territory of the United States to whom the AQI user fee applies.

## CONDITION

Our review of 4,420 passengers on sales reports revealed that Continental had incorrectly collected and remitted the APHIS Passenger Fee. For 3,111 of these passengers, Continental failed to collect the correct amount for the APHIS Passenger Fee. Continental collected $3.10 for each of these passengers instead of $4.95.

## CAUSE

The incorrect APHIS Passenger Fee amount was collected because one of Continental's charter companies did not update their system to appropriately reflect the increase in the APHIS Passenger Fee to $4.95 per passenger.

## EFFECT

We identified the following additional liability as a result of the errors:

| User Fee | Collected / Remitted | Liability | Attachment |
|---|---|---|---|
| APHIS Passenger Fee | Incorrect amount collected and remitted | $5,755.35 | See Attachment to Finding Sheet 4 |

## RECOMMENDATIONS

We recommend that Continental remit the additional liability due of $5,755.35.

## COMMENTS OF COMPANY OFFICIALS

Refer to Appendix I, for written comments of Company Officials.

Finding Sheet 4
361-05-UF1-UF-20263
Attachment

**CONTINENTAL AIRLINES, INC.**
**ANIMAL AND PLANT HEALTH INSPECTION SERVICE (APHIS)**
**AIRCRAFT CLEARANCE FEE – CHARTER FLIGHTS**

| Amount Under Collected | Number of Passengers | Total Liability |
|---|---|---|
| $ 1.85 | 3,111 | $5,755.35 |

## COMMENTS OF COMPANY OFFICIALS

Continental Airlines

Finance Department HQSTX
Post Office Box 4607
Houston TX 77210-4607
713 324 5000
continental.com

**BY FAX TRANSMITTAL and FEDERAL EXPRESS**

August 18, 2006

U.S. Department of Homeland Security
Bureau of Customs and Border Protection
ATTN: Mr. Eric Robertson / Regulatory Audit Division
330 2nd Avenue South, Suite 320
Minneapolis, MN 55401

Reference: *Continental Airlines, Inc.'s Comments*
User Fee Audit Report / 361-05-UF1-UF-20263

Dear Mr. Robertson:

With regard to your draft audit report dated August 18, 2006, please note the following comment for inclusion in your final report:

> Continental Airlines, Inc. ("Continental") does not believe United States Customs and Border Protection ("CBP") has the authority to assess liability against Continental for Immigration, Customs, or APHIS user fees that are not collected by Continental from its passengers. *See, American Airlines, Inc. v. United States*, 68 Fed. Cl. 723 (2005). Liability for uncollected user fees lies with the passengers, not Continental. For these reasons, Continental believes its liability under each of the audit findings should be reduced by the following amounts:
>
> Finding 1: $62,503.29 Finding 3: $30,428.57
> Finding 2: $79,497.01 Finding 4: $5,755.35
>
> As you may know, Continental is currently litigating the issue of whether it can be held liable for uncollected Immigration and APHIS user fees in the U.S. Court of Federal Claims. Although Continental will pay the full amount set forth in this audit, it believes the above amounts are being illegally exacted from it and it reserves all of its rights to sue to recover such amounts (as it is currently doing for previously paid amounts). Neither Continental's payment of the sums described in the audit nor any other action should be construed as a waiver of any of Continental's rights to seek redress for illegal exactions by CBP in connection with these user fees

As we discussed, please provide the appropriate contact information in the CBP Revenue Division so that Continental is able to pursue the CBP PPF overpayments noted in your report. In addition, Continental does not require an audit exit conference.

Should you have any questions in this matter, please contact me at 713.324.2130. I look forward to your final report.

Sincerely,

David V. Bowman
Director, Operating Taxes

Mr. David Bowman
Manager, Domestic & International Taxes
Continental Airlines
PO Box 4607 HQSTX
Houston, TX 77210-4607

Dear Mr. Bowman:

Enclosed is the report of the U.S. Department of Agriculture, Animal and Plant Health Inspection Service (APHIS), user fee audit of Continental Airlines, which was conducted by Ms. Martin. As you know, this report includes operational findings and recommendations. I understand that Ms. Martin discussed details of the findings and financial liability with you.

The financial liability outlined in the enclosed report does not include interest or penalties. Your company will not be charged interest for any amounts received by March 31, 2002. For any amounts received after that date, you will be subsequently billed interest effective from the end of the quarter in which the fee was supposed to have been collected.

