No. 06-432C
Senior Judge Margolis

---

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

---

CONTINENTAL AIRLINES, INC.,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

---

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING LIABILITY, AND REPLY IN SUPPORT OF MOTION TO DISMISS**

---

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

KYLE CHADWICK
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
1100 L Street, N.W., 8th Floor
Washington, D.C. 20530
Telephone: (202) 616-0476
Facsimile: (202) 305-7644

Attorneys for Defendant

OF COUNSEL:

ANDREW S. KOSEGI
Attorney
U.S. Customs and Border Protection
Indianapolis, IN

CYNTHIA A. KOCH
Senior Counsel
United States Department of Agriculture
Washington, D.C.

March 21, 2007

TABLE OF CONTENTS

SUMMARY OF RESPONSES TO PLAINTIFF'S FACTUAL ALLEGATIONS . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

CBP AND APHIS LAWFULLY COLLECTED THE RESPECTIVE USER FEES FROM CONTINENTAL . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

I. CBP Lawfully Collected The Immigration Inspection User Fee . . . . . . . . . . . . . . 2

A. CBP's Statutory And Regulatory Interpretation Is Authoritative And Correct . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

B. Continental's Statutory And Regulatory Interpretation Is Unsound . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

II. APHIS Lawfully Collected The AQI User Fee From Continental . . . . . . . . . . . . . 9

A. APHIS's Statutory And Regulatory Interpretation Is Authoritative And Correct . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

B. Continental's Statutory And Regulatory Interpretation Is Unsound . . . . 11

III. Granting Continental's Motion Would Not Finally Resolve Liability Or Damages . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

# TABLE OF AUTHORITIES

## CASES

Air Tour Acquisition Corp. v. United States,
781 F. Supp. 669 (D. Haw. 1991) . . . . . . . . . . 4, 5, 9, 11

American Airlines, Inc. v. United States,
68 Fed. Cl. 723 (2005) . . . . . . . . . . 4, 6, 11, 17

American Airlines, Inc. v. United States,
__ Fed. Cl. __, 2006 WL 3490924 (Nov. 30, 2006) . . . . . . . . . . 17

Auer v. Robbins,
519 U.S. 452 (1997) . . . . . . . . . . 4, 7, 11

Bowles v. Seminole Rock & Sand Co.,
325 U.S. 410 (1945) . . . . . . . . . . 4

Cathedral Candle Co. v. ITC,
400 F.3d 1352 (Fed. Cir. 2005) . . . . . . . . . . 4, 11

Cook v. United States,
46 Fed. Cl. 110 (2000) . . . . . . . . . . 16, 17

Cornetta v. United States ,
851 F.2d 1372 (Fed. Cir. 1988) . . . . . . . . . . 15

FAG Italia, S.p.A. v. United States,
291 F.3d 806 (Fed. Cir. 2002) . . . . . . . . . . 7, 11

Haggar Co. v. Helvering,
308 U.S. 389 (1940) . . . . . . . . . . 6

Jones v. DOT,
295 F.3d 1298 (Fed.Cir. 2001) . . . . . . . . . . 6

Lamie v. United States Trustee,
540 U.S. 520 (2004) . . . . . . . . . . 6

Massachusetts v. United States,
435 U.S. 444 (1978) . . . . . . . . . . 8

Merck & Co. v. United States,
24 Cl. Ct. 73 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Mil-Spec Contrs., Inc. v. United States,
835 F.2d 865 (Fed. Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Seaboard Lumber Co. v. United States,
903 F.2d 1560 (Fed. Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Thomson Multimedia Corp. v. United States,
340 F.3d 1355 (Fed. Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Torrington Co. v. United States,
68 F.3d 1347 (Fed. Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Tucker v. United States,
8 Cl. Ct. 180, modified on other grounds, 8 Cl. Ct. 575 (1985) . . . . . . . . . . . . . . . . . . . . 17

United States Telecom. Ass'n v. FCC,
359 F.3d 554 (D.C. Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8, 11

United States v. Mead Corp.,
533 U.S. 218 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Wilber Nat. Bank v. United States,
294 U.S. 120 (1935) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

