U.S. BANK NATIONAL ASSOCIATION
P O BOX 64830
ST PAUL, MN 55164-0830

ANIMAL PLANT HEALTH INSPECTION SVCS
PO BOX 3220
ATTN SUE BOYD
MINNEAPOLIS, MN 55403-0220

Dear Wire Transfer Customer,

| | |
|---|---|
| Regarding your Account: | 1001104072 |
| Credited for Amount: | 33,045.18 |
| Date: | January 5, 2005 |
| Sequence Number: | 050105021846 |

SourceBk: 021000021-JPMORGAN CHASE TargetBk: 81000210-US BANK MISSOURI

DISP=02P N
TIME=01051623FT01
OMAD=20050105I1Q73AGC00325201051623FT01
CODE=1000
IMAD=20050105B1QGC05C004681
AMT=000003304518
SND=021000021JPMORGAN CHASE*
SBR=2399700005JO*
RCV=081000210US BANK MISSOURI*
TYP=CTR *
BNF=D1001104072*USDA APHIS*
RFB=CAP OF 05/01/05*
ORG=D009102499291*CONTINENTAL AIRLINES INC*P.O.BOX 4607 - HQSCA - 472*HOUSTON TX 77210-4607*
OBI=LOCKBOX 95218 ACCT 742099724QA TAX*ID 742099724*
BNFI=ACCT 742099724QA*

BD 04AQI 900344
BD 04AQI 900345

CR 3409 05005 W 0001 Z
1/7/05

Please Address any inquiries regarding this wire transfer to:
US Bank Wire Transfer Customer Service at: (888) 799-4737

xxxxxxxxxx ADVICE TOP OF FORM xxxx
WIRE TRANSFER DEPARTMENT
PO BOX 64830
ST PAUL, MN 55164-0830
13144184423

PAR : 060912001364

Dear Wire Transfer Customer,
We confirm that we are crediting your account number 000001001104072 with the sum of USD 128,000.92, with value 09/12/2006 in respect of the following transaction. PAR : 060912001364
IMAD:20060912B1QGC06C000486

Originator:
-----------------
CONTINENTAL AIRLINES, INC.

Originator FI
-------------
CONTINENTAL AIRLINES INC
P.O.BOX 4607 - HQSCA - 472
HOUSTON TX 77210-4607

Sender :
---------
021000021
JPMCHASE NY
JPMCHASE NYC
Beneficiary :
------------------
1001104072
USDA APHIS
OBI :
---------
LOCKBOX 979044 ACCT 742099724QA
TAXID 742099724

Payment Details
---------------
CAP OF 06/09/11

Continental Airlines
742099724

This information is confidential. If it was received in error or you have any inquiries regarding this wire transfer, please contact US Bank Wire Transfer Customer Service at (888) 799-4737.

CR 3409 06255W 0002Z

EX C



TOTAL P.02

CR 3409 06255 W0002 Z

555606 0 9 1 2 0 6 12403400 128,000.92

APHIS AQI
2181
331

U.S. BANK
ST. LOUIS, MO 63101

(3417)

0 9 1 2 0

Payment for 2006 Audit liability

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| CONTINENTAL AIRLINES, INC.<br>Plaintiff,<br>v.<br>THE UNITED STATES OF AMERICA,<br>Defendant. | ) | Civil Action No. 06-432C<br>( Senior Judge Margolis) |

DECLARATION OF DEBORAH A. MARTIN

I, Deborah A. Martin of Portland, Oregon, make the following representations based upon my personal knowledge and facts made known to me when I held the position of auditor with the Animal and Plant Health Inspection Service (APHIS), United States Department of Agriculture (USDA), in Riverdale, Maryland.

1. I am over 21 years of age, am of sound mind, have never been convicted of any felony, am fully competent to testify to the matters stated herein, and know that this declaration may be used as evidence in the captioned proceeding.

2. I have a Bachelor of Science degree in accounting from the University of the State of New York located in Albany, New York that was awarded in 1989. I also have a Masters of Science degree in administration from Central Michigan University located in Ann Arbor, Michigan that was awarded in 1995.

3. I am a Certified Public Accountant.

4. I am presently a financial manager with the Department of Justice, Federal Bureau of Investigation, in Portland, Oregon. In this position, I am responsible for the supervision of the financial management staff, budget justification and execution, and financial analysis for the Portland Division. I have held this position since January 2006.

5. From October 2003 through December 2005, I was a lead forensic financial research specialist with the Department of Justice, Federal Bureau of Investigation, in Washington, D.C. In my position as a lead forensic financial research specialist for the Department of Justice, Federal Bureau of Investigation, I was responsible for the analysis of the personal finances of FBI employees to determine security risks, and was an acting program manager and supervisor of staff.

6. From February 1998 through November 1998 and August 1999 through September 2003, I was an auditor employed by the Animal and Plant Health Inspection Service (APHIS), United States Department of Agriculture (USDA), in the User Fee Branch located in Riverdale Maryland. During the years of my employment as an auditor with APHIS, USDA, I conducted an audit of Continental Airlines, and issued an audit report, a copy of which is attached as Exhibit A. The purpose of the audit that I conducted was threefold: 1) to evaluate the internal control and reliability of Continental Airlines' user fee collections, recording, reporting, and remittance systems; 2) to determine Continental Airlines' compliance with APHIS, USDA's statute and

regulations governing international air passenger fees and commercial aircraft fees; and 3) to provide information and advice to Continental Airlines to facilitate continued compliance with APHIS' statute and regulations governing international air passenger fees and commercial aircraft fees.

7. As part of my evaluation of Continental's compliance with APHIS' statute and regulations for international air passenger fees and commercial aircraft fees, I made findings of additional liability where Continental failed to remit all of the international air passenger fees and aircraft inspection fees required by law to be remitted.

8. The audit coverage period for the audit that I conducted of Continental Airlines was July 1999 through December 2001. The field work for the audit was conducted from January 28,2002 through February, 1, 2002.

