Civil Action No. 06-432C
Judge Lawrence S. Margolis

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

CONTINENTAL AIRLINES, INC.

Plaintiff,

v.

THE UNITED STATES OF AMERICA

Defendant.

# PLAINTIFF'S REPLY BRIEF IN SUPPORT OF ITS CROSS MOTION FOR PARTIAL SUMMARY JUDGMENT AND BRIEF IN OPPOSITION TO DEFENDANT'S CONDITIONAL MOTION FOR A CONTINUANCE

Adam P. Feinberg
MILLER & CHEVALIER CHARTERED
655 Fifteenth Street, N.W.
Washington, D.C. 20005
(202) 626-6087
(202) 626-5801 (Facsimile)

Counsel for Plaintiff

*Of Counsel*:
Robert K. Huffman
MILLER & CHEVALIER CHARTERED
655 15th Street, N.W.
Washington, D.C. 20005
(202) 626-5824
(202) 626-5801 (Facsimile)

April 9, 2007

# TABLE OF CONTENTS

**PAGE**


TABLE OF CONTENTS ........ i

TABLE OF AUTHORITIES ........ ii

ARGUMENT ........ 2

I. THE STATUTES AND REGULATIONS ARE CLEAR ON THEIR FACE THAT LIABILITY IS IMPOSED ON AIRLINES ONLY FOR COLLECTED USER FEES ........ 2

II. BEYOND THE TEXTS OF THE STATUTES AND REGULATIONS, EVERY OTHER INDICATION IS THAT LIABILITY IS IMPOSED ON AIRLINES ONLY FOR COLLECTED USER FEES ........ 4

III. A RULING IN CONTINENTAL'S FAVOR WILL NOT HARM THE GOVERNMENT'S ABILITY TO COLLECT USER FEES, AND SUCH AN ARGUMENT CANNOT OVERCOME THE PLAIN MEANING OF THE STATUTES AND REGULATIONS ........ 8

IV. THE GOVERNMENT'S PURPORTED AFFIRMATIVE DEFENSES CANNOT PREVENT SUMMARY JUDGMENT ON LIABILITY ........ 9

V. THERE IS NO NEED FOR THE GOVERNMENT TO RECEIVE A CONTINUANCE TO CONDUCT DISCOVERY BEFORE THIS COURT RULES ON THE PARTIES' CROSS MOTIONS AS TO LIABIILTY ........ 13

CONCLUSION ........ 13

# TABLE OF AUTHORITIES

## CASES

**PAGE**

*Air Tour Acquisition Corp. v. United States*,
781 F. Supp. 669 (D. Haw. 1991) ... 4, 5, 6

*American Airlines, Inc. v. United States*,
68 Fed. Cl. 723 (2005) ... 4, 7, 11

*American Airlines, Inc. v. United States*,
71 Fed. Cl. 744 (2006) ... 4

*American Airlines, Inc. v. United States*,
75 Fed. Cl. 237 (2006) ... 12

*Bank of America v. United States*,
217 Ct. Cl. 731 (1978) ... 12

*Buder v. United States*,
7 F.3d 1382 (8th Cir. 1993) ... 12

*Mahoney v. United States*,
223 Ct. Cl. 713 (1980) ... 12

*McLennan v. United States*,
23 Cl. Ct. 99, 105-07 (1991) ... 12

*Missouri Pacific R.R. v. United States*,
338 F.2d 668 (Ct. Cl. 1964) ... 12

*Ogden v. Maxwell*,
18 F. Cas. 613 (S.D.N.Y. Cir. Ct. 1855) ... 10

*Swift Co. v. United States*,
111 U.S. 22 (1884) ... 10

*Turks Head Club v. Broderick*,
166 F.2d 877 (1st Cir. 1948) ... 4, 6

*United States Telecomm. Ass'n v. FCC*,
359 F.3d 554 (D.C. Cir. 2004) ... 4

## STATUTES AND REGULATIONS

8 U.S.C. § 1356 ........ 3

21 U.S.C. § 136a ........ 2, 3, 6, 8

26 U.S.C. § 6511 ........ 10

28 U.S.C. § 1292 ........ 4

49 U.S.C. § 41101 ........ 9

49 U.S.C. § 41110 ........ 9

49 U.S.C. § 44940 ........ 5

7 C.F.R. § 354.3 ........ 3, 6, 8

8 C.F.R. § 286.4 ........ 6, 7

8 C.F.R. § 286.5 ........ 3

8 C.F.R. § 286.7. ........ 9

## MISCELLANEOUS

Airport and Airway Development and Revenue Act,
Pub. L. No. 91-258, 84 Stat. 219 (1970) ........ 5

