# In the United States Court of Federal Claims

| | | |
|---|---|---|
| CONTINENTAL AIRLINES, INC., Plaintiff, | | No. 06-432C |
| v. | | (Filed: July 12, 2007) |
| THE UNITED STATES, Defendant. | | Illegal Exaction Claim; Agricultural Quarantine Inspection User Fee, 21 U.S.C. § 136(a); Immigration User Fee Statute, 8 U.S.C. §§ 1356, et seq. |

*Adam P. Feinberg*, Miller & Chevalier Chartered, Washington, D.C., for plaintiff. *Robert K. Huffman*, Miller & Chevalier Chartered, of counsel.

*Kyle Chadwick*, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., with whom were *Peter D. Keisler*, Assistant Attorney General, and *Jeanne E. Davidson*, Director, for defendant. *Andrew S. Kosegi*, Attorney, U.S. Customs and Border Protection, Indianapolis, Indiana, and *Cynthia A. Koch*, Senior Counsel, United States Department of Agriculture, Washington, D.C., of counsel.

## OPINION

MARGOLIS, *Senior Judge*.

This illegal exaction case is before the Court on defendant's motion to dismiss for failure to state a claim and plaintiff's motion for partial summary judgment on the issue of liability. The Court held a hearing on the motions on May 17, 2007. Plaintiff Continental Airlines, Inc. ("Continental") is suing to recover from the defendant, the United States, $2,202,333, paid in response to government audits of user fees for international airline passengers. Continental argues that the government lacks statutory and regulatory authority to require air carriers to pay fees that the carriers did not collect from passengers.

The Court agrees with the analysis of virtually identical issues in American Airlines, Inc. v. United States, 68 Fed. Cl. 723 (2005) (Braden, J.) (granting summary judgment on issue of liability in airline's illegal exaction claim). The agencies' interpretations of the relevant statutes and regulations are not entitled to deference because neither the statutes nor the implementing regulations are ambiguous. The intent of Congress is clear in the statutes, and the plain language of the regulations is equally clear. Airlines must collect the user fees at issue, and they must remit to the appropriate agency the user fees that they collect, but the government is not authorized to require payment of user fees that were not collected. After considering the briefs and oral arguments from both parties, the Court grants partial summary judgment as to liability for plaintiff and denies defendant's motion to dismiss.[1]

## FACTS

To offset the costs of inspections for immigration, customs, and other purposes, the federal government charges user fees to certain international air travelers. The two user fees at issue in this case relate to immigration inspection ("immigration inspection user fee") and agricultural quarantine and inspection services ("AQI user fee").[2] Both fees were established by the U.S. Congress and are implemented through regulations of the U.S. Departments of Homeland Security and Agriculture, respectively. They are authorized at 8 U.S.C. § 1356 and 21 U.S.C. § 136a. The immigration inspection user fee currently is $7 per passenger, and the AQI user fee is now $5 per passenger.

The user fee systems function in generally the same way. The fee should be collected from the passenger at the point of sale. If it is not, and/or the passenger's ticket is not marked to reflect payment of the fee, the air carrier is responsible for collecting the fee when the individual departs the United States. The air carriers then remit the user fees to the appropriate U.S. government account.

Since at least 1999, the government has conducted audits of Continental's collection and remittance of these user fees, as well as other fees not at issue in this case. During the audits, government representatives reviewed a sample of tickets issued by Continental for evidence that a particular user fee had been paid. If there was no evidence that the user fee had been paid or that the passenger was exempt from the fee, the ticket was deemed an "error." The auditors

[1] In a footnote on page one of its Motion to Dismiss, the government listed affirmative defenses that it "would present, if necessary, in a summary judgment motion or at trial." The Court notes that its decision today addresses only the two dispositive motions previously briefed. The grant of summary judgment does not preclude the Court from dismissing plaintiff's claims if, at a later date, defendant pleads these affirmative defenses, and the Court finds them meritorious.

