IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| CONTINENTAL AIRLINES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 06-432C |
| v. | ) | (Senior Judge Margolis) |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S BRIEF CONCERNING DISCOVERY AND DAMAGES**

Pursuant to the Court's order dated September 20, 2007, memorializing the outcome of the September 12, 2007 status conference in this matter, defendant, the United States, respectfully submits this brief concerning the measure of damages for illegal exaction of user fees, and the appropriate scope of discovery regarding damages.

In summary, as established below, the Court should (i) not adopt the measure of damages for illegal exaction that was adopted by the Court in American Airlines, Inc. v. United States, 75 Fed. Cl. 237, 241 (2006) ("What is relevant . . . is the amount that Plaintiff has paid to the Government [following audits]."); (ii) hold, instead, that damages equal the difference, if any, between (a) the immigration inspection and agriculture quarantine inspection ("AQI") user fees that plaintiff, Continental Airlines, Inc., remitted to the Government for the years in question, and (b) the aggregate amount of those fees that Continental actually owed; and (iii) hold, further, that the Government is not bound by the results of the agencies' user fee audits of Continental, but, instead, may pursue in discovery any evidence that may bear upon Continental's damages and "need not rely solely, or at all, on the evidence reviewed administratively by the [collecting agencies]." Cook v. United States, 46 Fed. Cl. 110, 114-15, 117 (2000) (tax refund case) (citing Tucker v. United States, 8 Cl. Ct. 180, mod. on other grounds, 8 Cl. Ct. 575 (1985)).

I. Damages For Illegal Exaction Equal The Total Amount Paid Minus The Total Amount Owed For The Relevant Time Period

The gravamen of an illegal exaction claim is that "the Government has . . . in its pocket" money it obtained from plaintiff unlawfully. Aerolineas Argentinas v. United States, 77 F.3d 1564, 1573 (Fed. Cir. 1996) (quoting Clapp v. United States, 127 Ct. Cl. 505, 512, 117 F. Supp. 576, 580 (1954)). This Court has determined, as a threshold matter, that Continental cannot be held liable to U.S. Customs and Border Protection ("CBP") or the United States Department of Agriculture, Animal and Plant Health Inspection Service ("APHIS"), for immigration inspection or AQI user fees, respectively, when Continental does not collect those fees from its covered passengers. Continental Airlines, Inc. v. United States, 77 Fed. Cl. 482, 490 (2007) ("Continental is responsible for remitting only those user fees it actually collects.").

Continental has suffered legal injury only to the extent it has paid user fees it did not owe. See Lawrence v. United States, 69 Fed. Cl. 550, 557 (2006) (dismissing illegal exaction claim because plaintiff admittedly owed the exacted amount). Because Continental admittedly must remit the user fees it does collect, see 77 Fed. Cl. at 490, the extent of its remediable injury can be properly determined only by comparing the user fees Continental legitimately owed for the years in question, in total, to the user fees it paid, in total. Both of those dollar figures will be large; the difference between them may or may not be.

"The classic illegal exaction claim is a tax refund suit alleging that taxes have been improperly collected or withheld by the government." Norman v. United States, 429 F.3d 1081, 1095 (Fed. Cir. 2005) (citing City of Alexandria v. United States, 737 F.2d 1022, 1028 (Fed. Cir. 1984)). Taxpayers in such cases bear the burden to establish, not only legal entitlement to a

refund, but also "the correct amount of the tax, and any overpayment." Merck & Co. v. United States, 24 Cl. Ct. 73, 91 (1991) (emphasis added); see United States v. Janis, 428 U.S. 433, 440-41 (1976) ("It is not enough for [plaintiff] to demonstrate that the assessment of the tax for which refund is sought was erroneous in some respects."). Accordingly, this Court determines the amount of a refund for a legally erroneous tax assessment by conducting a "de novo" review of the taxpayer's relevant books and records. Cook, 46 Fed. Cl. at 114-15; Pikeville Coal Co. v. United States, 37 Fed. Cl. 304, 309 (1997) (citing Merck, 24 Cl. Ct. at 79).

Significantly, pursuant to the "full payment rule," in order to invoke this Court's jurisdiction under the Tucker Act, a taxpayer must – as Continental has done here – pay the full amount assessed by the Government. Tonasket v. United States, 218 Ct. Cl. 709 (1978). (That is not the rule, by contrast, in the Tax Court. Flora v. United States, 362 U.S. 145, 175-76 (1960).) A taxpayer does not automatically recover the exact amount it paid, however, even if the Court rejects the Internal Revenue Service's legal theory. The taxpayer still bears the burden to prove, de novo, the amount by which the taxes it paid exceeded the taxes it owed. Indeed, plaintiff's entire tax liability may be recalculated at trial to address that issue, without the need for a supplemental tax assessment. Lewis v. Reynolds, 284 U.S. 281, 283 (1932) ("An overpayment must appear before refund is authorized."), cited in Cook, 46 Fed. Cl. at 116.

