IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| CONTINENTAL AIRLINES, INC.<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES OF AMERICA,<br><br>Defendant. | Civil Action No. 06-432C<br>Judge Lawrence S. Margolis |

**PLAINTIFF'S BRIEF RELATING TO DAMAGES**

Pursuant to this Court's September 20, 2007 Order (Doc. No. 33), Plaintiff Continental Airlines, Inc. ("Continental") respectfully submits this Brief Relating to Damages.

**BACKGROUND**

In this illegal exaction case, Continental seeks to recover approximately $2 million that it paid in response to Government audits of its collections of the user fees authorized by 8 U.S.C. § 1356 and 21 U.S.C. § 136a. Opinion (July 12, 2007) (Doc. No. 30) (hereinafter, "Opinion on Liability") at 1-3. These two statutes and their implementing regulations require air carriers to collect the user fees from certain international passengers and to remit the collected amounts to the Government on a quarterly basis. Continental asserts that the $2 million at issue here represents user fees the Government determined Continental should have but did *not collect* from its passengers. The specific amounts assessed were:

| Audit Period (Date Paid) | Immigration User Fee | AQI User Fee |
|---|---|---|
| 4/1/99-12/31/00 (10/01) | $420,784 | N/A |
| 7/1/99-12/31/01 (7/02) | N/A | $863,979[1] |
| 1/1/01-12/31/01 (12/02) | $414,639 | N/A |
| 1/l/02-12/31/03 (7/04) | $230,547 | $109,535[2] |
| 1/l/04-9/30/05 (9/06) | $62,503 | $36,183 |
| Total | $1,128,473 | $1,009,697 |

Opinion on Liability at 3.

In addition to the $2 million in *un*collected user fees assessed against Continental in these audits, Continental *actually collected* from passengers and remitted to the Government substantially larger sums of user fees on a quarterly basis pursuant to its obligations under the two user fee statutes. Specifically, Continental remitted more than $339 million of *collected* user fees during the time periods covered by each of the audits:

| Audit Period | Immigration User Fee | AQI User Fee |
|---|---|---|
| 4/1/99-12/31/00 | $55,542,318 | N/A |
| 7/1/99-12/31/01 | N/A | $30,704,044 |
| 1/1/01-12/31/01 | $32,756,501 | N/A |
| 1/l/02-12/31/03 | $74,086,268 | $27,952,069 |
| 1/l/04-9/30/05 | $80,069,918 | $38,486,753 |
| Total | $242,455,005 | $97,142,866 |

Def.'s Resp. to Pl.'s Proposed Findings of Uncontroverted Fact (Doc. No. 25) ¶¶ 19, 24, 29, 34, 45, 51, 57.

Continental maintains that the damages phase of this case should be limited to the $2 million that Continental asserts it was forced to pay for uncollected user fees in connection with the Government's audits. Specifically, it contends that the only remaining fact it must prove is

[1] Continental also paid $48,687 in interest in connection with this audit.

[2] Continental also paid $15,476 in interest in connection with this audit.

that the $2 million indeed represents *un*collected user fees (as opposed to user fees that it collected but that it failed to remit).

The Government, however, argues that the relevant damages inquiry is not limited to a determination of how many uncollected user fees it improperly forced Continental to pay during the audits. Rather, the Government contends that Continental must prove both the total amount of user fees Continental should have paid to the Government for the six year period at issue in this case (a sum roughly equal to $339 million) and the total amount Continental actually paid (approximately $341 million) – the difference between the two being the measure of damages in this case. That would mean that Continental would have to prove, among other things, that the $339 million was truly the correct amount it should have paid for *collected* user fees that are not at issue in this case. Under the Government's theory, any underpayment of those *collected* user fees would reduce Continental's damages in this case, even though Continental has sued only to recover illegally exacted *un*collected user fees. Not only would Continental bear this burden at trial, but presumably the Government would also be free to take discovery into the entire $339 million and would be free to try to show that Continental should really have paid a larger amount in collected user fees.