The liability amount on the last page of this report should be mailed to the same address to which the quarterly payments are mailed. **Please send a copy of the last page of this report with your check.**

The current lockbox address is as follows:

USDA, APHIS, AQI
P.O. Box 952181
St. Louis, MO 63195-2181

Physical address for overnight deliveries:
Firstar Bank
Attn: Government Lockbox - P.O. Box 952181
1005 Convention Plaza
St. Louis, MO 63101

If you have any questions or comments, please contact Ms. Martin at (301) 734-5726, fax (301) 734-7439 or e-mail at *Deborah.A.Martin@aphis.usda.gov*. The cooperation and assistance of your staff during this audit is greatly appreciated.

Sincerely,

Pierre M. Arsenec
Chief
User Fee Auditing Branch

Enclosure

cc:
B. Acord, OA, Washington, DC (w/ copy of enclosure)
W. J. Hudnall, MRPBS, Washington, DC (w/ copy of enclosure)
D. Ford, BASE, Riverdale, MD (w/ copy of enclosure)
D. Crews, MRPBS-MNPLS, Minneapolis, MN (w/ copy of enclosure)
E. Barnett, US Customs, Indianapolis, IN (w/ copy of enclosure)

APHIS:RMSES:UFAB:DMartin:typist:08/15/01

Clearance:
MCampbell______________
AJohnson_______________
DMartin________________
JAllen_________________
PArsenec_______________

I:\RMSES\AUDITS\DMARTIN\CONTINENTAL\CONTINENTAL REPORT

TABLE OF CONTENTS

I. Background.......... 1

II. Audit Objectives.......... 2

III. Audit Scope and Methods .......... 2

IV. Findings and Recommendations .......... 3

V. Financial Liability - APHIS.......... 5

I. Background

In 1990, Congress established new user fee legislation. The Food, Agriculture, Conservation and Trade Act of 1990, as amended by the Omnibus Budget Reconciliation Act of 1990, authorized the U.S. Department of Agriculture (USDA) through the Animal and Plant Health Inspection Service (APHIS) to collect various user fees. These fees include agricultural quarantine and inspection services provided in connection with the arrival of commercial aircraft and international passenger arrivals at ports in the Customs territory of the U.S. The Farm Bill defines the U.S. Customs territory as the 50 States, the District of Columbia, and Puerto Rico.

APHIS published a final rule in the Federal Register on April 12, 1991, requiring airlines to collect a user fee from international air passengers arriving in the U.S. Customs territory from other countries, except Canada. These fees became effective on May 13, 1991. On January 9, 1992, APHIS published a final rule requiring an inspection fee for commercial aircraft arriving in the U.S. from other countries except Canada, effective February 9, 1992. Aircraft and passengers on flights originating in Canada are excluded from APHIS fees because of a negligible agricultural health threat to U.S. agriculture.

User fees must be remitted for receipt no later than 31 days after the close of each calendar quarter in which they are collected.

Continental Airlines headquarters is in Houston, Texas. Continental had qualifying passenger and cargo flights operating during the audit period of July 1999 through December 2001. The scheduled flight ports of entry into the US are Houston, Cleveland, San Antonio, Miami, Newark, and Honolulu.

Continental is publicly owned and has approximately 50,500 employees worldwide. Continental has 25 1900Ds, 30 ATR 42-320s, 8 ATR-42-500s, 3 ATR 72s, 17 B-727s, 195 B-737s, 36 B-757s, 13 B-777s, 31 DC-10s, 32 EMB-120s, and 69 MD-80s in service.

For the above mentioned audit period, Continental Airlines' user fee remittances for APHIS passengers and aircraft were $ 30,704,044.94 and $ 5,014,400.25, respectively.

II. Audit Objectives

1. Evaluate internal control adequacy and reliability of user fee collections, recording, reporting, and remittance systems.

2. Determine compliance with regulations (mentioned above).

3. Develop a rapport with the payer. Provide information and advice to the payer to facilitate continued compliance.

III. Audit Scope and Methods

The audit coverage period for each user fee is July 1999 through December 2001. The audit was conducted in accordance with the Government Auditing Standards issued by the Comptroller General of the United States and included such tests that were deemed necessary. We tested internal controls associated with the collection, recording, reporting, and remittance systems.