STATUTES AND REGULATIONS

8 U.S.C. § 1356 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

8 U.S.C. § 1356(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

8 U.S.C. § 1356(f)(1), (3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 5, 6, 8

21 U.S.C. § 136a . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12, 13

21 U.S.C. § 136a(a)(1)(A),2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11, 12, 13

21 U.S.C. § 136a(f)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

47 U.S.C. § 251(d)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

7 C.F.R. § 354.3(f)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 12, 13, 15

7 C.F.R. § 354.3(f)(1)n.1 . . . . . . . . . . 10

7 C.F.R. § 354.3(f)(4) . . . . . . . . . . 15

7 C.F.R. § 354.3(f)(4)(i) . . . . . . . . . . 10

7 C.F.R. § 354.3(f)(4)(i)(B) . . . . . . . . . . 10

7 C.F.R. § 354.3(f)(4)(C) . . . . . . . . . . 113

7 C.F.R. § 354.3(f)(5) . . . . . . . . . . 10

7 C.F.R. § 354.3(f)(5)(iii) . . . . . . . . . . 12

8 C.F.R § 286.4 . . . . . . . . . . 3

8 C.F.R § 286.4(a), (b) . . . . . . . . . . 6

8 C.F.R. § 286.4(c) . . . . . . . . . . 3, 6

8 C.F.R. § 286.5(a) . . . . . . . . . . 6, 7

8 C.F.R § 286.5(f) . . . . . . . . . . 3

8 C.F.R § 286.6 . . . . . . . . . . 3

MISCELLANEOUS

H.R.. Conf. Rep. No.104-494, reprinted in 1996 U.S.C.C.A.N. 783 . . . . . . . . . . 10

56 Fed. Reg. 8148 (USDA 1991) . . . . . . . . . . 11, 14, 15

57 Fed. Reg. 755 (USDA 1992) . . . . . . . . . . 13

62 Fed. Reg. 39,747, 39,749 (USDA 1997) . . . . . . . . . . 14

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| CONTINENTAL AIRLINES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 06-432C |
| v. | ) | (Senior Judge Margolis) |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING LIABILITY, AND REPLY IN SUPPORT OF MOTION TO DISMISS**

Pursuant to Rules 7.2, 12(b)(1) and (b)(6), and 56(f) and (h)(2) of the Court's Rules ("RCFC"), defendant, the United States, respectfully opposes the January 16, 2007 motion for partial summary judgment as to liability filed by plaintiff, Continental Airlines, Inc., and replies to Continental's opposition to our motion to dismiss the amended complaint. In opposing plaintiff's motion, we rely upon (i) the accompanying responses to plaintiff's proposed findings of fact; (ii) both parties' appendices; (iii) the amended complaint; and (iv) this brief.

SUMMARY OF RESPONSES TO PLAINTIFF'S FACTUAL ALLEGATIONS

The bulk of Continental's factual allegations represent irrelevant attempts at "coloration." The parties' motions do not call upon the Court to determine whether "Continental had effective policies, procedures, and systems" for collecting the immigration inspection user fee and agricultural quarantine inspection ("AQI") user fee from covered international passengers. Pl. Br. 7. Nor is it relevant whether Continental can "force . . . a passenger to pay the fees"; or whether, as Continental asserts, commercial airlines regularly encounter "some foreigners [who] believe they are immune from any U.S. tax or fee." Id. at 8 & n.4 (emphasis added).

These allegations – which are vague and conclusory, in any event – are immaterial to the allegations of the amended complaint that U.S. Customs and Border Protection ("CBP") and the United States Department of Agriculture, Animal and Plant Health Inspection Service ("APHIS") have illegally exacted money from Continental, based upon alleged misinterpretations of the user fee statutes and regulations. The threshold questions of liability can, and should, be resolved upon the basis of the limited facts that we assumed to be true for purposes of our motion: To resolve a series of Government audits, Continental has paid amounts that were determined to be owed to the Government for immigration inspection and AQI user fees that Continental should have collected during the audit periods, but did not collect.[1]

As we discuss at the end of this brief, should it become necessary to resolve any issues other than the Government's liability vel non for illegal exaction, discovery and further proceedings before the Court will be required.

## ARGUMENT

## CBP AND APHIS LAWFULLY COLLECTED THE RESPECTIVE USER FEES FROM CONTINENTAL

### I. CBP Lawfully Collected The Immigration Inspection User Fee

The threshold legal issue, with respect to each type of user fee, is whether Continental was liable for the amounts it paid to resolve the Government audits alleged in the amended complaint: To the extent Continental owed the amounts it paid, it has no illegal exaction claim. Because the legal analyses differ, we address each user fee in turn.