9. For the audit that I conducted, the review procedure and methodology I used was as follows. Prior to the beginning of the review, I worked with Continental Airlines to select a group of flights that were representative of the markets in which Continental sold tickets during the period of time to be audited. At the review, I audited each qualifying ticket, from the selected flights, which in this instance was 862 tickets, from the agreed upon group for evidence that the APHIS international air passenger fee had been collected. Qualifying tickets are tickets of international air passengers that are subject to the APHIS' international air passenger fee set forth in 7 C.F.R § 354.3(f). I then verified that Continental's accounting system had captured payment of the fee for those qualifying tickets that evidenced that the correct fee had been collected and verified that the fee had been remitted to APHIS. If a qualifying ticket did not evidence collection of the APHIS international air passenger fee, or evidenced an under collection of the fee, the ticket was deemed to be a "potential" error. Additionally, if a qualifying ticket evidenced that the APHIS

international air passenger fee had been collected but remitted to other than APHIS, here the Internal Revenue Service (IRS), the ticket was also deemed to be a "potential" error.

10. For those tickets that were deemed to be "potential"errors because the ticket did not evidence collection of the APHIS international air passenger fee or evidenced an under collection of the fee, Continental was given the opportunity to research the ticket and provide supporting documentation to substantiate that the correct amount of the fee had been collected and remitted to APHIS or that the ticket represented a passenger that was exempt from the fee. If such documentation was not supplied, the ticket was deemed to be a "confirmed" error. For these tickets, I did not review Continental's general ledger account(s) or any other Continental accounts to determine if the fees had been deposited in an account. Thus, I did not audit to verify Continental's assertion that a fee had not been collected or that the correct amount of the fee had not been collected. Thus, if Continental had fully collected the fee, if this was not evidenced on the ticket, if Continental failed to disclose such a collection for any reason, including, for example, because of its erroneous deposit of the fee collected in the incorrect account, I would not have known about it. In preparing this declaration, I was unable to review copies of the tickets discussed in this paragraph which I deemed to be "confirmed" errors, as they were not contained in the work papers of my audit sent to me by APHIS. I was informed that, to date, APHIS has not located copies of these tickets.

11. For those tickets that were deemed to be "potential" errors because they evidenced that the APHIS international air passenger fee had been collected, but remitted to the IRS, these tickets were deemed to be "confirmed" errors after the review I conducted that is set forth in paragraph 12 below. My description of how I made this determination is based upon my recollection now and my

review of the work papers of the audit that I conducted that APHIS located and sent to me. In preparing this declaration, I was unable to review copies of these tickets, as they were not contained in the work papers of my audit sent to me by APHIS. I was informed that, to date, APHIS has not located copies of these tickets.

12. My determination that at least nine qualifying tickets represented instances where the APHIS international air passenger fee had been collected, but remitted to the IRS, was based upon my analysis of the tickets. The fare box area of a ticket which lists the price of the ticket generally contains a maximum of five lines, three of which are for use in listing taxes or user fees collected. Generally, there are more than three fees and taxes collected for each ticket. In my experience, when this occurred, the fare calculation box was used to list the remaining fees and taxes collected along with a " letter code" that represented the name of the entity for whom the fee or tax was collected. It was my experience that generally in these situations, the "code" "XT", which is a miscellaneous receipts code, is listed in the fare box area, along with a monetary figure which is supposed to reflect the total amount of the fees and taxes collected. It was also my experience that in these situations airlines would deposit the sum total of money listed as having been collected for the"XT" account and then this money was supposed to be distributed to the accounts for the different entities for which it was collected. Based on my review of my work papers sent to me, and my current recollection, the fare box area of at least nine qualifying tickets that I deemed to be "confirmed " errors contained the letters "US' which is the code for the tax to be collected on behalf of the IRS, and not the letters "XT." My analysis of the amounts set forth next to all of the codes listed in the fare calculation box, one of which was the letter code "XA," the code for the APHIS international air passenger fee,

resulted in my determination that the sum of these amounts when added together with the fee that was to be collected for the IRS and other entities, equaled the amount next to the letters "US" in the fare box area. My initial review of Continental's internal accounting system that I did during my audit before I reviewed qualifying tickets, indicated in the situation described here where a valid code for one entity was listed in the fare box area, the total amount of money listed next to the code would be distributed by Continental's accounting system solely to the account of the entity which the code represented. Therefore, I concluded that for at least nine of the qualifying tickets that I examined part of the total amount of money listed next to the code "US," the code for the IRS tax, represented the APHIS international passenger fee collected that was distributed to the IRS account and then remitted to the IRS. I informed Mr. David Bowman, manager of domestic and international taxes of my determination during the audit and showed him the relevant tickets. I advised Mr. Bowman to contact the IRS for a refund of the overpayment made.

13. The work papers that I reviewed that refreshed my memory about the matter discussed in paragraphs 10 and 11 are attached as Exhibit B. These work papers are entitled "POTENTIAL EXCEPTIONS," "WP D-04-1." These documents list both the qualifying tickets that I classified as potential errors for international passengers other than employees of Continental that were traveling on " pleasure travel"and a listing of the trip passes of Continental's employees traveling on pleasure travel" that I classified as potential errors. Next to nine ticket numbers is the notation "pd to us" or "pd to US" which is the note I put on this document next to each ticket for which I concluded that the APHIS international passenger inspection fee had been collected, but remitted to the IRS. The following are the ticket numbers next to which the notation "pd to us" or "pd to US" is reflected in

my work papers attached hereto:

7659954490

3130220468

3130219344

7013032795

7010152779

7114056412

7010152778

7011271627

7025402445

14. For those tickets which were deemed to be confirmed errors, here 24.21, which are the tickets for which Continental did not provide documentation of the collection of the APHIS international air passenger inspection fee, or collection of the correct amount of the fee, or for which I concluded evidenced collection of the APHIS international air passenger fee but its remittance to the IRS, the "error" rate was calculated by taking the number of confirmed errors and dividing them by the number of qualifying tickets in the sample that had been reviewed. The error rate was then multiplied by Continental's total user fee remittances for the period of time reviewed, other than those for student consolidator payments, to arrive at the amount due. For the audit that I conducted, the additional sum, determined to be owed for the 24.21 confirmed error qualifying tickets, was $863,979.89. To the best of my recollection at this time, the qualifying tickets that I examined for which I determined there were 24.21 confirmed errors were tickets sold on Continental ticket stock.