Rev. Rul. 72-10, 1972-1 C.B. 343 ........ 6

Treas. Reg. § 601.105 ........ 11

Internal Revenue Manual § 34.5.2.2.1 (2004) ........ 10

56 Fed. Reg. 8148 (Feb. 27, 1991) ........ 8

57 Fed. Reg. 755 (Jan. 9, 1992) ........ 8

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| CONTINENTAL AIRLINES, INC.<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES OF AMERICA,<br><br>Defendant. | Civil Action No. 06-432C<br>Judge Lawrence S. Margolis |

**PLAINTIFF'S REPLY BRIEF IN SUPPORT OF ITS CROSS MOTION FOR PARTIAL SUMMARY JUDGMENT AND BRIEF IN OPPOSITION TO DEFENDANT'S CONDITIONAL MOTION FOR A CONTINUANCE**

Plaintiff Continental Airlines, Inc. ("Continental") respectfully submits this reply brief in support of its Cross Motion for Partial Summary Judgment and brief in opposition to the Government's Conditional Motion for a Continuance and Discovery Pursuant to RCFC 56(f).

In its Opposition and Reply (Doc. No. 23), the Government sets aside the applicable statutes and regulations and requests that this Court enact new law by presuming substantive penalty provisions that would make airlines liable for user fees they do not collect. Not content with this, the Government even proposes a new safe harbor provision to exempt airlines from such liability in certain circumstances. Binding precedent mandates that these attempts to rewrite the law must fail.

The Government must also fail in its attempt to equate a ruling in Continental's favor with a license for airlines to ignore their fee collection responsibilities. The laws fix stiff penalties and provide for other enforcement actions against a carrier that refuses to carry out its duty to collect user fees. However, holding the carrier liable for uncollected fees is not one of them. In any event, as Continental's collection statistics reveal, it has diligently collected user

fees from its customers. The Government is thus forced to take the extreme position that Continental should be liable for each and every uncollected fee regardless of the reason the fee went uncollected (and so long as the Government's invented safe harbor does not apply).

This case presents a straightforward issue of statutory construction. Accordingly, Continental agrees with the Government that the Court need not make determinations with respect to several facts, *e.g.*, whether Continental has effective mechanisms for collecting the user fees, whether Continental can force a passenger to pay a user fee, or whether foreign passengers sometimes assert an immunity to U.S. user fees and thus refuse to pay. *See* Gov't Opp. & Reply at 1. Although they make up part of the background "story" of this case, liability under the statutes and regulations does not turn on any of those facts. Thus, as the Government has itself asserted, "[t]he threshold questions of liability can, and should, be resolved upon the basis of the limited facts that [the Government] assumed to be true." *Id.* at 2. For this reason, the Government's Conditional Motion for a Continuance should be denied.

## ARGUMENT

### I. THE STATUTES AND REGULATIONS ARE CLEAR ON THEIR FACE THAT LIABILITY IS IMPOSED ON AIRLINES ONLY FOR COLLECTED USER FEES

The Government's mantra that the user fee statutes and regulations are mandatory in nature and provide that airlines "shall collect" the user fees is of course correct. But the relevant question is not whether the airlines' obligation to collect is mandatory in nature; that is evident. Rather, the critical issue is whether an airline is strictly liable for the user fees when it does not successfully carry out its obligation in some instances. The statutes unambiguously answer that question in the negative, requiring only that *collected* user fees be remitted to the Government: "Fees *collected* . . . *shall be remitted* to the Secretary" and an airline "who *collects fees* . . . shall remit *those fees* to the Attorney General." 21 U.S.C. § 136a(a)(3) (emphasis added); 8 U.S.C.