[2] Defendant refers to the agricultural quarantine inspection services fee as the "AQI user fee," while plaintiff calls it the "APHIS user fee" in reference to the division within the U.S. Department of Agriculture that originally conducted the inspections. For ease of discussion, the Court will refer to these fees as AQI user fees.

calculated an "error rate" by dividing the number of errors by the total number of qualifying tickets in the sample. They then applied this error rate to the total dollar amount that Continental had remitted for that particular user fee during the audit period. The government assessed liability against Continental for the resulting amount. After each audit, Continental paid the government the liability amount. For the immigration inspection user fees, Continental paid: $420,784, in October 2001; $414,639, in December 2002; $230,547, in July 2004; and $62,503, in September 2006. For the AQI user fees, Continental paid: $863,979, in July 2002; $109,535, in July 2004; and $30,428, plus an additional $5,755, in September 2006. Continental also paid interest and penalty charges of $15,476, on the 2004 AQI user fee assessment, and $48,687, on the 2002 AQI user fee assessment. Continental's total payments for the audit assessments on the two user fees was at least $2,202,333. It is this money that Continental seeks to be reimbursed from the government for illegal exactions.

## DISCUSSION

Plaintiff claims the government illegally exacted money by requiring payment for all the immigration inspection and AQI user fees Continental *should have* collected, rather than the remittance of those fees the airline *actually* collected. The Court's jurisdiction "includes illegal exaction claims, which are those where the claimant seeks the return of all or part of a sum of money he has been improperly required to pay by the Government in contravention of the Constitution, a statute, or a regulation." Figueroa v. United States, 66 Fed. Cl. 139, 146 (2005), cert. denied, 127 S. Ct. 2248 (2007) (citations omitted). Summary judgment is appropriate when there is no dispute as to a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The material facts necessary to resolve the issue of liability are not in dispute: "[t]o resolve a series of Government audits, Continental has paid amounts that were determined to be owed to the Government for immigration inspection and AQI user fees that Continental should have collected during the audit periods, but did not collect." Defendant's Opposition Brief at 2. Whether these payments were contrary to the relevant statutes and regulations is a legal issue for the Court to decide.

Defendant argues that the agencies' interpretation of the statutes and regulations – that air carriers are required to remit user fees for every international passenger that is subject to the fees – is entitled to deference from the Court under Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842-44 (1984) (courts should "give effect to the unambiguously expressed intent of Congress" but give deference to an agency's interpretation of a statute that is silent or ambiguous on an issue), and Auer v. Robbins, 519 U.S. 452, 461 (1997) (agency's interpretation of its own regulations controls unless "plainly erroneous or inconsistent with the regulation" (citations omitted)). However, agency interpretations are entitled to substantial deference only when the statutes and regulations at issue are ambiguous. Gonzales v. Oregon, 546 U.S. 243, 255-57 (2006) (denying deference to an agency interpretation of regulations that merely paraphrased the authorizing statute). The Court will not uphold agency action that is "contrary to statute or devoid of administrative authority." See Aerolineas

Argentinas v. United States, 77 F.3d 1564, 1574 (Fed. Cir. 1996) (finding illegal exaction when agency regulation required payments that had been repealed in the statute).

*I. Immigration Inspection User Fee*

*A. The Statute, 8 U.S.C. § 1356*[3]

The government is correct that Continental does not have discretion in collecting the immigration inspection user fee. The statute states that, if the user fee was not collected at the time of issuance, "the person providing transportation to such passenger shall collect such fee at the time such passenger departs from the United States." 8 U.S.C. § 1356(f)(2). It does not necessarily follow, however, that Continental is liable if it fails to collect user fees as mandated

---

[3] (d) Schedule of fees

In addition to any other fee authorized by law, the Attorney General shall charge and collect $7 per individual for the immigration inspection of each passenger arriving at a port of entry in the United States, or for the preinspection of a passenger in a place outside of the United States prior to such arrival, aboard a commercial aircraft or commercial vessel.

. . .

(f) Collection

(1) Each person that issues a document or ticket to an individual for transportation by a commercial vessel or commercial aircraft into the United States shall--

(A) collect from that individual the fee charged under subsection (d) of this section at the time the document or ticket is issued; and

(B) identify on that document or ticket the fee charged under subsection (d) of this section as a Federal inspection fee.

(2) If--

(A) a document or ticket for transportation of a passenger into the United States is issued in a foreign country; and

(B) the fee charged under subsection (d) of this section is not collected at the time such document or ticket is issued;

the person providing transportation to such passenger shall collect such fee at the time such passenger departs from the United States and shall provide such passenger a receipt for the payment of such fee.

(3) The person who collects fees under paragraph (1) or (2) shall remit those fees to the Attorney General at any time before the date that is thirty-one days after the close of the calendar quarter in which the fees are collected . . . .