There are no grounds to depart from these settled principles in this case. To establish its damages for illegal exaction – i.e., overpayment of user fees – Continental must prove, for all of the years at issue, the amounts of immigration inspection and AQI user fees it owed, and the amounts it remitted. Conversely, the Government is entitled to retain the user fees remitted by

Continental, provided those amounts "do not exceed the amount[s] which might have been properly assessed and demanded." Lewis, 284 U.S. at 283 (emphasis added).

The American Airlines Court erred by making the baseline for damages the amounts that American Airlines remitted, under the rubric of "uncollected user fees," in response to assessments by CBP and APHIS, following user fee audits. 75 Fed. Cl. at 241 (finding "no indication in this record that Plaintiff did not satisfy the [agency] auditors' requirements" and holding that discovery outside scope of audits could be relevant only "to establish a counterclaim or set off," which Government did not assert); see also American Airlines, Inc. v. United States, 77 Fed. Cl. 672, 682 (2007) (awarding to American "the principal amount[s] illegally exacted by the Government in connection with the Immigration User Fee and AQI User Fee audits") (emphasis added). Neither plaintiff nor the Court in American discussed Merck, Cook, or any other case law cited above. The American Court adopted, without explanation, American Airlines's assertion that the Government's theory of damages involved "offsets" or "counterclaims." 75 Fed. Cl. at 241. As explained above, however, plaintiff's burden to prove, de novo, the specific amount by which the immigration inspection and AQI user fees it remitted exceeded those it owed has nothing to do with offsets or counterclaims. Lewis, 284 U.S. at 283.

II. The Agencies' User Fee Audits Do Not Limit Or Define The Scope Of Discovery

Given that Continental's damages must be determined, as in a tax refund case, de novo, it follows that the Government may, as in a tax refund case, employ all of the ordinary tools of civil discovery to explore Continental's liability for, and payments of, the disputed user fees, and "need not rely solely, or at all, on the evidence reviewed administratively by the [collecting agencies]." Cook, 46 Fed. Cl. at 115 (emphasis added); accord Lewis, 284 U.S. at 283 (noting

entire tax liability may be redetermined in refund suit). The results of the agencies' user fee audits have no special bearing upon the calculation of Continental's damages. Absent other damages evidence, the audit results arguably could be probative, but they are not dispositive. (As we explained in American, the audit results are less than illuminating, because the auditors would accept at face value an airline's statement that it did not collect fees for particular tickets in the small ticket samples examined in the audits. See Continental 1st Am. Compl. ¶¶ 24-29. As a result, an audit finding of a collection "error" simply meant the airline presented no evidence of collection to the auditors. Id. ¶ 26. It is analogous to a finding that a taxpayer lacks a receipt to justify a tax deduction. Lack of documentation is not, by contrast, good affirmative evidence that a transaction (e.g., fee collection) did not occur, where, as here, the audited party bears the burden of proof as to that issue. The legal reasons we are not bound by the audit results do not depend upon these factual issues concerning the audits, however.)

The American Court did not explain why the principles of quantum discovery in an illegal exaction case, set forth in Cook, 46 Fed. Cl. at 116-17, should not apply in American. Instead, from the beginning, the Court adopted American Airlines's position that "[w]hat [wa]s relevant . . . [was] the amount that Plaintiff ha[d] paid to the Government" in response to the agencies' specific demands, following the audits, for "uncollected user fees," see 75 Fed. Cl. at 241 – rather than the difference between the immigration inspection and AQI user fees paid by plaintiff for the years in question and "the amount[s of user fees] which might have been properly assessed and demanded" by CBP and APHIS. Lewis, 284 U.S. at 283. Because the latter measure of damages, rather than the former, is correct, the Government is entitled to "obtain [from Continental] discovery regarding any matter, not privileged, that is relevant to" the

aggregate damages calculation. RCFC 26(b)(1). Discovery topics may include, without limitation, "the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things" relating to the means by which Continental identifies covered passengers and collects, accounts for, and remits immigration inspection and AQI user fees. Id.; see e.g., CSC Holdings, Inc. v. Redisi, 309 F.3d 988, 995-96 (7th Cir. 2002) (holding district court abused its discretion by denying defendant discovery of documents relevant "to [defendant's] efforts to present an alternative and lower calculation of damages").

We know of no contrary authority, apart from the decisions in American, which do not, of course, bind this Court.

## CONCLUSION

For the reasons given above, we respectfully request the Court to determine that the measure of damages, and the scope of discovery, shall be as described above.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

Jeanne E. Davidson
by Todd M. Hughes
JEANNE E. DAVIDSON
Director

OF COUNSEL:

ANDREW S. KOSEGI
Attorney
U.S. Customs and Border
Protection
Indianapolis, IN

CYNTHIA A. KOCH
Senior Counsel
United States Department of
Agriculture
Washington, DC

September 28, 2007

s/Kyle Chadwick
KYLE CHADWICK
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification, 8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 616-0476
Fax: (202) 305-7644

Attorneys for Defendant