The Government made a similar argument in the *American Airlines* case in an attempt to justify discovery into certain allocation methods the airline used for collected user fees and into "any other user fee-related accounting issues that may arise," regardless of whether they related to the audit assessments for uncollected user fees or the larger amounts of collect user fees the airline paid in the normal course. *American Airlines, Inc. v. United States*, 75 Fed. Cl. 237, 241 (2006). For essentially the same reasons expressed in this brief, Judge Braden rejected the Government's request. *Id.* at 241-42. This Court should do the same.

**ARGUMENT**

In support of its novel argument, the Government relies on one sentence from *Merck & Co. v. United States*, 24 Cl. Ct. 73, 91 (1991): a plaintiff alleging an illegal exaction of income taxes must "prove the correct amount of the tax, and any overpayment." Def.'s Opp. & Reply (Doc. No. 23) at 16. This basic proposition of tax law means that the Government may defeat a refund suit if the taxpayer has not shown that he or she has overpaid taxes as a whole for the year in question, even if the taxpayer is successful in proving a specific refund claim. While this statement is accurate as far as it goes, the Government has grossly oversimplified the issue. Even a cursory review of the law on this subject reveals that the Government's position is wrong.

*Mahoney v. United States*, 223 Ct. Cl. 713 (1980), for example, provides a far more complete and accurate statement of the law. *See also McLennan v. United States*, 23 Cl. Ct. 99, 105-07 (1991). Like *Merck*, *Mahoney* is also a federal tax refund case. However, unlike *Merck*, *Mahoney* specifically addressed a situation in which the Government attempted to reduce or eliminate the taxpayer's refund by arguing that even if the taxpayer's specific refund arguments were valid, it would not be due any refund because – for reasons unrelated to the taxpayer's refund arguments – it underpaid its taxes in the year in question. The court in *Mahoney* affirmed the trial court's denial of the Government's request to amend its answer to include as defenses arguments that the taxpayer had underpaid tax for reasons unrelated to its refund claim. That is exactly what the Government is trying to do here, and this Court should reject that attempt for the same reasons expressed in *Mahoney*, plus some additional ones.

First, although the Government is entitled to argue that the taxpayer has not paid the total correct amount of tax even if the reason for such underpayment is unrelated to the taxpayer's refund claim, such an argument is in the nature of an offset that must be plead as an affirmative



787165.1

defense (or, if the statute of limitations has not run, possibly a counterclaim). *Mahoney*, 223 Ct. Cl. at 714; *see also Buder v. United States*, 7 F.3d 1382, 1386 (8th Cir. 1993) (affirming district court's refusal to consider the Government's argument that taxpayer had not overpaid its taxes in total and was therefore not entitled to a refund, because the "issue was never raised by the IRS during its audit, and the Government never pleaded or amended its complaint to include the setoff defense"); 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1271 at 594-96 & n.46 (3d ed. 2004); *Regency Commc'ns, Inc. v. Cleartel Commc'ns, Inc.*, 304 F. Supp. 2d 1, 6-7 (D.D.C. 2004) (*citing* Wright & Miller).[3] The Government has not pled, or even attempted to plead, any affirmative defense of offset or counterclaim in this case.[4] *See* Answer (Doc. No. 32) at 11.

Second, *Mahoney* makes clear that – despite the general notion that a taxpayer bears the burden of proving the correct amount of the tax – a taxpayer is not obligated to affirmatively prove that every aspect of the tax it paid was correct, unless and until the Government makes a sufficient showing to the contrary:

> [B]efore the taxpayer has the burden of proving the correctness of the challenged item . . . , we think that the government has the burden of going forward and showing that there is a reasonable basis in fact or in law for its setoff defense. By this we mean that the government has to demonstrate that it has some concrete

[3] Common sense also dictates that the approach in *Mahoney* and the other cited authorities must be correct in this regard. Without formal notice of what elements of tax the Government was challenging, every tax refund trial would become hopelessly bogged down with lengthy proofs by the taxpayer of the correctness of every single element of his or her tax return, including the calculation of every dollar of income, the entitlement to each and every deduction, etc.