To test collection compliance, we audited tickets lifted from passengers for flights arriving into the following airports, on the following dates. We understand that you have agreed that the sample below is representative of the markets in which you sold applicable tickets during the audit period.

| DATES | AIRPORTS | FLIGHT # |
|---|---|---|
| Jul 5, 1999 | Houston | 751 |
| Nov 18, 1999 | Newark | 67 |
| Feb 23, 2000 | Cleveland | 67 |
| Apr 6, 2000 | Houston | 750 |
| Aug 19, 2000 | Newark | 32 |
| Oct 1, 2000 | San Antonio | 466 |
| Mar 26, 2001 | Houston | 94 |
| May 24, 2001 | Newark | 30 |
| Sep 6, 2001 | Honolulu | 2 |
| Dec 15, 2001 | Houston | 1114 |

To audit recording compliance, we traced an auditor coupon from each sales channel to the associated sales report. The sales reports selected were from:

a) The auditor coupons and sales reports for the airport ticket office (ATO) at Cleveland for May 17, 2000 and the city ticket office in Houston for August 1, 2001.

b) the following Airline Reporting Corporation (ARC) sales and period:

| Year | Bank | Month | Week | Cycle |
|---|---|---|---|---|
| 2001 | 5 | 8 | 2 | 4 |

c) the Billing and Settlement Plan (BSP) in Japan for May 2001.

To test reporting compliance, we traced user fee dollars of the above mentioned reports to the general ledger.

Remittance compliance was tested by comparing remittance data to general ledger entries in the respective liability accounts.

Instances of noncompliance were used to determine an additional liability, using user fee dollars collected as the calculation basis.

The aircraft clearance fee was audited by comparing an auditee prepared schedule of landing counts by month by airport, to statistics provided by the U.S. Department of Transportation (DOT), Customs data and APHIS' remittance data.

The audit fieldwork was performed January 28 – February 1, 2002, by Ms. Martin.

APHIS retains the right to review and assess liability for unpaid user fees for this audit period if significant data, which was unavailable during the audit, is discovered subsequent to the audit.

IV. Findings and Recommendations

1. Finding: Of the 862 qualifying tickets audited for the air passenger user fee collections compliance, the number of tickets with no evidence of fee collection or remittance was 24.21. The associated error rate is 2.81%. The resulting amount due to APHIS is $ 863,979.89.

Recommendation: The additional liability amounts mentioned above should be remitted. Copies of the noncompliance tickets were given to the Director, Excise, Property, Use and Payroll Taxes so that measures can be implemented to improve collections compliance.

2. Finding: APHIS passenger user fees were not allocated on prepaid trip passes for employee pleasure travel. Continental prepared a worksheet which detailed the number of trip and buddy passes used by employees during the audit period. Employees used 401,331 passes for entry into the United States, for which Continental has already remitted $795,060.25. An additional $343,082.45 is due to APHIS for the prepaid trip passes.

Recommendation: The additional liability amount mentioned above should be remitted. The Director, Excise, Property, Use and Payroll Taxes has stated that Continental will begin remitting for all trip and buddy passes effective January 1, 2002, on a flown coupon basis.

2. Finding: The aircraft clearance user fee was not remitted on 2,282 flights. An additional $145,471.25 is due to APHIS for these flights.

Continental Micronesia did not remit the aircraft clearance fee for flights into Honolulu. Additionally, several city pairs were omitted from the Continental report used to calculate the aircraft clearance fee.

Recommendation: The additional liability amounts mentioned above should be remitted. Continental has stated the report used to calculate the remittance will be updated to include

all applicable city pairs, and that Continental Micronesia will begin remitting the aircraft clearance fee.

V. Financial Liability - APHIS

Continental Airlines' Financial Liability Due to APHIS Resulting from a User Fee Audit

| QUARTER ENDED | PASSENGER LIABILITY | AIRCRAFT LIABILITY | TOTAL LIABILITY DUE TO APHIS |
|---|---|---|---|
| Sep 1999 | $ 141,554.78 | $ 11,531.75 | $ 153,086.53 |
| Dec 1999 | 139,671.43 | 13,074.25 | 152,745.68 |
| Mar 2000 | 169,274.88 | 13,376.00 | 182,650.88 |
| Jun 2000 | 150,259.67 | 13,952.00 | 164,211.67 |
| Sep 2000 | 73,672.32 | 14,208.00 | 87,880.32 |
| Dec 2000 | 133,468.49 | 14,245.00 | 147,713.49 |
| Mar 2001 | 191,971.84 | 18,324.25 | 210,296.09 |
| Jun 2001 | 75,540.18 | 14,115.50 | 89,655.68 |
| Sep 2001 | 46,388.43 | 14,374.50 | 60,762.93 |
| Dec 2001 | 85,260.32 | 18,270.00 | 103,530.32 |
| TOTALS | $ 1,207,062.34 | $ 145,471.25 | $ 1,352,533.59 |

DATE DUE: May 15, 2002