---

[1] To the extent the Court concludes that any of plaintiff's other allegations are relevant to the threshold questions of liability for illegal exaction, our accompanying motion pursuant to RCFC 56(f) requests a continuance, to allow us to take discovery.

A. CBP's Statutory And Regulatory Interpretation Is Authoritative And Correct

We demonstrated that commercial airlines are responsible for remitting all of the immigration inspection user fees that they are required to collect, and are not excused from collecting or remitting fees merely because they may find the process difficult, expensive, or inconvenient. Def. Moving Br. 9-13. Congress did not give the airlines discretion or flexibility in this area. Instead, the immigration user fee statute mandates that airlines "shall . . . collect" and "shall remit" the immigration user fee. 8 U.S.C. § 1356(f)(1), (3). We agree with Continental that passengers are correspondingly responsible for paying the user fee. See Pl. Br. 14. That does not diminish Continental's obligations to collect and remit the fee, however.

The regulations, duly issued by the former Immigration and Naturalization Service ("INS"), reaffirm the collection and remittance "responsibilit[ies]" of the airlines. 8 C.F.R. §§ 286.4, 286.5(f), 286.6. The Court should defer to this valid administrative construction of the act. United States v. Mead Corp., 533 U.S. 218 (2001). Under the regulations, an individual exception may be made if a passenger refuses to pay the immigration user fee upon departing this country and the airline "immediately" notifies the Government of the passenger's "full name, complete address, nationality, passport number, and alien file number, if any[.]" 8 C.F.R. § 286.4(c). The regulations also confirm the agency's "right" to audit "any collector or remitter" of user fees, "to assure the accuracy of the remittances of fees collected and remitted and compliance with the applicable statutes and regulations." Id. § 286.5(f).

In short, this legal framework mandates full collection of the immigration user fee by the airlines; and each airline is responsible for remitting all user fees required to be collected, unless it specifically notifies the agency, in compliance with 8 C.F.R. § 286.4(c), that an individual passenger has not paid. (Continental does not allege it has ever provided such notice.) The

express purpose of the periodic Government audits is to ensure that the Government receives, from every airline, the user fee from every covered passenger – a purpose that no airline ever questioned or challenged, until American Airlines began to object in 2004.

CBP's interpretation of the requirements of its user fee regulations, in particular, is "entitled to controlling weight unless plainly erroneous or inconsistent with the regulation," Bowles v. Seminole Rock & Sand Co., 325 U.S. 410, 414 (1945), "even when that interpretation is offered in the very litigation in which the argument for deference is made." Cathedral Candle Co. v. ITC, 400 F.3d 1352, 1364 (Fed. Cir. 2005) (citing, inter alia, Auer v. Robbins, 519 U.S. 452, 461-62 (1997)). In fact, CBP's regulatory interpretation is not new, nor is it "litigation-driven." American Airlines, Inc. v. United States, 68 Fed. Cl. 723, 731 (2005). The agency's view was accepted without objection by Continental and the rest of the industry for more than a decade. 1st Am. Compl. ¶¶ 24, 32-61. That would not have happened, had the agency's regulatory interpretation been plainly erroneous or unreasonable. To the contrary, CBP's reading is entirely sensible and should, therefore, control. Auer, 519 U.S. at 461-62.

B. Continental's Statutory And Regulatory Interpretation Is Unsound

Continental's brief raises few, if any, arguments we did not rebut in our motion. Relying principally, as expected, upon American Airlines and Air Tour Acquisition Corp. v. United States, 781 F. Supp. 669 (D. Haw. 1991), a tax decision, Continental asserts that CBP's (and APHIS's) regulations contain a loophole. According to Continental, the regulations render "airlines . . . responsible only for remitting user fees actually collected." Pl. Br. 14. "In other words, if [Continental] did not collect the fee and therefore did not mark the ticket to reflect collection, [it] is not required to remit any fee." Id. at 16. Continental's selective quotations

from the immigration user fee statute and regulations, however, conspicuously elide and omit numerous "shalls" and other mandatory language used by Congress and the agency. Id. at 14-15.

The immigration user fee statute provides in part:

> (f) Collection
>
> (1) Each person that issues a document or ticket to an individual for transportation by a commercial vessel or commercial aircraft into the United States shall -
>
> (A) collect from that individual the fee charged under subsection (d) of this section at the time the document or ticket is issued; and
>
> (B) identify on that document or ticket the fee charged under subsection (d) of this section as a Federal inspection fee.
>
> (2) If -
>
> (A) a document or ticket for transportation of a passenger into the United States is issued in a foreign country; and
>
> (B) the fee charged under subsection (d) of this section is not collected at the time such document or ticket is issued; the person providing transportation to such passenger shall collect such fee at the time such passenger departs from the United States and shall provide such passenger a receipt for the payment of such fee.