15. My work papers contain a document, which is attached here as Exhibit C, entitled "PROCEDURES BY SALES SOURCE," "WP B-02-1," which states the following:

> All sales sources are processed essentially in the same manner.
>
> Each sales report is manually reviewed, a separate worksheet prepared for input to revenue accounting database. During preparation for this audit, it was noted that XT is not always correctly allocated. Journal entries are prepared transferring data to the general ledger.
>
> Rascal is being implemented which will automatically review each ticket for correct ticket taxes.
>
> Deborah Martin.
> 1/28/02

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 14th day of March, 2007 in Washington, D.C.

[signature]
Deborah A. Martin

Exhibit A

SEP 05 2002

Mr. David Bowman
Manager, Domestic & International Taxes
Continental Airlines
PO Box 4607 HQSTX
Houston, TX 77210-4607

Dear Mr. Bowman:

Enclosed is the report of the U.S. Department of Agriculture, Animal and Plant Health Inspection Service (APHIS), user fee audit of Continental Airlines, which was conducted by Ms. Martin. As you know, this report includes operational findings and recommendations. I understand that Ms. Martin discussed details of the findings and financial liability with you.

The financial liability outlined in the enclosed report does not include interest or penalties. You will be subsequently billed interest effective from the end of the quarter in which the fee was supposed to have been collected.

The liability amount on the last page of this report should be mailed to the same address to which the quarterly payments are mailed. **Please send a copy of the last page of this report with your check.**

The current lockbox address is as follows:

USDA, APHIS, AQI
P.O. Box 952181
St. Louis, MO 63195-2181

Physical address for overnight deliveries:
Firstar Bank
Attn: Government Lockbox - P.O. Box 952181
1005 Convention Plaza
St. Louis, MO 63101

If you have any questions or comments, please contact Ms. Martin at (301) 734-5726, fax (301) 734-7439 or e-mail at *Deborah.A.Martin@aphis.usda.gov*. The cooperation and assistance of your staff during this audit is greatly appreciated.

Sincerely,

/s/ Frank Vollmerhausen

Frank C. Vollmerhausen
Director
Resource Management Systems
and Evaluation Staff

Enclosure

Exhibit A

cc:
J. Munno, MRPBS, Washington, DC (w/ copy of enclosure)
D. Ford, BASE, Riverdale, MD (w/ copy of enclosure)
D. Crews, MRPBS-MNPLS, Minneapolis, MN (w/ copy of enclosure)

Exhibit A

I. Background

In 1990, Congress established new user fee legislation. The Food, Agriculture, Conservation and Trade Act of 1990, as amended by the Omnibus Budget Reconciliation Act of 1990, authorized the U.S. Department of Agriculture (USDA) through the Animal and Plant Health Inspection Service (APHIS) to collect various user fees. These fees include agricultural quarantine and inspection services provided in connection with the arrival of commercial aircraft and international passenger arrivals at ports in the Customs territory of the U.S. The Farm Bill defines the U.S. Customs territory as the 50 States, the District of Columbia, and Puerto Rico.

APHIS published a final rule in the Federal Register on April 12, 1991, requiring airlines to collect a user fee from international air passengers arriving in the U.S. Customs territory from other countries, except Canada. These fees became effective on May 13, 1991. On January 9, 1992, APHIS published a final rule requiring an inspection fee for commercial aircraft arriving in the U.S. from other countries except Canada, effective February 9, 1992. Aircraft and passengers on flights originating in Canada are excluded from APHIS fees because of a negligible agricultural health threat to U.S. agriculture.

User fees must be remitted for receipt no later than 31 days after the close of each calendar quarter in which they are collected.

Continental Airlines headquarters is in Houston, Texas. Continental had qualifying passenger and cargo flights operating during the audit period of July 1999 through December 2001. The scheduled flight ports of entry into the US are Houston, Cleveland, San Antonio, Miami, Newark, and Honolulu.

Continental is publicly owned and has approximately 50,500 employees worldwide. Continental has 25 1900Ds, 30 ATR 42-320s, 8 ATR-42-500s, 3 ATR 72s, 17 B-727s, 195 B-737s, 36 B-757s, 13 B-777s, 31 DC-10s, 32 EMB-120s, and 69 MD-80s in service.

For the above mentioned audit period, Continental Airlines' user fee remittances for APHIS passengers and aircraft were $ 30,704,044.94 and $ 5,014,400.25, respectively.

II. Audit Objectives

1. Evaluate internal control adequacy and reliability of user fee collections, recording, reporting, and remittance systems.

2. Determine compliance with regulations (mentioned above).

3. Develop a rapport with the payer. Provide information and advice to the payer to facilitate continued compliance.

III. Audit Scope and Methods

The audit coverage period for each user fee is July 1999 through December 2001. The audit was conducted in accordance with the Government Auditing Standards issued by the Comptroller General of the United States and included such tests that were deemed necessary. We tested internal controls associated with the collection, recording, reporting, and remittance systems.