§ 1356(f)(3) (emphasis added). In addition, every other direct indication in the texts of the statutes and regulations is that airlines are responsible for remitting to the Government only those user fees actually collected from passengers. *See* Pl.'s Opening Br. at 15-16, 18-19. Contrary to the statutory language, the Government asserts that the mandatory obligation to collect user fees and to remit what is collected implies that airlines should also be liable for any fees they do not collect. *See, e.g.,* Gov't Opp. & Reply at 3. As the Government puts it, the regulation should be interpreted to mean "that each airline 'is responsible' for remitting to the Government every user that should be collected." *Id.* at 6-7. Even though that idea would have been easy for Congress or the agencies to express, that is simply not what the statutes or the regulations say. Instead, they consistently require the remittance not of "every user fee that should be collected," but rather of those user fees that are *actually collected.* 8 U.S.C. § 1356(f)(3); 21 U.S.C. § 136a(a)(3); 8 C.F.R. § 286.5(a); *id.* § 286.5(b)(1); 7 C.F.R. § 354.3(f)(5)(i); *id.* § 354.3(f)(5)(ii).

This clear statutory and regulatory language precludes the Government's arguments both that (1) the statutes and regulations by their express terms place liability on airlines for uncollected user fees, and (2) failing that, the agencies reasonably interpreted the statutes and regulations as placing such liability on airlines. *See* Gov't Opp. & Reply at 8.

With respect to the Government's second, fall-back argument, the Government is incorrect when it claims that Continental argues that the agencies are not entitled to any deference because "rather than being ambiguous, the statute and regulations are merely 'silent' with respect to whether airlines must remit 100 percent of the fees they are required to collect." Gov't Opp. & Reply at 7. Instead, and as stated above, Continental's argument is that the statutes and regulations are clear and unambiguous on their face that airlines are required to

remit only what they collect from passengers. That is precisely what Judge Braden has already concluded in the *American Airlines* case: the "text permits only one reading: collected [Immigration user] fees must be remitted to the Government" and "the plain meaning of the AQI [APHIS] User Fee Regulations is inopposite to the interpretation that the Government now seeks to advance" because "liability to pay this fee is imposed on the passenger, not upon the commercial airlines that are required only to collect and to remit any fees collected." *American Airlines, Inc. v. United States*, 68 Fed. Cl. 723, 731, 732 (2005). Indeed, Judge Braden expressly "reject[ed] the Government's assertion that there are two plausible readings" and therefore held that there was not a "substantial ground for a difference of opinion" regarding the meaning of the statutory and regulatory texts so as to meet the requirements for an interlocutory appeal under 28 U.S.C. § 1292(d)(2). *American Airlines, Inc. v. United States*, 71 Fed. Cl. 744, 746 (2006). The only "silence" in the statues or regulations is that they do not expressly forbid the agencies from holding airlines liable for uncollected user fees. But as the Government itself points out, "the failure of Congress to use 'Thou Shalt Not' language doesn't create a statutory ambiguity of the sort that triggers Chevron deference." Gov't Opp. & Reply at 7 (*quoting United States Telecomm. Ass'n v. FCC*, 359 F.3d 554, 566 (D.C. Cir. 2004)).

## II. BEYOND THE TEXTS OF THE STATUTES AND REGULATIONS, EVERY OTHER INDICATION IS THAT LIABILITY IS IMPOSED ON AIRLINES ONLY FOR COLLECTED USER FEES

The plain text of the statutes and regulations resolves the question of liability in Continental's favor. However, even if this Court chose to look beyond those texts, every other conceivable indication is that airlines are not liable for uncollected user fees. These indications include:

- Cases like *Air Tour Acquisition Corporation v. United States*, 781 F. Supp. 669 (D. Haw. 1991) and *Turks Head Club v. Broderick*, 166 F.2d 877, 881 (1st Cir. 1948) – not to

mention *American Airlines* – that interpret nearly identical statutory "shall collect" language as not imposing liability on the collector for uncollected amounts. *See* Pl.'s Opening Br. at 20, 22-23.

- The absence in the user fee statutes and regulations of unmistakable language imposing liability on the collector – language that Congress has used in other user fee statutes, such as the $2.50 September 11th passenger security fee. *See id.* at 21-22.
- The historical concepts of "collected" and "incurred" taxes and user fees that reveal that a duty to collect does not imply a duty to pay what is not collected. *See id.* at 19-21.