. . .

(h) Disposition of receipts

(1)(A) There is established in the general fund of the Treasury a separate account which shall be known as the "Immigration User Fee Account". Notwithstanding any other section of this subchapter, there shall be deposited as offsetting receipts into the Immigration User Fee Account all fees collected under subsection (d) of this section, to remain available until expended. 8 U.S.C. § 1356.

by the statute. The next section of the law requires that a carrier "who collects fees under [the statute] shall remit those fees to the Attorney General . . . ." § 1356(f)(3) (emphasis added). The statute creates a Treasury account to receive the user fee remittances, specifically "all fees collected." § 1356(h).

In other words, the plain language of the statute is that air carriers must collect the immigration inspection user fee from passengers, and they must remit to the Attorney General the fees that they collect. By requiring remittance of "those fees" collected, the Congress explicitly made the air carriers responsible only for the fees they actually collected. Nowhere does the statute say that Continental and other carriers must remit a user fee for every ticket to which the fee applies. The Congress easily could have written the law to include such liability for the air carriers, but it chose not to. The Federal Circuit has held specifically that statutory silence does provide an agency with authority to act in any way that serves the purpose of a statute. FAG Italia S.p.A. v. United States, 291 F.3d 806, 815-16 (2002) (finding no statutory authority for agency inquiries that serve the purpose of the statute, other than those specifically authorized in the statute). Without specific Congressional authorization, the agency cannot act. Id. at 816. As in FAG Italia, Congressional silence on the issue of liability for uncollected immigration inspection user fees does not give the government license to require payment for those uncollected fees.

Both parties also spent significant space in the briefs discussing Air Tour Acquisition Corp. v. United States, 781 F.Supp. 669 (D. Haw. 1991), a tax case. Defendant argues that the Court should not rely on Air Tour because it deals with taxes rather than user fees. The Court disagrees. Air Tour's statutory interpretation of language similar to that at issue in the present case is instructive even if it is a tax case. Specifically, the statute in Air Tour required that, when a person collected a tax on behalf the government, "the amount of the tax so collected or withheld shall be held to be a special fund in trust for the United States." 781 F.Supp at 673. The court concluded that this language limited the trust to the amount actually collected and paid to the government. Id. at 673-74. The Internal Revenue Service was incorrect in its assertion that a trust was imposed on the amount of tax a tour operator should have collected from passengers. Id. at 674. The statutory language in Air Tour echos that used to establish the U.S. Treasury account for the immigration user fees in this case. It states that "there shall be deposited as offsetting receipts into the Immigration User Fee Account all fees collected under subsection (d) of this section. 8 U.S.C. § 1356(h). Like the statute in Air Tour, the immigration user fee statute discusses only the fees collected; it makes no mention of the amount that should have been collected.

Defendant also argues that if the government cannot compel payment for all the user fees, the statute easily could be rendered meaningless by the air carriers' refusal to collect the immigration inspection user fee. Although such action would violate the statute, the government argues that it would be powerless to counter it. First, the record reflects that Continental's error rate for collecting and remitting the immigration inspection user fee was never more than 1.25 percent of the relevant tickets. Plaintiff's Findings of Fact Ex. 1 at 017, 025, 039, 056, 057. So,

there seems little danger of the government's doomsday scenario unfolding. More importantly, it is not the Court's mandate to mitigate a potentially harsh result from the plain language of a statute. Lamie v. United States Trustee, 540 U.S. 526, 538 (2004). The Supreme Court cited this longstanding precedent in refusing to read a word into a statute that, although awkwardly-worded and grammatically incorrect, conveyed a "plain, nonabsurd meaning." Id. Here, defendant would have the Court insert not merely a word but an entire enforcement passage into the statute to prevent lost revenue. Because Congressional intent is clear in the statute, the government's interpretation is not entitled to deference by the Court.

*B. The Regulations, 8 C.F.R. § 286*[4]

---

[4] Sec. 286.4 Fee collection responsibility.

(a) It is the responsibility of the air or sea carriers, travel agents, tour wholesalers, or other parties, which issue tickets or documents for transportation on or after December 1, 1986, to collect the fee set forth in Sec. 286.2 of this part from all passengers transported to the United States who are not excepted under Sec. 286.3 of this part.