[4] The Government has also waived any right to do so. *Bank of America v. United States*, 217 Ct. Cl. 731 (1978) (affirming trial court's denial of the Government's attempt to amend its answer to include an offset based on the same tax and years at issue in the taxpayer's refund suit); *St. Louis-S.F. Ry. Co. v. United States*, 417 F.2d 1359, 1360 (Ct. Cl. 1969) (tax refund case; "we now warn that any undue delay on the part of the government will result in the denial of the right to raise setoff defenses. In other words, we hold that the defense must be raised at the earliest possible stage in the proceedings."); *Buder*, 7 F.3d at 1387 ("we deem the Government to have waived its setoff defense").

> and positive evidence, as opposed to a mere theoretical argument, that there is some substance to its claim and is not a mere fishing expedition or a method of discouraging taxpayers from seeking refunds on meritorious claims because of the cost that would result in proving each and every item involved in a tax return. In a case where the taxpayer raises specific issues as to a tax, and there is no good reason for the government to challenge the remainder of the items going to make up the tax, the government should not be able to cast the burden on the taxpayer of proving each and every item. The right of allowing an offset under these situations is an equitable right given to the government based on the equitable principles and, as such, should not be abused.

223 Ct. Cl. at 715 (*quoting Missouri Pac. R.R. v. United States*, 338 F.2d 668, 671-72 (Ct. Cl. 1964)); *see also McLennan*, 23 Cl. Ct. at 105-07. The Government must have "concrete and positive evidence" of its claims at the time it pleads the offset and without such evidence, claims for offset may not be pled, even if "they might still prove founded on some theory if all the facts were known." *Mahoney*, 223 Ct. Cl. at 718, 719. Here, the Government has no such evidence and cannot even plead facts that might establish a right to an offset.

Third, the Government must possess this "concrete and positive evidence" and plead its offset "before it initiates discovery into matters relevant only as to establishment of offsets." *Mahoney*, 223 Ct. Cl. at 718. Moreover, the Government may not use a refund litigation as an opportunity to reaudit the taxpayer:

> Discovery by defendant cannot be regarded as a means of conducting a reaudit, as defendant seems to wish to do here. Discovery in the course of litigation is a costly and cumbersome substitute for a true audit, and is abused if employed to that end. The revenue agent can poke into everything without being required to have even a suspicion that anything is not as it should be. A taxpayer should not be subjected to this more than once. Counsel here must use the very different tools he is given for the very different purposes of adversary litigation.

*Id*. at 719. Continental's lawsuit to recover *un*collected user fees that were illegally exacted from it does not entitled to the Government to reopen its prior audits in an attempt to find new deficiencies in the amounts Continental paid to the Government in *collected* user fees.

For all these reasons, the total user fees Continental paid and should have paid is

irrelevant to the question of damages in this case. Continental's claim is expressly limited to the approximately $2 million in *un*collected user fees the Government illegally exacted during the user fee audits. The Government is not entitled to turn this case into a larger dispute about the $339 million in *collected* user fees that Continental paid to the Government, unless and until it pleads its allegations as an offset (which is has not done and is no longer entitled to do) and unless and until it can come forward with "concrete and positive evidence" of its claim of offset (which it has not and cannot do). Independently, either of these shortcomings is fatal to the Government's argument that Continental must prove the total amount of all user fees – whether collected or not – that it paid and the total that should have been paid.

## CONCLUSION

For these reasons, Continental respectfully requests that this Court rule that (1) the proper measure of damages in this case is simply that portion of the $2 million assessed in the audits that in fact represents *un*collected user fees, and (2) the total amount of user fees paid and that should have been paid is irrelevant to this determination and is not the proper subject of discovery in the damages phase of this case.

Respectfully submitted,

/s/ Adam P. Feinberg

Adam P. Feinberg
MILLER & CHEVALIER CHARTERED
655 Fifteenth Street, N.W.
Washington, D.C. 20005
(202) 626-6087
(202) 628-0858 (Facsimile)

Counsel for Plaintiff

Dated: September 28, 2007