8 U.S.C. § 1356(f) (emphasis added).

Continental ignores all of these statutory "shalls" and begins its argument with subsection 1356(f)(3), which states, "The person who collects fees under paragraph (1) or (2) shall remit those fees . . . ." Pl. Br. 15. Continental argues that "those fees" in subsection (f)(3) refers only to fees actually collected. Id. The complete statutory context cannot be ignored, however. Lamie v. United States Trustee, 540 U.S. 520, 530 (2004). Properly read as a unified whole,

8 U.S.C. § 1356(f) confirms that full collection and full remittance are equally mandatory – airlines both "shall collect" and "shall remit" the fee. The reference in subsection (f)(3) to "those fees" includes, in context, all fees that a party collecting the fee must collect, pursuant to subsections (f)(1) and (f)(2). Thus, contrary to American Airlines, the act does indeed "impose[] liability on commercial airlines to pay user fees that are not collected." 68 Fed. Cl. at 731.

Continental similarly fails to come to grips with the equally categorical language of CBP's immigration user fee regulations. The latter state, among other things, that "[i]t is the responsibility of the air or sea carriers, travel agents, tour wholesalers, or other parties, which issue tickets or documents for transportation . . . to collect the fee . . . from all [covered] passengers," and to mark passengers' tickets or other travel documents accordingly, 8 C.F.R. § 286.4(a), (b) (emphasis added), and that the collecting entity that issues the marked travel document "is responsible for remittance of the fee . . . ." Id. § 286.5(a). Continental's position that the regulations impose payment responsibilities only upon passengers, and that airlines "are merely collectors," depends upon ignoring this regulatory language. Pl. Br. 15.

"All statutes must be construed in the light of their purpose." Haggar Co. v. Helvering, 308 U.S. 389, 394 (1940), quoted in Jones v. DOT, 295 F.3d 1298, 1304 (Fed. Cir. 2001). As we demonstrated in our motion, the constructions of the immigration inspection user fee statute and regulations urged by Continental, and adopted by the American Airlines Court, would effectively drain those provisions of significance, by affording airlines discretion to decide whether to collect the immigration user fee when it is due. This Court should reject those cramped readings for that reason alone. Alternatively, assuming the statute and the implementing regulations are not wholly clear, the agency's interpretation of its own regulations,

which provide that each airline "is responsible" for remitting to the Government every user fee that should be collected, 8 C.F.R. § 286.5(a), should control. Auer, 519 U.S. at 461-62.

Continental argues that no deference to CBP's interpretation of the user fee statute and regulations is warranted because, rather than being ambiguous, the statute and regulations are merely "silen[t]" with respect to whether airlines must remit 100 percent of the fees they are required to collect. Pl. Br. 12 (citing FAG Italia, S.p.A. v. United States, 291 F.3d 806, 816 (Fed. Cir. 2002), and United States Telecom. Ass'n v. FCC, 359 F.3d 554, 566 (D.C. Cir. 2004) ("USTA")). (Continental makes the same argument with respect to APHIS's application of its AQI user fee regulations. Id. We return to that argument below.) The decisions cited by Continental fail to support its silence argument, however.

In FAG Italia, the Federal Circuit rejected a broad argument that (as the Court paraphrased it) the Department of Commerce "enjoys plenary power to engage in any activity related to its field of authority not specifically prohibited by Congress, so long as the administrative action will serve a congressional purpose." 291 F.3d at 815-16. That is not our argument here, at all. FAG Italia tends, in fact, to support our position, as the Court stated that, "if provisions of the statute were rendered meaningless if the authority Commerce seeks were denied to it, we would have a very different case." Id. at 817 (emphasis added). We have demonstrated that this is exactly such a case, because Continental's reading deprives the immigration user fee statute and regulations of their plainly intended force.

Similarly, the District of Columbia Circuit stated in USTA that "the failure of Congress to use 'Thou Shalt Not' language doesn't create a statutory ambiguity of the sort that triggers Chevron deference." 359 F.2d at 566. At issue in USTA was whether the Federal Communications Commission ("FCC") could delegate to State public utilities commissions a

type of determination that Congress had, by statute, directed the FCC to make. Id. at 565 (citing 47 U.S.C. § 251(d)(2)). This is not a "subdelegation" case like USTA, however; and our position here has nothing to do with the mere absence of a statutory prohibition.