To test collection compliance, we audited tickets lifted from passengers for flights arriving into the following airports, on the following dates. We understand that you have agreed that the sample below is representative of the markets in which you sold applicable tickets during the audit period.

| DATES | AIRPORTS | FLIGHT # |
|---|---|---|
| Jul 5, 1999 | Houston | 751 |
| Nov 18, 1999 | Newark | 67 |
| Feb 23, 2000 | Cleveland | 67 |
| Apr 6, 2000 | Houston | 750 |
| Aug 19, 2000 | Newark | 32 |
| Oct 1, 2000 | San Antonio | 466 |
| Mar 26, 2001 | Houston | 94 |
| May 24, 2001 | Newark | 30 |
| Sep 6, 2001 | Honolulu | 2 |
| Dec 15, 2001 | Houston | 1114 |

To audit recording compliance, we traced an auditor coupon from each sales channel to the associated sales report. The sales reports selected were from:

a) The auditor coupons and sales reports for the airport ticket office (ATO) at Cleveland for May 17, 2000 and the city ticket office in Houston for August 1, 2001.

b) the following Airline Reporting Corporation (ARC) sales and period:

| Year | Bank | Month | Week | Cycle |
|---|---|---|---|---|
| 2001 | 5 | 8 | 2 | 4 |

c) the Billing and Settlement Plan (BSP) in Japan for May 2001.

To test reporting compliance, we traced user fee dollars of the above mentioned reports to the general ledger.

Remittance compliance was tested by comparing remittance data to general ledger entries in the respective liability accounts.

Instances of noncompliance were used to determine an additional liability, using user fee dollars collected as the calculation basis.

The aircraft clearance fee was audited by comparing an auditee prepared schedule of landing counts by month by airport, to statistics provided by the U.S. Department of Transportation (DOT), Customs data and APHIS' remittance data.

The audit fieldwork was performed January 28 – February 1, 2002, by Ms. Martin.

APHIS retains the right to review and assess liability for unpaid user fees for this audit period if significant data, which was unavailable during the audit, is discovered subsequent to the audit.

IV. Findings and Recommendations

1. Finding: Of the 862 qualifying tickets audited for the air passenger user fee collections compliance, the number of tickets with no evidence of fee collection or remittance was 24.21. The associated error rate is 2.81%. The resulting amount due to APHIS is $ 863,979.89.

*Exhibit A*

Recommendation: The additional liability amounts mentioned above should be remitted. Copies of the noncompliance tickets were given to the Director, Excise, Property, Use and Payroll Taxes so that measures can be implemented to improve collections compliance.

2. Finding: APHIS passenger user fees were not allocated on prepaid trip passes for employee pleasure travel. Continental prepared a worksheet which detailed the number of trip and buddy passes used by employees during the audit period. Employees used 401,331 passes for entry into the United States, for which Continental has already remitted $795,060.25. An additional $343,082.45 is due to APHIS for the prepaid trip passes.

Recommendation: The additional liability amount mentioned above should be remitted. The Director, Excise, Property, Use and Payroll Taxes has stated that Continental will begin remitting for all trip and buddy passes effective January 1, 2002, on a flown coupon basis.

3. Finding: The aircraft clearance user fee was not remitted on 2,282 flights. An additional $145,471.25 is due to APHIS for these flights.

Continental Micronesia did not remit the aircraft clearance fee for flights into Honolulu. Additionally, several city pairs were omitted from the Continental report used to calculate the aircraft clearance fee.

Recommendation: The additional liability amount mentioned above should be remitted. Continental has stated the report used to calculate the remittance will be updated to include all applicable city pairs, and that Continental Micronesia will begin remitting the aircraft clearance fee.

Exhibit A

V. Financial Liability - APHIS

Continental Airlines' Financial Liability Due to APHIS Resulting from a User Fee Audit

| QUARTER ENDED | PASSENGER LIABILITY | AIRCRAFT LIABILITY | TOTAL LIABILITY DUE TO APHIS |
|---|---|---|---|
| Sep 1999 | $ 141,554.78 | $ 11,531.75 | $ 153,086.53 |
| Dec 1999 | 139,671.43 | 13,074.25 | 152,745.68 |
| Mar 2000 | 169,274.88 | 13,376.00 | 182,650.88 |
| Jun 2000 | 150,259.67 | 13,952.00 | 164,211.67 |
| Sep 2000 | 73,672.32 | 14,208.00 | 87,880.32 |
| Dec 2000 | 133,468.49 | 14,245.00 | 147,713.49 |
| Mar 2001 | 191,971.84 | 18,324.25 | 210,296.09 |
| Jun 2001 | 75,540.18 | 14,115.50 | 89,655.68 |
| Sep 2001 | 46,388.43 | 14,374.50 | 60,762.93 |
| Dec 2001 | 85,260.32 | 18,270.00 | 103,530.32 |
| TOTALS | $ 1,207,062.34 | $ 145,471.25 | $ 1,352,533.59 |