Because they lead to the inescapable conclusion that there is no liability on airlines for uncollected user fees, the Government attempts to side-step these arguments by claiming that they should apply only to "taxes," but not to "users fees." Gov't Opp. & Reply at 8-9. This argument underscores the emptiness of the Government's position. First, several of Continental's supporting arguments specifically address user fees, not taxes. For example, when creating the September 11th passenger security fee, Congress clearly created an "incurred" user fee scheme that placed liability on airlines for uncollected user fees. *See* 49 U.S.C. § 44940(d)(2) (if the fee "is not collected from the passenger, the amount of the fee shall be paid by the carrier"). The air transport excise "tax" at issue in *Air Tour* is also really a user fee. In 1970 Congress passed the Airport and Airway Development and Revenue Act, Pub. L. No. 91-258, 84 Stat. 219 (1970) which changed the air transport excise "tax" to a "user charge:"

> Congress eliminated the previous statutory exemptions which had applied to the then applicable tax on transportation of persons by air and, in doing so, stated "the taxes on the transportation of persons and property by air are now generally viewed as user charges properly applicable in the case of all users." *See* Senate Report No. 91-706, C.B. 1970-1, 386 at 396.
>
> In view of the foregoing, it is considered that the imposts provided by the Act are not "taxes" as that term is used in international comity and treaties. Accordingly,

> it is held that the taxes imposed by the Airport and Airway Revenue Act of 1970 are applicable to transportation services involving foreign diplomats, consular and other officers, and agencies or commissions of foreign governments. It is further held that all the taxes imposed by the Act apply with respect to employees of international organizations, even though such employees are otherwise exempt from certain Federal excise taxes by virtue of statutory or treaty provisions.

Rev. Rul. 72-10, 1972-1 C.B. 343, 343-44 (Exhibit 1 hereto).

Second, and more importantly, whether taxes or user fees, the underlying concepts are the same and the statutes use exactly the same "shall collect" language. The Government admitted as much when it argues that "tax refund lawsuits . . . are closely analogous to illegal exaction claims." Gov't Opp. & Reply at 16. Despite the obvious analogy, the Government made no effort to reconcile its theory – that a statute dictating that airlines "shall collect" a fee inherently means they are liable if they fail to do so – with *Air Tour*, *Turks Head Club*, and the other "tax" authorities, all of which held the exact opposite.

The Government also ignores other aspects of the statutes and regulations that demonstrate that airlines are not liable for uncollected user fees. For example, although discussed in Continental's opening brief (at 4-5, 24), the Government never addressed how its position can be reconciled with the fact that the Immigration User Fee Regulations contain express penalty provisions that no not include airline liability for uncollected user fees. Likewise, the Government ignored Continental's argument that the APHIS User Fee Statute's creation of a trust that includes only collected fees indicates that airlines are liable only for collected fees. 21 U.S.C. § 136a(a)(3); 7 C.F.R § 354.3(f)(4)(C); *see also Air Tour*, 781 F. Supp. at 673-75.

Nor did the Government adequately address the Immigration User Fee Regulations' provision requiring an airline to report a passenger who refuses to pay. *See* 8 C.F.R. § 286.4(c). As Judge Braden pointed out, "[i]f the carrier was liable for the [uncollected] fees, providing that

information would serve no purpose." *American Airlines*, 68 Fed. Cl. at 731. To deal with this fundamental problem, the Government creates, from whole cloth, an exception to an airline's purported Immigration User Fee liability for uncollected user fees. According to the Government, the exception applies if the airline notifies the agency of a passenger's refusal to pay the Immigration User Fee in accordance with 8 C.F.R. § 286.4(c). Gov't Opp. & Reply at 3. Aside from the fact that there is nothing in the regulations (or the statute) that suggests that liability will turn on airlines giving this notice, this argument only reveals the inconsistency in the Government's position. By definition, embedded in this claim is an admission that there are circumstances when an airline should not be liable even when it does not collect a user fee. Should it not be the case, then, that there is no liability for APHIS User Fees an airline cannot collect because the passengers refuse to pay? There are no notice requirements under the APHIS User Fee Statute or Regulations, nor has APHIS even informally requested that it be given such notice. Thus, even under the Government's theory, there are no other requirements Continental needed to meet to avoid liability for APHIS User Fees that it did not collect when passengers refused to pay. Nonetheless, the Government continues to maintain that Continental should be liable in such circumstances. This inconsistency is caused by the Government's interpreting the laws based on its various litigation positions instead of on the texts of the statutes and regulations

themselves.[1]