(b) Tickets and documents for transportation shall be marked by the collector of the fee to indicate that the required fee has been collected. Such markings shall be in accordance with the procedures set forth in the ARC Industry Agents Handbook, the SATO Ticketing Handbook, or compatible procedures set forth in the operations manual of individual collectors.

(c) It is the responsibility of the carrier transporting a passenger from the United States to collect the fee upon departure, if the passenger was not excepted under Sec. 286.3 of this part and tickets or documents for transportation of the passenger do not reflect collection of the fee at the time of issuance. If at the time of departure such a passenger refuses to pay the fee, the carrier shall record the full name, complete address, nationality, passport number, and alien file number, if any, of the passenger and immediately notify the Associate Commissioner, Finance.

Sec. 286.5 Remittance and statement procedures.

(a) The air or sea carrier whose ticket stock or document for transportation reflects collection of the fee is responsible for remittance of the fee to the Service. The travel agent, tour wholesaler, or other entity, which issues their own non-carrier related ticket or document for transportation to an air or sea passenger who is not excepted from the fee pursuant to Sec. 286.3 of this part, is responsible for remittance of the fee to the Service, unless by contract the carrier will remit the fee.

(b)(1) Fee remittances shall be sent to the Immigration and Naturalization Service, at a designated Treasury depository, for receipt no later than 31 days after the close of the calendar quarter in which the fees are collected . . . .

(2) Late payments will be subject to interest, penalty, and handling charges as provided in the Debt Collection Act of 1982 (31 U.S.C. 3717). Refunds by a remitter of fees collected in conjunction with unused tickets or documents for transportation shall be netted against the next subsequent remittance.

. . .

(f) The Commissioner reserves the right to conduct an independent audit of any collector or remitter not providing the report or certification required pursuant to paragraph (e) of this section or based upon other information indicating non-compliance in order to assure the accuracy of the

The government also interprets its implementing regulations as requiring air carrier liability for uncollected immigration inspection user fees. Defendant argues that Auer requires deference to this interpretation; but that deference does not apply if the regulations are unambiguous. The Department of Homeland Security's regulations pursuant to 8 U.S.C. § 1356(j) are located at 8 C.F.R. § 286 (2007). Section 286.4, "Fee collection responsibility," does little more than rephrase the statutory language about the ticket issuer collecting fees and, if the fee has not been collected at issuance, the air carrier collecting the fee upon departure from the United States. Compare 8 U.S.C. 1356(f) with 8 C.F.R. § 286.4. If a passenger refuses to pay the fee, the regulations instruct the carrier to record the passenger's personal information and immediately notify the Department of Homeland Security. § 286.4(c).

Section 286.5 states that "[t]he air or sea carrier whose ticket stock or document for transportation reflects collection of the fee is responsible for remittance of the fee . . . ." § 286.5(a). Aside from specific instructions about where and how to remit the funds, the regulations also authorize late payment penalties and establish the government's right to conduct independent audits. §§ 286.5(b)(2), (f). Finally, the regulations authorize two penalties for failure to comply with either the statute or the implementing regulations: termination of existing agreements with the carriers; and/or suspensions of inspections. § 286.7.

The plain meaning of the regulations is, if anything, even more clear than that of the statute. The regulations require remittance of fees by the carrier whose tickets are marked to reflect collection of the fee. § 286.5(a). This means that no one is responsible for remitting fees for tickets that do not bear a mark signifying collection of the user fee. The wording of the regulation contains no ambiguity or gap in need of filling. Auer, on which the government relies so heavily, involved an agency defining and interpreting an ambiguous term in the agency's regulations. 519 U.S. at 461. In the instant case, however, defendant asks the Court to accept a view at odds with the clear language of the regulation rather than a mere explanation of a term. The regulations explicitly state the penalties for non-compliance (again preventing the government's worst case scenario of arbitrary fee collection by the air carriers), and defendant cannot simply add new ones at will without specific authority from the Congress. Gonzales, 546 U.S. at 255-56. As discussed above, the Congress did not provide such authority in the statute.

---

remittances of fees collected and remitted and compliance with the applicable statutes and regulations. . . .

Sec. 286.7 Penalties.

Failure of any air or sea carrier to comply with the provisions of section 286 of the Act and this part shall subject it to one or more of the following:

(a) Termination of existing agreements under the provisions of section 238 of the Act; and

(b) Suspension of en route inspections or preinspections.