We do not contend that the reason Continental must remit all immigration inspection user fees that it is required to collect, is that Congress failed to tell CBP not to impose that requirement. Cf. USTA, 359 F.2d at 566. Quite the opposite: Continental's duty to remit 100 percent of the user fees required to be collected is either (i) clear, as we believe, from the express terms used by Congress in 8 U.S.C. §1356, and by the agency in the implementing regulations, or (ii) a reasonable interpretation of the statute and regulations, assuming the latter are ambiguous concerning the consequences of a failure to collect. Under either view, the agency's long-accepted understanding of this remittance requirement should prevail.

Continental's heavy reliance upon the distinction in tax law between an "incurred" tax and a "collected" tax is an irrelevant tangent, for the obvious reason that user fees are fees, and not taxes. See Pl. Br. 19-25. Although this distinction can blur in some instances, a tax is a payment obligation that is assessed upon a broadly inclusive category of people or transactions, for the benefit of the general revenue; whereas a fee "operates to defray the cost of a [particular] federal program by recovering a fair approximation of each beneficiary's share of the cost . . . ." Massachusetts v. United States, 435 U.S. 444, 460-61 (1978); see Thomson Multimedia Corp. v. United States, 340 F.3d 1355, 1359-60 (Fed. Cir. 2003). The passenger inspection programs that are funded by the user fees at issue here provide logistical, and thus financial, benefits to Continental and other airlines that are at least as significant as, and are arguably more significant than, the corresponding advantages for covered passengers. See Pl. Br. 5 n.1.

There is no reason to believe, therefore, that Congress intended for the Department of Homeland Security or the Department of Agriculture – which are not, in general, tax-collecting authorities – to administer these user fee statutes as if they were provisions of the Tax Code. Continental's citations of Revenue Rulings issued by the Department of the Treasury are irrelevant for a similar reason. Pl. Br. 19-20 & nn.5, 6. Treasury does not administer these user fee statutes and, as a consequence, lacks the authority or expertise to construe them. Cf. Torrington Co. v. United States, 68 F.3d 1347, 1351 (Fed. Cir. 1995). (Treasury has never purported to do so, in any event.) Likewise, the tax precedents and provisions of the Internal Revenue Service Manual upon which the district court principally relied in Air Tour, cited in Pl. Br. 22-23, are inapplicable and unilluminating here. See Def. Br. 12 n.4.

The only administrative constructions that could be relevant to this case are those of the INS, CBP, and APHIS – each of which, as we have demonstrated, has adhered unwaveringly to interpretations of the statutes and regulations that are unfavorable to Continental. Especially because collection of the immigration inspection user fee – and, even more emphatically, the AQI user fee, discussed below – is intended to provide adequate funding for these particular types of airline passenger inspections, the Court should adopt a reasonable reading of the user fee laws that avoids gutting the Government's ability to fully obtain these fees.

## II. APHIS Lawfully Collected The AQI User Fee From Continental

### A. APHIS's Statutory And Regulatory Interpretation Is Authoritative And Correct

The result is the same with regard to the AQI user fee. The legal analysis differs somewhat, because APHIS's regulations do not echo the authorizing statute. We demonstrated that Congress unmistakably expressed its intent that APHIS recover, through user fees, the full cost of providing AQI inspections of international passengers. 21 U.S.C. § 136a(a)(1)(A)(2) ;

H.R.. Conf. Rep. No.104-494, at 474 (1996), reprinted in 1996 U.S.C.C.A.N. 783, 843; see Def. Br. 13-14. Congress also specifically and unambiguously authorized the agency to transfer responsibility for collection of user fees to "persons" including (but not limited to) airlines. 21 U.S.C. § 136a(f)(3). Thus, Congress plainly expected APHIS to require airlines to remit all of the AQI user fees they are responsible for collecting, as opposed to just some user fees, as Continental, in essence, contends.