DATE DUE: upon receipt

Exhibit B

-POTENTIAL EXCEPTIONS
WP D-04-1

Partial error calc

| DATE | FLIGHT # | TICKET # | | XA COUNT | collected | s/b | error | | YC COUNT | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 36346 | 751 | 2123514452 | | 0 | | | | | 1 | | | |
| | | 2123540069 | no collect | 1 | | | | | 1 | | | |
| | Trip pass | 0457755316 | prd | 0 | | | | | 0 | | | |
| | Trip pass | 0445652731 | prepd | 0 | | | | | 0 | | | |
| | | Total | | 1 | | | | | 2 | | | |
| 36482 | 67 | 7659954490 | pd to us | 1 | | | | | 1 | | | |
| | | 6770576247 | | 0.195122 | 1.65 | 2.05 | 0.195122 | | 1 | | | |
| | | 6770576246 | | 0.195122 | 1.65 | 2.05 | 0.195122 | | 1 | | | |
| | | 9402521364 | | 0.282927 | 1.47 | 2.05 | 0.282927 | | 0.098 | 4.51 | 5 | 0.098 |
| | | 6769580163 | | 0.395122 | 1.24 | 2.05 | 0.395122 | | 0.24 | 3.8 | 5 | 0.24 |
| | | 6769349572 | | 0.195122 | 1.65 | 2.05 | 0.195122 | | 1 | | | |
| | | 6769580162 | | 0.395122 | 1.24 | 2.05 | 0.395122 | | 0.24 | 3.8 | 5 | 0.24 |
| | | 6770577045 | | 0.195122 | 1.65 | 2.05 | 0.195122 | | 1 | | | |
| | trip pass | 0445058414 | prepd | 0 | | | | | 0 | | | |
| | trip pass | 0445895584 | prepd | 0 | | | | | 0 | | | |
| | trip pass | 0445924915 | prepd | 0 | | | | | 0 | | | |
| | | Total | | 2.853659 | | | | | 5.578 | | | |
| 36579 | 67 | 2587250708 | | 0.46 | 1.62 | 3 | 0.46 | note: (3.00 - 1.62) / 3.00 | 0 | | | |
| | | 2587250709 | | 0.46 | 1.62 | 3 | 0.46 | | 1 | | | |
| | | 9402508990 | | 0.026667 | 2.92 | 3 | 0.026667 | | 1 | 0 | 5 | 1 |
| | | 9402508989 | | 0.026667 | 2.92 | 3 | 0.026667 | | 1 | 0 | 5 | 1 |
| | | 2566959936 | | 0.395122 | 1.24 | 2.05 | 0.395122 | | 0.392 | 3.04 | 5 | 0.392 |
| | | 2566959935 | | 0.395122 | 1.24 | 2.05 | 0.395122 | | 0.392 | 3.04 | 5 | 0.392 |
| | | 7991038256 | | 0 | | | | | 0 | | | |
| | | 7991038255 | | 0 | | | | | 0 | | | |
| | | 2125125931 | | 0 | | | | | 1 | | | |
| | trip pass | 0445053550 | prepd | 0 | | | | | 0 | | | |
| | trip pass | 0445013467 | prepd | 0 | | | | | 0 | | | |
| | trip pass | 0445053549 | prepd | 0 | | | | | 0 | | | |
| | | 2566959934 | | 0.395122 | 1.24 | 2.05 | 0.395122 | | 0.392 | 3.04 | 5 | 0.392 |
| | | 2566959932 | | 0.395122 | 1.24 | 2.05 | 0.395122 | | 0.392 | 3.04 | 5 | 0.392 |
| | | 2566959931 | | 0.395122 | 1.24 | 2.05 | 0.395122 | | 0.392 | 3.04 | 5 | 0.392 |
| | | 2566959933 | | 0.395122 | 1.24 | 2.05 | 0.395122 | | 0.392 | 3.04 | 5 | 0.392 |
| | | 6888786845 | | 0.566667 | 1.3 | 3 | 0.566667 | | 0.202 | 3.99 | 5 | 0.202 |
| | | 9402524709 | | 0.386667 | 1.84 | 3 | 0.386667 | | 0.04 | 4.8 | 5 | 0.04 |
| | | 9402524711 | | 0.386667 | 1.84 | 3 | 0.386667 | | 0.04 | 4.8 | 5 | 0.04 |
| | | 9402508991 | | 0.026667 | 2.92 | 3 | 0.026667 | | 1 | 0 | 5 | 1 |
| | | 9402508988 | | 0.026667 | 2.92 | 3 | 0.026667 | | 1 | 0 | 5 | 1 |
| | | 2587207915 | | 0.46 | 1.62 | 3 | 0.46 | | | 0 | | |
| | | Total | | 5.197398 | | | | | 8.634 | | | |
| 36622 | 750 | 2125574804 | | 0 | | | | | 0 | | | |
| | | 4041396845 | no coll | 1 | | | | | 1 | | | |
| | | 4041323821 | no coll | 1 | | | | | 1 | | | |
| | | 4041395876 | | 1 | | | | | 1 | | | |
| | | 2125485814 | | 1 | | | | | 1 | | | |
| | | 2125574947 | | 0 | | | | | 1 | | | |
| | | 2125593876 | | 0 | | | | | 0 | | | |
| | | 2125574947 | | 0 | | | | | 0 | | | |
| | | 2125417138 | | 0 | | | | | 0 | | | |
| | | 2125485762 | | 0.126667 | 2.62 | 3 | 0.126667 | | 0.41 | 2.95 | 5 | 0.41 |
| | | 4402034157 | | 1 | | | | | 1 | | | |
| | | 3130220468 | pd to us | 1 | | | | | 1 | | | |
| | | 3130219344 | pd to us | 1 | | | | | 1 | | | |
| | trip pass | 0445057480 | prepd | 0 | | | | | 0 | | | |
| | trip pass | 0445744107 | prepd | 0 | | | | | 0 | | | |
| | trip pass | 0458116209 | prd | 0 | | | | | 0 | | | |
| | trip pass | 0445814128 | prepd | 0 | | | | | 0 | | | |
| | trip pass | 0445814127 | prepd | 0 | | | | | 0 | | | |
| | trip pass | 0445029756 | prepd | 0 | | | | | 0 | | | |
| | trip pass | 0445744108 | prepd | 0 | | | | | 0 | | | |
| | trip pass | 0445840475 | prepd | 0 | | | | | 0 | | | |
| | trip pass | 0445840474 | prepd | 0 | | | | | 0 | | | |
| | trip pass | 0445014569 | prepd | 0 | | | | | 0 | | | |
| | trip pass | 0445093112 | prepd | 0 | | | | | 0 | | | |
| | trip pass | 0445093116 | prepd | 0 | | | | | 0 | | | |
| | trip pass | 0445197509 | prepd | 0 | | | | | 0 | | | |
| | trip pass | 0445057445 | prepd | 0 | | | | | 0 | | | |
| | trip pass | 0445176286 | prepd | 0 | | | | | 0 | | | |
| | trip pass | 0445739643 | prepd | 0 | | | | | 0 | | | |
| | trip pass | 0445093103 | prepd | 0 | | | | | 0 | | | |
| | trip pass | 0415235140 | prd | 0 | | | | | 0 | | | |
| | trip pass | 0415235141 | prd | 0 | | | | | 0 | | | |
| | trip pass | 0445055371 | prepd | 0 | | | | | 0 | | | |
| | trip pass | 0458361108 | prd | 0 | | | | | 0 | | | |
| | trip pass | 0458361107 | prd | 0 | | | | | 0 | | | |
| | | Total | | 7.126667 | | | | | 8.41 | | | |
| 36757 | 32 | 7013032795 | pd to us | 1 | | | | | 1 | | | |
| | | 7010152779 | pd to us | 1 | | | | | 1 | | | |
| | | 2126661191 | | 0 | | | | | 1 | | | |