## III. A RULING IN CONTINENTAL'S FAVOR WILL NOT HARM THE GOVERNMENT'S ABILITY TO COLLECT USER FEES, AND SUCH AN ARGUMENT CANNOT OVERCOME THE PLAIN MEANING OF THE STATUTES AND REGULATIONS

Rather than address the texts of the statutes and regulations or Continental's other arguments, the Government seeks to evoke the Court's sympathy by urging a ruling in the Government's favor in order to "avoid[] gutting the Government's ability to fully obtain user fees." Gov't Opp. & Reply at 9. Similarly, the Government claims that a ruling for Continental "would effectively drain those provisions of significance, by affording airlines discretion to decide whether to collect the immigration user fee when due" (*id.* at 6; *see also id.* at 12) and "would raise grave concerns with respect to the funding of AQI" (*id.* at 10). The Government's

[1] Although resolution of this issue is not critical to Continental's position, the Government attempts to deny that APHIS considered that some passengers would refuse to pay the user fees when it first set the amount of the fee in 1991. Gov't Opp. & Reply at 14. This attempt is unpersuasive. In 1991, APHIS stated that it:

> also included in the proposed fee an amount which would provide for a reasonable balance in the [user fee] Account . . . , [which, among other things, would] be used to offset any uncollectible debts that result when clients are unwilling or unable to pay for our services.

56 Fed. Reg. 8148, 8151 (Feb. 27, 1991). The plain meaning of this statement is that "clients" refers to the passengers who pay the fees and receive the inspection services. The user fees currently found at 7 C.F.R. § 354.3(e) that are paid directly by airlines were not proposed until August 7, 1991 – after the date of the above statement. *See* 57 Fed. Reg. 755 (Jan. 9, 1992). Thus, because no user fees applied to airlines when the statement was published on February 27, 1991, "clients" cannot refer to airlines, but instead must mean the passengers who pay the user fees and receive the services. Now, 16 years later, a Government declarant claims that the statement above was intended to refer to the fact that "airlines might go out of business before remitting the fees that they were required to collect or might not remit the full amount of the fees due as a result of a bankruptcy proceeding filed or some other matter occurring that affected their financial solvency." Ford Decl. ¶ 9 (Gov't App. at 32). However, the Government's *post hoc* interpretation is inconsistent with the APHIS User Fee Statute's provision that fees collected "are held in trust for the United States." 21 U.S.C. § 136a(a)(3); *see also* 7 C.F.R. § 354.3(f)(4)(i)(C). This provision ensures that the United States will not lose any collected fees due to the bankruptcy of an airline. In addition, while bankrupt airlines could possibly be what is meant by clients who are "unable to pay," such airlines would not constitute clients who are "*unwilling* . . . to pay." These clients, more likely, are passengers who refuse to pay the fees.

hyperbole notwithstanding, these concerns are nonexistent. First, Continental does not, has not, and cannot contend that it has the discretion not to collect the user fees. Continental's approximately 99% success rate in collecting and remitting the fees demonstrates its, and the flying public's, commitment to follow the law. Second, this case is not – and never has been – about an airline choosing not to collect the fees; it is about the *inability* to collect in certain limited circumstances. Third, in the unlikely event that an airline chose not to institute procedures to collect the fees, there are ample enforcement mechanisms available to the Government, but holding the airline liable for the uncollected fees is not one of them. Most obvious are the penalties expressly set forth in the Immigration User Fee Regulations (8 C.F.R. § 286.7). The agencies could also sue an airline to enjoin continued violation of the law requiring collection. In addition, the Department of Transportation could sanction the carrier by terminating its ability to transport passengers as an air carrier.[2] Moreover, even if the Government's concerns are valid (which they are not), they would be insufficient to overcome the plain language of the statutes and regulations that require the remittance only of collected user fees.