Finally, the Supreme Court in Gonzales refused to apply Auer deference to an agency's interpretation of regulations that essentially mirrored the authorizing statute. Id. at 257. As in Gonzales, the government here is not interpreting regulations developed with the benefit of its expertise, but merely rephrasing the statute's requirements about who is responsible for collecting the immigration inspection user fee. See id. Counsel for the government admitted at the hearing that there is "[v]ery little difference" between the statute and the regulations and that defendant was unable to distinguish this case from Gonzales. Transcript at 11, 15. As a result, the government's interpretation is not entitled to deference under Auer. The plain language of the regulations controls.

*II. AQI User Fee, 21 U.S.C. § 136(a)*

The analysis related to the AQI user fee is similar to that for the immigration inspection user fee. Rather than repeat the same arguments, the Court will focus on those instances in which the analyses differ.

The Congress authorized the Secretary of Agriculture to prescribe and collect fees to cover the cost of AQI inspections.[5] 21 U.S.C. § 136(a)(1). The statute is less specific than the

---

[5] Sec. 136a. Collection of fees for inspection services

(a) Quarantine and inspection fees

(1) Fees authorized

The Secretary of Agriculture may prescribe and collect fees sufficient--
(A) to cover the cost of providing agricultural quarantine and inspection services in connection with the arrival at a port in the customs territory of the United States, or the preclearance or preinspection at a site outside the customs territory of the United States, of an international passenger, commercial vessel, commercial aircraft, commercial truck, or railroad car;
(B) to cover the cost of administering this subsection; . . . .

. . .

(3) Status of fees

Fees collected under this subsection by any person on behalf of the Secretary are held in trust for the United States and shall be remitted to the Secretary in such manner and at such times as the Secretary may prescribe.

(4) Late payment penalties

If a person subject to a fee under this subsection fails to pay the fee when due, the Secretary shall assess a late payment penalty, and the overdue fees shall accrue interest, as required by section 3717 of title 31.

(5) Agricultural quarantine inspection user fee account

one authorizing the immigration inspection user fees, giving the Secretary broad authority to craft the regulations. Nonetheless, the statute and regulations are unambiguous on the issue of whether the airlines are responsible for paying for uncollected AQI user fees.

The statute states that "[f]ees collected . . . on behalf of the Secretary are held in trust for the United States and shall be remitted to the Secretary" according to the Secretary's instructions. § 136a(a)(3). It also imposes late fees and penalties on persons who fail to pay the fee when due. § 136a(a)(4). The statute creates a Treasury account that "shall contain all of the fees collected" pursuant to the statute, as well as late payment penalty fees and interest charges for late payments. § 136a(a)(5)(A). Finally, it allows legal action in U.S. district court against "any person obligated for payment." § 136a(e). The government's interpretation of the statute is not entitled to Chevron deference because it is clear from the face of the statute that the Congress intended only the collected fees to be remitted to the trust account. The statute focuses on remittal of the fees that are actually collected, not the amount that should have been collected for the relevant tickets or travelers. See §§ 136a(a)(3), (5)(A). The Court will not read the government's language into the statute when the statute is clear on its face. See Lamie, 540 U.S. at 538; FAG Italia, 291 F.3d at 815-16.

The accompanying regulations also are clear that "each passenger" is responsible for paying the AQI user fee. 7 C.F.R. § 354.3(f) (2007).[6] The air carriers are charged merely with

---

(A) Establishment

There is established in the Treasury of the United States a fund, to be known as the "Agricultural Quarantine Inspection User Fee Account", which shall contain all of the fees collected under this subsection and late payment penalties and interest charges collected under paragraph (4) through fiscal year 2002.

. . .

(d) Regulations

The Secretary may prescribe such regulations as the Secretary determines necessary to carry out the provisions of this section.

(e) Recovery of amounts owed

An action may be brought for the recovery of fees, late payment penalties, and accrued interest which have not been paid in accordance with this section against any person obligated for payment of such assessments under this section in any United States district court or other United States court for any territory or possession in any jurisdiction in which such person is found or resides or transacts business, and such court shall have jurisdiction to hear and decide such action. 21 U.S.C. § 136a.