We further established that the AQI user fee regulations, which were issued pursuant to that broad statutory authorization, are just as mandatory for Continental as are the immigration user fee statute and regulations, and, moreover, that adopting Continental's arguments would raise grave concerns with respect to the funding of AQI. Id. at 14-17. The regulations provide that every airline (i) "is responsible for" and "must collect" the AQI user fee; (ii) "must . . . mark[]" the appropriate tickets or other documents; and (iii) "must remit" the fees to APHIS. 7 C.F.R. § 354.3(f)(1) n.1, (f)(4)(i), (f)(4)(i)(B), (f)(5). Nothing in the regulations excuses non-collection or affords discretion to collecting entities such as Continental.

APHIS, like CBP, has consistently and reasonably interpreted its regulations to fulfill the purpose of obtaining 100 percent remittance of fees required to be collected. For the reasons given above with regard to CBP, because APHIS's longstanding regulatory interpretation, which it has followed in conducting the periodic user fee audits, is more than plausible, in light of the manifest purposes of 21 U.S.C. § 136a and the regulations, the agency's interpretation is entitled to "controlling weight." E.g., Cathedral Candle, 400 F.3d at 1364.

Similarly, APHIS's position is obviously not litigation-driven. It was announced when the Agriculture Secretary first proposed the AQI user fee regulations in 1991. In a section entitled, "Compliance," the agency noted that "we are responsible for ensuring that the fees

collected are correct and they are remitted in full in a timely manner." 56 Fed. Reg. 8148, 8148 (USDA 1991). APHIS intended to ensure that the fees are collected and remitted "in full." This is impracticable unless the airlines are held financially liable when they are found not to be in compliance with the collection and remittance requirements.

For more than a decade after the regulations were promulgated, Continental and the rest of the industry recognized the soundness of APHIS's interpretation, by regularly remitting the amounts that the agency's auditors found should have been collected and remitted, but were not. 1st Am. Compl. ¶¶ 62-93. That would not have occurred, were it true, as Continental argues, that the "plain meaning" of APHIS's regulations supports only Continental's current litigating position and the result in American Airlines. Pl. Br. 19. To the contrary, APHIS's consistent interpretation is entirely reasonable and should, therefore, control. Auer, 519 U.S. at 461-62.

B. Continental's Statutory And Regulatory Interpretation Is Unsound

Continental raises few, if any, arguments concerning the AQI user fee that we did not already rebut. We demonstrated above that Continental errs by relying upon tax authorities, such as Air Tour, and upon the FAG Italia and USTA decisions concerning statutory "silence." This is not a tax or a subdelegation case, and APHIS's interpretation of its user fee regulations is not based upon the mere absence of a prohibition against requiring 100 percent collection and remittance by the airlines. Rather, APHIS has properly implemented 21 U.S.C. § 136a and the regulations as written, in view of their express purposes.

Without directly disputing that the regulations state unequivocally that airlines "must" collect and remit a fee from every covered passenger, Continental argues that the regulations, in essence, contain a loophole, so that, "[a]s with the Immigration User Fee, the implication is that if an airline [does] not collect the fee and therefore [does] not mark the ticket to reflect

collection, the airline is not required to remit the fee." Pl. Br. 18 (emphasis added). No such "implication" is reasonable, however. Continental's position depends upon selectively disregarding the mandatory language of the regulations. The APHIS regulations do not make fee collection discretionary, and have, moreover, been authoritatively interpreted by APHIS to promote their purpose, i.e., remittance to APHIS of all fees that "must" be collected.

Continental's textual arguments lack merit. It argues that, because 7 C.F.R. § 354.3(f)(5)(iii) ("Remittance and statement procedures") refers in the singular to the "[a]mount collected and remitted," the amount of fees remitted should equal (only) the collected amount. Id. In one sense, we agree – the two amounts must be the same, because every airline must collect and remit all fees that are owed by all covered passengers. To infer from this, however, as Continental does, that airlines and other collecting entities may simply decline to remit some of the fees owed, is to ignore incorrectly all of the "musts" in the APHIS regulations, which compel the conclusion that full fee remittance is required, without exceptions. Continental makes a similar argument concerning the requirement that collecting entities hold the funds "in trust for the United States." 7 C.F.R. § 354.3(f)(4)(C). It asserts it is significant that this subsection refers to "user fees collected . . . ." Pl. Br. 18-19 (emphasis added). Continental errs again, however, by disregarding the basic premise of 21 U.S.C. § 136a and the APHIS regulations, which is that all user fees required to be collected, will be collected and remitted, in order to cover the agency's full costs of performing AQI.