Exhibit B

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | 7114056412 | pd to us | 1 | | | | 0 |
| | | | | 7010152778 | pd to us | 1 | | | | 1 |
| | | | | 7011271627 | pd to us | 1 | | | | 1 |
| | | | | 1602830847 | illegible | 1 | | | | 1 |
| | | | trip pass | 0445424442 | prepd | 0 | | | | 0 |
| | | | trip pass | 0445379547 | prepd | 0 | | | | 0 |
| | | | trip pass | 0445424894 | prepd | 0 | | | | 0 |
| | | | trip pass | 0445056438 | prepd | 0 | | | | 0 |
| | | | trip pass | 0445424445 | prepd | 0 | | | | 0 |
| | | | trip pass | 0445518814 | prepd | 0 | | | | 0 |
| | | | trip pass | 0415223452 | prd | 0 | | | | 0 |
| | | | trip pass | 0415098995 | prd | 0 | | | | 0 |
| | | | trip pass | 0458762671 | prd | 0 | | | | 0 |
| | | | | Total | | 6 | | | | 6 |
| | 36800 | 466 | | | | | | | | 0 |
| | 36976 | 94 | | 0436622771 | prd | 0 | | | | 0 |
| | | | | 0436623739 | prd | 0 | | | | 0 |
| | | | | 0436546630 | prd | 0 | | | | 0 |
| | | | | 0436546628 | prd | 0 | | | | 0 |
| | | | | 2127723208 | | 0 | | | | 1 |
| | | | | 7169674743 | | 0 | | | | 1 |
| | | | | 7170794781 | | 0 | | | | 1 |
| | | | | 2154301978 | | 0 | | | | 1 |
| | | | | 0436632194 | prd | 0 | | | | 0 |
| | | | | 0143622939 | prd | 0 | | | | 0 |
| | | | | 0436510829 | prd | 0 | | | | 0 |
| | | | | 1002123574 | | 0.03 | 2.91 | 3 | 0.03 | 0 |
| | | | trip pass | 0445736740 | prepd | 0 | | | | 0 |
| | | | trip pass | 0459162702 | prd | 0 | | | | 0 |
| | | | trip pass | 0445716309 | prepd | 0 | | | | 0 |
| | | | trip pass | 0445773464 | prepd | 0 | | | | 0 |
| | | | trip pass | 0445763073 | prepd | 0 | | | | 0 |
| | | | trip pass | 0445745169 | prepd | 0 | | | | 0 |
| | | | trip pass | 0445736741 | prepd | 0 | | | | 0 |
| | | | | TOTAL | | 0.03 | | | | 4 |
| | 37035 | 30 | | 7178946066 | | 0 | | | | 1 |
| | | | | 7187783515 | | 0 | | | | 1 |
| | | | | 7186243113 | | 0 | | | | 1 |
| | | | | 7184278880 | | 0 | | | | 1 |
| | | | | 7185345350 | | 0 | | | | 1 |
| | | | | 7183345907 | | 0 | | | | 1 |
| | | | | 7025402445 | pd to US | 1 | | | | 1 |
| | | | trip pass | 0445722171 | prepd | 0 | | | | 0 |
| | | | trip pass | 0459220871 | prd | 0 | | | | 0 |
| | | | trip pass | 0460613847 | prd | 0 | | | | 0 |
| | | | trip pass | 0445819357 | prepd | 0 | | | | 0 |
| | | | trip pass | 0459220544 | prd | 0 | | | | 0 |
| | | | | TOTAL | | 1 | | | | 7 |
| | 37140 | 2 | | 0437617595 | prd | 0 | | | | 0 |
| | | | | 0437602978 | prd | 0 | | | | 0 |
| | | | | 0437581817 | prd | 0 | | | | 0 |
| | | | | 9402653439 | | 1 | | | | 0 |
| x | | | trip pass | 0445512395 | prepd | 0 | | | | 0 |
| | | | trip pass | 0445789328 | prepd | 0 | | | | 0 |
| x | | | trip pass | 0445800249 | prepd | 0 | | | | 0 |
| x | | | trip pass | 0445846298 | prepd | 0 | | | | 0 |
| x | | | trip pass | 0445848500 | prepd | 0 | | | | 0 |
| x | | | trip pass | 0445848530 | prepd | 0 | | | | 0 |
| x | | | trip pass | 0445849709 | prepd | 0 | | | | 0 |
| x | | | trip pass | 0445849723 | prepd | 0 | | | | 0 |
| x | | | trip pass | 0445849725 | prepd | 0 | | | | 0 |
| x | | | trip pass | 0445850686 | prepd | 0 | | | | 0 |
| x | | | trip pass | 0445851443 | prepd | 0 | | | | 0 |
| x | | | trip pass | 0445851444 | prepd | 0 | | | | 0 |
| x | | | trip pass | 0445851481 | prepd | 0 | | | | 0 |
| x | | | trip pass | 0445851482 | prepd | 0 | | | | 0 |
| x | | | trip pass | 0445851503 | prepd | 0 | | | | 0 |
| x | | | trip pass | 0445886375 | prepd | 0 | | | | 0 |
| x | | | trip pass | 0458217490 | prd | 0 | | | | 0 |
| x | | | trip pass | 0458217491 | prd | 0 | | | | 0 |
| x | | | trip pass | 0459207952 | prd | 0 | | | | 0 |
| x | | | trip pass | 0459208275 | prd | 0 | | | | 0 |
| x | | | trip pass | 0460617628 | prd | 0 | | | | 0 |
| x | | | trip pass | 0460622774 | prd | 0 | | | | 0 |
| x | | | trip pass | 0460623789 | prd | 0 | | | | 0 |
| x | | | trip pass | 0460623791 | prd | 0 | | | | 0 |
| x | | | trip pass | 0460623834 | prd | 0 | | | | 0 |
| x | | | trip pass | 0460623837 | prd | 0 | | | | 0 |
| x | | | trip pass | 0460623840 | prd | 0 | | | | 0 |
| x | | | trip pass | 0460623892 | prd | 0 | | | | 0 |
| x | | | trip pass | 0460623892 | prd | 0 | | | | 0 |
| x | | | trip pass | 0460623918 | prd | 0 | | | | 0 |
| x | | | trip pass | 0460623957 | prd | 0 | | | | 0 |
| x | | | trip pass | 0460624001 | prd | 0 | | | | 0 |
| x | | | trip pass | 0460624055 | prd | 0 | | | | 0 |
| x | | | trip pass | 0460624056 | prd | 0 | | | | 0 |
| x | | | trip pass | 0460624069 | prd | 0 | | | | 0 |
| x | | | trip pass | 0460624073 | prd | 0 | | | | 0 |
| x | | | trip pass | 0460624075 | prd | 0 | | | | 0 |