## IV. THE GOVERNMENT'S PURPORTED AFFIRMATIVE DEFENSES CANNOT PREVENT SUMMARY JUDGMENT ON LIABILITY

The Government states that it anticipates asserting four affirmative defenses: accord and satisfaction, laches, equitable estoppel, and waiver. Gov't Opp. & Reply at 15. "The crux of all of the above defenses . . . is that Continental unfairly misled and/or prejudiced the Government by waiting until now to allege illegal exaction, after cooperating in the user fee audits for years."

---

[2] An air carrier is permitted to transport passengers only if it holds a certificate from the Department of Transportation ("DOT"). 49 U.S.C. § 41101(a)(1). The DOT may revoke any such certificate if it finds the air carrier "is not fit, willing, and able to provide the transportation authorized by the certificate." *Id.* § 41110(e)(2).

*Id.* Specifically, the Government claims that had it known of Continental's claims, it would have "required proof [during the user fees audits] that Continental did not collect the fees." *Id.* These claims are baseless, and the facts even as told by the Government declarants reveal that these affirmative defenses cannot succeed.

The Government does not allege that Continental did anything to affirmatively mislead the Government. Instead, the Government's defenses are all based on the premise that Continental should have raised its claims during the user fee audits so that the Government could have conducted its audits differently. In other words, the Government asserts that Continental was required to raise it objections before the Government even issued the audit assessments against Continental. The Government's argument, however, must fail for at least three independent reasons.

First, there is no authority for such a position and the Government certainly does not cite any. To the contrary, it has long been held that funds illegally exacted by the Government may be recovered, regardless of whether the plaintiff previously raised any protest and regardless of any course of conduct between the parties. *See, e.g., Swift Co. v. United States*, 111 U.S. 22, 29 (1884) (*citing Ogden v. Maxwell*, 18 F. Cas. 613 (S.D.N.Y. Cir. Ct. 1855) for the proposition "that illegal fees exacted by a collector, though sanctioned by a long-continued usage and practice in the office, under a mistaken construction of the statute, even when paid without protest, might be recovered back, on the ground that the payment was compulsory and not voluntary"). Even under current tax law, a party may file a "claim for refund" (and if needed, a tax refund suit) years after an IRS audit has closed, without ever having raised an objection previously, much less during the audit itself. *See* 26 U.S.C. § 6511(a); Internal Revenue Manual § 34.5.2.2.1 (2004) ("Even after signing the waiver [accepting the deficiency asserted by the IRS

in an audit] and paying the tax, the taxpayer may still contest the [liability] by filing a claim for refund"). As stated in the Treasury Regulations:

> At the conclusion of an office or field examination [*i.e.*, an audit], the taxpayer is given an opportunity to agree with the findings of the examiner. . . . If the taxpayer does agree with the proposed changes, the examiner will invite the taxpayer to execute [a waiver] . . . . [T]he taxpayer who has given a waiver may still claim a refund of any part of the deficiency assessed against, and paid by, the taxpayer or any part of the tax originally assessed and paid by the taxpayer. The taxpayer's acceptance of an agreed overassessment does not prevent the taxpayer from filing a claim and bringing a suit for an additional sum . . . .

Treas. Reg. § 601.105(b)(4).

Second, the Government's claim that it would have acted differently had it only known of Continental's position fails as a factual matter. The Government claims that had it known of Continental's claim, it would have required proof during the audits that the user fees in question were actually uncollected. Gov't Opp. & Reply at 15. But the Government's own audit supervisor acknowledges that the Government did not ask for such proof in the most recent user fee audit, even though the audit field work was still ongoing when Continental filed its Complaint in this case. Nicholson Decl. ¶¶ 12-13 (Gov't App. at 79). The Government auditors also knew about the November 2005 *American Airlines* decision upholding another airline's identical claim before the Government even started the most recent audit of Continental. *Id.* ¶ 14. Aside from this, other Government auditors also contradict the Government's claim when they state that had Continental objected to being held liable for uncollected user fees, the agency would have "taken earlier actions to clarify that it is lawful to require Continental . . . to remit [user] fees that it did not collect." Blessing Decl. ¶ 15 (Gov't App. at 18); Robinson Decl. ¶ 15 (Gov't App. at 3). In other words, the Government is still stubbornly clinging to the belief that it is entitled to hold airlines liable for uncollected user fees, even after learning of the airlines' position and having lost the *American Airlines* case. Under that belief, it has no reason to change

its audit methodology, which is perhaps why it chose not to do so in its most recent audit of Continental.