[6] (f) *Fee for inspection of international passengers.* (1) Except as specified in paragraph (f)(2) of this section, each passenger aboard a commercial aircraft who is subject to inspection under part 330 of

collection of the fee. Id. Like the immigration inspection user fee, the carrier must collect the AQI user fee upon departure if the passenger's ticket does not reflect prior payment of the fee. § 354.3(f)(4)(B). The carriers then must hold in trust the "AQI user fees collected from international passengers." § 354.3(f)(4)(C). Finally, the carrier whose tickets reflect collection "must remit the fee to the U.S. Bank." § 354.3(f)(5). On the issue of remitting collected fees, the language of the AQI user fee regulations is almost identical to that of the immigration inspection

---

this chapter or 9 CFR, chapter I, subchapter D, upon arrival from a place outside of the customs territory of the United States, must pay an AQI user fee. The AQI user fee for each arrival is shown in the following table:

| Effective dates\1\ | Amount |
|---|---|
| January 1, 2005, through September 30, 2005............... | $4.95 |
| October 1, 2005, through September 30, 2006............... | 5.00 |
| October 1, 2006, through September 30, 2007............... | 5.00 |
| October 1, 2007, through September 30, 2008............... | 5.00 |
| October 1, 2008, through September 30, 2009............... | 5.00 |
| October 1, 2009, through September 30, 2010............... | 5.00 |

\1\ Persons who issue international airline tickets or travel documents are responsible for collecting the AQI international airline passenger user fee from ticket purchasers. Issuers must collect the fee applicable at the time tickets are sold. In the event that ticket sellers do not collect the AQI user fee when tickets are sold, the air carrier must collect the user fee from the passenger upon departure. Carriers must collect the fee applicable at the time of departure from the traveler.

. . .

(4) *Collection of fees.* (i) Any person who issues tickets or travel documents on or after May 13, 1991, is responsible for collecting the AQI user fee from all passengers transported into the customs territory of the United States to whom the AQI user fee applies.

(A) Tickets or travel documents must be marked by the person who collects the AQI user fee to indicate that the required AQI user fee has been collected from the passenger.

(B) If the AQI user fee applies to a passenger departing from the United States and if the passenger's tickets or travel documents were issued on or after May 13, 1991, but do not reflect collection of the AQI user fee at the time of issuance, then the carrier transporting the passenger from the United States must collect the AQI user fee upon departure.

(C) AQI user fees collected from international passengers pursuant to paragraph (f) of this section shall be held in trust for the United States by the person collecting such fees, by any person holding such fees, or by the person who is ultimately responsible for remittance of such fees to APHIS. . . .

(5) *Remittance and statement procedures.* (I) The carrier whose ticket stock or travel document reflects collection of the AQI user fee must remit the fee to the U.S. Bank, United States Department of Agriculture (USDA), APHIS, AQI, P.O. Box 952181, St. Louis, MO 63195-2181. . . .

. . .

(7) *Compliance*. Each carrier, travel agent, United States-based tour wholesaler, or other entity subject to this section must allow APHIS personnel to verify the accuracy of the AQI user fees collected and remitted and to otherwise determine compliance with 21 U.S.C. 136a and this paragraph.

user fee regulations. Compare 8 C.F.R. § 286.5 with 7 C.F.R. § 354.3(f)(5). There is no ambiguous language to interpret that would allow the government to require remittance of fees other than those actually collected by the carriers.

The AQI user fee regulations also contain a compliance section that gives the government the right to audit compliance with the statute and "the accuracy of the AQI user fees collected and remitted." § 354.3(f)(7). Unlike the regulations for the immigration inspection user fee, these regulations do not contain specific penalty clauses. In short, neither the statute nor the regulations mention possible government action in response to an air carrier's failure to collect AQI user fees. Without this specific authorization, the Court will not allow the government to impose monetary penalties on Continental for failing to collect fees under the statute. See FAG Italia, 291 F.3d at 816.

## CONCLUSION

Both the statutes and the regulations at issue are unambiguous on their face that Continental is responsible for remitting only those user fees it actually collects. The government therefore required payment for uncollected user fees without statutory or regulatory authorization, which is an illegal exaction. For all of these reasons, the Court **DENIES** defendant's motion to dismiss and **GRANTS** summary judgment for plaintiff as to liability.

s/Lawrence S. Margolis
LAWRENCE S. MARGOLIS
Senior Judge, U.S. Court of Federal Claims

Filed: July 12, 2007