Continental argues that in the preamble to a separate user fee final rule, issued in January 1992, the agency made statements supportive of Continental's current argument that the regulations render only passengers liable for payment. Pl. Br. 17 (quoting 57 Fed. Reg. 755, 764 (USDA 1992) (final rule)). Continental lifts that quotation out of context. The comments being

addressed there by the agency questioned whether separate user fees should be charged for both aircraft inspections and passenger AQI. The agency explained that aircraft inspection and passenger inspection are distinct tasks meriting separate charges, and it went on to note that, under the regulations, as promulgated, airlines would not pay the AQI user fee in the first instance, but would "collect the fee along with the price of the ticket, taxes, and any other charges that apply, and then remit [it] to APHIS. In addition, APHIS is authorized . . . to charge separate user fees for inspecting foreign arriving commercial aircraft and foreign arriving commercial aircraft passengers." 57 Fed. Reg. at 764.

Crucially, there is no indication in the cited Federal Register notice (or anywhere else, as far as we know) that any of the commenters on the AQI user fee rule suggested that airlines – which are best positioned to include the AQI user fee in ticket prices or, failing that, to collect the user fee directly from covered passengers – might simply not fulfill their collection duties and opt instead to "remit . . . to APHIS" less than the amount that should have been collected. Neither the agency nor, apparently, the industry commenters believed the regulations could be construed to allow that result.

Similarly, the agency's Federal Register notice in July 1997 discusses the possibility of prescribing a single "user fee that would cover the entire cost of both aircraft and passenger inspections." 62 Fed. Reg. 39,747, 39,749 (USDA 1997), quoted in Pl. Br. 17. The agency explained, once again, that aircraft inspections and passenger inspections are distinct tasks, and that passengers and aircraft each pose different risks of bringing diseases and pests into the United States. The agency concluded it was "appropriate that passengers themselves pay the APHIS user fee," but for the airlines to collect the user fee and remit it to APHIS. Id. The responsibility of passengers to pay the fee to collecting entities is undisputed. That duty does

not, however, diminish Continental's obligation to collect and remit the fee, an obligation that APHIS underscored in the 1992 and 1997 rule making proceedings.

Continental's only (oblique) response to our demonstration that the AQI user fee regulation, especially, is intended to secure full funding for the international AQI program, Def. Br. 14-17, is spurious. Continental asserts that "APHIS took . . . into consideration when setting the amount of the proposed new fee in 1991" that airlines would sometimes fail to collect the AQI user fee, because passengers would refuse to pay it. Pl. Br. 27. This is factually incorrect, and is unsupported by Continental's quotation from the preamble to the proposed rule. APHIS's reference there to "uncollectible debts" of "clients" plainly refers to the possibility that airlines may go bankrupt. 56 Fed. Reg. at 8148. The statement had nothing whatsoever to do with airlines' failing to collect the user fee from individual passengers.

To the contrary, APHIS correctly presumes in its budget process "that the fees collected [will be] correct and [will be] remitted in full and in a timely manner." 56 Fed. Reg. at 8148; see Def. App. 31-32 (Ford Decl. ¶¶ 8-10) ("Continental is mistaken . . . ."). Imposing financial responsibility upon Continental and other airlines for all fees due from passengers is fully consistent with Congress' plainly expressed intent to recover in user fees the actual cost of providing international passenger inspections, and APHIS's plainly expressed intent to transfer the agency's collection responsibility to the airlines. 7 C.F.R. § 354.3(f)(4). Because APHIS's position is fully consistent with the broad and general authorizing statute and the regulatory framework, Continental's illegal exaction claim should fail.

III. Granting Continental's Motion Would Not Finally Resolve Liability Or Damages

Finally, out of what may be an abundance of caution, we note that, in the event the Court accepts Continental's reading of the immigration user fee statute and regulations, and/or the AQI

user fee statute and regulations, factual issues will remain for resolution, before a final judgment can be entered pursuant to RCFC 58 .

First, although we filed our motion to dismiss in lieu of an answer, and we have not, therefore, filed a "responsive pleading" asserting affirmative defenses, see RCFC 12(a)(2), (b), should an answer be required, we anticipate asserting defenses including accord and satisfaction, see Mil-Spec Contrs., Inc. v. United States, 835 F.2d 865, 867 (Fed. Cir. 1987); laches, see Cornetta v. United States , 851 F.2d 1372, 1377-78 (Fed. Cir. 1988) (en banc); equitable estoppel, see Wilber Nat. Bank v. United States, 294 U.S. 120, 124-25 (1935); and waiver. Seaboard Lumber Co. v. United States, 903 F.2d 1560, 1563 (Fed. Cir. 1990).