Exhibit B

| | | | | | |
|---|---|---|---|---|---|
| | | Total | | 1 | 0 |
| 37240 | 1114 | 7064927851 | | 0 | 0 |
| | trip pass | 0446002965 | prepd | 0 | 0 |
| | trip pass | 0445806124 | prepd | 0 | 0 |
| | trip pass | 0449673996 | prepd | 0 | 0 |
| | trip pass | 0446002964 | prepd | 0 | 0 |
| | trip pass | 0446002966 | prepd | 0 | 0 |
| | | TOTAL | | 0 | 0 |

Prepaid Trip Pass Sample

| | | | | | |
|---|---|---|---|---|---|
| 36346 | 751 | 0445652731 | prepd | 1 | 1 |
| 36482 | 67 | 0445058414 | prepd | 1 | 1 |
| 36482 | 67 | 0445895584 | prepd | 1 | 1 |
| 36482 | 67 | 0445924915 | prepd | 1 | 1 |
| 36579 | 67 | 0445053550 | prepd | 1 | 1 |
| 36579 | 67 | 0445013467 | prepd | 1 | 1 |
| 36579 | 67 | 0445053549 | prepd | 1 | 1 |
| 36622 | 750 | 0445057480 | prepd | 1 | 1 |
| 36622 | 750 | 0445744107 | prepd | 1 | 1 |
| 36622 | 750 | 0445814128 | prepd | 1 | 1 |
| 36622 | 750 | 0445814127 | prepd | 1 | 1 |
| 36622 | 750 | 0445029756 | prepd | 1 | 1 |
| 36622 | 750 | 0445744108 | prepd | 1 | 1 |
| 36622 | 750 | 0445840475 | prepd | 1 | 1 |
| 36622 | 750 | 0445840474 | prepd | 1 | 1 |
| 36622 | 750 | 0445014569 | prepd | 1 | 1 |
| 36622 | 750 | 0445093112 | prepd | 1 | 1 |
| 36622 | 750 | 0445093116 | prepd | 1 | 1 |
| 36622 | 750 | 0445197509 | prepd | 1 | 1 |
| 36622 | 750 | 0445057445 | prepd | 1 | 1 |
| 36622 | 750 | 0445176286 | prepd | 1 | 1 |
| 36622 | 750 | 0445739643 | prepd | 1 | 1 |
| 36622 | 750 | 0445093103 | prepd | 1 | 1 |
| 36622 | 750 | 0445055371 | prepd | 1 | 1 |
| 36757 | 32 | 0445424442 | prepd | 1 | 1 |
| 36757 | 32 | 0445379547 | prepd | 1 | 1 |
| 36757 | 32 | 0445424894 | prepd | 1 | 1 |
| 36757 | 32 | 0445056438 | prepd | 1 | 1 |
| 36757 | 32 | 0445424445 | prepd | 1 | 1 |
| 36757 | 32 | 0445518814 | prepd | 1 | 1 |
| 36976 | 94 | 0445736740 | prepd | 1 | 1 |
| 36976 | 94 | 0445718309 | prepd | 1 | 1 |
| 36976 | 94 | 0445773464 | prepd | 1 | 1 |
| 36976 | 94 | 0445763073 | prepd | 1 | 1 |
| 36976 | 94 | 0445745169 | prepd | 1 | 1 |
| 36976 | 94 | 0445736741 | prepd | 1 | 1 |
| 37035 | 30 | 0445722171 | prepd | 1 | 1 |
| 37035 | 30 | 0445819357 | prepd | 1 | 1 |
| 37140 | 2 | 0445512395 | prepd | 1 | 0 |
| 37140 | 2 | 0445789328 | prepd | 1 | 0 |
| 37140 | 2 | 0445800249 | prepd | 1 | 0 |
| 37140 | 2 | 0445846298 | prepd | 1 | 0 |
| 37140 | 2 | 0445848500 | prepd | 1 | 0 |
| 37140 | 2 | 0445848530 | prepd | 1 | 0 |
| 37140 | 2 | 0445849709 | prepd | 1 | 0 |
| 37140 | 2 | 0445849723 | prepd | 1 | 0 |
| 37140 | 2 | 0445849725 | prepd | 1 | 0 |
| 37140 | 2 | 0445850686 | prepd | 1 | 0 |
| 37140 | 2 | 0445851443 | prepd | 1 | 0 |
| 37140 | 2 | 0445851444 | prepd | 1 | 0 |
| 37140 | 2 | 0445851481 | prepd | 1 | 0 |
| 37140 | 2 | 0445851482 | prepd | 1 | 0 |
| 37140 | 2 | 0445851503 | prepd | 1 | 0 |
| 37140 | 2 | 0445886375 | prepd | 1 | 0 |
| 37240 | 1114 | 0446002965 | prepd | 1 | 0 |
| 37240 | 1114 | 0445806124 | prepd | 1 | 0 |
| 37240 | 1114 | 0449673996 | prepd | 1 | 0 |
| 37240 | 1114 | 0446002964 | prepd | 1 | 0 |
| 37240 | 1114 | 0446002966 | prepd | 1 | 0 |
| | | | Total | 59 | 38 |

PROCEDURES BY SALES SOURCE
WP B-02-1

All sales sources are processed essentially in the same manner.