Third, the Government cannot have been prejudiced – even assuming the validity of its factual assertion that had it known of Continental's claim it would have required proof during the audits that the user fees in question were actually uncollected. The simple reason for this is that the Government will be free in this lawsuit to take discovery and to challenge Continental's assertion that the user fees were uncollected. Indeed, that is the very point the Government makes on page 16 of its Opposition and Reply, and the precise reason why Continental has moved for summary judgment only as to liability, but not damages.[3]

For these reasons, the Government's purported affirmative defenses should not prevent this Court from granting summary judgment as to liability only.

---

[3] Although Continental agrees with the Government that it may take discovery relating to the question of damages (including discovery regarding whether the user fees at issue in this case were uncollected as Continental alleges), Continental disagrees with the assertion that it "must establish a difference between (i) the user fees it actually owed the Government for a given audit period and (ii) the amount it paid for that period." Gov't Opp. & Reply at 16. That is not the law, as Judge Braden held in her November 30, 2006 Opinion. *American Airlines, Inc. v. United States*, 75 Fed. Cl. 237, 241-42 (2006). Continental also disagrees with the Government's characterization of Judge Braden's decision, including the claim that the Government was "denied . . . discovery of documents and facts outside the metes and bounds of the individual user fees audits" and the claim that Judge Braden "characterized [the Government's] request for ordinary damages discovery as amounting to the assertion of a 'counterclaim' or an 'offset.'" Gov't Opp. & Reply at 16-17. Instead, Judge Braden held (as have many other courts), that discovery is limited to the particular taxes or user fees the plaintiff seeks to have refunded, and that the total amount of taxes or user fees paid is irrelevant unless the Government challenges some aspect of such total amount by timely pleading a counterclaim or offset. *American Airlines, Inc. v. United States*, 75 Fed. Cl. 237, 241-42 (2006); *Mahoney v. United States*, 223 Ct. Cl. 713 (1980); *McLennan v. United States*, 23 Cl. Ct. 99, 105-07 (1991); *Bank of America v. United States*, 217 Ct. Cl. 731 (1978); *Missouri Pacific R.R. v. United States*, 338 F.2d 668, 671-72 (Ct. Cl. 1964); *Buder v. United States*, 7 F.3d 1382, 1386 (8th Cir. 1993). In any event, these issues are irrelevant to the motions addressing liability that are presently before the Court. If the Court grants Continental's motion, presumably the parties will brief these issues during the damages phase of the case.

## V. THERE IS NO NEED FOR THE GOVERNMENT TO RECEIVE A CONTINUANCE TO CONDUCT DISCOVERY BEFORE THIS COURT RULES ON THE PARTIES' CROSS MOTIONS AS TO LIABILITY

As stated above, Continental agrees with the Government that the facts set forth in its Conditional Motion for a Continuance and Discovery Pursuant to RCFC 56(f) (Doc. No. 24) and the supporting declaration (Doc. No. 24-2) need not be resolved in order to adjudicate Continental's summary judgment motion. While these facts provide some background and are part of the overall story of the case, they are not essential. The Government does not contest the core facts in this case, including that the user fees audits were conducted, that the Government assessed Continental for user fees it did not collect from passengers, and that Continental paid those assessments. Accordingly, Continental requests that the Government's Conditional Motion be denied.

## CONCLUSION

For these reasons, Continental respectfully requests that this Court grant partial summary judgment in Continental's favor as to liability on all counts in the Complaint.

Respectfully submitted,

s/ Adam P. Feinberg

Adam P. Feinberg
MILLER & CHEVALIER CHARTERED
655 15th Street, N.W.
Washington, D.C. 20005
(202) 626-6087
(202) 626-5801 (Facsimile)
Counsel for Plaintiff

*Of Counsel*:
Robert K. Huffman
MILLER & CHEVALIER CHARTERED
655 15th Street, N.W.
Washington, D.C. 20005
(202) 626-5824
(202) 626-5801 (Facsimile)

Dated: April 9, 2007