The crux of all of the above defenses – which are equally applicable in the context of the immigration user fee audits and the AQI user fee audits – is that Continental unfairly misled and/or prejudiced the Government by waiting until now to allege illegal exaction, after cooperating in the user fee audits for years. Had the Government known that Continental would maintain, many years after the fact, that all errors noted in the audits reflected only "uncollected" – rather than unrecorded – user fees, and that requiring Continental to remit these amounts was unlawful, the Government could have, and almost certainly would have, conducted its audits differently and required proof that Continental did not collect the fees. In the event our grounds for the defenses may be of interest to the Court at this time, we have included in our appendix affidavits setting forth the material facts. Def. App. 3 (Robinson Decl. ¶¶ 13-15), 18 (Blessing Decl. ¶¶ 13-15), 57 (Martin Decl. ¶ 10), 76 (Shea Decl. ¶ 7).

Furthermore, to the extent the Court rules in Continental's favor as to liability and, in addition, later rejects our affirmative defenses, the Court's determination of Continental's damages for illegal exaction will be de novo and will not involve merely "reversing" payments

made by Continental to the Government to resolve the user fee audits. In order to recover under those circumstances, Continental must establish a difference between (i) the user fees it actually owed the Government for a given audit period and (ii) the amount it paid for that period. See Merck & Co. v. United States, 24 Cl. Ct. 73, 91 (1991) (stating plaintiff alleging illegal exaction of income taxes must "prove the correct amount of the tax, and any overpayment").

Continental cannot simply rely upon the agencies' user fee audits, moreover, to quantify its damages. In tax refund lawsuits filed in this Court, which are closely analogous to illegal exaction claims, "given the de novo nature of the proceedings before this court," the Government may support a tax assessment with any admissible evidence whatsoever, including evidence newly obtained in discovery. Cook v. United States, 46 Fed. Cl. 110, 114 (2000). "Indeed . . ., courts have repeatedly held that the government . . . need not rely solely, or at all, on the evidence reviewed administratively by the [Internal Revenue] Service." Id. at 114-15 (emphasis added) (citing Tucker v. United States, 8 Cl. Ct. 180, modified on other grounds, 8 Cl. Ct. 575 (1985)). We should be equally unconstrained here by the methodologies and conclusions of the Government's user fee auditors. Especially because Continental, similar to a taxpayer, "remains the party seeking to press a claim and best positioned to preserve and bring forward evidence bearing on the facts of that claim," id. at 117, assuming the Government is liable, Continental must demonstrate to the Court, de novo, that it remitted more user fees than it collected.

In a decision issued after its decision on liability, the American Airlines Court erroneously denied the Government discovery of documents and facts outside the metes and bounds of the individual user fee audits about which plaintiff in that case complains. American Airlines, Inc. v. United States, __ Fed. Cl. __, 2006 WL 3490924 (Nov. 30, 2006). The Court

mistakenly characterized our request for ordinary damages discovery as amounting to the assertion of a "counterclaim" or an "offset." Slip op. 7. It is neither.

Just as the Government is not asserting a counterclaim or an offset when it holds a taxpayer to its factual proof of the amount of tax owed in a refund case, we are not asserting those things here. It is not enough for Continental simply to persuade the Court to reject the legal grounds upon which CBP and/or APHIS sought the user fee payments. As in any civil litigation, plaintiff also bears the burden to prove damages, which means, here, the actual difference between what Continental owed the Government and what it paid. Apart from the interlocutory 2006 ruling in American Airlines, we know of no authority to the contrary.

## CONCLUSION

For the reasons given above, we respectfully request the Court to dismiss the amended complaint.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

s/Jeanne E. Davidson
JEANNE E. DAVIDSON
Director

s/Kyle Chadwick
KYLE CHADWICK
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification, 8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 616-0476
Fax: (202) 305-7644

Attorneys for Defendant

OF COUNSEL:

ANDREW S. KOSEGI
Attorney
U.S. Customs and Border
Protection
Indianapolis, IN

CYNTHIA A. KOCH
Senior Counsel
United States Department of
Agriculture
Washington, DC

March 21, 2007

CERTIFICATE OF FILING

I certify under penalty of perjury that the attached document was filed electronically with the Court on March 21, 2007. Service is complete upon filing and the document may be accessed through the Court's electronic system.

s/Kyle Chadwick