Each sales report is manually reviewed, a separate worksheet prepared for input to revenue accounting database. During preparation for this audit, it was noted that XT is not always correctly allocated. Journal entries are prepared transferring data to the general ledger.

RASCAL is being implemented which will automatically review each ticket for correct ticket taxes.

*Deborah Martin*
**1/28/02**

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| CONTINENTAL AIRLINES, INC.<br>Plaintiff,<br>v.<br>THE UNITED STATES OF AMERICA,<br>Defendant. | ) | No. 06- 432C<br>( Senior Judge Margolis) |

DECLARATION OF KEVIN SHEA

I, Kevin Shea, make the following representations based upon my personal knowledge and upon facts made known to me in my capacity as an official of the Animal and Plant Health Inspection Service (APHIS) of the United States Department of Agriculture (USDA).

1. I am the Associate Administrator and Chief Operating Officer for the Animal and Plant Health Inspection Service (APHIS), United States Department of Agriculture (USDA). As Associate Administrator and Chief Operating Officer, it is my duty to ensure the smooth day-to-day functioning of APHIS. Prior to becoming Associate Administrator, I spent four years as the head of APHIS' Policy and Program Development staff (PPD). Before becoming the Director of PPD, I served as Director of APHIS' Budget and Accounting Division for eight years, following a short period of service as PPD's Assistant Director and a year practicing law at a private law firm.

In addition, I worked for APHIS for ten years as a budget analyst, section head, and chief of the Program Analysis Branch for the Budget and Accounting Division. Finally, I also served for three years as the Chief of the Policy Analysis and Development Staff of PPD. I am a graduate of the University of Maryland at College Park with a Bachelors degree in political science, and I earned a juris doctorate from the University of Baltimore School of Law.

2. APHIS' AQI ( Agricultural Quarantine Inspection) activities for international air passengers carried out pursuant to 21 U.S.C § 136a and 7 C.F.R. § 354.3(f) are funded solely by the fees that airlines are required to collect and remit to APHIS from every international air passenger that is subject to the fee. No appropriated funds are currently earmarked for APHIS' AQI activities for international air passengers and it is not expected that in the future such sums will be so earmarked. Although from the imposition of the AQI fees for international air passengers in 1991, to October 1, 2002, APHIS' international air passenger AQI activities were tied to appropriated funds, these activities were, in fact, in essence, solely funded by user fees, i.e., the fees that airlines are required to collect and remit to APHIS, pursuant to 21 U.S.C. § 136a and 7 C.F.R. § 354.3(f), from every international air passenger subject to the fee. The relationship between APHIS' international air passenger activities from 1991 to October 1, 2002, and appropriated funds was that the fees required to be collected and remitted by airlines were required to be used to provide reimbursements to any appropriations account that incurred the costs associated with these activities. Thus, in essence, APHIS' AQI activities for international air passengers were funded by the user fees required to be collected and remitted by airlines. From October 1, 2002, to date, APHIS' AQI international air passengers activities have not been tied in any manner to the appropriation of funds.

3. APHIS first proposed regulations for international air passenger AQI user fees and

their required collection and remittance by airlines from every international air passenger subject to the fee on February 27,1991 (56 Fed. Reg. 8148). These regulations were subsequently finalized and implemented on May 13, 1991 ( 56 Fed. Reg. 14837 ).

4. Since APHIS implemented the international air passenger regulations, currently set forth in 7 C.F.R. § 354.3(f), APHIS, or the Department of Homeland Security on behalf of APHIS, has performed audits of Continental Airlines to determine whether it has complied with APHIS' statute (21 U.S.C. § 136a) and regulations (7 C.F.R. § 354.3(f)) which require airlines to collect and remit a fee from every international passenger who arrives aboard a commercial aircraft at a port of entry in the United States or who is preinspected for agricultural safety purposes outside the customs territory of the United States prior to arriving at a port of entry, subject only to the exemptions in 7 C.F.R. § 354.3(f)(2).

5. It was not until May 2006, when Continental first filed a complaint in the United States Court of Federal Claims, which it subsequently amended, which occurred over ten years after the international air passenger inspection fee regulations had been implemented, and over 10 years after the first audit had been conducted of Continental in 1993, that Continental asserted that it was not required to remit a fee to APHIS for every international air passenger that it was required to collect such a fee from, if it had not collected the fee, as required.

6. APHIS has consistently interpreted its statute (21 U.S.C. § 136a) and its implementing regulations ( 7 C.F.R. 354.3(f)) as requiring airlines to remit to it all of the international air passenger inspection fees that they are required to collect and that such remittances must be made for every passenger that is subject to the APHIS international air passenger inspection fee. To the best of my knowledge, Continental has paid APHIS the amount of liability determined to be owed

by it, as the result of audits conducted of it, for international air passenger inspection fees, without asserting it was not responsible for remitting to APHIS a fee for passengers from whom it did not "allegedly" collect the fee, as required, until the most recent audit conducted of it in 2006.

7. If Continental had informed APHIS, in a timely fashion years ago, that it believed that it was unlawful to require it to remit a fee to APHIS for every international air passenger from whom it was required to collect the fee, when it did not collect the fee, APHIS could have, and almost certainly would have, taken actions to address Continental's claim .

In addition, had Continental informed APHIS in a timely fashion years ago of its belief, APHIS could have, and almost certainly would have, conducted the audits it did itself differently and had those conducted by another agency on its behalf done differently, with respect to Continental's collection and remittance of international air passenger fees to at a minimum heighten its internal control review of Continental to pinpoint problem areas.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 15th day of Mar 2007 in Washington, D.C.

Kevin Shea

Kevin Shea